**PERKINS COIE LLP**
Susan D. Fahringer (Bar No. 162978)
SFahringer@perkinscoie.com
Nicola Menaldo (*Pro Hac Vice*)
NMenaldo@perkinscoie.com
Lauren J.  Tsuji (Bar No. 300155)
LTsuji@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile:  206.359.9000

Sunita Bali (Bar No. 274108)
SBali@perkinscoie.com
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: 415.344.7000
Facsimile:  415.344.7050

*Attorneys for Defendants YouTube, LLC and Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

BRAD MARSCHKE, individually, and on behalf of all others similarly situated,

Plaintiff

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants.

Case No.  3:22-cv-06987-JD

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Date:        May 4, 2023
Time:       10:00 a.m.
Location:  Courtroom 11, 19th Floor
Judge:      Hon. James Donato

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 4, 2023, at 10:00 a.m. or as soon thereafter as this Motion may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 11, 19th Floor, Defendants YouTube, LLC and Google LLC, by and through their counsel of record, will and hereby do, move this Court for an order dismissing Plaintiff's Amended Class Action Complaint (Dkt. No. 52) under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the Request for Judicial Notice, the Declaration of Susan D. Fahringer in Support of Defendants' Motion to Dismiss Amended Class Action Complaint and the exhibits attached thereto, the pleadings and papers on file in this action and all related cases, any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

## STATEMENT OF ISSUES

1.      Whether Plaintiff has failed to allege facts showing that the data at issue qualifies as a "biometric identifier" or "biometric information" within the meaning of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA").

2.      Whether Plaintiff has failed to allege conduct that occurred primarily and substantially in Illinois, such that his claims would violate the prohibition against applying BIPA extraterritorially and the U.S. Constitution's dormant Commerce Clause.

3.      Whether Plaintiff has failed to allege facts showing that he is "aggrieved" by any alleged violation of BIPA Section 15(a).

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND .............................................................................................................. 2

    A.    The Illinois Biometric Information Privacy Act ...................................................... 2

    B.    Marschke's Allegations ........................................................................................... 2

III.  ARGUMENT ................................................................................................................... 3

    A.    Legal Standard ........................................................................................................ 3

    B.    Marschke's Claims Fail Because He Has Not Alleged Facts Showing That
        the Data at Issue Qualify as Biometric Identifiers or Biometric Information .......... 4

        1.    To qualify as a "biometric identifier," data must identify a person. ............ 5

        2.    To qualify as "biometric information," data must be "used to
            identify" a person. ..................................................................................... 6

        3.    Marschke does not plausibly allege that the data at issue here
            "identify" or are "used to identify" anyone .................................................. 7

        4.    Extending BIPA to Face Blur and Thumbnail Generator would
            conflict with the purpose of BIPA .............................................................. 8

    C.    Marschke's Claims Fail Because He Does Not Allege Conduct that
        Occurred Primarily and Substantially in Illinois ...................................................... 9

        1.    Marschke's claims violate the extraterritoriality doctrine. ....................... 10

        2.    Adopting Marschke's sweeping interpretation of BIPA would
            violate the U.S. Constitution's dormant Commerce Clause. ..................... 12

    D.    Marschke Is Not "Aggrieved" By a Violation of Section 15(a) ............................ 14

IV.   CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Sur. Co. v. Jones*,
    51 N.E.2d 122 (Ill. 1943) ...................................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................3, 4

*Avery v. State Farm Mut. Auto. Ins.*,
    835 N.E.2d 801 (Ill. 2005) ...........................................................................10, 11

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ..............................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................4, 11

*Carpenter v. McDonald's Corp.*,
    580 F. Supp. 3d 512 (N.D. Ill. 2022) ..................................................................6

*Connell v. Lima Corp.*,
    988 F.3d 1089 (9th Cir. 2021) ............................................................................5

*Daichendt v. CVS Pharmacy, Inc.*,
    No. 22 CV 3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ..........................4

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
    485 U.S. 568 (1988) ..........................................................................................14

*Fox v. Dakkota Integrated Sys., LLC*,
    980 F.3d 1146 (7th Cir. 2020)...........................................................................15

*Gros v. Midland Credit Mgmt.*,
    525 F. Supp. 2d 1019 (N.D. Ill. 2007) ..............................................................10

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989) ....................................................................................12, 13

*Hubble v. Bi-State Dev. Agency of Ill.-Mo. Metro. Dist.*,
    938 N.E.2d 483 (Ill. 2010) .............................................................................7, 9

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..............................................................8

*In re Facebook Biometric Info. Priv. Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018) .........................................................11, 12, 14

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3
4

*Kraft, Inc. v. Edgar,*
   561 N.E.2d 656 (Ill. 1990) ...............................................................................5

5

*Landau v. CNA Fin. Corp.,*
   886 N.E.2d 405 (Ill. App. 2008) ....................................................................10

