1  ROBBINS GELLER RUDMAN
   & DOWD LLP
2  AELISH M. BAIG (201279)
JACOB G. GELMAN (344819)
3  Post Montgomery Center
One Montgomery Street, Suite 1800
4  San Francisco, CA  94104
Telephone:  415/288-4545
5  415/288-4534 (fax)
abaig@rgrdlaw.com
6  jgelman@rgrdlaw.com

7  ROBBINS GELLER RUDMAN
   & DOWD LLP
8  STUART A. DAVIDSON (*pro hac vice*)
ALEXANDER C. COHEN (*pro hac vice*)
9  225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
10  Telephone:  561/750-3000
561/750-3364 (fax)
11  sdavidson@rgrdlaw.com
acohen@rgrdlaw.com

12

13  Attorneys for Plaintiff

14  [Additional counsel appear on signature page.]

15  UNITED STATES DISTRICT COURT

16  NORTHERN DISTRICT OF CALIFORNIA

17  BRAD MARSCHKE, Individually and on )  Case No. 3:22-cv-06987-JD
   Behalf of All Others Similarly Situated, )
18                                         )  PLAINTIFF'S OPPOSITION TO
                                       )  DEFENDANTS' MOTION TO DISMISS
19                        Plaintiff, )  AMENDED CLASS ACTION
                                       )  COMPLAINT
20     vs. )
                                       )
21  YOUTUBE, LLC and GOOGLE LLC, )  Date: TBD
                                       )  Time: 10:00 a.m.
22                        Defendants. )  Location: Courtroom 11, 19th Floor
                                       )  Judge: Hon. James Donato

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND FACTUAL BACKGROUND ...................................................1

I.      ARGUMENT ............................................................................................................1

        A.      Legal Standard ............................................................................................1

        B.      Faceprints Are Biometric Identifiers Under BIPA, and Plaintiff Has
                Alleged Defendants' Collection and Retention of Biometric Identifiers and
                Biometric Information ..................................................................................2

                1.      Biometric Identifiers Are Clearly and Unambiguously Defined in
                        the Statute and Include Scans of Facial Geometry .........................3

                2.      Biometric Information Is Also Clearly Defined in the Statute and
                        Includes Scans of Facial Geometry ...............................................4

                3.      The Data Defendants Collect Can Be Used, and Is Used, to
                        Identify Individuals .......................................................................5

                4.      An Exception to BIPA for Face Blur and Thumbnail Generator
                        Tools Would Undermine the Statute's Purpose ............................6

        C.      Defendants' BIPA Violations Took Place Primarily and Substantially in
                Illinois, and Defendants Should Be Held Accountable for Their Illinois
                Torts ............................................................................................................7

                1.      Plaintiff's Claims Do Not Violate the Extraterritoriality Doctrine.............8

                2.      Defendants' Argument that BIPA Violates the Dormant Commerce
                        Clause Is Wrong on the Merits and a Misapplication of the Canon
                        Against Constitutional Avoidance ...............................................12

                        a.      Plaintiff's BIPA Claims Do Not Violate the Dormant
                                Commerce Clause ..............................................................12

                        b.      The Canon of Constitutional Avoidance Does Not Apply ...........14

        D.      Plaintiff's Legal Rights Were Violated When Defendants Failed to
                Comply with the Retention Schedule and Guidelines of Section 15(a).................14

II.     CONCLUSION.......................................................................................................15

1

## TABLE OF AUTHORITIES

2 **Cases**                                                                    **Page**

3   *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
        729 F.3d 937 (9th Cir. 2013) ...................................................................13
4

5   *Avery v. State Farm Mut. Auto. Ins.*,
        835 N.E.2d 801 (Ill. 2005) ...............................................................8, 11
6
    *Bell Atl. Corp. v. Twombly*,
7       550 U.S. 544 (2007)......................................................................11

8   *Carpenter v. McDonald's Corp.*,
        580 F. Supp. 3d 512 (N.D. Ill. 2022) ...............................................3, 4
9
    *City of Los Angeles v. Barr*,
10      941 F.3d 931 (9th Cir. 2019) .............................................................3

11  *Clark v. Martinez*,
        543 U.S. 371 (2005).......................................................................14
12

13  *Flores v. Motorola Sols., Inc.*,
        No. 1:20-cv-01128, 2021 WL 232627 (N.D. Ill. Jan. 8, 2021)................7
14

15  *Fox v. Dakkota Integrated Sys., LLC*,
        980 F.3d 1146 (7th Cir. 2020) ...................................................4, 14, 15
16
    *Hawkins v. Kroger Co.*,
17      906 F.3d 763 (9th Cir. 2018) ..............................................................6

18  *Healy v. Beer Inst.*,
        491 U.S. 324 (1989).......................................................................13
19
    *Heard v. Becton, Dickinson & Co.*,
20      524 F. Supp. 3d 831 (N.D. Ill. 2021) .................................................15

21  *Hubble v. Bi-State Dev. Agency of Ill.-Mo. Metro. Dist.*,
        938 N.E.2d 483 (Ill. 2010) ................................................................4
22

23  *In re Facebook Biometric Info. Priv. Litig.*,
        326 F.R.D. 535 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*,
24      932 F.3d 1264 (9th Cir. 2019) .................................................2, 8, 9, 10

25  *In re Facebook Biometric Info. Priv. Litig.*,
        No. 3:15-cv-03747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018)................13
26

27  *Jennings v. Rodriguez*,
        __ U.S. __, 138 S. Ct. 830 (2018).......................................................14

28

**Page**

*Johnson v. NCR Corp.*,
No. 22 C 3061, 2023 WL 1779774 (N.D. Ill. Feb. 6, 2023)..........................................7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................2

*McGoveran v. Amazon Web Servs., Inc.*,
No. 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021) ..................................10

*Moreno v. UtiliQuest, LLC*,
29 F.4th 567 (9th Cir. 2022) ..........................................................................................2

