1  AELISH M. BAIG (SBN 201279)
   **ROBBINS GELLER RUDMAN & DOWD LLP**
2  Post Montgomery Center
   One Montgomery Street, Suite 1800
3  San Francisco, CA  94104
   Telephone:  415/288-4545
4  aelish@rgrdlaw.com

5  STUART A. DAVIDSON (*pro hac vice*)
   ALEXANDER C. COHEN (*pro hac vice*)
6  **ROBBINS GELLER RUDMAN & DOWD LLP**
   225 NE Mizner Boulevard, Suite 720
7  Boca Raton, FL  33432
   Telephone:  561/750-3000
8  sdavidson@rgrdlaw.com
   acohen@rgrdlaw.com
9
   Attorneys for Plaintiff
10
   [Additional counsel appear on signature page.]
11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14  NATHAN COLOMBO, individually and on          CASE NO. 3:22-CV-06987-JD
    behalf of all others similarly situated,     **NOTICE OF UNOPPOSED MOTION**
15                                               **AND MOTION FOR PRELIMINARY**
                                    Plaintiff,    **APPROVAL OF CLASS ACTION**
16                                               **SETTLEMENT**
           vs.
17                                               Judge:        Hon. James Donato
    YOUTUBE, LLC and GOOGLE LLC,                 Ctrm:         11
18                                   Defendants.  Hearing Date: June 26, 2025
                                                 Time:         10:00 a.m.
19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION.................................................................................................1

II. FACTUAL BACKGROUND ..............................................................................2

    A.  Plaintiff's Allegations and the Litigation ................................................2

    B.  Mediation, Mediator's Proposal, and Settlement Negotiations...............3

    C.  The Settlement.........................................................................................4

        1.  Class Definition.............................................................................4

        2.  Benefits to Settlement Class Members..........................................4

        3.  Scope of Release ...........................................................................4

        4.  Service Award to Plaintiff.............................................................5

        5.  Attorneys' Fees and Expenses......................................................5

        6.  Notice and Administration ............................................................5

III. LEGAL STANDARD FOR PRELIMINARY APPROVAL..............................6

IV. THE SETTLEMENT MERITS PRELIMINARY APPROVAL .......................8

    A.  Rule 23(e)(2)(B): The Settlement is the Product of Good Faith, Informed, Arm's-Length Negotiations................................................................8

    B.  Rule 23(e)(2)(C): The Relief for the Settlement Class is Substantial ...................9

        1.  The amount offered is fair relative to the costs, risks, and delay of trial and appeal ..........................................................................9

        2.  The amount offered is fair in relation to potential damages....................11

        3.  The proposed method of distributing relief to the class is straightforward and effective ...............................................................13

        4.  The terms and timing of the proposed award of attorneys' fees and costs are fair and reasonable..................................................................13

        5.  The experience and views of Class Counsel ...........................................14

    C.  Rule 23(e)(2)(D): Equitable Allocation of the Settlement ..................................14

V.  THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED ..........15

A.   The Settlement Class Is So Numerous that Joinder of All Settlement Class Members Is Impracticable ...................................................15

B.   Questions of Law and Fact Are Common to the Settlement Class .....................16

C.   Plaintiff's Claims Are Typical of the Settlement Class ......................................16

D.   Plaintiff and Plaintiff's Counsel Will Fairly and Adequatley Protect the Interests of the Settlement Class .......................................................................17

E.   The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................18

VI.   THE PROPOSED NOTICE PLAN IS APPROPRIATE ...................................................19

VII.   THE SETTLEMENT CONFORMS TO THE DISTRICT'S PROCEDURAL GUIDANCE FACTORS .........................................................................................................21

A.   Guidance 1a-b (differences between settlement class and operative complaint).............................................................................................................21

B.   Guidance 1c (actual and potential class recovery) ..............................................21

C.   Guidance 1d (other affected cases) .....................................................................21

D.   Guidance 1e (allocation plan)..............................................................................22

E.   Guidance 1f (expected claim rate).......................................................................22

F.   Guidance 1g (reversion) ......................................................................................23

G.   Guidance 2 (settlement administration) ..............................................................23

H.   Guidance 3 (class notice) ....................................................................................23

I.   Guidance 4 (opt-outs)..........................................................................................23

J.   Guidance 5 (objections) ......................................................................................24

K.   Guidance 6 (attorneys' fees and costs)................................................................24

L.   Guidance 7 (service awards) ...............................................................................24

M.   Guidance 8 (cy pres) ...........................................................................................24

N.   Guidance 9 (timeline)..........................................................................................25

O.   Guidance 10 (CAFA) ..........................................................................................25

P.   Guidance 11 (comparable outcomes)..................................................................25

VIII.   CONCLUSION..................................................................................................................25

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
4
    No. 3:16-CV-05486, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ...................................... 18

5

*Allen v. Hyland's, Inc.*,
    No. 12-cv-1150 DMG (C.D. Cal.) ......................................................................................... 11
6

*Bailey v. Rite Aid Corp.*,
7
    338 F.R.D. 390 (N.D. Cal. 2021) .......................................................................................... 16

8

*Baldwin v. Metrostaff*,
    No. 19 CH 04285 (Ill. Cir. Ct., Cook Cnty.) ......................................................................... 23
9

*Barbosa v. Cargill Meat Sols. Corp.*,
10
    297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................................... 18

11

*Campbell v. Facebook, Inc.*,
12
    951 F.3d 1106 (9th Cir. 2020) ................................................................................................. 7

13

*Chester v. TJX Cos., Inc.*,
    No. 5:15-cv-01437-ODW-DTB, 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ..................... 13
14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
15
    361 F.3d 566 (9th Cir. 2004) ................................................................................................... 7

16

*Contreras v. Armstrong Flooring, Inc.*,
17
    No. 20-cv-03087-PSG-SK, 2021 WL 4352299 (C.D. Cal. July 6, 2021) ............................... 9

18

*Cothron v. White Castle Sys., Inc.*,
19
    216 N.E.3d 918, as modified on denial of reh'g (Ill. July 18, 2023) .................................... 11

*Custom LED, LLC v. eBay, Custom LED, LLC v. eBay, Inc.*,
20
    No. 12-cv-00350-JRT, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ................................. 12

21

*Devose v. Ron's Temporary Help Services*,
22
    2019-L-1022 (Will Cnty. Jan. 9, 2023) ................................................................................. 13

23

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................................................................. 17
24

*Farar v. Bayer AG*,
25
    No. 14-cv-4601 (N.D. Cal.). .................................................................................................. 11

26

*Farrar v. Workhorse Grp., Inc.*,
27
    No. CV2102072CJCPVCX, 2023 WL 5505981 (C.D. Cal. July 24, 2023) .......................... 15

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Figueroa v. Kronos Inc.*,
    No. 1:19-cv-01306 (N.D. Ill. Feb. 10, 2022) ................................................................. 13

*Free Range Content, Inc. v. Google, LLC*,
    No. 14-CV-02329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ............................... 20

*G.T. v. Samsung Elecs. Am. Inc.*,
    No. 21 CV 4976, 2024 WL 3520026 (N.D. Ill. July 24, 2024) .............................................. 10

*Golan v. Free Eats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ................................................................................................ 11

*Gold v. Lumber Liquidators, Inc.*,
    323 F.R.D. 280 (N.D. Cal. 2017) .......................................................................................... 18

*Hadley v. Kellogg Sales Co.*,
    No. 16-CV-04955-LHK, 2021 WL 5706967 (N.D. Cal. Nov. 23, 2021) .............................. 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................................................. 17