6
7

*Manufactured Home Cmtys. Inc. v. City of San Jose,*
   420 F.3d 1022 (9th Cir. 2005)...........................................................................4

8
9

*McGoveran v. Amazon Web Servs., Inc.,*
   No. 20-cv-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021).......................10, 11, 12, 13

10

*Monroy v. Shutterfly, Inc.,*
   No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)............................8, 10

11
12

*Murray v. Chi. Youth Ctr.,*
   864 N.E.2d 176 (Ill. 2007) ...............................................................................5

13
14

*Prison Legal News v. Ryan,*
   39 F.4th 1121 (9th Cir. 2022)..........................................................................12

15

*Rivera v. Google Inc.,*
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) .........................................................6, 10, 12

16
17

*Rosenbach v. Six Flags Ent. Corp.,*
   129 N.E.3d 1197 (Ill. 2019) ............................................................................14

18
19

*Sam Francis Foundation v. Christies, Inc.,*
   784 F.3d 1320 (9th Cir. 2015).....................................................................12, 13

20

*Vance v. Microsoft Corp.,*
   No. C20-1082JLR, 2022 WL 9983979 (W.D. Wash. Oct. 17, 2022)......................10

21
22

*Vigil v. Take-Two Interactive Software, Inc.,*
   235 F. Supp. 3d 499, 504 (S.D.N.Y 2017)....................................................14, 15

23
24

*Walker v. S.W.I.F.T. SCRL,*
   491 F. Supp. 2d 781 (N.D. Ill. 2007) ..............................................................11

25

*Wise v. Ring, LLC,*
   No. C20-1298-JCC, 2022 WL 3083068 (W.D. Wash. Aug. 3, 2022) .....................5

26
27

*Zellmer v. Facebook, Inc.,*
   No. 3:18-cv-01880-JD, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022).....................9

28

# TABLE OF AUTHORITIES
(continued)

Page(s)

STATUTES

Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ...................................... passim

RULES

Rule 12(b)(6) ................................................................................................................................3

OTHER AUTHORITIES

*Identifier*, Merriam-Webster,
    http://www.merriam-webster.com/dictionary/identifier .............................................4

*Identify*, Merriam-Webster,
    http://www.merriam-webster.com/dictionary/identify .............................................5

*Identify*, Black's Law Dictionary (11th ed. 2019) ............................................................5

1

## MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

2

## I.    INTRODUCTION

3

   This putative class action targets two useful and important video editing tools made

4

available on YouTube: "Face Blur" and "Thumbnail Generator." Face Blur is a privacy-protective

5

tool that allows a person who uploads a video to YouTube to blur specific faces in the video, to

6

help protect the anonymity of bystanders, activists, and others who appear in the video. Thumbnail

7

Generator is a tool that allows the uploader to select a static image from the video to use as a

8

preview or "thumbnail" of the video.

9

   Plaintiff Brad Marschke ("Marschke") claims that these tools violate the Illinois Biometric

10

Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA"), and seeks extraordinary statutory

11

damages from YouTube, LLC and Google LLC ("Defendants"), as well as injunctive and other

12

relief. But the First Amended Complaint ("FAC") does not come close to alleging facts sufficient

13

to state a claim under BIPA, and it does not cure the deficiencies in the initial complaint. The FAC

14

should be dismissed for at least the following reasons.

15

   ***First***, BIPA regulates the treatment of "biometric *identifier[s]*," which include "scan[s] of

16

. . . face geometry," and information that is "based on" a biometric identifier "used to *identify* an

17

individual." *Id.* § 10 (emphases added). But Marschke still does not plausibly allege that the data

18

at issue in this case identified him or anyone else or was capable of doing so, and interpreting BIPA

19

to extend to the privacy-protective features alleged in the FAC would contravene the statute's

20

purposes.

21

   ***Second***, BIPA does not apply extraterritorially, but Marschke still has not alleged that any

22

of the conduct relevant to his claims occurred in Illinois. Applying BIPA to the facts alleged here

23

would extend the statute beyond what the Illinois General Assembly intended and what Illinois law

24

permits, and would raise serious constitutional concerns that this Court has a duty to avoid.

25

   ***Third***, Marschke is not "aggrieved" by Defendants' alleged failure to publish or comply

26

with a biometric data retention policy, but "aggrievement" is an essential element of his Section

27

15(a) claim. That claim should be dismissed for this additional and independent reason.

28

## II.    BACKGROUND

### A.    The Illinois Biometric Information Privacy Act

BIPA applies only to "biometric identifiers" and "biometric information." "Biometric identifier means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." BIPA § 10. "Biometric information means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

Marschke asserts claims for violation of BIPA Sections 15(a) and (b). Section 15(a) requires that a private entity "in possession" of covered data must "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" the data within certain timeframes and "comply with its established retention schedule and destruction guidelines." *Id.* § 15(a). Section 15(b) provides that a private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain" (hereinafter "Collect") covered data unless it first obtains a "written release" (defined as "informed written consent," *id.* § 10) from the subject or the subject's "legally authorized representative." *Id.* § 15(b). "Any person aggrieved" by a violation of BIPA may sue for actual damages or liquidated damages of $1,000 per negligent violation or $5,000 per "intentional[]" or reckless[]" violation, as well as injunctive relief and attorneys' fees and costs. *Id.* § 20.