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
682 F.3d 1144 (9th Cir. 2012) ..................................................................................1213

*Nat'l Pork Producers Council v. Ross*,
6 F.4th 1021 (9th Cir. 2021), *cert. granted*, 142 S. Ct. 1413 (2022) .......................13

*Neals v. PAR Tech. Corp.*,
419 F. Supp. 3d 1088 (N.D. Ill. 2019) .............................................................7, 9, 11

*Patel v. Facebook Inc.*,
290 F. Supp. 3d 948 (N.D. Cal. 2018) ...........................................................................2

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .................................................................................2, 10

*People v. Olsson*,
958 N.E.2d 356 (Ill. App. 2d 2011) ..............................................................................3

*PLS.com, LLC v. Nat'l Ass'n of Realtors*,
32 F.4th 824 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 567 (2023)...........................2

*Prison Legal News v. Ryan*,
39 F.4th 1121 (9th Cir. 2022) ......................................................................................14

*Rhodes v. Robinson*,
399 F. App'x 160 (9th Cir. 2010) ................................................................................11

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .............................................................. *passim*

*Rocky Mountain Farmers Union v. Corey*,
730 F.3d 1070 (9th Cir. 2013) .....................................................................................13

*Rosenbach v. Six Flags Entm't Corp.*,
129 N.E.3d 1197 (Ill. 2019)....................................................................................2, 15

**Page**

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) (*en banc*) ........................................................12, 13

*Sols. for Utils. Inc. v. Cal. Pub. Utils. Comm'n*,
    No. 2:11-cv-04975-JWH-JCG, 2022 WL 3575307 (C.D. Cal. July 5, 2022) ........................11

*Sosa v. Onfido, Inc.*,
    600 F. Supp. 3d 859 (N.D. Ill. 2022) ........................................................3, 15

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
    No. 3:20-CV-00046-MAB, 2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) ................................7

*Vance v. Amazon.com, Inc.*,
    525 F. Supp. 3d 1301 (W.D. Wash. 2021) ..........................................................7, 8

*Vance v. Int'l Bus. Machines Corp.*,
    No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) ........................................4

*Vance v. Microsoft Corp.*,
    No. C20-1082JLR, 2022 WL 9983979 (W.D. Wash. Oct. 17, 2022) ..............................10, 11

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ..................................................................1

*Wilk v. Brainshark, Inc.*,
    No. 1-21-cv-4794, 2022 WL 4482842 (N.D. Ill. Sept. 27, 2022).....................................3

*Wise v. Ring*,
    No. C20-1298-JCC, 2022 WL 3083068 (W.D. Wash. Aug. 3, 2022) ....................................7

*Zellmer v. Facebook, Inc.*,
    No. 3:18-cv-01880-JD, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022) ..................................7

*Zellmer v. Facebook, Inc.*,
    No. 3:18-cv-1880-JD, 2022 WL 16924098 (N.D. Cal. Nov. 14, 2022) .................................7

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
    §2403........................................................................................14

740 Ill. Comp. Stat. Ann.
    14/1. ..........................................................................................1
    14/5 ..........................................................................................5
    14/5(g).......................................................................................6
    14/10 .........................................................................................3
    14/15(a) ...................................................................................14, 15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS
ACTION COMPLAINT - 3:22-cv-06987-JD
4888-9829-8200.v1

- iv -

1

**Page**

2

Federal Rules of Civil Procedure

3

    Rule 5.1 .................................................................................................................14

    Rule 7(b)(1)(B) ......................................................................................................11

4

    Rule 8 ....................................................................................................................11

    Rule 8(a)(2) .............................................................................................................1

5

    Rule 9 ....................................................................................................................11

    Rule 12(b)(6) ...........................................................................................................1

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION AND FACTUAL BACKGROUND**

George Orwell's novel *Nineteen Eighty-Four* gave us a dystopian vision where "[y]ou had to live – did live, from habit that became instinct – in the assumption that every sound you made was overheard, and, except in darkness, every movement scrutinized."  Seventy years later, Defendants are at the forefront of the ubiquitous surveillance reifying Orwell's nightmare in the modern era.

This case involves Defendants' Face Blur and Thumbnail Generator tools, which secretly capture and store individuals' facial biometrics from videos uploaded to YouTube.  Defendants claim that this is for their customers' own good and that their Face Blur tool is "designed to help protect the identity of" those appearing in videos on YouTube.  Essentially, Defendants argue that they, and not Plaintiff, have the right to control his personal information.  Defendants' position here is nothing more than doublethink.  Just as war is not peace, and freedom is not slavery, the surreptitious capture, collection, use, and storage of an individual's sensitive biometrics by an all-seeing megalith is the antithesis of privacy.  In fact, preventing such an intrusion is the precise reason Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") was enacted.

Ultimately, whether Defendants' intentions are benevolent or nefarious is of no import, particularly at this stage in these proceedings.  The Illinois legislature has prohibited the uninformed and nonconsensual collection, storage, and use of an individual's biometrics, and Defendants' conduct violates those prohibitions.  Plaintiff's claims should proceed.

I.    **ARGUMENT**

A.    **Legal Standard**

To survive a motion to dismiss under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "state[] a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief[.]"  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).[1]  "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[1] Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

1   *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 831 (9th Cir. 2022), *cert. denied*, 143 S. Ct.

2   567 (2023).  At this stage, a court accepts as true all of the plaintiff's factual allegations and draws

3   all reasonable inferences in its favor.  *See Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir.