*Hanson v. Welch Foods Inc.*,
    No. 3:20-cv-02011-JCS, 2022 WL 1133028 (N.D. Cal. Apr. 15, 2022) ............................. 14

*Hartman v. Meta Platforms, Inc.*,
    No. 3:23-CV-02995-NJR, 2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) .............................. 10

*Hirmer v. ESO Sol's, Inc.*,
    No. 1:22-CV-01018 (N.D. Ill. Aug. 2024) ........................................................................... 13

*Huntsman v. Sw. Airlines, Co.*,
    No. 3:17-cv-03972, 2018 WL 11371114 (N.D. Cal. Dec. 5, 2018) ........................................ 8

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................ 7, 9

*In re California Pizza Kitchen Data Breach Litig.*,
    129 F.4th 667 (9th Cir. 2025) ................................................................................................. 7

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    No. 12-md-02330-EMC, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................. 23

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) .......................................................................................... 18

*In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*,
    No. SACV 05-8809 JVS (MLGx), 2008 WL 11504857 (C.D. Cal. Dec. 31, 2008) ............. 12

*In re Facebook Biometric Info. Priv. Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018), *aff'd sub nom.*
    *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) .................................................. 19, 20

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 15-cv-3747-JD, 2021 WL 757025 (N.D. Cal. Feb. 26, 2021) ......................................... 23

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021),
    *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ....................... 11, 13, 14, 15

*In re Facebook Biometric Info. Priv. Litig.*,
    No. 3:15-cv-03747-JD (N.D. Cal.) ............................................................................ 2, 13, 21

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) .............................................................................................. 8, 16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................................................................... 7

*In re Netflix Privacy Litig.*,
    No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................. 11

*In re Online DVD–Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ................................................................................................... 23

*In re Online DVD-Rental Antitrust Litig.*,
    79 F.3d 934 (9th Cir. 2015) ..................................................................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07–md–1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ....................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ................................................................................................... 17

*In re Wireless Facilities, Inc.*,
    253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................................ 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ............................... 14

*Just Film Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ................................................................................................. 19

*Kim v. Space Pencil, Inc.*,
    No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ...................................... 11

*Krommenhock v. Post Foods, LLC*,
    No. 16-cv-04958-WHO, 2021 WL 2910205 (N.D. Cal. June 25, 2021) ................................. 14

*Kusinski v. ADP LLC*,
   No. 2017-CH-12364 (Ill. Cir. Ct., Cook Cnty. Feb. 10, 2021) ................................. 23

*Louie v. Kaiser Found. Health Plan, Inc.*,
   No. 08-cv-00795-IEG-RBB, 2008 WL 4473183 (S.D. Cal. Oct. 6, 2008) ...................... 9

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................ 16

*McCabe v. Six Continents Hotels, Inc.*,
   No. 12-cv-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) ..................................... 12

*McLeod v. Bank of Am., N.A.*,
   No. 16-cv-03294 EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) .............................. 10

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*,
   19-cv-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021) ......................................... 18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................. 20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 10

*Norton v. LVNV Funding, LLC*,
   No. 18-cv-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) .............................. 18

*O'Connor v. Uber Techs., Inc.*,
   No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ............................. 9

*Patel v. Facebook*
   932 F.3d 1264 (9th Cir. 2019) ......................................................................... 10, 11

*Pelzer v. Vassalle*,
   655 Fed. App'x 352 (6th Cir. 2016) ........................................................................ 14

*Phillips Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................................. 20

*Prelipceanu v. Jumio Corp.*,
   2018 CH 15883 (Cir. Ct. Cook Cnty. July 21, 2020) .................................................. 13

*Prelipceanu v. Jumio Corp.*,
   No. 18-CH-15883 (Ill. Cir. Ct., Cook Cnty. July 21, 2020) ...................................... 23

*Racies v. Quincy Bioscience, LLC*,
   No. 15-cv-292 (N.D. Cal.) ..................................................................................... 11

*Rivera v. Google*,
   No. 1:16-cv-02714 (N.D. Ill.) ................................................................................ 13

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
    No. 11-cv-00665-BRO-AGR, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ........................ 9

*Sekura v. L.A. Tan Enters., Inc.*,
    No. 2015-CH-16694 (Ill. Cir. Ct., Cook Cnty. Dec. 1, 2016) ................................................. 23

*Sykes v. Clearstaff*,
    19 CH 03390 (Cir. Ct. Cook Co.) ......................................................................................... 23

*Tabak v. Apple, Inc.*,
    No. 19-CV-02455-JST, 2024 WL 4642877 (N.D. Cal. Oct. 30, 2024) ........................... 14, 15

*Theodore Broomfield v. Craft Brew All., Inc.*,
    No. 17-CV-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ................................... 23

*Thome v. NovaTime Tech., Inc.*,
    No. 1:19-cv-06256 (N.D. Ill. Mar. 8, 2021) ......................................................................... 23

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................................................. 18

*Vaughan v. Biomet USA, Inc.*
    No. 1:20-cv-04241 (N.D. Ill. Feb. 9, 2023) ......................................................................... 13

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09–00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................................. 16

*Williams v. Personalizationmall.com*,
    No. 1:20-cv-00025 (N.D. Ill. July 6, 2022) ......................................................................... 13

*Wong v. Arlo Techs., Inc.*,
    No. 5:19-cv-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ............................ 8, 9

*Zellmer v. Meta Platforms, Inc.*,
    104 F.4th 1117 (9th Cir. 2024) ............................................................................................. 10

**STATUTES, RULES, AND REGULATIONS**

28 U.S.C.
    §1715 ................................................................................................................................. 6, 21

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................................... 1, 8, 20
    Rule 23(a) .............................................................................................................................. 16
    Rule 23(a)(1) ......................................................................................................................... 16
    Rule 23(a)(2) ......................................................................................................................... 16
    Rule 23(a)(3) ......................................................................................................................... 17

Rule 23(a)(4) ............................................................................................................ 17
Rule 23(b) ................................................................................................................. 16
Rule 23(b)(3) ............................................................................................. 18, 19, 20
Rule 23(c)(2)(B) ....................................................................................................... 20
Rule 23(e) ................................................................................................................... 7
Rule 23(e)(1) ............................................................................................................ 20
Rule 23(e)(2) .......................................................................................................... 7, 8
Rule 23(e)(2)(B) ......................................................................................................... 8
Rule 23(e)(2)(C) ......................................................................................................... 9
Rule 23(e)(2)(C)(i) ..................................................................................................... 9
Rule 23(e)(2)(D) ....................................................................................................... 15
Rule 23(e)(3) ............................................................................................................... 7

740 ILCS
14/1 ............................................................................................................................. 1
14/10 ......................................................................................................................... 19
14/20 ................................................................................................................... 11, 19

1

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on June 26, 2025 at 10:00 AM, or as soon thereafter as may be heard, before the Honorable James Donato at San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff will and hereby does move this Court for an order granting Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23.

Plaintiff respectfully seeks an order preliminarily approving the Stipulation of Class Action Settlement ("Settlement" or "SA")[1] as fair, reasonable, and adequate; provisionally certifying the Settlement Class; appointing Verita Global LLC as the Settlement Administrator; appointing Plaintiff as Class Representative and the undersigned attorneys as Class Counsel; directing notice to the Settlement Class; and setting a hearing date and schedule for final approval of the Settlement and consideration of counsel's forthcoming motion for an award of fees, costs, expenses, and service award.

Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement is based on the following: this Notice; the Memorandum of Points and Authorities; the Settlement; the Joint Declaration of Stuart A. Davidson and Gary M. Klinger ("Joint Decl."); the Declaration of Carla A. Peak of Verita Global LLC ("Peak Decl."); all other records and papers on file in this action; any oral argument on the Motion; and all other matters properly before the Court.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Almost three years ago, this class action lawsuit was commenced against Defendants YouTube LLC and Google LLC (collectively "Defendants" or "YouTube") alleging that YouTube violated Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, by collecting scans of face geometry from YouTube videos without providing the requisite disclosures or

---

[1] The Settlement is attached as **Exhibit 1** to the Joint Declaration of Stuart A. Davidson and Gary M. Klinger.

[2] Unless otherwise specified, all capitalized terms are defined in the Settlement.

1

obtaining informed written consent. YouTube denies those allegations, denies that any scans of face geometry were collected, and denies any violations of BIPA. After significant active litigation—which included successfully opposing a motion to dismiss, exchanging voluminous discovery, months of arm's-length negotiations, a full day mediation, and numerous post-mediation negotiations through the mediator—the Parties reached a proposed classwide settlement, in response to a mediator's proposal, that provides meaningful relief for the Settlement Class.

The proposed Settlement is a $6,022,500 non-reversionary common fund to be distributed to a Settlement Class of approximately 16,500 Illinois YouTube users who uploaded a video and ran the Face Blur tool. As explained below, Plaintiff submits this is a very good recovery for the proposed Settlement Class considering the substantial risks at class certification, summary judgment, and trial, and compares favorably with other approved BIPA settlements, including this Court's approval in *In re Facebook Biometric Info. Priv. Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.). Based on an informed evaluation of the facts and governing legal principles, including undersigned counsel's consultation with their retained biometrics expert regarding the strengths and weaknesses of their claims, Plaintiff respectfully moves for preliminary approval of the Settlement as fair, reasonable, and adequate.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Allegations and the Litigation

This case involves Defendants' "Face Blur" and "Thumbnail Generator" tools, which allegedly capture individuals' facial biometrics from videos uploaded to YouTube. Face Blur allows a person who uploads a video to YouTube to blur specific faces in a video each time the face appears. Second Amended Complaint ("SAC") (Dkt. 84) ¶¶ 12-14, 50-63. Thumbnail Generator is a tool that allows the uploader to select a static image from the video to use as a preview or "thumbnail" of the video. *Id.* ¶¶ 64-72. Plaintiff alleged both tools generated scans of face geometry regulated by BIPA and, thus, Defendants violated BIPA by failing to obtain the necessary informed written consent or providing a data retention and destruction policy to consumers. *Id.* ¶¶ 99-110.

On August 30, 2022, the original named plaintiff, Brad Marschke, filed the putative class action complaint in the United States District Court for the Southern District of Illinois. Dkt. 1. On

October 20, 2022, the Parties jointly stipulated to transfer the case to the United States District Court for the Northern District of California. Dkt. 22. On January 31, 2023, Defendants filed a motion to dismiss the amended complaint. Dkt. 60. During the pendency of Defendants' motion to dismiss, the original named plaintiff determined that he no longer wished to pursue his claims against Defendants due to the time commitment necessary to participate in the discovery process and was substituted by Plaintiff Nathan Colombo in the SAC filed June 13, 2023. Dkt. 84. On June 28, 2023, the Court denied YouTube's motion to dismiss. Dkt. 85.

Subsequently, the Parties conducted significant fact discovery, including Defendants' production and Plaintiff's counsel's review and analysis of 35,000 pages of documents, videos, and source code change logs, as well as Plaintiff's own productions of documents and videos. Joint Decl. ¶ 19. Of note, in advance of mediation, Plaintiff retained Dr. S. Berlin Brahnam, a biometrics expert and professor at Missouri State University, to assist with the review and interpretation of Defendants' technical documents. *Id.* ¶¶ 20-21. Dr. Brahnam shared her opinions on the Face Blur and Thumbnail Generator tools with Plaintiff's counsel and informed Plaintiff's assessment of the claims and allegations. *Id.*

### B.    Mediation, Mediator's Proposal, and Settlement Negotiations

On December 10, 2024, the Parties participated in an all-day mediation with Shirish Gupta, a respected neutral of JAMS San Francisco. *Id.* ¶ 22. The mediation and numerous subsequent negotiations through Mr. Gupta resulted in a mediator's proposal setting forth the general contours of a proposed settlement, which the Parties accepted in principle. *Id.* Of particular note, throughout the litigation, Defendants maintained that: (1) the Thumbnail Generator tool does not generate a scan of face geometry or other biometric data implicating BIPA, and (2) for several reasons, a class covering non-users could not be certified, including because they could not be identified. *Id.* ¶ 23. Defendants also produced technical discovery to substantiate their position, which Plaintiff and his expert reviewed. *Id.* As a result, under the terms of the mediator's proposal, the Settlement Class would be limited to only those registered YouTube users who uploaded and ran the Face Blur tool on a video—not all YouTube users and not YouTube users who only ran the Thumbnail Generator tool but not the Face Blur tool. *Id.*

Significant post-mediation efforts under Mr. Gupta's auspices were necessary to reach agreement on the specific terms of the Settlement. *Id.* ¶ 24. On May 21, 2025, the Parties executed the Settlement now before the Court. *Id.*

## C.    The Settlement

### 1.    Class Definition

The Settlement defines the Settlement Class as: "all residents of the State of Illinois who uploaded a video to YouTube on which Face Blur was run." SA ¶ 1.30. Defendants represent, based on their best estimates, that the Settlement Class contains approximately 16,500 individuals. *Id.* Excluded from the Settlement Class are: (i) any Judge, Magistrate Judge, or mediator presiding over this Action and members of their families; (ii) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its current or former employees, officers, and directors; (iii) persons who timely request exclusion; (iv) persons whose claims have been finally adjudicated or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons. *Id.*

### 2.    Benefits to Settlement Class Members

The Settlement provides a $6,022,500 non-reversionary common fund in favor of the Settlement Class. Settlement Class Members will have 90 days from the Notice Date to submit a claim for payment. SA ¶ 1.5. Each Settlement Class Member with an approved claim will receive a *pro rata* share of the Net Settlement Fund (i.e., after deducing any court-awarded attorneys' fees and costs, service award to the Class Representative, the costs of notice and administration, and tax expenses). *Id.* ¶¶ 1.17, 4.2.

### 3.    Scope of Release

The definition of Released Claims is closely tethered to the facts of this case and Plaintiff's claims.  It is limited to "any and all claims or causes of action, whether known or unknown (including 'Unknown Claims'), arising from or related to Plaintiff's allegations regarding YouTube's possession, collection, capture, storage, use, or disclosure of biometric identifiers, biometric information, or any data derived from images of faces in videos uploaded to YouTube,

including all claims and issues that were asserted or that could have been asserted in the Action and claims for any violation of the BIPA or other Illinois statutory or common law related to alleged scans of face geometry." *Id.*  ¶ 1.24. "No prospective future claims based on conduct occurring after the Effective Date of the Settlement are released by this Settlement." *Id.*  Accordingly, the release here is reasonable in scope.

### 4.    Service Award to Plaintiff

Proposed Class Counsel will seek a modest $5,000 service award for Mr. Colombo, the Class Representative. Joint Decl. ¶¶ 31-32. Mr. Colombo's active participation in this case directly led to the significant recovery for the Settlement Class. *Id.* Indeed, Mr. Colombo meaningfully participated in discovery by responding to interrogatories, collecting and producing documents at counsel's direction (including numerous native videos, emails, and messages), and assisting counsel with discovery meet-and-confers. *Id.* Although Mr. Colombo was not deposed, he was willing to sit for deposition. *Id.* And he willingly stepped into the lead plaintiff role after Brad Marschke, the original plaintiff, withdrew from the case. *Id.* Based on extensive experience with similar class action settlements, Class Counsel believe this amount is reasonable. *Id.* ¶ 33.