### B.    Marschke's Allegations

Marschke's claims are based on his alleged use of the video-sharing platform YouTube. He targets two features made available to video creators through YouTube Studio: Face Blur, which allows video creators to blur certain faces wherever they appear in a video, and Thumbnail Generator, which allows video creators to select a specific image to use as a "thumbnail" or preview for the video. *See* FAC ¶¶ 11–13. Marschke alleges that he has "uploaded multiple videos to his YouTube account that include images of his face," and has used both the Face Blur and Thumbnail Generator features on videos containing images of his face. *Id.* ¶¶ 22, 82.

Marschke alleges that Face Blur "relies on state-of-the-art facial recognition technology to

scan videos, locate human faces, and create and store scans of face geometry." *Id.* ¶ 50. According to Marschke, when a video creator applies the tool, Defendants "scan the entire video to detect all unique faces within the video," "display all detected faces within the video and allow the creator to select which faces the creator would like to blur out," and "blur out the selected face throughout the duration" of the video. *Id.* ¶¶ 52–54. Marschke concludes that "Defendants capture and store identifying information of the scanned individuals in the form of scans of face geometry from all detected faces, or biometric information and identifiers," and that "[t]his scan generates information that can be used to identify the individuals whose face geometry is scanned." *Id.* ¶¶ 52, 55.

Marschke alleges that Thumbnail Generator "auto-generates photographic thumbnails," i.e., "screenshots from an uploaded video[.]" *Id.* ¶ 64. He speculates—on "information and belief"— that "Defendants scan all videos uploaded to YouTube . . . for faces at the time the videos are uploaded, and then use this face data to auto-generate thumbnails that contain faces, and especially faces with more expression." *Id.* ¶ 66. Marschke does not allege that he suffered any harm as a result of Defendants' actions. Instead, he asserts that he need not allege any harm other than a technical violation of BIPA. *Id.* ¶ 90 n.26.

Marschke's two claims for violation of Sections 15(a) and (b) expressly regard only biometric *identifiers*, not biometric information. *Id.* ¶¶ 102–106, 108–110. He seeks to bring these claims on behalf of himself and a sweeping class of "[a]ll residents of the State of Illinois who, while located in Illinois, had their faceprints or face templates collected, captured, received, or otherwise obtained by Defendants through videos uploaded to YouTube within Illinois." *Id.* ¶ 91.

## III.   ARGUMENT

### A.   Legal Standard

A Rule 12(b)(6) motion tests the legal adequacy of a complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

1    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Sufficient factual matter" does not include

2    allegations that are conclusory or speculative, or that require unreasonable or unwarranted factual

3    inferences. *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir.

4    2005). Instead, a plaintiff must plead "factual content that allows the court to draw the reasonable

5    inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

6    **B.    Marschke's Claims Fail Because He Has Not Alleged Facts Showing That the Data at**
     **      Issue Qualify as Biometric Identifiers or Biometric Information**

7            Even after amendment, Marschke does not plausibly allege that Defendants take any steps

8    to link the faces that appear in videos uploaded to YouTube to personally identifying information,

9    or even that Defendants are capable of doing so. Instead, Marschke simply concludes that Face

10   Blur and Thumbnail Generator generate "information that *can be used* to identify the individuals

11   whose face geometry is scanned." FAC ¶ 52 (emphasis added). That Marschke has not alleged any

12   facts to support these conclusions is unsurprising, because Face Blur does not identify anyone.

13   Indeed, it is designed to *prevent* identification of the people whose faces appear in videos, to

14   enhance "visual anonymity" and to allow "people to share personal footage more widely and to

15   speak out when they otherwise may not." *See* Declaration of Susan D. Fahringer in Support of

16   Defendants' Motion to Dismiss FAC ("Fahringer Decl."), Ex. A (Amanda Conway, *Face Blurring:*

17   *When Footage Requires Anonymity*, YouTube Blog (July 18, 2012)) ("Whether you want to share

18   sensitive protest footage without exposing the faces of the activists involved, or share the winning

19   point in your 8-year-old's basketball game without broadcasting the children's faces to the world,

20   our face blurring technology is a first step towards providing visual anonymity for video on

21   YouTube.").[1]

22           Marschke's failure to plausibly allege that Defendants identify, or are capable of

23   identifying, the faces that appear in videos uploaded to YouTube is fatal to his claims, because

24   BIPA applies only to biometric "identifiers" and biometric information "used to identify" a person.

25   _____

26       [1] *See also, e.g.*, Fahringer Decl., Ex. B (Josh Halliday, *Google Introduces Face-Blurring to*
     *Protect Protesters on YouTube*, Guardian (July 19, 2012, 12:59 PM)), ("YouTube has become a

27   popular destination for videos of protest and civil disobedience in many countries around the world.
     Activists involved in the Arab Spring uprising in the Middle East used the site as a way to share

28   footage of unrest in the region.").