4   2022).  Unless an exception applies, review of the sufficiency of the complaint is limited to the

5   pleadings.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

6   **B.    Faceprints Are Biometric Identifiers Under BIPA, and Plaintiff Has**
        **Alleged Defendants' Collection and Retention of Biometric Identifiers**
7       **and Biometric Information**

8            Defendants' attempts to rewrite the plain language of BIPA to narrow the protections

9   afforded by the statute, which pervade their brief, are unavailing and should be rejected.  Defendants

10  violated Plaintiff's rights under BIPA the moment they collected, catalogued, and stored his unique

11  physical features.  *See Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1093 (N.D. Ill. 2017) (noting

12  BIPA prohibits "non-consensual gathering and collecting" of "biometrics").

13           As this Court and the Ninth Circuit have recognized:

14           [A] plain reading of BIPA leave[s] little question that the Illinois legislature
             codified a right of privacy in personal biometric information rooted in a long
15           tradition of claims actionable in privacy law and extending to control over one's
             data, ***independent of disclosure or misuse risks***.
16

17  *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 546 (N.D. Cal. 2018) ("*Facebook I*"),

18  *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019).  Defendants ignore Plaintiff's

19  right to control how his biometrics are collected and used in the first instance and erroneously

20  contend that "BIPA targeted the misuse, not the safe use, of Biometric Data."  Defendants' Notice

21  of Motion and Motion to Dismiss Amended Class Action Complaint (ECF 60) ("Motion" or

22  "Mot.") at 15; *compare Patel*, 932 F.3d at 1274 ("the privacy right protected by BIPA is the right

23  not to be subject to the ***collection and use*** of such biometric data").  As the Illinois Supreme Court

24  remarked, "These procedural protections 'are particularly crucial in our digital world because

25  technology now permits the wholesale collection and storage of an individual's unique biometric

26  identifiers – identifiers that cannot be changed if compromised or misused.'"  *Rosenbach v. Six*

27  *Flags Entm't Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019) (quoting *Patel v. Facebook Inc.*, 290 F.

28  Supp. 3d 948, 954 (N.D. Cal. 2018)).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS
ACTION COMPLAINT - 3:22-cv-06987-JD                                                    - 2 -

1

**1.      Biometric Identifiers Are Clearly and Unambiguously Defined
in the Statute and Include Scans of Facial Geometry**

2

3          BIPA explicitly defines a biometric identifier to include a "*scan* of hand or *face geometry*."

4    740 Ill. Comp. Stat. Ann. 14/10; *see also Wilk v. Brainshark, Inc.*, 2022 WL 4482842, at *5 (N.D.

5    Ill. Sept. 27, 2022) (same).   Despite this unambiguous text, Defendants ask the Court to insert

6    additional language into the definition of "biometric identifier," *i.e.*, that a scan of face geometry

7    must also "identify a person."  Mot. at 5.  Defendants' argument fails for several reasons.

8          First, "[w]hen an act defines its own terms, those terms must be construed according to the

9    definitions given to them in the statute."  *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 870 (N.D. Ill.

10   2022) (quoting *People v. Olsson*, 958 N.E.2d 356, 359 (Ill. App. 2d 2011)).  BIPA clearly defines

11   the term "biometric identifier"; the inquiry into the term's meaning ends there.   Defendants'

12   selective quoting from the BIPA statute to suggest that the statutory definition of "biometric

13   identifier" includes the phrase "used to identify" does not make it so.  *See* Mot. at 4-5.  The attempt

14   to give the phrase "biometric identifier" a new meaning based on the "plain and ordinary meaning"

15   of the word "identifier," *id.*, also fails.  Only "[w]here the statute does not define the relevant terms,

16   [do] we give them their ordinary, contemporary, common meaning, and may consult dictionary

17   definitions."  *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019).

18         Second, Defendants' argument confuses the **capacity** to identify an individual with the

19   **actual identification** of an individual.  The unique physical characteristics enumerated in the BIPA

20   statute's definition of "biometric identifiers," including a "scan of . . . face geometry," represent

21   things that are static and exclusive to a person, *i.e.*, something that can be **used to identify** a unique

22   individual, not something that must **identify** an individual.  *Carpenter v. McDonald's Corp.*, 580 F.

23   Supp. 3d 512, 515 (N.D. Ill. 2022) ("a biometric identifier is a unique personal feature that can be

24   used to identify a person"); *Sosa*, 600 F. Supp. 3d at 871 (collecting cases and noting "[t]he

25   faceprints extracted by Onfido plausibly constitute scans of face geometry and, therefore biometric

26   identifiers").  As the court in *Rivera* makes clear (against the same Defendant in this case no less):

27        [T]he Privacy Act defines "biometric identifier" with  the **complete** set
          of **specific** qualifying biometric identifiers. Each specific item on the list, not
28        surprisingly, fits within the meaning of the term "biometric identifier," that is, a

biology-based set of measurements ("biometric") that can be used to identify a person ("identifier").

238 F. Supp. 3d at 1094 (emphasis in original).  Defendants' attempt to redefine "biometric identifier" as anything other than a unique physical characteristic, including a "scan of … face geometry," is supported neither by the text of the statute nor Defendants' own authorities.[2]  *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149-50 (7th Cir. 2020) (BIPA's purpose is protecting biometrics from unauthorized collection, use, and distribution).  For this reason, Plaintiff's allegations that Defendants scanned his facial geometry, which can be used to identify Plaintiff, are sufficient to state a claim under BIPA.

### 2. Biometric Information Is Also Clearly Defined in the Statute and Includes Scans of Facial Geometry

In arguing that they did not collect biometric information within the meaning of BIPA, Defendants repeat their failed argument from §B.1., namely that "biometric information must be . . . actually *used* to identify."  Mot. at 6 (emphasis in original).  Defendants cite no case law for their strained argument, save for a single citation to the general and uncontroversial proposition that "[a] court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result[.]"  *Id.* at 7 (citing *Hubble v. Bi-State Dev. Agency of Ill.-Mo. Metro. Dist.*, 938 N.E.2d 483, 497 (Ill. 2010)).  But in interpreting the term "biometric information," courts have found:

> The affirmative definition of "biometric information" does important work for the Privacy Act; without it, private entities could evade (or at least arguably could evade) the Act's restrictions by converting a person's biometric identifier into some other piece of information, like a mathematical representation or, even simpler, a unique number assigned to a person's biometric identifier.  So whatever a private entity does in manipulating a biometric identifier into a piece of information, the resulting information is still covered by the Privacy Act *if that information can be used to identify the person*.