### 5.    Attorneys' Fees and Expenses

The Settlement permits proposed Class Counsel to apply to the Court for an award of reasonable attorneys' fees and expenses. SA ¶¶ 11.1-11.5. Any court-approved award of fees and expenses will be paid out of the Settlement Fund upon entry of Final Approval. *Id.* ¶¶ 1.13, 11.2. Defendants have not agreed to the amount of the Fee Award and retain their right to object. Joint Decl. ¶ 34. Proposed Class Counsel intend to seek an award of no more than $1,505,625 in attorneys' fees (representing 25% of the Settlement Amount) and $164,545.09 in expenses. *Id*. ¶ 35.

### 6.    Notice and Administration

Plaintiff, in consultation with Verita Global LLC ("Verita Global"), designed a robust multi-step notice plan intended to reach all Settlement Class Members. SA ¶¶ 6.1-6.2. The notice plan consists of the following:

***Email Notice by Settlement Administrator***. Defendants can generate a list of email addresses that they reasonably believe, based on their records, to be associated with likely

Settlement Class Members (the "Direct Notice List"). *Id.* As such, the Settlement Administrator will send to the Settlement Class notice via email substantially in the form attached as Exhibit B to the Settlement. *Id.* ¶ 6.2(a). Email notice will include a link to a Spanish language version. *Id.*

**Reminder Notice**. No later than 14 days before the Claims Deadline, the Settlement Administrator will send a reminder notice via email to the Direct Notice List. The reminder notice will be substantially in the form attached as Exhibit B to the Settlement, with a link to a Spanish language version. *Id.* ¶ 6.2(b).

**Settlement Website**. The Settlement Administrator will establish a Settlement Website, which will allow Class Members to submit claims for cash relief online and will publish detailed information concerning the Settlement, including information on how to opt out or object to the Settlement. *Id.* ¶ 6.2(c). The notice provided on the Settlement Website will be in English and Spanish, and will be substantially in the form attached as Exhibit A to the Settlement. *Id.*

**Targeted Internet Ad Campaign**. The Settlement Administrator will arrange for an Internet banner ad campaign generating approximately 1,865,000 million impressions targeting Illinois YouTube users and Illinois adults 25-54 years of age via the Meta Audience Network. *Id.* ¶ 6.2(d). The proposed banner ads are attached as Exhibit E to the Settlement. *Id.*

**CAFA Notice**. Defendants will coordinate compliance with 28 U.S.C. §1715 at their own cost. *Id.* ¶ 6.2(e).

Plaintiff selected, and requests that the Court appoint, Verita Global as Settlement Administrator. *Id.* ¶ 1.28. Defendants do not object to this appointment. *Id.* Verita Global anticipates that administration will cost $71,237 to $77,870. *Id.* ¶ 41; Peak Decl. ¶ 40.

## III.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). Whether to approve a class action settlement is committed to the sound discretion of the trial judge. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Heightened scrutiny applies if settlement is achieved prior to certification of a litigated class. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

Rule 23(e)(2) establishes the following factors that courts consider to ensure the proposed settlement is "fair, reasonable, and adequate":

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025).

Courts in the Ninth Circuit have traditionally used a similar multi-factor test to assess whether a given settlement is fair, reasonable, and adequate: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The "key" *Churchill* factors are now "baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis." *Id.*; *accord Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021).

Further, this District has established specific factors to guide whether a proposed settlement should be approved. *See* Procedural Guidance for Class Action Settlements.[3]

---

[3] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

1

IV.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

2

The Settlement satisfies each factor for preliminary approval in the Ninth Circuit and under

3

Rule 23. As explained below, the Settlement provides meaningful relief directly to the Settlement

4

Class, and compares favorably to other data privacy settlements, all while avoiding the considerable

5

risks of continued litigation.

6

A.    Rule 23(e)(2)(B): The Settlement is the Product of Good Faith, Informed,
Arm's-Length Negotiations

7

8

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-

9

collusive, negotiated resolution" in analyzing whether to approve a class action settlement. *In re*

*Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019); *see* Fed. R. Civ. P. 23(e)(2)(B).

10

The instant Settlement is the product of adversarial litigation and is non-collusive.

11

12

For instance, the case was aggressively litigated and resolved after meaningful motion

practice, discovery, and expert workup. Joint Decl. ¶¶ 14-24. Again, Plaintiff successfully opposed

13

a motion to dismiss, extensively met and conferred with Defendants regarding discovery responses

14

and objections, reviewed and analyzed 35,000 pages of documents, videos, and source code change

15

logs produced by Defendants, and consulted with a biometrics expert. *Id.* The Settlement is also the

16

product of mediation with a respected neutral, leading to a mediator's proposal which the parties

17

accepted. *Huntsman v. Sw. Airlines, Co.*, 2018 WL 11371114, at *2 (N.D. Cal. Dec. 5, 2018)

18

(Donato, J.) ("The assistance of an experienced mediator in the settlement process supports the

19

finding that the Settlement is non-collusive."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–

20

00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private

21

mediation "tends to support the conclusion that the settlement process was not collusive"). Thus,

22

Plaintiff was well apprised of the salient legal and factual issues before reaching the decision to

23

settle the action. Joint Decl. ¶¶ 19-21, 48-49. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-

24

cv-00795-IEG-RBB, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive

25

investigation, discovery, and research weighs in favor of preliminary settlement approval.").

26

Moreover, the Parties never discussed attorneys' fees, and the Settlement is not contingent

27

on the award of attorneys' fees—indicative of a fair and arm's-length settlement process. *See*

28

1   *Sadowska v. Volkswagen Grp. of Am., Inc*., No. 11-cv-00665-BRO-AGR, 2013 WL 9600948, at *8

2   (C.D. Cal. Sept. 25, 2013) (approving settlement and finding agreed fees and costs reasonable where

3   "[o]nly after agreeing upon proposed relief for the Class Members, did the Parties discuss attorneys'

4   fees, expenses, and costs"). And the Settlement does not include any indicia of collusion identified

5   by the Ninth Circuit. *In re Bluetooth*, 654 F.3d at 946-47. For instance, there is no clear sailing

6   agreement (Defendant has the right to object to the fee application), and there is no reversionary

7   component of the Settlement, including for unawarded fees. *See Contreras v. Armstrong Flooring,*

8   *Inc*., No. 20-cv-03087-PSG-SK, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021) (settlement

9   without clear sailing or reversionary provisions "does not indicate collusion or inappropriate self-

10   interest").

11       **B.      Rule 23(e)(2)(C): The Relief for the Settlement Class is Substantial**

12       The Settlement provides meaningful relief to the Settlement Class and easily "falls within

13   the range of possible approval."  Indeed, it "has no obvious deficiencies" such that the Court may

14   preliminarily approve the Settlement, order that notice be sent to the Settlement Class, and schedule

15   a Final Approval Hearing. *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL

16   1437101, at *4 (N.D. Cal. Mar. 29, 2019).