BIPA § 10. *See, e.g.*, *Daichendt v. CVS Pharmacy, Inc.*, No. 22 CV 3318, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (noting that because identification is the "most foundational aspect of a BIPA claim," "plaintiffs must allege that defendant's collection of their biometric data made defendant *capable of* determining their identities" and dismissing complaint which "contain[ed] no specific factual allegations to meet [this] burden"); *Wise v. Ring, LLC*, No. C20-1298-JCC, 2022 WL 3083068, at *3 (W.D. Wash. Aug. 3, 2022) (evaluating whether plaintiffs sufficiently pleaded that defendant had "the capacity to identify" individuals based on their face templates). Because Marschke still has not identified any facts supporting his claim that the data at issue in this case identify anyone, he has not alleged that Defendants Collected data covered by BIPA. This failure is fatal to his claims.

### 1.   To qualify as a "biometric identifier," data must identify a person.

A biometric "identifier" must identify a person. "A statute should be construed so that no word or phrase is rendered superfluous or meaningless." *See, e.g.*, *Kraft, Inc. v. Edgar*, 561 N.E.2d 656, 661 (Ill. 1990). In construing a statute, words must be given their plain and ordinary meaning. *See, e.g.*, *Murray v. Chi. Youth Ctr.*, 864 N.E.2d 176, 189 (Ill. 2007); *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021). The ordinary meaning of the word "identifier" is "one that identifies," i.e., "state[s] the identity of (someone or something)." *See Identifier*, Merriam-Webster, http://www.merriam-webster.com/dictionary/identifier (last accessed Jan. 31, 2023); *Identify*, Merriam-Webster, http://www.merriam-webster.com/dictionary/identify (last accessed Jan. 31, 2023); *Identify*, Black's Law Dictionary (11th ed. 2019) ("To prove the identity of (a person or thing)."). To qualify as a "biometric *identifier*," then, data must actually *identify* the subject, i.e., must consist of, or at least link to, identity information (e.g., name, email address). To conclude otherwise would render the word "identifier" meaningless, which conflicts with well-established rules of statutory construction. *Kraft*, 561 N.E.2d at 661.

That BIPA regulates only identifying data is consistent with its stated purpose of protecting against the "heightened risk [of] identity theft" that may result if biometric data is compromised. BIPA § 5(c). To create a heightened risk of identity theft, data must be associated with an identity.

And in interpreting the term "biometric identifier," courts have reached this very conclusion. *See, e.g.*, *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (interpreting "biometric identifier" to mean "a biology-based set of measurements . . . *that can be used to identify a person*") (emphasis added); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) ("[A] biometric identifier is a unique personal feature that *can be used to identify a person*.").

Interpreting "biometric identifier" to require identification is also consistent with the motivation for adopting BIPA. The impetus for the statute was the impending bankruptcy of Pay by Touch, a company that had installed fingerprint scanners in stores throughout Illinois to enable shoppers to pay for purchases using only their fingerprint. To associate a fingerprint with the right payment source, Pay by Touch maintained a database with identifying information for each customer. Pay by Touch's bankruptcy created a risk that it would sell this database, and the Illinois General Assembly reacted by enacting BIPA. *See* Fahringer Decl., Ex. C (IL H.R. Tran. 2008 Reg. Sess. No. 276, at 249 (May 30, 2008) (Statement of Rep. Kathleen A. Ryg)) (noting that Pay by Touch's bankruptcy "leaves thousands of customers . . . wondering what will become of their biometric and financial data"); *see also* Fahringer Decl., Ex. D (M.P. Dunleavey, *In the Blink of an Eye, You've Paid*, N.Y. Times (Dec. 17, 2005)) ("Pay by Touch . . . developed systems that scan a consumer's fingerprint and link the scan to payment information."). This database is precisely the sort of information that poses the risks that the Illinois General Assembly sought to avoid, *because* it was capable of identifying the data subjects. The data at issue in this case is far different, does not pose the same risks, and is not covered by BIPA.

**2.   To qualify as "biometric information," data must be "used to identify" a person.**

While biometric *identifiers* must themselves actually identify a person, biometric information must be (1) *based on* a biometric identifier and (2) actually *used* to identify. BIPA § 10. The "used to identify" limitation is necessary because without it, biometric information could include *any* information, so long as it was "based on" a biometric identifier. Using the example of Pay by Touch, information "based on" biometric identifiers could be interpreted to include data like dates and amounts for purchases made using the fingerprint scanning system, even if that

information is aggregated (for example, reflected in company financial statements or reports). Limiting "biometric information" to data that is "used to identify" a person at least brings the covered data closer to the biometric data that the Illinois General Assembly was concerned with regulating. *See Hubble v. Bi-State Dev. Agency of Ill.-Mo. Metro. Dist.*, 938 N.E.2d 483, 497 (Ill. 2010) ("A court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result, and will avoid a construction leading to an absurd result, if possible." (citations omitted)).