*Rivera*, 238 F. Supp. 3d at 1095; *see also Vance v. Int'l Bus. Machines Corp.*, 2020 WL 5530134, at *5 (N.D. Ill. Sept. 15, 2020) (same).

---

[2]   Curiously, Defendants themselves cite to *Carpenter* and *Rivera* – which both say a biometric identifier is something that can be "*used to identify a person*" – for a proposition found in neither of those cases, namely, that a biometric identifier must *actually identify* a person.

In contrast, Defendants do not (and cannot) cite any authority that limits the protections of BIPA to cases where the defendant *actually* uniquely identified the plaintiffs.  Indeed, none exist.  BIPA was enacted because biometrics "are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft" forever, and thus "[t]he public welfare, security, and safety will be served by regulating the *collection*, use, safeguarding, *handling*, *storage*, *retention*, and destruction of biometric identifiers and information." 740 Ill. Comp. Stat. Ann. 14/5.  Defendants, two of the largest purveyors of consumer data in the world, now ask to guard the proverbial henhouse and proffer a novel, highly limiting definition of biometric information covered by the statute that may well serve the companies' bottom line, but does so at the expense of consumer privacy.

In any event, even if Defendants' arguments were correct, which they are not, they entirely ignore Plaintiff's well-pled factual allegations that Defendants did use the scans of face geometry to personally identify individuals.  Plaintiff alleges that when YouTube uses the Face Blur tool, a unique "faceId" is associated with an image representation in YouTube's code and that faceId is matched to specific facial geometry captured and stored by Defendants, thereby being used to personally identify individuals.  Amended Complaint (ECF 52) ¶55; *see also id.* ¶¶58-62.

### 3. The Data Defendants Collect Can Be Used, and Is Used, to Identify Individuals

Defendants next argue that Plaintiff has failed to allege the data Defendants collect can be used to identify individuals because, according to Defendants, the Face Blur and Thumbnail Generator tools do not suggest any "individual's name" to associate with the faces identified.  Mot. at 8.  This argument fails for two reasons.  First, requiring that a tool actually suggest individuals' names is just another attempt to smuggle in a requirement that biometric data actually be used to identify individuals and fails for the same reason it failed the first two times.  BIPA simply does not impose such a requirement.  Second, data need not include a name to identify an individual.  As alleged, Defendants' Face Blur tool, for example, "scan[s] the entire video to detect all unique faces[,]" ECF 52 ¶52, and then "display[s] all [unique] detected faces within the video and allow[s] the creator to select which faces the creator would like to blur[,]" *id.* ¶53.  Defendants' Face Blur

1    tool functions by uniquely identifying individuals in every video it is used on because, once a face

2    is selected, "Defendants blur out the selected face ***throughout the duration of the YouTube video***."

3    *Id.* ¶54.  Defendants accomplish this "blurring" by capturing and storing scans of face geometry,

4    then associating this data with a unique "faceId."  *Id.* ¶55.  Once a YouTube user selects a "faceId"

5    to blur, Defendants' Face Blur tool blurs any matching facial geometry in the video, thereby

6    personally identifying the individuals selected.  *Id.*  The Face Blur tool recognizes individuals even

7    weeks after the tool had previously identified them and assigned them a unique faceId.  *Id.* ¶58.  To

8    the extent that Defendants draw different inferences from these well-pleaded facts than Plaintiff,

9    *see* Mot. at 7-8, the Motion must be denied.  *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2

10   (9th Cir. 2018).  For this reason, even if BIPA required that data actually be used to identify

11   individuals (it does not), Plaintiff's claims would survive because he has adequately alleged

12   Defendants do exactly that.  *Id.* ¶¶49-77.

13              **4.     An Exception to BIPA for Face Blur and Thumbnail**
                         **Generator Tools Would Undermine the Statute's Purpose**
14

15              The last flurry in Defendants' salvo to rewrite BIPA and limit its protections is Defendants'

16   argument that prohibiting the companies' Face Blur and Thumbnail Generator tools "would have

17   significant negative consequences."  Mot. at 8.  Defendants incorrectly state that Plaintiff's

18   "interpretation of BIPA would effectively ban privacy-protective features like face blurring[.]"  *Id.*

19   at 9.  Not so.  Defendants need only secure consent to collect the biometric information necessary

20   to support the current implementation of their purported privacy tools.  And, as Plaintiff makes

21   clear in his pleadings, Defendants' Face Blur tool goes above-and-beyond the data collection

22   required to implement privacy-protective features.  For instance, "Defendants permanently store

23   scans of face geometry or biometric information[.]"  ECF 52 ¶59.  Fatal to their argument,

24   Defendants fail completely "to post a publicly available retention schedule and guidelines for

25   permanently destroying such biometric identifiers."  *Id.* ¶62.  This overstepping of consumers'

26   privacy rights is wholly unnecessary to implement basic privacy-protective features and squarely

27   implicates BIPA's central purpose of "regulating the collection, . . . storage, retention, and

28   destruction of biometric identifiers and information."  740 Ill. Comp. Stat. Ann. 14/5(g).