17           **1.      The amount offered is fair relative to the costs, risks, and delay of trial**
               **and appeal**

18

19       "In assessing 'the costs, risks, and delay of trial and appeal'" under Rule 23(e)(2)(C)(i),

20   "courts in the Ninth Circuit evaluate 'the strength of the plaintiffs' case; the risk, expense,

21   complexity, and likely duration of further litigation; [and] the risk of maintaining class action status

22   throughout the trial.'" *Wong*, 2021 WL 1531171, at *8. Courts "consider the vagaries of litigation

23   and compare the significance of immediate recovery by way of the compromise to the mere

24   possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms.*

25   *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "In this respect, '[i]t has been held

26   proper to take the bird in hand instead of a prospective flock in the bush.'" *Id.*

27       This litigation is not without serious risk. While Plaintiff was confident in the strength of his

28   claims, Defendants were equally confident in the strength of their defenses. Defendants deny

generating scans of facial geometry regulated by BIPA at all, and further deny connecting the alleged scans to class member identities. In other words, according to Defendants, the Face Blur and Thumbnailer tools at issue do not identify anyone, nor are they capable of doing so. So, under the recently decided *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024) (affirming this Court), if the generated scans "cannot identify, they are not biometric identifiers or biometric information as defined by BIPA." *Id.*, at 1126. *See also G.T. v. Samsung Elecs. Am. Inc.*, No. 21 CV 4976, 2024 WL 3520026, at *7 (N.D. Ill. July 24, 2024) ("BIPA only covers those 'retina or iris scan[s], fingerprint[s], voiceprint[s], or scan[s] of hand or face geometry' that are capable of identifying an individual. Therefore, the fact that the App performs face scans is not dispositive."); *Hartman v. Meta Platforms, Inc.*, No. 3:23-CV-02995-NJR, 2024 WL 4213302, at *10 (S.D. Ill. Sept. 17, 2024) ("Several courts, including this one, have adopted this construction of the term 'biometric identifier' and found that it must be capable of identifying an individual.").

Defendants also steadfastly maintain that the extraterritoriality doctrine precludes recovery. A jury could find that the relevant conduct—the alleged scanning of facial geometry—occurred exclusively on servers located outside of Illinois and reject the Illinois connections to this case, potentially rendering BIPA inapplicable. *See Patel v. Facebook*, Inc., 932 F.3d 1264, 1276 (9th Cir. 2019) ("If the violation of BIPA occurred when Facebook's servers created a face template, the district court can determine whether Illinois extraterritoriality doctrine precludes the application of BIPA"); *see also McLeod v. Bank of Am., N.A.*, No. 16-cv-03294 EMC, 2018 WL 5982863, at *5 (N.D. Cal. Nov. 14, 2018) (granting preliminary approval and recognizing the "risk that a jury could agree with [d]efendants" version of the evidence and liability). At the same time, this hypothetical fact-finding might not have precluded recovery altogether but could present manageability problems requiring decertification at a later stage. *Patel*, 932 F.3d at 1276 ("[I]f future decisions or circumstances lead to the conclusion that extraterritoriality must be evaluated on an individual basis, the district court can decertify the class"); *see also In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").

Even if Plaintiff prevailed at trial on liability, monetary recovery is uncertain. Recovery of damages is discretionary. *See Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929, as modified on denial of reh'g (Ill. July 18, 2023). It is also possible that any statutory damages award would be found to be out of proportion with the alleged offense, in violation of due process, and subject to post-trial reduction. *See, e.g., In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 628 (N.D. Cal. 2021) (Donato, J.), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (noting the "potential for a due process problem when statutory damages are pursued by a large class"); *Golan v. Free Eats.com, Inc*., 930 F.3d 950, 962-63 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million).

Further, any recovery would likely be delayed by appeals, and the litigation could take years to resolve. Even if trial and the inevitable appeals were to be decided in favor of the Settlement Class, any financial award obtained by the Settlement Class would be significantly eroded by the additional costs and fees. And class action trials are inherently risky—seemingly meritorious consumer class actions have gone to trial in California, with judgments returned for defendants. *See, e.g.*, *Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *c.f. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class).

Against this backdrop, the "substantial and immediate relief" provided under the Settlement "weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal." *Kim v. Space Pencil, Inc*., No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012).

### 2.    The amount offered is fair in relation to potential damages

BIPA allows recovery of statutory damages of $1,000 for negligent violations or $5,000 for reckless/willful violations. *See* 740 ILCS 14/20. Given an estimated 16,500 Settlement Class Members, the maximum potential recovery is $82,500,000 assuming willful violations and $16,500,000 assuming merely negligent violations.

Plaintiff's efforts secured $6,022,500 in direct monetary benefits for the Settlement Class, and therefore represents between 7.3% and 36.5% of maximum trial damages, depending on

whether Defendants willfully violated BIPA or were instead negligent.  These ratios meet or exceed other approved settlements in the Ninth Circuit. *E.g.*, *Custom LED, LLC v. eBay, Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JRT, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable"); *In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*, No. SACV 05-8809 JVS (MLGx), 2008 WL 11504857, at *6 (C.D. Cal. Dec. 31, 2008) (approving "settlement [] worth approximately 1.7% of relevant sales"); *McCabe v. Six Continents Hotels, Inc.,* No. 12-cv-04818 NC, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (preliminarily approving settlement representing between 0.3% and 2% of potential recovery).

Importantly, the Settlement compares favorably to many other BIPA class settlements on a gross per person basis.

| Case Name | Settlement Amount | Number of Class Members | Recovery Per Class Member (Gross) |
|---|---|---|---|
| *Colombo v. YouTube LLC* | $6,022,500 | Approx. 16,500 | $365 |
| *In re Facebook Biometric Info. Privacy Litig.,* No. 3:15-cv-03747-JD (N.D. Cal. Aug. 19, 2020) | $650,000,000 | Approx. 7 million | $92 |
| *Rivera v. Google*, No. 1:16-cv-02714 (N.D. Ill.) | $100,000,000 | 5.8 million class members | $17.24 |
| *Hirmer v. ESO Sol's, Inc.*, No. 1:22-CV-01018 (N.D. Ill. Aug. 2024) | $4,101,300 | 6,414 million class members | $640 |
| *Williams v. Personalizationmall.com*, No. 1:20-cv-00025 (N.D. Ill. July 6, 2022) | $4,500,000 | 20,393 class members | $220.66 |
| *Devose v. Ron's Temporary Help Services,* 2019-L-1022 (Will Cnty. Jan. 9, 2023) | $5,375,000 | 17,469 class members | $307.69 |
| *Vaughan v. Biomet USA, Inc.* No. 1:20-cv-04241 (N.D. Ill. Feb. 9, 2023) | $16,750,000 | 66,822 class members | $250.66 |
| *Figueroa v. Kronos Inc.*, No. 1:19-cv-01306 (N.D. Ill. Feb. 10, 2022) | $15,276,227 | Approximately 171,643 class members | $89 |

| Case Name | Settlement Amount | Number of Class Members | Recovery Per Class Member (Gross) |
|---|---|---|---|
| *Prelipceanu v. Jumio Corp.*, 2018 CH 15883 (Cir. Ct. Cook Cnty. July 21, 2020) | $7 million | Approximately 260,000 | $27 |

In sum, "as with most class actions, there was risk to both sides in continuing towards trial." *Chester v. TJX Cos., Inc.*, No. 5:15-cv-01437-ODW-DTB, 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). "The settlement avoids uncertainty for all parties involved." *Id.*

### 3.    The proposed method of distributing relief to the class is straightforward and effective

The proposed method of distributing relief is routine and effective. The parties have agreed upon an experienced administrator to administer the settlement. The claim form is a simple online form in which Class Members will be able to choose a payment option (and a paper form is also available). SA ¶¶ 1.4, 4.1-4.7. The administrator will mail checks to those who request it. *Id.* ¶¶ 4.3. And Class Members submitting a timely and valid claim will receive a *pro rata* cash payment. *Id.* ¶ 4.2. *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 628 (method of distributing payments was "straightforward and effective" where class members "fill out a simple claim form, online or in hard copy, and choose their preferred form of payment among several online options or by a check").