**3.     Marschke does not plausibly allege that the data at issue here "identify" or are "used to identify" anyone.**

Marschke appears to acknowledge that BIPA covers only biometric data that identifies people. *See* FAC ¶ 70 (noting that "specific individual facial recognition" is "critical" to liability under BIPA). And although he asserts that Face Blur and Thumbnail Generator "capture and store identifying information" that "can be used" to identify the people whose faces appear in YouTube videos, *see, e.g.*, *id.* ¶¶ 52, 66, the facts he alleges support the opposite conclusion.

As to Face Blur, the facts alleged suggest only that the tool distinguishes images of faces in videos from one another—for example, by distinguishing the first face to appear in a video from the second face to appear in the same video—so that the uploader can choose which face to blur. Nonetheless, Marschke somehow concludes that Face Blur enables Defendants to "scan the entire video to detect all unique faces," and that this "scan generates information that can be used to identify the individuals whose face geometry is scanned." *Id.* ¶ 52. But Marschke does not allege facts to support these allegations, and the facts he does allege do not support his theory. For example, the screenshot shown at Figure 2 of the FAC makes clear that Face Blur does nothing more than "detect" faces in the video. The balance of the FAC is consistent with this defect. *See, e.g.*, *id.* ¶¶ 53–55. Even the "underlying computer code" (*i.e.*, simple HTML) referred to in Figure 5 indicates merely that numbers are assigned to images of faces, to distinguish them from one another. *Id.* ¶ 55, Fig. 5.

As to Thumbnail Generator, Marschke asserts that the feature "detect[s] faces" in videos, and "scan[s], detect[s], and collect[s] facial geometry." *Id.* ¶¶ 61–67. And although he concludes

that both Face Blur and Thumbnail Generator capture and store "identifying information of the scanned individuals" that "can be used to identify the individuals," *id.* ¶¶ 55, 66, he does not allege a single fact that would plausibly lead to that conclusion. He does not allege, for example, that Defendants somehow collect the names or emails of the people whose faces appear in videos uploaded to YouTube. Nor could he, since YouTube videos necessarily include bystanders and others who are total strangers to Defendants. Further, Marschke himself acknowledges that these alleged scans "can be used" to identify people only by comparing them to "a database of known faces," such as those available to law enforcement. *Id.* ¶ 75. But Marschke does not allege any facts indicating that *Defendants* have, or use, such a database.

Marschke's failure to plausibly allege any identifying activity is fatal to his claims, and readily distinguishes this case from others where courts have found the "identification" component of "biometric identifiers" and "biometric information" satisfied. For example, in *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016), the complaint alleged that when Facebook's "Tag Suggestions" feature "recognizes and identifies . . . faces appearing in [a] photograph, Facebook *will suggest that individual's name or automatically tag them*. In effect, the program *puts names on the faces in photos . . . .*" *Id.* at 1158 (emphasis added). Similarly, in *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), the complaint alleged that "whenever a new image is uploaded onto Shutterfly's site, the faces in the image are compared against those in the database" and "[i]f a face's geometry matches that of an individual already in its database, Shutterfly *suggests . . . the individual's name.*" *Id.* at *1 (emphasis added). "If no match is found, Shutterfly *prompts the user to enter a name.*" *Id.* (emphasis added). Here, in contrast, Marschke does not plausibly allege that either Face Blur or Thumbnail Generator "identifies" the people whose faces appear in videos—e.g., by linking a face with the subject's name or email—or even that the features are capable of doing so.

**4.    Extending BIPA to Face Blur and Thumbnail Generator would conflict with the purpose of BIPA.**

A ruling that BIPA prohibits technology that merely distinguishes among images of faces without identifying anyone would have significant negative consequences. Ultimately, it would be

impossible to locate and secure consent from everyone—users and non-users alike—whose face appears in a video on YouTube, yet that is what this suit seeks to require.[2] Marschke's interpretation of BIPA would effectively ban privacy-protective features like face blurring, an absurd result that the Illinois General Assembly cannot possibly have intended. *See Hubble*, 938 N.E.2d at 497.

In this regard, this case is not unlike *Zellmer v. Facebook, Inc.*, No. 3:18-cv-01880-JD, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022). In *Zellmer*, this Court was asked to consider whether BIPA should be construed to require a company to provide notice to and obtain consent from people who appear in photographs but whose identities are unknown—"non-users"—"who [are] for all practical purposes total strangers" to the company. *Id.* at *3. The Court observed that it would be "patently unreasonable to construe BIPA to mean that" companies are "required to provide notice to, and obtain consent from" such unknown people:

> [T]he Illinois legislature clearly contemplated that BIPA would apply [only] in situations where a business had at least some measure of knowing contact with and awareness of the people subject to biometric data collection.