Finally, Defendants incorrectly argue that Plaintiff must "allege that Defendants know which faces, if any, are associated with account holders." Mot. at 9. Courts in the Seventh Circuit, for example, have uniformly rejected Defendants' interpretation of BIPA. *See Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *2 n.1 (S.D. Ill. Aug. 5, 2022) ("[C]ourts within this Circuit have held that parties' relationships to one another are not the appropriate framework under which to analyze Section 15(b) claims."); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092 (N.D. Ill. 2019) ("The statute obligates any private entity that collects a person's biometric information to comply with its requirements; the salient relationship is created by the act of collection. There is nothing absurd about that."); *Flores v. Motorola Sols., Inc.*, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021) (declining to "read into" BIPA a relationship requirement); *see also Zellmer v. Facebook, Inc.*, 2022 WL 16924098, at *3 (N.D. Cal. Nov. 14, 2022) ("*Zellmer I*") ("Although the Seventh Circuit decisions are not, strictly speaking, binding on the Court, their reasoning about standing in BIPA cases is persuasive.").

To support their self-exculpating reading of the statute, Defendants appeal to this Court's opinion in *Zellmer v. Facebook, Inc.*, 2022 WL 976981 (N.D. Cal. Mar. 31, 2022) ("*Zellmer II*"). *Zellmer II* is readily distinguishable as a summary judgment decision in a case brought by, and on behalf of, Facebook non-users. Here, Plaintiff is a YouTube creator, and the proposed Class includes other such users. *See Johnson v. NCR Corp.*, 2023 WL 1779774, at *4 n.3 (N.D. Ill. Feb. 6, 2023) (distinguishing *Zellmer II* where "Plaintiffs' allegations suggest at least some level of known contact"). To the extent Defendants dispute Plaintiff's allegations that the Face Blur and Thumbnail Generator tools generate face scans that can be used to identify him and members of the proposed Class, the Motion should be denied. *Wise v. Ring*, 2022 WL 3083068, at *3 (W.D. Wash. Aug. 3, 2022).

### C.   Defendants' BIPA Violations Took Place Primarily and Substantially in Illinois, and Defendants Should Be Held Accountable for Their Illinois Torts

As a threshold matter, the determination of the locus of Plaintiff's claims for purposes of the extraterritoriality inquiry "is a highly fact-based analysis that is generally inappropriate for the motion to dismiss stage." *Vance v. Amazon.com, Inc.*, 525 F. Supp. 3d 1301, 1308 (W.D. Wash.

2021) ("*Vance I*").  "Accordingly, the majority of courts in BIPA cases to consider the issue at this stage have denied the motion to dismiss, opting instead to allow discovery for more information regarding the extent to which the alleged misconduct occurred in Illinois."  *Id.* (collecting cases); *see also Facebook I*, 326 F.R.D. at 547-48 (analyzing extraterritoriality issue at class certification stage).  The same goes for the Dormant Commerce Clause inquiry.  *See Vance I*, 525 F. Supp. 3d. at 1310 (declining to decide BIPA Dormant Commerce Clause issue on motion to dismiss and holding that this question is "more properly addressed on a motion for summary judgment"); *see also Rivera*, 238 F. Supp. 3d at 1104 ("[T]his is not the stage at which to assess these arguments in detail[,]" because "[w]hat is learned from discovery there will inform both the more general extraterritoriality analysis above and this Dormant Commerce Clause analysis.").

Defendants concede the fact-bound nature of the extraterritoriality inquiry, *see* Mot. at 10 (arguing that "each case must be decided on its own facts"), and the issue should be left until an evidentiary record has been established.  Even if the Court were to engage in a factual inquiry now, however, Plaintiff's Amended Complaint contains numerous allegations tying Defendants' misconduct to the State of Illinois beyond the mere fact that Plaintiff resides there.

### 1.    Plaintiff's Claims Do Not Violate the Extraterritoriality Doctrine

A BIPA violation must have taken place in Illinois to be actionable.  *See Rivera*, 238 F. Supp. 3d at 1100-01.  There is no bright-line test for making this determination; rather, "a court must analyze whether 'the circumstances relating to the transaction occur primarily and substantially' within Illinois."  *Id.* at 1101 (quoting *Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 853 (Ill. 2005)); *see also Vance I*, 525 F. Supp. 3d at 1308 (same).

Defendants assert that the Amended Complaint "does not allege that Defendants engaged in *any* conduct in Illinois."  Mot. at 9 (emphasis in original).  This is wrong.  First, the argument is a red herring, since the extraterritoriality inquiry broadly looks to the totality of the actions of both the plaintiff and the defendant that precipitate the dispute.  *See Rivera*, 238 F. Supp. 3d at 1101-02 (analyzing "whether *the circumstances relating to the transaction* occur primarily and substantially within Illinois[,]" and stating that "[e]ven if we do definitely determine that the

1    scanning takes place outside of Illinois, that would not necessarily be dispositive"); *see also Neals*,

2    419 F. Supp. 3d at 1091 (Defendant's "physical location and property holdings, the location of its

3    servers, and the identity of its customers are not determinative of [BIPA's] application; these factors

4    have little to do with the ***transaction and conduct at issue – the collection of plaintiff's***

5    ***fingerprint***.").  Second, Plaintiff does allege Defendants' conduct occurred within Illinois.

6          By way of example, Plaintiff alleges: (a) Plaintiff is a resident and citizen of Illinois; (b) all

7    proposed Class members are residents of Illinois; (c) Plaintiff and all proposed Class members

8    uploaded the relevant videos to Defendants' YouTube service from Illinois; (d) Defendants

9    collected, captured, and used Plaintiff's and Class members' biometric identifiers in Illinois;

10   (e) Defendants auto-generated thumbnail photographs from Plaintiff's and putative Class members'

11   videos uploaded from Illinois; (f) Defendants failed to post a publicly available retention schedule

12   and guidelines for permanently destroying biometric identifiers in Illinois; (g) Defendants failed to

13   comply with any such publicly available retention schedule and guidelines for permanently

14   destroying biometric identifiers in Illinois; and (h) Defendants intended for their Face Blur tool to

15   be used "around the world," which includes Illinois.  *See* ECF 52 ¶¶14-20, 22, 39, 50, 62, 66, 68,

16   71-72, 79-81, 83-89, 91, 103, 105.