### 4.    The terms and timing of the proposed award of attorneys' fees and costs are fair and reasonable

The terms and timing of the proposed award of attorneys' fees and costs are also fair and reasonable. Class Counsel will seek approval of attorneys' fees in an amount not to exceed $1,505,625, plus $164,545.09 in costs (which include filing fees, mediation, and expert engagements). Any court-approved fees and costs will be paid from the common fund upon entry of the Final Judgment.[4] SA ¶ 11.2. Importantly, relief for the Settlement Class is not contingent

---

[4] The payment of attorneys' fees upon award helps deter meritless objections and is often approved in this District. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *40 (N.D. Cal. July 22, 2020) ("[Q]uick-pay provisions have long been accepted in the appropriate circumstances."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07–

upon approval of the requested attorneys' fees and costs and Defendants retain the right to object. *Id.*

Plaintiff respectfully submits that the requested attorneys' fees, which will be the subject of a standalone motion, are reasonable. The fee amounts to 25% of the common fund, consistent with the well-accepted "percentage-of-the-fund" method and the Ninth-Circuit's 25% benchmark. *Tabak v. Apple, Inc*., No. 19-CV-02455-JST, 2024 WL 4642877, at *4 (N.D. Cal. Oct. 30, 2024) (25% is the "prevailing benchmark for percentage fee awards in the Ninth Circuit"). To date, Class Counsel has spent 6,625.4 hours litigating this matter, which equates to $3,183,311.50 in lodestar. Joint Decl. ¶ 36. This results in a negative multiplier of -0.473. Class Counsel further anticipate accruing additional lodestar to get this case through settlement administration and final approval. *Id.*

### 5.    The experience and views of Class Counsel

Proposed Class Counsel, who are experienced in consumer class action litigation, including BIPA cases, believe the Settlement represents a very good recovery for the Settlement Class given the risks of continuing the litigation. Joint Decl. ¶¶ 47-49. Proposed Class Counsel are also knowledgeable in the applicable statutes and causes of action at issue here, having successfully resolved many BIPA and data privacy class actions. *Id.* ¶¶ 3-13. "That counsel advocate in favor of this Settlement weighs in favor of its approval." *Tabak v. Apple, Inc*., No. 19-CV-02455-JST, 2024 WL 4642877, at *6 (N.D. Cal. Oct. 30, 2024).

### C.    Rule 23(e)(2)(D): Equitable Allocation of the Settlement

The settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The *pro rata* allocation of the Settlement is fair and reasonable because it provides

---

md–1827, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) ("With respect [to] the 'quick pay' provisions, Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions.") (collecting cases); *see also Krommenhock v. Post Foods, LLC*, No. 16-cv-04958-WHO, 2021 WL 2910205, at *2 (N.D. Cal. June 25, 2021) (approving quick pay of attorneys' fees and costs); *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2021 WL 5706967, at *2 (N.D. Cal. Nov. 23, 2021) (same); *Hanson v. Welch Foods Inc.*, No. 3:20-cv-02011-JCS, 2022 WL 1133028, at *2 (N.D. Cal. Apr. 15, 2022) (same); *cf. Pelzer v. Vassalle*, 655 Fed. App'x 352, 365 (6th Cir. 2016) ("over one-third of federal class action settlement agreements in 2006 included quick-pay provisions" and they do "not harm the class members in any discernible way . . . .").

equal relief to all class members who make a claim and is consistent with the distribution of funds in other settlements of common fund class cases. *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d at 629 (distribution providing "pro rata" share of common fund treated class members equitably to one another and "weigh[ed] in favor of final approval").

Additionally, service awards are justified "to compensate class representatives for work undertaken on behalf of a class," and are "fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 79 F.3d 934, 943 (9th Cir. 2015). "In the Ninth Circuit, a $5,000 incentive award is presumptively reasonable." *Farrar v. Workhorse Grp., Inc.*, No. CV2102072CJCPVCX, 2023 WL 5505981, at *11 (C.D. Cal. July 24, 2023) (quotation marks omitted*); In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 634 ("award[ing] $5,000 to each of the three named plaintiffs."). Here, Plaintiff's counsel will seek a reasonable and proportionate service award for Mr. Colombo of no more than $5,000. And like attorneys' fees, the Settlement is not contingent upon the service award.

## V.    THE SETTLEMENT CLASS SHOULD BE CONDITIONALLY CERTIFIED

"Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes." *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). To conditionally certify a class, a court must determine that the proposed Settlement Class satisfies the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). The proposed Settlement Class easily satisfies these criteria.

### A.    The Settlement Class Is So Numerous that Joinder of All Settlement Class Members Is Impracticable

Rule 23(a)(1) requires "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "Although there is no exact number, some courts have held that numerosity may be presumed when the class comprises forty or more members." *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 398 (N.D. Cal. 2021). Here, according to Defendants' records, there are an estimated 16,500 Settlement Class members. SA ¶ 1.30; Joint Decl. ¶ 26. Thus, the Settlement Class is sufficiently numerous.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.      Questions of Law and Fact Are Common to the Settlement Class**

The commonality requirement is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A single common question of law or fact satisfies this requirement. *Id.* at 369. *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (characterizing commonality as a "limited burden").

Here, for purposes of settlement, the proposed Settlement Class's claims all stem from the same factual circumstances—use of the Face Blur tool across one or more videos uploaded to YouTube. Plaintiff's claims present a number of questions of law and fact that are common to all members of the Settlement Class, including (1) whether Defendants generated scans of face geometry as defined by BIPA, (2) whether the generated facial scans can be used to identify the individual, and (3) whether Defendants failed to obtain written consent, or publish retention and destruction policies, mandated by BIPA. The central factual issues and their legal consequences are thus common to all Settlement Class members, and Plaintiff seeks the same remedy as the Settlement Class.

**C.      Plaintiff's Claims Are Typical of the Settlement Class**

A plaintiff's claims satisfy the typicality requirement of Rule 23(a)(3) if they arise from the same event, practice, or course of conduct that gives rise to claims of other class members, and the claims asserted are based on the same legal theory. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("[C]laims are 'typical' if they are reasonably co-extensive with those of absent Class Members; they need not be substantially identical."). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).

In this case, for purpose of settlement, the claims raised by Plaintiff on behalf of himself and the Settlement Class arise from the Defendants' same course of conduct, as specified in the SAC,

and are based on the same legal theories. Plaintiff is part of the class he seeks to represent, suffered the same alleged harm and, thus, satisfies the typicality requirement.

### D.  Plaintiff and Plaintiff's Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class," which requires that the named plaintiffs (1) not have conflicts of interest with the proposed Class; and (2) be represented by qualified and competent counsel. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018).

Here, Plaintiff has fairly and adequately protected the interests of the Settlement Class (and will continue to do so). Joint Decl. ¶¶ 31-33. He possesses the same interests and suffered the same alleged injury as the Settlement Class. He "actively participated in the prosecution of this case" including responding to discovery requests under oath and producing requested documentation. *Norton v. LVNV Funding, LLC*, No. 18-cv-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021). While Plaintiff was not deposed, he was willing and able. And "[t]here are no indications that [Plaintiff] has failed to adequately represent the interests of the class." *Moreno v. Cap. Bldg. Maint. & Cleaning Servs., Inc.*, 19-cv-07087-DMR, 2021 WL 1788447, at *10 (N.D. Cal. May 5, 2021).