*Id.* at *3–4. As the Court recognized, any other interpretation "would lead to obvious and insoluble problems," "put [companies] in an impossible position," and "impose extraordinary burdens on businesses," contrary to legislative intent. *Id.* at *4–5.

Marschke's claims suffer from this very defect. His putative class includes every Illinois resident who, while in Illinois, had their face appear in a video uploaded to YouTube from Illinois. *See* FAC ¶ 91. He does not allege that Defendants know (or even that Defendants *could* determine) the identities of the people whose faces appear in the videos. He does not even allege that Defendants know which faces, if any, are associated with account holders. He must do more to state a claim under BIPA. Because Marschke has not alleged facts showing that the data at issue identifies its subject or is used to do so, his claims should be dismissed.

## C.   Marschke's Claims Fail Because He Does Not Allege Conduct that Occurred Primarily and Substantially in Illinois

Marschke does not allege that Defendants engaged in *any* conduct in Illinois, let alone

---

[2] Marschke's overbroad interpretation would require consent to be secured from *everyone*, not just Illinois residents, because whether someone is an Illinois resident could not be discerned based on an image of the person in a video.

conduct that violates BIPA. His claims therefore run afoul of the prohibition against applying the statute extraterritorially and the U.S. Constitution's dormant Commerce Clause, and should be dismissed for this independent reason.

### 1. Marschke's claims violate the extraterritoriality doctrine.

Every court to consider the issue agrees that BIPA has no extraterritorial effect, and that it regulates only conduct that occurs within the borders of Illinois. *See, e.g.*, *Vance v. Microsoft Corp.*, No. C20-1082JLR, 2022 WL 9983979, at *6 (W.D. Wash. Oct. 17, 2022) ("Because BIPA does not contain such an express provision [authorizing extraterritorial effect], it does not apply extraterritorially to conduct outside of Illinois."); *McGoveran v. Amazon Web Servs., Inc.*, No. 20-cv-1399-LPS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021) ("BIPA violations must occur in Illinois in order for plaintiffs to obtain any relief."); *Rivera*, 238 F. Supp. 3d at 1100 (plaintiffs' "asserted violations of [BIPA] must have taken place in Illinois in order for them to win"). Conduct is deemed to occur in Illinois when "the circumstances that relate to the disputed transaction occur[red] *primarily and substantially* in Illinois." *Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 854 (Ill. 2005) (emphasis added). This means that "the majority of circumstances relating to the alleged violation" must have occurred within the state. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008). There "is no single formula or bright-line test for determining whether a transaction occurs within [Illinois]." *Avery*, 835 N.E.2d at 854. Rather, "each case must be decided on its own facts." *Id.* Courts may consider a number of factors, including where an alleged scan of facial geometry occurred and where it was stored.[3] No single factor is dispositive, and the key question is whether the "bulk of the circumstances" giving rise to an alleged violation occurred "primarily and substantially" in Illinois. *Id.* at 853–54; *Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1024 (N.D. Ill. 2007); *see also Vance*, 2022 WL 9983979, at *7–8 (holding that claims were barred by extraterritoriality doctrine as a matter of law, even where plaintiffs claimed that

---

[3] *See, e.g.*, *Monroy*, 2017 WL 4099846, at *6 (noting that "where the actual scan of . . . face geometry took place, and where the scan was stored once it was obtained" are "important circumstances" to consider with respect to extraterritoriality); *Rivera*, 238 F. Supp. 3d at 1102 (noting that "where . . . the alleged scans actually take place" is one of several factors to be considered).

their biometric data was obtained from photos "taken and uploaded to the internet in Illinois" and stored on a server in Illinois, where defendant's conduct was "too attenuated and de minimis" to find that it occurred "primarily and substantially in Illinois").

Here, Marschke alleges that the "uploading," "capture," and "use" of biometric identifiers take place within Illinois. FAC ¶ 15. Marschke also alleges that "Defendants' failure to post a publicly available retention schedule and guidelines for permanently destroying such biometric identifiers, along with their failure to comply with such . . . took place in Illinois." *Id.* These conclusory assertions fall far short of what is required to plead conduct occurring "primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 854; *see also, e.g.*, *Twombly*, 550 U.S. at 545 (a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do").