17         Of these allegations, (d), (e), (f), (g), and (h) above explicitly allege Illinois conduct on the

18   part of Defendants.  *See id.* at ¶¶14-15, 18-20, 22, 39, 50, 62, 72, 79-81, 83-87, 103, 105 (discussing

19   Defendants' Illinois conduct).  Equally as important, the totality of Plaintiff's ***and*** Defendants'

20   actions more than establish a *prima facie* claim of a BIPA violation that took place primarily and

21   substantially in Illinois.  These allegations are just as robust – if not more so – as the facts found

22   sufficient in similar cases.  *See Facebook I*, 326 F.R.D. at 547 (determining for purposes of class

23   certification that the case was "deeply rooted in Illinois" when, among other things, "[t]he named

24   plaintiffs are located in Illinois along with all of the proposed class members, and the claims are

25   based on the application of Illinois law to use of Facebook mainly in Illinois"); *see also Rivera*, 238

26   F. Supp. 3d at 1101-02 (determining on motion to dismiss "that the Plaintiffs sufficiently allege

27   facts that would deem the asserted violations as having happened in Illinois" when complaint

28

1   alleged *this same Defendant* (*i.e.*, Google) was "making face templates of [plaintiffs] in

2   photographs uploaded automatically from Google Droid devices in Illinois").

3       Defendants' attempt to brush aside this Court's decision in *Facebook I*, a highly analogous

4   case, fares no better.  Defendants likely recognized the futility in this argument, relegating the point

5   to a footnote in which Defendants wrongly claim the instant case is distinguishable because "there

6   was no dispute that the case was deeply rooted in Illinois[.]"[3]  Mot. at 11-12 n.5.   Instead,

7   Defendants urge the Court to follow *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089

8   (D. Del. Sept. 30, 2021).  But *McGoveran*, unlike *Facebook I*, is inapposite.

9       In *McGoveran*, the plaintiffs' *sole basis* for their alleged BIPA violation was their Illinois

10  residency.  *See McGoveran*, 2021 WL 4502089, at *4 (stating that plaintiffs' allegations contained

11  "nothing more than repeated statements (phrased three different ways) about Plaintiffs' residency").

12  The plaintiffs did not "allege any direct interaction with [the defendants] that might plausibly be

13  imputed to Illinois[.]"  *Id.* at *5.  The *McGoveran* court held that was not enough, and dismissed

14  the complaint without prejudice.  *See id.* at *6.

15      *Facebook I*, on the other hand, is far different.  Another case cited by Defendants in their

16  Motion, *Vance v. Microsoft Corp.*, 2022 WL 9983979, at *7 (W.D. Wash. Oct. 17, 2022) ("*Vance*

17  *II*"), illustrates the distinction:

18          In [*Facebook I*, 326 F.R.D. at 547], for example, the plaintiff Illinois residents
            uploaded their photos to Facebook's social media service in Illinois.  Facebook then
19          scanned the photos, identified the individuals in those photos, and suggested names
            of individuals to tag in those photos.  *Id.*  Thus, Facebook reached into Illinois by
20          providing its service to the plaintiffs, and the plaintiffs' direct interactions with
            Facebook gave rise to the alleged BIPA violations.[4]

21

22

---

23  [3]   Indeed, but for Facebook's arguments – in this Court and the Ninth Circuit – that the
    extraterritoriality doctrine or Dormant Commerce Clause doomed the plaintiffs' BIPA claim or
24  motion for class certification, neither this Court nor the Ninth Circuit would have had occasion to
    address them.  But both did.  *See Patel*, 932 F.3d at 1276 (explaining, "[t]he parties' dispute
25  regarding extraterritoriality requires a decision as to where the essential elements of a BIPA
    violation take place"); *Facebook I*, 326 F.R.D. at 547-48.

26  [4]   Defendants also cite to *Vance II* to highlight that the BIPA claim was found to be barred even
    where the photographs were uploaded in Illinois and stored on servers in Illinois because the court
27  held that the defendant's conduct was attenuated and *de minimis*.  *See* Mot. at 10-11.  However, a
    review of *Vance II* shows the true reason behind that court's finding: that, like in *McGoveran*, it
28  was an unrelated third party that engaged in all of the Illinois conduct, and the defendants only later
    received the biometric identifiers from that third party.  Here, that is indisputably not the case.

1      This is **precisely** what Plaintiff alleges in the Amended Complaint.  Plaintiff is a "resident

2    and citizen of the State of Illinois," and uploaded multiple videos to YouTube "from within the

3    state of Illinois[.]"  ECF 52 ¶22.  Defendants then "scanned" the faces in the videos, and used those

4    faces in their Face Blur and Thumbnail Generator tools.  ECF 52 ¶¶50, 66, 71.  Thus, Defendants

5    "reached into Illinois by providing [their] service to [Plaintiff], and [Plaintiff's] direct interactions

6    with [Defendants] gave rise to the alleged BIPA violations."  *Vance II*, 2022 WL 9983979, at *7.

7      Defendants attempt to shrug off Plaintiff's allegations by arguing that they should not count

8    because they are "conclusory[.]"  Mot. at 11.  In actuality, it is Defendants' arguments that are

9    conclusory and lack any substance to rebut.[5]  Defendants' entire argument here selectively quotes

10   from Plaintiff's Amended Complaint, alleges Plaintiff's allegations are "conclusory," and then

11   proceeds to again cite *Avery* for the "primarily and substantially" legal standard, as well as the non-

12   precedential syllabus of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007), for a plaintiff's

13   general pleading requirements.  Defendants ignore, for example, Plaintiff's factual allegations that

14   Defendants generated thumbnails from videos Plaintiff uploaded in Illinois and that the Face Blur

15   tool was also applied to videos he uploaded in the state.  *See* ECF 52 ¶¶84-85; *see also Neals*, 419

16   F. Supp. 3d at 1090-93 (analyzing BIPA claim under Rule 8, not heightened pleading standards of

17   Rule 9, and holding that "Rule 8 does not demand that a plaintiff prove [her] case at the outset of

18   the litigation, nor does it demand that a plaintiff plead facts that she has no way of knowing prior

19   to discovery").  Plaintiff's identification of the location of facts precipitating this action in Illinois

20   is more than what is required to give Defendants notice of the claims under Rule 8.