Further, Plaintiff retained counsel with experience and expertise in litigating consumer class actions, and counsel dutifully pursued this litigation to obtain important relief on behalf of the Settlement Class. Joint Decl. ¶¶ 3-24. Plus, counsel have dedicated substantial time and resources to this case on a contingency basis while facing a real risk of recovering nothing. *Id.* Given the retention of experienced counsel and Plaintiff's efforts in litigating this matter, the adequacy requirement is readily satisfied. *See In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (in evaluating adequacy of representation, court may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013) ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs

1    are represented by experienced and competent counsel who have litigated numerous class action

2    cases.").

3        **E.    The Settlement Class Meets the Requirements of Rule 23(b)(3)**

4        *Predominance*. Rule 23(b)(3) first requires "predominance," which tests the cohesion of the

5    class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent

6    or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v.*

7    *Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Predominance is ordinarily satisfied, for

8    settlement purposes, when the claims arise out of the defendant's common conduct. *Gold v. Lumber*

9    *Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (predominance satisfied where claims were

10   based on "the same deceptive conduct"); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,

11   No. 3:16-CV-05486, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) ("Predominance is satisfied

12   because the overarching common question . . . can be resolved using the same evidence for all class

13   members and is exactly the kind of predominant common issue that makes certification

14   appropriate.").

15        Here, Plaintiff's and the proposed Settlement Class's claims are based on the same common

16   contention and course of conduct: Defendants allegedly generated scans of facial geometry from

17   videos uploaded to YouTube through the Face Blur tool without seeking prior informed written

18   consent and without posting a publicly available retention policy for biometric data. This contention

19   raises several issues of law and fact common to the Settlement Class, including: (1) whether

20   Defendants collected, captured, or otherwise obtained Plaintiff's and the Settlement Class's

21   "biometric identifiers" or "biometric information" (as defined by 740 ILCS 14/10); (2) whether

22   Defendants properly informed Plaintiff and the Settlement Class of the purposes for collecting,

23   using, and storing their biometric identifiers or biometric information; (3) whether Defendants

24   obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and

25   the Settlement Class's biometric identifiers or biometric information; (4) whether Defendants

26   developed a written policy, made available to the public, establishing a retention schedule and

27   guidelines for permanently destroying biometric identifiers and biometric information; (5) whether

28   Defendants could have used Plaintiff's and the Settlement Class's facial scans to identify them; and

(6) whether Defendants' alleged violations of BIPA were committed negligently or willfully (740 ILCS 14/20, providing $1,000 in damages per negligent violation, or $5,000 in damages per willful violation). Because each of these questions will have a common, classwide answer, the predominance requirements are satisfied for settlement purposes. *See In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) (finding commonality and predominance met in BIPA case).

*Superiority.* The superiority requirement asks whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior where the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims." *Just Film Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017).

Here, a class action is the only reasonable method to fairly and efficiently adjudicate Class Members' claims against Defendants. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [In such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available."). Resolution of the predominant issues of fact and law through individual actions is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See In re Facebook Biometric Info. Priv. Litig.,* 326 F.R.D. at 548 ("A class action is clearly superior to individual proceedings here.").

## VI.    THE PROPOSED NOTICE PLAN IS APPROPRIATE

Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule provides, "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. The best practicable notice is that which is "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." *Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (cleaned up).

As explained above, the parties devised a multi-step notice plan designed to provide all necessary information to Settlement Class Members to enable them to make a well-informed decision about their participation in the Settlement. *Supra*, Section II.C.6. First, Defendants will provide the Settlement Administrator with a list of e-mail addresses for YouTube users who Defendants have identified based on Defendants' data, are most likely to be within the Settlement Class. Because registering for YouTube requires an email account, the parties expect that valid email addresses exist for most Class Members. Second, the Settlement Administrator will send notice via email (with a link to a Spanish language version) to each email address on the Direct Notice List. Third, the Settlement Administrator will send a reminder email notice to the Direct Notice List no later than 14 days before the Claims Deadline. Fourth, notice will be given through an internet banner ad campaign generating approximately 1,8655,000 million impressions targeting Illinois YouTube users and Illinois adults 25-54 years of age via the Meta Audience Network. Fifth, the Settlement Administrator will establish a Settlement Website, where Class Members can review relevant documents, important dates, and deadlines. Sixth, Defendants will issue notice to the relevant government officials under 28 U.S.C. § 1715 at Defendants' own cost.

Plaintiff respectfully submits that the proposed Notice Plan represents the best notice practicable. It is consistent with other court-approved notice plans, the requirements of Fed. Civ. P. 23(c)(2)(B), the Northern District of California Procedural Guidance for Class Action Settlements (Guidance # 3), and the Federal Judicial Center ("FJC") guidelines for adequate notice. In light of this comprehensive plan, the Court should approve the notice plan and appoint Verita Global as the Settlement Administrator. Verita Global, which has successfully administered this Court's *Facebook* settlement, has significant experience administering class action settlements and anticipates that the proposed plan will provide the best notice practicable. Peak Decl. ¶¶ 6-12.

VII.    **THE SETTLEMENT CONFORMS TO THE DISTRICT'S PROCEDURAL GUIDANCE FACTORS**

The Northern District of California's Procedural Guidance for evaluating class action settlements applies here. Plaintiff submits these guidance factors support preliminary approval and briefly address them below.

A.      **Guidance 1a-b (differences between settlement class and operative complaint)**

The putative class asserted in the operative Second Amended Complaint is "[a]ll residents of the State of Illinois who, while located in Illinois, had their faceprints or face templates collected, captured, received, or otherwise obtained by Defendants through videos uploaded to YouTube within Illinois." SAC ¶ 91. The Settlement Class is phrased differently—"all residents of the State of Illinois who uploaded a video to YouTube on which Face Blur was run." SA ¶ 1.30. The differences are appropriate based on the information and legal argument exchanged during litigation. First, the Settlement Class is limited to users who personally "uploaded a video" in order to exclude non-users. Prevailing at class certification regarding non-users presents challenges that do not exist for registered users, including because nonusers cannot reasonably be identified. Second, the Settlement Class now expressly mentions the Face Blur functionality, whereas the prior class description was broader to account for the Second Amended Complaint's allegations about a separate YouTube function, Thumbnail Generator. This change is based on discovery exchanged in the litigation and Plaintiff's expert's review of relevant discovery. The technology underlying Thumbnail Generator differs significantly from Face Blur and, according to Defendant's materials, does not generate a face template or scan of face geometry covered by BIPA. Thus, Defendants have stronger arguments against a potential BIPA violation with respect to Thumbnail Generator.

B.      **Guidance 1c (actual and potential class recovery)**

The actual and potential class recovery is discussed above. *Supra*, Section IV.B.2. (explaining the Settlement represents between 7.3% and 36.5% of maximum trial damages depending on whether Defendants' BIPA violations were willful or negligent).

C.      **Guidance 1d (other affected cases)**

The Settlement does not affect other pending litigation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.    Guidance 1e (allocation plan)

The plan of allocation for the settlement fund is discussed above. *Supra*, Section IV.C. (discussing equal *pro rata* payments).