As to the alleged "uploading," "capture," and "use," the fact that Marschke claims to have uploaded videos to YouTube from Illinois has no bearing on whether there was any in-state conduct by *Defendants*. In this regard, *McGoveran* is instructive. There, the plaintiffs alleged that their voices were recorded and analyzed by out-of-state defendants in violation of BIPA. 2021 WL 4502089, at *2. The complaint's only concrete connection to Illinois was that the plaintiffs' phone calls "originat[ed] from Illinois," were "from Illinois citizens," and were placed from "clearly recognizable Illinois phone numbers." *Id.* at *4. The court dismissed the claims, holding that a "plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality."[4] *Id.*; *see also, e.g.*, *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (dismissing claims as impermissibly extraterritorial where "the only connection to the state of Illinois is the fact that plaintiff . . . is a resident of Illinois")

As to the alleged "capture" and "use," Marschke's claims are entirely conclusory, as nowhere does he allege a single fact suggesting in-state conduct by Defendants.[5] For example,

---

[4] The *McGoveran* court ultimately allowed plaintiffs to amend their claims to add specific allegations that the defendants' conduct "occurred principally and substantially" in Illinois. *See* No. 20-1399-LPS, Dkt. 46 (D. Del. Feb. 14, 2022). As of the date of this submission, the motion to dismiss the amended complaint in *McGoveran* remains pending.

[5] This case is distinguishable from *In re Facebook Biometric Information Privacy*

Marschke does not allege that Defendants maintained servers or conducted any relevant operations in Illinois. To the contrary, he correctly recognizes that both YouTube and Google are headquartered in California. FAC ¶¶ 23–24.

Finally, as to the alleged "failure" to post or comply with a publicly available retention schedule, it "makes no sense to assign a location for an act that did not occur." *McGoveran*, 2021 WL 4502089, at *4. Further, this argument is circular, in that it "depends on the assumption that Defendants were required to" comply with BIPA in Illinois, even though "there is no indication in the complaint that Defendants did anything in Illinois." *Id.*

In short, despite his latest allegations as to extraterritoriality, Marschke's FAC fares no better than his initial complaint. The FAC should be dismissed for this reason, as well.

**2.      Adopting Marschke's sweeping interpretation of BIPA would violate the U.S. Constitution's dormant Commerce Clause.**

If BIPA were interpreted as Marschke urges, it would violate the U.S. Constitution's dormant Commerce Clause, a result this Court should avoid. *See, e.g.*, *Prison Legal News v. Ryan*, 39 F.4th 1121, 1131 (9th Cir. 2022) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems." (citation omitted)). The dormant Commerce Clause limits "the authority of the States to enact legislation affecting interstate commerce," and "precludes the application of a state statute" that has "the practical effect of . . . control[ling] conduct beyond the boundaries of the State," even where "the commerce has effects within the State." *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1, 336 (1989) (citations omitted); *see also Rivera*, 238 F. Supp. 3d at 1102–04 (considering arguments regarding dormant Commerce Clause "substantial"). For example, in *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (en banc), the Ninth Circuit "easily conclude[d]" that

---

*Litigation*, 326 F.R.D. 535 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019). There, this Court observed that there was no dispute that the case was "deeply rooted in Illinois," where "Facebook [had] not tendered any evidence to indicate that the circumstances relating to the challenged conduct did not occur 'primarily and substantially within' Illinois" and where its only argument as to extraterritoriality was based on its "assertion that its servers are not located within Illinois." *Id.* at 547. Here, in contrast, the *only* plausibly alleged link to Illinois is Marschke's own residency.

a statute violated the dormant Commerce Clause where it sought to regulate out-of-state conduct with "no necessary connection with the state other than the residency" of those involved in the transaction. *Id.* at 1323. At issue in *Sam Francis* was a statute that required the seller of fine art to pay the artist a five percent royalty if "the seller resides in California or the sale takes place in California," even if the artwork was sold out-of-state or involved only out-of-state residents. *Id.* at 1322. The court held that the statute's royalty requirement violated the dormant Commerce Clause because it "facially regulate[d] a commercial transaction that 'takes place wholly outside of the State's borders.'" *Id.* at 1323–24 (citation omitted).

Here, Marschke asks the Court to interpret BIPA so that it sweeps just as broadly as the law invalidated in *Sam Francis*: Marschke asks this Court to impose BIPA's requirements on Defendants' out-of-state conduct simply because he happens to reside in Illinois. The dormant Commerce Clause does not allow states to project their authority so broadly. *Healy*, 491 U.S. at 336; *see also, e.g.*, *McGoveran*, 2021 WL 4502089, at *6 (noting that it would be both "overly broad and ultimately untenable" to hold that BIPA applies whenever a plaintiff resides in Illinois because "if that rule were correct, then BIPA could impose liability on a vast number of corporations who do no business in Illinois and who lack any other significant connection to Illinois").