21     Finally, Defendants argue that their failure to post and comply with a publicly available

22   retention schedule should be excused because they were not required to do so in the first place.  *See*

23   Mot. at 12.  This circular argument rises, and ultimately falls, with their arguments above.  And for

24

---

25   [5]  In fact, Defendants' argument here is so bereft of analysis that it fails to comply with the requirements of Fed. R. Civ. P. 7(b)(1)(B) to "state with particularity the grounds for seeking the order[,]" and should therefore be disregarded by the Court.  *See Rhodes v. Robinson*, 399 F. App'x

26   160, 164 (9th Cir. 2010) (affirming denial of motion pursuant to Fed. R. Civ. P. 7(b)(1)(B) when motion "did not provide any argument or evidence" in support.); *see also Sols. for Utils. Inc. v. Cal.*

27   *Pub. Utils. Comm'n*, 2022 WL 3575307, at *2 (C.D. Cal. July 5, 2022) ("Neither the Court nor [the responding party] ought to play a guessing game.") (denying motion and citing Fed. R. Civ. P.

28   7(b)(1)(B)).

1  the same reasons above, Defendants must follow BIPA if they want to do business in Illinois, which

2  they do not deny, and collect the biometric identifiers of Illinois residents.

3        **2.    Defendants' Argument that BIPA Violates the Dormant
                  Commerce Clause Is Wrong on the Merits and a
4                 Misapplication of the Canon Against Constitutional Avoidance**

5        Defendants' effort to dismiss Plaintiff's BIPA claims under the Dormant Commerce Clause

6  also fails because Plaintiff's claims do not violate the United States Constitution's limitations on

7  states discriminating against, or excessively burdening, interstate commerce.    Alternatively,

8  Defendants do not demonstrate that the canon of constitutional avoidance applies.

9        **a.    Plaintiff's BIPA Claims Do Not Violate the Dormant
                  Commerce Clause**
10

11       Applying BIPA in this case does not violate the Dormant Commerce Clause.  A corollary

12 of the United States Constitution's delegation to Congress of the power to regulate interstate

13 commerce, Art. I, sec. 8, cl. 3, the Dormant Commerce Clause limits the power of states to

14 discriminate against, directly regulate, or excessively burden interstate commerce.  *See Nat'l Ass'n*

15 *of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147-1150 (9th Cir. 2012).

16       Defendants seek to dismiss a strawman of Plaintiff's claims that he is not advancing.  They

17 incorrectly assert that Plaintiff's BIPA claims are entirely based on his Illinois residence.  *See* Mot.

18 at 13.  These arguments ignore the many allegations that Defendants' actions in Illinois have given

19 rise to Plaintiff's claims.  For example, Plaintiff alleges that: (1) "[t]he uploading"; (2) "Defendants'

20 capture"; and (3) "Defendants' use of these biometric identifiers or information of Plaintiff and all

21 Class members" "all take place in the state of Illinois."  ECF 52 ¶15; *see also id.* ¶¶14-15, 19, 22,

22 42, 50, 62, 66, 68, 72, 81, 83-85, 89, 103, 105.  Also, the proposed Class only includes Illinois

23 residents "who, ***while located in Illinois***, had their faceprints or face templates collected, captured,

24 received, or otherwise obtained by Defendants through ***videos uploaded to YouTube within***

25 ***Illinois***."  *Id.* ¶91.

26       Thus, Defendants' effort to equate this case to *Sam Francis Found. v. Christies, Inc.*, 784

27 F.3d 1320 (9th Cir. 2015) (*en banc*), is misplaced.  In *Christies*, the statute at issue – on its face –

28 regulated transactions that took place wholly outside California based solely on the California

1   residency of the seller. *See id.* at 1322. That is not the case here, where Plaintiff's claims are based

2   on his use, in Illinois, of Defendants' YouTube service. *See In re Facebook Biometric Info. Priv.*

3   *Litig.*, 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018) ("*Facebook II*") (distinguishing *Christies*

4   and rejecting Dormant Commerce Clause argument in BIPA case). In *Christies*, the Ninth Circuit

5   distinguished *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070 (9th Cir. 2013), and *Ass'n*

6   *des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013), where there

7   were no violations of the Dormant Commerce Clause: "Unlike this case – which involves regulation

8   of wholly out-of-state conduct – *Corey* and *Harris* concerned state laws that regulated **in-state**

9   conduct with allegedly significant out-of-state practical effects." *Christies*, 784 F.3d at 1324

10  (emphasis in original). Similar to *Corey* and *Harris*, Plaintiff's claims concern Defendants' in-state

11  conduct, but, unlike those cases, Defendants do not even suggest there are significant out-of-state

12  practical effects.

13        Defendants' contention that Plaintiff's BIPA claims violate the Dormant Commerce Clause

14  because it would subject Defendants to non-California regulations is even less convincing. *See*

15  Mot. at 13-14. By Defendants' logic, no state could regulate a corporation headquartered out-of-

16  state. This result is not required by the Constitution.[6] "Under [Ninth Circuit] precedent, state laws

17  that regulate only conduct in the state . . . do not have impermissible extraterritorial effects." *Pork*

18  *Producers*, 6 F.4th at 1029; *see also Corey*, 730 F.3d at 1101 (holding that a regulation did not

19  violate the Dormant Commerce Clause because private entities would only have to follow the

20  standard to serve the in-state market). The Court rejected a similar argument in *Facebook II*, and

21  concluded BIPA did not override California's regulations of biometric data, in part, because "[t]his

22  suit involves Facebook's conduct with respect to Illinois users only." 2018 WL 2197546, at *4.