### E.    Guidance 1f (expected claim rate)

A recent Federal Trade Commission study, based on data from more than 100 consumer class action settlements, calculated the weighted mean claims rate as 4%-5% and the median claims rate as 9%.[5] The FTC "calculated claims rates as a percentage of direct notice recipients."[6] *See also In re Online DVD–Rental Antitrust Litig.,* 779 F.3d 934, 941 (9th Cir. 2015) (approving settlement where direct notice sent to 35 million class members with 1,183,444 claims made, representing a 3.4% claim rate). Where notice is provided by publication exclusively, claims rates are often lower. *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 WL 4474366, at *4 (N.D. Cal. Aug. 25, 2016) (stating that, "[i]n an analysis of settlements where notice relied on media notice exclusively, the claims rate ranged between 0.002% and 9.378%, with a median rate of 0.023%"); *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent").

Claims rates in BIPA cases typically range between 10% and 20% in part because the individual settlement awards are relatively large and direct notice is often possible. Given the robust notice plan, Plaintiff expects this case to be no different. *See, e.g., In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747-JD, 2021 WL 757025, at *1 (N.D. Cal. Feb. 26, 2021) (22% claims rate in BIPA settlement); *Baldwin v. Metrostaff*, No. 19 CH 04285 (Ill. Cir. Ct., Cook Cnty.) (BIPA settlement with about 11% claims rate and 19,863 class members); *Sykes v. Clearstaff*, 19 CH 03390 (Cir. Ct. Cook Co.) (BIPA settlement with about 14% claims rate and 8,510 class members); *Sekura v. L.A. Tan Enters., Inc.*, No. 2015-CH-16694 (Ill. Cir. Ct., Cook Cnty. Dec. 1, 2016) (BIPA

---

[5] *See* Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019), pp. 21-22, 27, available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf.

[6] *Id.* at 22 n.38.

settlement with about 15% claims rate); *Kusinski v. ADP LLC*, No. 2017-CH-12364 (Ill. Cir. Ct., Cook Cnty. Feb. 10, 2021) (13% claims rate in BIPA settlement); *Thome v. NovaTime Tech., Inc.*, No. 1:19-cv-06256 (N.D. Ill. Mar. 8, 2021), Dkt. 90 (BIPA settlement with 10% claims rate and 62,000 person class); *Prelipceanu v. Jumio Corp.*, No. 18-CH-15883 (Ill. Cir. Ct., Cook Cnty. July 21, 2020) (BIPA settlement with 5% claims rate and 260,000 person class).

### F.    Guidance 1g (reversion)

The Settlement is non-reversionary.

### G.    Guidance 2 (settlement administration)

Plaintiff selected Verita Global as the Settlement Administrator, and Defendants do not oppose. Over the past two years, Plaintiff's counsel has engaged Verita Global over 25 times. Joint Decl. ¶ 38 Peak Decl. ¶¶ 9-11. Neither counsel nor the parties have any ownership interest or familial affiliation with Verita Global. *Id.* Verita Global's procedures for securely handling class member data and maintenance of professional liability insurance are discussed in the accompanying declaration. Peak Decl. ¶¶ 32-27.

Verita Global's anticipated notice and administration fees are $71,237 to $77,870. *Id.* ¶ 40. In counsel's experience, the estimated settlement administration costs are reasonable. The settlement administration costs will be paid out of the settlement fund established by Defendants.

### H.    Guidance 3 (class notice)

The comprehensive notice plan is discussed above. *Supra*, Section VI. Consistent with this District's guidance, the class notice is easily understandable and provides (1) contact information for class counsel to answer questions, (2) the settlement website address, (3) key deadlines, and (4) instructions on how to access the case docket.

### I.    Guidance 4 (opt-outs)

The proposed notices collectively instruct Class Members who wish to opt out to send an email or letter to the Settlement Administrator setting forth their name and intent to opt out of settlement. The notices clearly advise class members of the deadline to opt out and the consequences of opting out. *See* SA Ex. A (long form notice) ¶ 16; Ex. B (email notice).

1

**J.    Guidance 5 (objections)**

2    The proposed long form notice contains nearly the exact language recommended by the

3    Northern District Guidelines, with Class Counsel making clear that the objections must be submitted

4    only to the court and postmarked by no later than the objection date. SA, Ex. A (long form notice)

5    ¶ 19.

6    The proposed short form notice contains high-level instructions regarding objecting to the

7    settlement and directs Class Members to the Settlement Website for more information. SA, Ex. B

8    (email notice). Given that all Settlement Class Members are YouTube account holders, access to the

9    Settlement Website should be readily available for all Settlement Class Members.

10    **K.    Guidance 6 (attorneys' fees and costs)**

11    Class Counsel's application for attorneys' fees and costs, including the dollar amount,

12    percentage of fund, and lodestar information, are discussed above. *Supra*, Section IV.B.4.

13    **L.    Guidance 7 (service awards)**

14    Class Counsel will seek a $5,000 service award for the lead Plaintiff in recognition of his

15    participation in this litigation. Class Counsel submit the proposed award is reasonable and in line

16    with awards approved by federal courts in California. *Supra*, Sections IV.C., II.C.4.

17    **M.    Guidance 8 (cy pres)**

18    The Settlement only provides *cy pres* payments as a last resort. Specifically, to the extent a

19    check issued to a Settlement Class Member is not cashed within 120 days or an electronic deposit

20    is unable to be processed within 120 days, such funds will remain in the Settlement Fund and be

21    apportioned *pro rata* to participating Settlement Class Members in a second distribution, if

22    economically feasible. SA ¶ 4.6. But to the extent any second distribution is impracticable or such

23    residual funds remain in the Settlement Fund after an additional 90 days, the funds will be distributed

24    *cy pres* to the American Civil Liberties Union (ACLU) of Illinois. *Id.*

25    The ACLU of Illinois is a non-partisan, non-profit organization dedicated to protecting the

26    liberties guaranteed by the U.S. Constitution, the state Constitution, and state/federal human rights

27

28

laws.[7] The ACLU accomplishes its goals through litigating, lobbying and educating the public on a broad array of civil liberties issues. *Id.* The Parties and their counsel have no preexisting business or personal relationship with the ACLU of Illinois. Joint Decl. ¶ 46.

**N.    Guidance 9 (timeline)**

Consistent with the District's guidance, Settlement Class Members will have at least 35 days to opt out or object to the Settlement and motion for attorneys' fees. The proposed Objection/Exclusion deadline is 21 calendar days before the Final Approval Hearing. SA ¶ 1.20.

Settlement Class Members will also have 90 days following the Notice Date to submit a claim. *Id.* ¶ 1.5.

**O.    Guidance 10 (CAFA)**

Under the Settlement, Defendants will provide CAFA notice at their own cost. SA ¶ 6.2(e).

**P.    Guidance 11 (comparable outcomes)**

Comparable settlements in BIPA class actions are listed above. *Supra*, Section IV.B.2.

**VIII.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests an order (1) preliminarily approving the Settlement, (2) provisionally certifying the Settlement Class, (3) appointing Class Counsel and the Class Representative, and (4) approving the proposed notice plan.

Dated: May 21, 2025

/s/  Stuart A. Davidson

Stuart A. Davidson (*pro hac vice*)
Alexander C. Cohen (*pro hac vice*)
ROBBINS GELLER RUDMAN & DOWD LLP
225 NE Mizner Boulevard, Suite 720
Boca Raton, Florida 33432
Telephone: 561/750-3000
sdavidson@rgrdlaw.com
acohen@rgrdlaw.com

Aelish M. Baig (SBN 201279)
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
aelishb@rgrdlaw.com

---

[7] https://www.aclu-il.org/en/about/about-us.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GARY M. KLINGER (*pro hac vice*)
gklinger@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866-252-0878

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
JOHN J. NELSON (SBN 317598)
jnelson@milberg.com
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: 872-365-7060

Attorneys for Plaintiff