The dormant Commerce Clause also prevents "inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy*, 491 U.S. at 336–37. Applying BIPA to the facts alleged here would displace the regulatory regime of California, where Defendants are headquartered. *See* FAC ¶¶ 23–24. Unlike Illinois, California does not broadly regulate Biometric Data. Even the California Consumer Privacy Act ("CCPA") and the California Privacy Rights Act ("CPRA"), Cal. Civ. Code § 1798.100 *et seq.*, do not require informed written consent for collection of biometric information (as does BIPA § 15(b)), or prohibit private entities from profiting from biometric information (as does BIPA § 15(c)), or provide any person who is "aggrieved" with a private right of action (as does BIPA § 20).[6] California has taken

---

[6] The CPRA does not require covered entities to provide notice or obtain consent for the collection of biometric data. Instead, the CPRA merely requires such entities to provide a

a different approach to the regulation of Biometric Data, and allowing Marschke's claims to proceed here would result in Illinois projecting its policy decisions into California. The dormant Commerce Clause forbids that result. The Court should reject Marschke's interpretation of the statute because it would render the statute unconstitutional. *See, e.g.*, *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."). Alternatively, if the Court does accept Marschke's interpretation of BIPA, then it should find BIPA to be in violation of the dormant Commerce Clause and dismiss his claims on this basis.

**D.    Marschke Is Not "Aggrieved" By a Violation of Section 15(a)**

Marschke's Section 15(a) claim also fails because he has not pleaded facts establishing that he is "aggrieved" by Defendants' alleged violation of that section, but only someone so "aggrieved" may seek relief under BIPA. BIPA § 20. To be aggrieved, a plaintiff must "hav[e] legal rights that are adversely affected" or "invaded" by the defendant's conduct. *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019). To show he is aggrieved by a violation of Section 15(a), Marschke must plausibly allege facts showing that Defendants (1) violated a legal duty under Section 15(a) and (2) owed that legal duty to him specifically. *See, e.g.*, *Am. Sur. Co. v. Jones*, 51 N.E.2d 122, 125 (Ill. 1943) (appellants were not "aggrieved" because the action of which they complained "did not directly affect [their] interest"); *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. at 546 (holding that "a party is aggrieved" under BIPA "by an act that directly or immediately affects her legal interest"). BIPA's purpose and legislative history support this interpretation: BIPA's aim is to protect consumers' information, not to impose liability for violations that result in no actual harm. The legislature was concerned that the absence of "reasonable safeguards" would "discourage the proliferation" of biometrics-facilitated transactions.

---

mechanism for consumers to opt-out of sharing "sensitive personal information." Cal. Civ. Code § 1798.135. Even that requirement is limited to "[t]he processing of biometric information *for the purpose of uniquely identifying a consumer*." Cal. Civ. Code § 1798.140(ae)(2)(A).

1  *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 504 (S.D.N.Y 2017), *aff'd in*

2  *part, vacated in part on other grounds,* 717 F. App'x 12 (2d Cir. 2017). It did not deem the use of

3  biometrics "in-of-itself undesirable or impermissible." *Id.* Instead, BIPA targeted the misuse, not

4  the safe use, of Biometric Data. *Id.* That BIPA aims to prevent specific, palpable harms (e.g., from

5  disclosure or misuse) supports the view that only a person who suffers harm may seek relief under

6  the statute.

7        Marschke cannot satisfy these requirements. Section 15(a) sets forth two requirements for

8  entities in possession of Biometric Data: (1) to *develop* a BIPA-compliant policy and (2) to *comply*

9  *with* that policy. BIPA § 15(a). To show he is "aggrieved," Marschke must therefore allege facts

10  showing that Defendants failed to *comply* with an existing policy as to *his* data—for example, that

11  three years have passed since his last interaction with Defendants, but Defendants have failed to

12  destroy his Biometric Data. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149, 1152

13  (7th Cir. 2020) (explaining that to plead a "particularized" injury, a plaintiff must allege an injury

14  that "affect[s] the plaintiff in a personal and individual way," as opposed to "[a] generalized

15  grievance shared by all members of the public," and holding that requirement is satisfied only by

16  allegations that defendant failed to "comply with data retention and destruction policies—resulting

17  in the wrongful retention of her biometric data after her employment ended, beyond the time

18  authorized by law"). Here, Marschke's suggestion that Defendants failed to publish a data retention

19  policy in the first instance—and therefore failed to comply with such policy as to his data—is

20  plainly circular, and does not convert the latter into a harm that affects or aggrieves Marschke "in

21  a personal and individual way." *Id.* Because he has not shown that he is "aggrieved," he has not

22  stated a claim for violation of Section 15(a).

23                    **IV.    CONCLUSION**

24        Marschke has not pleaded facts showing that the "Face Blur" and "Thumbnail Generator"

25  features targeted by this case violate BIPA. Interpreting BIPA as Marschke urges would lead to

26  absurd results and would render the statute unconstitutional. The Court should reject Marschke's

27  arguments and dismiss the FAC.

28

Dated:   January 31, 2023                     **PERKINS COIE LLP**


By: */s/ Susan D. Fahringer*
        Susan D.  Fahringer (Bar No. 162978)
        Sunita Bali (Bar No. 274108)
        Nicola Menaldo (*Pro Hac Vice*)
        Lauren J.  Tsuji (Bar No. 300155)

        *Attorneys for Defendants*
        YouTube, LLC and Google LLC