23        "This lawsuit is under an Illinois state statute on behalf of Illinois residents who used

24  [YouTube] in Illinois." *Id.* Defendants' Dormant Commerce Clause argument should be denied.

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [6]   Defendants' reliance on *Healy v. Beer Inst.*, 491 U.S. 324 (1989), *see* Mot. 12-13, is weak.
    "*Healy* should be interpreted narrowly as applying only to state laws that are price control or price

27  affirmation statutes," which, of course, are not at issue here. *Nat'l Pork Producers Council v. Ross*,
    6 F.4th 1021, 1028 (9th Cir. 2021), *cert. granted*, 142 S. Ct. 1413 (2022); *see also id.* at 1033

28  ("While the dormant Commerce Clause is not yet a dead letter, it is moving in that direction.").

**b.    The Canon of Constitutional Avoidance Does Not Apply**

Constitutional avoidance is a canon of statutory interpretation that, under certain circumstances, urges a court to interpret a statute in a way that avoids constitutional issues.[7] Defendants have made absolutely no effort to show such circumstances are present here.  "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means* of *choosing between them*."  *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (emphasis in original).  Here, Defendants have not even analyzed the text of the BIPA statute, let alone demonstrated the "ambiguity" required to invoke constitutional avoidance.  *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1131 (9th Cir. 2022).  They have also not offered an alternative, let alone plausible, interpretation of BIPA, except that Plaintiff's claims must be dismissed. Defendants seek to rewrite BIPA, not re-interpret it, which is not authorized by the canon of constitutional avoidance.  *See Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 836 (2018).

**D.    Plaintiff's Legal Rights Were Violated When Defendants Failed to Comply with the Retention Schedule and Guidelines of Section 15(a)**

Plaintiff adequately pleaded a violation of Section 15(a) of BIPA by alleging that Defendants retained his biometric data after he used the Face Blur and Thumbnail Generator tools. *Fox*, 980 F.3d at 1154 (finding Section 15(a) violated when defendant "fail[ed] to develop, publicly disclose, *and comply with* a data-retention schedule and guidelines") (emphasis in original).

While Section 15(a) requires that Defendants publicly make available a retention schedule, it also requires that Defendants destroy biometric data "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, *whichever occurs first*."  740 Ill. Comp. Stat. Ann. 14/15(a). Here, for example, Defendants' Face Blur tool uses biometric data to identify individuals to allow a user to selectively censor certain individual faces within a video.  ECF 52 ¶¶50-54.  Defendants'

---

[7]    Defendants' argument also does not comply with 28 U.S.C. §2403, Fed. R. Civ. P. 5.1, and Civ. L-R. 3-8, which require that a party questioning the constitutionality of a state statute provide notice to the state attorney general if the state is not a party to the case, as here.

server data represents that they initially store the information for a four-hour period, *i.e.*, the initial purpose for collecting the biometric data. *Id*. ¶¶54, 56.  However, as Plaintiff alleges, Defendants retain the biometric data for weeks, if not permanently, after the tool has been run. *Id*. ¶¶55-57.  If Plaintiff's biometrics are collected solely for the purpose of identifying faces to blur, there is no reason for Defendants to retain that information for weeks after the tool has been used.

Similarly, Plaintiff alleges that Defendants retain and store biometrics, including those derived from the Thumbnail Generator tool, to train its software models. *Id*. ¶¶63-67. Plaintiff was individually aggrieved by Defendants' failure to abide by a retention schedule as prescribed in Section 15(a) and to delete his biometric data when the initial purpose for collecting it had ended. 740 Ill. Comp. Stat. Ann. 14/15(a); *Fox*, 980 F.3d at 1154 ("An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does."); *Sosa*, 600 F. Supp. 3d at 868 (finding a failure to adhere to retention schedule prescribed by 15(a)); *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 839 (N.D. Ill. 2021) (collecting retention cases).

Finally, the argument that "BIPA aims to prevent specific, palpable harms (*e.g.*, from disclosure or misuse)[,]" *see* Mot. at 15, and not the collection and retention of data itself, is directly contravened by the Illinois Supreme Court:

> In sum, defendants' contention that redress under the Act should be limited to those who can plead and prove that they sustained some actual injury or damage beyond infringement of the rights afforded them under the law would require that we disregard the commonly understood and accepted meaning of the term "aggrieved," depart from the plain and, we believe, unambiguous language of the law, read into the statute conditions or limitations the legislature did not express, and interpret the law in a way that is inconsistent with the objectives and purposes the legislature sought to achieve. That, of course, is something we may not and will not do.

*Rosenbach*, 129 N.E.3d at 1207. Defendants' portrayal of their collection and use of Plaintiff's face scan as salutary ignores his statutorily guaranteed privacy rights over his biometric data.

## II.   CONCLUSION

Plaintiff respectfully requests that Defendants' motion be denied.

1  DATED:  March 17, 2023

ROBBINS GELLER RUDMAN
    & DOWD LLP
AELISH M. BAIG
JACOB G. GELMAN


              *s/ Aelish M. Baig*
            AELISH M. BAIG

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
abaig@rgrdlaw.com
jgelman@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
ALEXANDER C. COHEN (*pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
acohen@rgrdlaw.com

MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC
GARY M. KLINGER
221 West Monroe Street, Suite 2100
Chicago, IL  60606
Telephone:  866/252-0878
gklinger@milberg.com

MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC
JONATHAN B. COHEN
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: 865/247-0080
jcohen@milberg.com

MILBERG COLEMAN BRYSON
    PHILLIPS GROSSMAN, PLLC
NICK SUCIU, III
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI  48301
Telephone:  313/303-3472
nsuciu@milberg.com

Attorneys for Plaintiff