1  AELISH M. BAIG (SBN 201279)
   **ROBBINS GELLER RUDMAN & DOWD LLP**
2  Post Montgomery Center
   One Montgomery Street, Suite 1800
3  San Francisco, CA  94104
   Telephone:  415/288-4545
4  415/288-4534 (fax)
   aelish@rgrdlaw.com
5  jgelman@rgrdlaw.com

6  STUART A. DAVIDSON (*pro hac vice*)
   ALEXANDER C. COHEN (*pro hac vice*)
7  **ROBBINS GELLER RUDMAN & DOWD LLP**
   225 NE Mizner Boulevard, Suite 720
8  Boca Raton, FL  33432
   Telephone:  561/750-3000
9  561/750-3364 (fax)
   sdavidson@rgrdlaw.com
10 acohen@rgrdlaw.com

11 Attorneys for Plaintiff

12

13

14                 **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16 NATHAN COLOMBO, individually and on       CASE NO. 3:22-CV-06987-JD
   behalf of all others similarly situated,
17                                            **JOINT DECLARATION OF COUNSEL**
                                              **IN SUPPORT OF MOTION FOR**
18                Plaintiff,                   **PRELIMINARY APPROVAL OF CLASS**
                                              **ACTION SETTLEMENT**
19         vs.

20 YOUTUBE, LLC and GOOGLE LLC,

21                Defendants.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### JOINT DECLARATION

We, Stuart A. Davidson and Gary M. Klinger, declare as follows.

1.     We are counsel of record for Plaintiff and the proposed Settlement Class[1] and submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). Except as otherwise noted, we have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

2.     Attached to the Settlement Agreement are the following Exhibits, the form and substance of which have been agreed to by the Parties and are submitted with the Motion for the Court's approval:

Exhibit A:     Long Form Notice

Exhibit B:     Email Notice

Exhibit C:     Claim Form

Exhibit D:     Proposed Preliminary Approval Order

Exhibit E:     Internet Banner Advertisement

### Counsel Qualifications

**Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP**

3.     Stuart Davidson is a partner in Robbins Geller Rudman & Dowd LLP's ("RGRD") Boca Raton office. His practice focuses on complex consumer class actions, including cases involving deceptive and unfair trade practices, privacy and data breach issues, and antitrust violations. He has served as class counsel in some of the nation's most significant privacy and consumer cases, including: *In re Facebook Biometric Information Privacy Litigation,* No. 3:15-cv-03747-JD (N.D. Cal.) ($650 million recovery in a cutting-edge class action concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement ("Settlement Agreement" or "SA").

consent); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-md-02752-LHK (N.D. Cal.) ($117.5 million recovery in the largest data breach in history); *Kehoe v. Fidelity Federal Bank & Trust*, No. 9:03-cv-80593-DTKH (S.D. Fla.) ($50 million recovery in Driver's Privacy Protection Act case on behalf of half-a-million Florida drivers against a national bank); *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, No. 3:11-md-02258-AJB-MDD (S.D. Cal.) (settlement valued at $15 million concerning the massive data breach of Sony's PlayStation Network); and *In re Solara Medical Supplies Data Breach Litigation*, No. 3:19-cv-02284-H-KSC (S.D. Cal.) ($5 million all-cash settlement for victims of healthcare data breach).

4.     RGRD is the largest class action firm in the world, with approximately 200 lawyers in ten offices throughout the country, including one in Melville.[2] RGRD and its attorneys, often as sole lead counsel, have recovered over $50 billion for aggrieved class members, achieving numerous record-setting class recoveries, including:

- *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-5893 (N.D. Ill.) ($1.575 billion, largest ever post-verdict fraud settlement);

- *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (over $17 billion recovered, the largest ever consumer class settlement);

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (as sole lead counsel, recovered over $7 billion for a class of injured shareholders – the largest recovery ever obtained in any shareholder action in history); and

- *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) (Plaintiffs' Executive Committee in sprawling MDL concerning nationwide prescription opioid epidemic, recovering to date over $50 billion).

5.     RGRD's resources to prosecute a major MDL also stands apart from many other firms. Plaintiffs should be represented by counsel with the resources to match the well-funded counsel that their adversaries have retained. RGRD is well capitalized, has never utilized outside litigation funding (and did not here), and has the most robust human, technological, investigatory, and financial resources in our field. Proof of our resources lies in our multi-decade track record of successfully prosecuting complex actions requiring tremendous financial resources. As just one

---

[2]     *See generally* https://www.rgrdlaw.com/.

JOINT DECL. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-CV-06987-JD

1  example, in *Jaffe* (noted above), RGRD expended $35 million in actual, out-of-pocket expenses

2  over 14 years to try the case to a jury verdict, fought the appeal that partially reversed the judgment,

3  then sent over a dozen lawyers and support staff to Chicago for several weeks to prepare for and try

4  the case a second time before finally settling on the morning of trial for a record $1.575 billion.

5        6.      Besides RGRD's substantial human and capital resources, RGRD has among the

6  most extensive technological resources of any firm in the country. The firm boasts an unparalleled

7  high-speed disk system that is highly scalable and can host, onsite, a nearly limitless amount of data.

8  We also use the most advanced document-review platforms, which, combined with our disk storage

9  capabilities, enable us to host extremely large document productions and dramatically reduce the

10  cost paid to outside vendors. Using RGRD's in-house Relativity platform, with AI tools built-in, in

11  large class actions has served our clients and class members very well. I am committed, without

12  reservation or delay, to bring to bear our substantial resources to ensure a timely and successful

13  result here on behalf of the Settlement Class.

14        7.      Robbins Geller's firm resume is attached as **Exhibit 2**.

15  **Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC**

16        8.      Gary M. Klinger is a Senior Partner at the international plaintiffs' class action law

17  firm Milberg and Chair of Milberg's Cybersecurity and Data Privacy Practice Group. Located in

18  Chicago, Illinois, Mr. Klinger is one of the leading data privacy attorneys in the United States,

19  having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation

20  (2024)[3] and selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in

21  privacy litigation (2024).[4] Law360 recently highlighted Mr. Klinger's work in the privacy space.[5]

22  His privacy practice includes: data breaches, ransomware attacks, unlawful collection and/or

23  disclosure of personal information, and violations of privacy statutes and/or laws, such as the Illinois

24

25  [3] See https://chambers.com/lawyer/gary-klinger-usa-5:26875006. Only three plaintiffs' lawyers in

26  the country received the distinction of being ranked by Chambers and Partners for Privacy & Data
   Security Litigation.

27  [4] See https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-
   in-america.

28  [5] See https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

JOINT DECL. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-CV-06987-JD

1   Biometric Information Privacy Act (BIPA), Illinois Genetic Information Privacy Act, California

2   Consumer Privacy Act, California Medical Information Act, Telephone Consumer Protection Act,

3   and General Data Protection Regulation.

4       9.      Mr. Klinger has extensive experience serving as lead or co-lead counsel in numerous

5   privacy class actions and has been appointed by state and federal courts to act as Class Counsel for

6   millions of consumers while recovering hundreds of millions of dollars.  His experience includes

7   litigating and successfully resolving class actions under BIPA, the statute at issue in this litigation.

8   *E.g., Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.)

9   (BIPA class action where Mr. Klinger served as lead counsel and obtained a $64.5 million settlement

10  for 4 million consumers); *Boone v. Snap, Inc*., Case No. 2022LA000708 (18th Cir. DuPage Cty.,

11  Ill.) (BIPA class action where Mr. Klinger served as lead counsel and obtained a $35 million

12  settlement for 3 million consumers). He also has deep experience with data privacy litigation. *E.g.,*

13  *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg

14  attorneys largely defeated a motion to dismiss in a data breach class action involving 3 million

15  consumers, and case later settled for $21 million); *Flores v. Aon Corp.*, 2023 IL App. (1st) (230140)

16  (reversing dismissal of data breach class action); *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-

17  cv-01883 (N.D. Ill. Oct. 27, 2021) (data breach class action where Mr. Klinger served as lead

18  counsel and reached settlement valued at over $17 million).

19      10.     Mr. Klinger graduated from the University of Illinois at Urbana-Champaign in 2007

20  (B.A. Economics), and from the University of Illinois College of Law in 2010. He is a Certified

21  Information Privacy Professional (CIPP/US) and a member of the International Association of

22  Privacy Professionals.

23      11.     Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases

24  that have set groundbreaking legal precedents, prompted changes in corporate governance, and

25  recovered over $50 billion in verdicts and settlements.[6] Milberg has been instrumental in obtaining

26

27  _____
    [6] *See, e.g., In re Tyco Int'l Ltd., Securities Litig.*, MDL 1335 (D. N.H.) (serving as lead counsel and

28  obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No.

1    precedent setting decisions at every level, including at the U.S. Supreme Court.[7] The firm is widely

2    recognized as a leader in defending the rights of victims of corporate and other large-scale

3    wrongdoing.

4           12.    The firm has ample resources (both financial and personnel, with over 100+ attorneys

5    at the firm) to fully and adequately represent the interests of the proposed class here. Mr. Klinger is

6    fully aware of the financial and human resources that will be required to bring this case to a

7    successful conclusion and the Court should have no reservations that his firm has and is willing to

8    commit those resources for the benefit of the proposed Settlement Class.

9           13.    Milberg's firm resume is attached as **Exhibit 3**.

10                                    **The Litigation**

11          14.    This case involves Defendants' "Face Blur" and "Thumbnail Generator" tools, which

12    allegedly capture individuals' facial biometrics from videos uploaded to YouTube. Plaintiff alleged

13    both tools generated scans of face geometry as defined by BIPA and, thus, Defendants violated

14    BIPA by failing to obtain the necessary informed written consent or providing data retention and

15    destruction policies to consumers.

16          15.    On August 30, 2022, the original named plaintiff, Brad Marschke, filed the putative

17    class action complaint in the United States District Court for the Southern District of Illinois. On

18    October 20, 2022, the Parties jointly stipulated to transfer the case to the United States District Court

19    for the Northern District of California.

20          16.    On January 31, 2023, Defendants filed a motion to dismiss the amended complaint.

21          17.    During the pendency of Defendants' motion to dismiss, the original named plaintiff

22    determined that he no longer wished to pursue his claims against Defendants due to the time

23    commitment necessary to participate in the discovery process and was substituted by Plaintiff

24    Nathan Colombo in the Second Amended Complaint ("SAC") filed June 13, 2023.

25

26    ───────────────

27    95-4704 (D. N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders);
      *see also* https://milberg.com/outstanding-recoveries/.

28    [7] *See* https://milberg.com/precedent-setting-decisions/page/3/.

JOINT DECL. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-CV-06987-JD

18.     On June 23, 2023, the Court denied YouTube's motion to dismiss.

19.     Subsequently, the Parties conducted significant fact discovery, including Defendants' production and Plaintiff's counsel's review and analysis of 35,000 pages of documents, videos, and source code change logs, as well as significant productions of documents and videos by Plaintiff.

20.     Following significant discovery, the Parties agreed to participate in private mediation.

21.     Of note, in advance of mediation, Plaintiff retained Dr. S. Berlin Brahnam, a biometrics expert and professor at Missouri State University, to assist with the review and interpretation of Defendants' technical documents. Dr. Brahnam shared her opinions on the Face Blur and Thumbnail Generator tools with Plaintiff's counsel and informed Plaintiff's assessment of the claims and allegations. The Parties also prepared and exchanged detailed mediation briefs that discussed the claims, defenses, and alleged damages in advance of the mediation.

22.     On December 10, 2024, the Parties participated in an all-day mediation with Shirish Gupta, a respected neutral of JAMS San Francisco. The mediation and numerous subsequent negotiations through Mr. Gupta resulted in a mediator's proposal setting forth the general contours of a proposed settlement, which the Parties accepted in principle.

23.     Importantly, throughout the litigation, Defendants maintained that: (1) the Thumbnail Generator tool detects generic facial characteristics in an image without generating a face template or scan of face geometry, and (2) a class covering non-users could not be certified. Defendants also produced technical discovery to substantiate their position, which Plaintiff and his expert reviewed. As a result, under the terms of the mediator's proposal, the Settlement Class would be limited to only those registered YouTube users who uploaded and ran the Face Blur tool on a video—not all YouTube users and not YouTube users who only ran the Thumbnail Generator tool but not the Face Blur tool.

24.     Significant post-mediation efforts under Mr. Gupta's auspices were necessary to reach agreement on the specific terms of the Settlement. Each aspect of the Settlement Agreement was heavily negotiated. On May 21, 2025, the Parties executed the Settlement before the Court.

**The Settlement**

**Class Definition**

25.     The Settlement defines the Settlement Class as: "all residents of the State of Illinois who uploaded a video to YouTube on which Face Blur was run." SA ¶ 1.30. Excluded from the Settlement Class are: (i) any Judge, Magistrate Judge, or mediator presiding over this Action and members of their families; (ii) YouTube, YouTube's subsidiaries, parent companies, successors, predecessors, and any entity in which YouTube or its parents have a controlling interest and its current or former employees, officers, and directors; (iii) persons who timely request exclusion; (iv) persons whose claims have been finally adjudicated or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

26.     According to Defendants' records, there are an estimated 16,500 Settlement Class members.

**Benefits to Settlement Class Members**

27.     The Settlement provides a $6,022,500 non-reversionary common fund in favor of the Settlement Class. Given the estimated 16,500 Settlement Class Members, the $6,022,500 non-reversionary fund equates to a $365 gross recovery per class member.

28.     Each Settlement Class Member with an approved claim will receive a *pro rata* share of the Net Settlement Fund (i.e., after deducing any court-awarded attorneys' fees and costs, service award to the Class Representative, the costs of notice and administration, and tax expenses).

29.     After deducting an estimated $1,748,665.09 in attorneys' fees, costs, and administration expenses from the common fund, each class member's share is estimated to be approximately $200 (i.e., assuming a 100% claim rate).

**Release**

30.     The definition of Released Claims is closely tethered to the facts of this case and Plaintiff's claims. It is limited to "any and all claims or causes of action, whether known or unknown (including 'Unknown Claims'), arising from or related to Plaintiff's allegations regarding YouTube's possession, collection, capture, storage, use, or disclosure of biometric identifiers,

biometric information, or any data derived from images of faces in videos uploaded to YouTube, including all claims and issues that were asserted or that could have been asserted in the Action and claims for any violation of the BIPA or other Illinois statutory or common law related to alleged scans of face geometry." SA ¶ 1.24. "No prospective future claims based on conduct occurring after the Effective Date of the Settlement are released by this Settlement." *Id.*

**Service Award to Plaintiff Nathan Colombo**

31.    Proposed Class Counsel will seek a modest $5,000 service award for Mr. Colombo, the Class Representative. Mr. Colombo's active participation in this case directly led to the significant recovery for the Settlement Class.

32.    Indeed, Mr. Colombo meaningfully participated in discovery by responding to interrogatories, collecting and producing documents at counsel's direction (including numerous native videos, emails, and messages), and assisting counsel with discovery meet-and-confers. Although Mr. Colombo was not deposed, he was willing to sit for deposition. And he willingly stepped into the lead plaintiff role after Brad Marschke, the original plaintiff, withdrew from the case.

33.    Based on extensive experience with similar class action settlements, we believe this amount is reasonable.

**Attorneys' Fees and Expenses**

34.    The Settlement permits proposed Class Counsel to apply to the Court for an award of reasonable attorneys' fees and expenses. Any court-approved award of fees and expenses will be paid out of the Settlement Fund upon entry of Final Approval. SA ¶¶ 11.1. Defendants have not agreed to the amount of the Fee Award and retain their right to object.

35.    Proposed Class Counsel intend to seek an award of $1,506,250 in attorneys' fees (representing 25% of the Settlement Amount) and $164,545.09 in expenses.

36.    To date, Class Counsel has spent 6,625.4 hours litigating this matter, which equates to $3,183,311.50 in lodestar.  This results in a negative multiplier of -0.473. Class Counsel further anticipate accruing additional lodestar to get this case through settlement administration and final approval

37.     Under the Settlement, Defendants will pay any court-approved fees and costs within three business days of the later of: (a) entry of the Final Judgment; or (b) an order granting the Fee Award, notwithstanding the existence of any timely filed objections thereto or to the Settlement.

**Notice and Administration**

38.     Plaintiff selected Verita Global LLC ("Verita Global") as the Settlement Administrator, and Defendants do not oppose. Because Verita Global successfully administered the settlement in *In re Facebook Biometric Info. Priv. Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.), we believe Verita Global is more than qualified to administer this settlement. Over the past two years, Plaintiff's counsel has engaged Verita Global over 25 times. These matters are listed in the accompanying declaration of Carla A. Peak of Verita Global.

39.     Plaintiff, in consultation with Verita Global, designed a robust multi-step notice plan intended to reach all Settlement Class Members. The contours of the notice plan are explained in the accompanying declaration of Carla A. Peak on behalf of Verita Global, the proposed Settlement Administrator.

40.     To ensure the best notice practicable for the Settlement Class, the notice plan requires email notice, a reminder email notice, a targeted internet banner campaign via the Facebook Audience Network, and a dedicated Settlement Website. Importantly, because Defendants have an email address for each Settlement Class Member, the Parties anticipate that all or nearly all Settlement Class Members will receive notice via email.

41.     Verita Global estimates the costs of notice and settlement administration at $71,237-$77,870.

**Claims Process, Objections, and Exclusions**

42.     To receive a payment, Settlement Class Members must timely submit a Claim Form. Settlement Class Members will have no less than 90 days following the Notice Date to submit a Claim Form. Claims may be submitted online (through the Settlement Website) or by mail.

43.     The deadline for Settlement Class Members to object to the Settlement is 21 days prior to the Final Approval Hearing.

44.     The deadline for Settlement Class Members to request exclusion from the Settlement

9

1   is also 21 days prior to the Final Approval Hearing.

2        **Cy Pres**

3        45.    The Settlement only provides *cy pres* payments as a last resort. Specifically, to the

4   extent a check issued to a Settlement Class Member is not cashed within 120 days or an electronic

5   deposit is unable to be processed within 120 days, such funds will remain in the Settlement Fund

6   and be apportioned *pro rata* to participating Settlement Class Members in a second distribution, if

7   economically feasible. SA ¶ 4.6. But to the extent any second distribution is impracticable or such

8   residual funds remain in the Settlement Fund after an additional 90 days, the funds will be distributed

9   *cy pres* to the American Civil Liberties Union (ACLU) of Illinois. *Id.*

10       46.    The Parties and counsel have no preexisting business or personal relationship with

11  the ACLU of Illinois.

12                              *        *        *

13       47.    In sum, the Settlement Agreement is the result of arm's-length negotiations between

14  counsel who are experienced in consumer class actions. While the negotiations were always

15  collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both

16  parties forcefully advocating the position of their respective clients.

17       48.    We believe that the claims asserted in this case have merit. We acknowledge,

18  however, the expense and length of continued proceedings necessary to prosecute the Litigation

19  against Defendants through motion practice, trial, and potential appeals. We have also taken into

20  account the uncertain outcome and risk of further litigation, as well as the difficulties and delays

21  inherent in such litigation.

22       49.    It is our belief, based on our extensive experience generally and our investigation

23  and research into this case in particular, that the Settlement is fair, reasonable, and adequate, and in

24  the best interests of the Settlement Class. We believe the Settlement represents a very good recovery

25  for the Settlement Class given the risks of continuing the litigation. Absent approval of the

26  Settlement, the Parties face extended and costly litigation, and there is risk that Class Members

27  would ultimately receive no relief whatsoever.

28

1    We declare under penalty of perjury of the laws of the United States that the foregoing is

2  true and correct.

3

4                                                      /s/ Stuart A. Davidson
                                                       Stuart A. Davidson
5
                                                       Executed in Boca Raton, Florida this 21st day
6                                                      of May, 2025.

7

8                                                      /s/ Gary M. Klinger
                                                       Gary M. Klinger
9
                                                       Executed in Chicago, Illinois this 21st day of
10                                                     May, 2025.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT DECL. ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-CV-06987-JD

# EXHIBIT 1

1   ROBBINS GELLER RUDMAN
    & DOWD LLP
2   AELISH M. BAIG (201279)
Post Montgomery Center
3   One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
4   aelishb@rgrdlaw.com

5   ROBBINS GELLER RUDMAN
    & DOWD LLP
6   STUART A. DAVIDSON (*pro hac vice*)
ALEXANDER C. COHEN (*pro hac vice*)
7   225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
8   sdavidson@rgrdlaw.com
acohen@rgrdlaw.com

9   Attorneys for Plaintiff

10  [Additional counsel appear on signature page.]

11  
                           **UNITED STATES DISTRICT COURT**

12  
                       **NORTHERN DISTRICT OF CALIFORNIA**

13  NATHAN COLOMBO, Individually and on   )   Case No. 3:22-cv-06987-JD
Behalf of All Others Similarly Situated,   )
14                            )   **STIPULATION OF CLASS ACTION**
               Plaintiff,   )   **SETTLEMENT**
15                            )
   vs.   )
16                            )
YOUTUBE, LLC and GOOGLE LLC,   )
17                            )
              Defendants.   )
18  _____   )

19

20

21

22

23

24

25

1    This Stipulation of Class Action Settlement is entered into by and among Plaintiff Nathan

2  Colombo ("Plaintiff" or "Colombo") for himself individually and as representative of the

3  Settlement Class, and Defendants YouTube, LLC and Google LLC (collectively "Defendants" or

4  "YouTube").[1]   This Settlement Agreement is intended by Plaintiff and YouTube (singularly,

5  "Party" and collectively, the "Parties") to fully, finally, and forever resolve, discharge, and settle

6  the Released Claims upon and subject to the terms and conditions in this Agreement, and is subject

7  to the approval of the Court.

8  **I.      RECITALS**

9          1.      On August 30, 2022, the original named plaintiff, Brad Marschke ("Marschke"),

10  filed a putative class action complaint against Defendants in the United States District Court for

11  the Southern District of Illinois, alleging violations of the Illinois Biometric Information Privacy

12  Act, 740 ILCS 14/1, *et seq.* ("BIPA"), related to the alleged unauthorized collection and storage

13  of his biometric data.

14          2.      On October 20, 2022, the Parties jointly stipulated to transfer the case to the United

15  States District Court for the Northern District of California.  On October 21, 2022, the case was

16  transferred to this District, and, on November 17, 2022, it was reassigned to this Court.

17          3.      On December 12, 2022, the original named plaintiff filed an amended complaint.

18          4.      On January 31, 2023, Defendants filed a motion to dismiss the amended complaint.

19          5.      During the pendency of Defendants' motion to dismiss, the original named plaintiff,

20  Marschke, determined that he no longer wished to pursue his claims against Defendants due to the

21  time commitment necessary to participate in the discovery process, and was substituted by Plaintiff

22  Nathan Colombo in a second amended complaint filed on June 13, 2023.  Pursuant to the

23  agreement of the Parties, the Court proceeded to rule on the previously filed motion to dismiss,

24  substituting Plaintiff Colombo for the original named plaintiff.

25          6.      On June 28, 2023, the Court denied Defendants' motion to dismiss.

26  _____

27  [1]   Unless otherwise specified, capitalized terms shall have the definitions ascribed to them in Section II, *infra*.

28

7.     Subsequently, the Parties conducted significant fact discovery, including Defendants' production and Plaintiff's Counsel's review of 35,000 pages of documents, videos, and source code change logs, as well as significant productions of documents and videos by Plaintiff.  Plaintiff also served and Defendants responded to Fed. R. Civ. P. 34 document requests, Fed. R. Civ. P. 33 interrogatories, and Fed. R. Civ. P. 36 requests for admission.

8.     Throughout these proceedings, the Parties attempted to resolve this dispute through mediation.  On December 10, 2024, the Parties participated in an all-day mediation with Shirish Gupta of JAMS in San Francisco.   After considerable arms-length negotiations, including significant post-mediation efforts under Mr. Gupta's auspices, the Parties were able to reach an agreement to resolve this Action.

9.     Plaintiff and Class Counsel believe that the claims asserted in the Action have merit, and that they would have ultimately succeeded at trial and on any subsequent appeal.  But Plaintiff and Class Counsel recognize that Defendants raised relevant factual and legal defenses that pose risks to the Settlement Class, namely: (a) obstacles to an aggregate recovery for Settlement Class Members; and (b) issues of law would be reviewed *de novo* on appeal even after Plaintiff prevailed at trial.  Class Counsel have also taken into account the uncertain outcome and attendant risks of any litigation, especially in complex actions, as well as the difficulty and delay inherent in such litigation and the appeals that would follow any judgment in favor of the Settlement Class.   Class Counsel believes that this Agreement eliminates uncertainty in the outcome and presents an exceptional result for the Settlement Class, and one that will be provided without delay.  Therefore, Plaintiff believes that it is in the best interest of the Settlement Class to settle the Action and that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms and conditions set forth in this Settlement Agreement.

10.     Defendants have denied and continue to deny each and every allegation and all charges of wrongdoing or liability of any kind whatsoever asserted or which could have been asserted in the Action.  Without acknowledging any fault or liability on the part of Defendants, the

1    Parties have agreed to enter into this Agreement as an appropriate compromise of Plaintiff's and

2    Settlement Class Members' claims in order to put to rest all controversy and to avoid the

3    uncertainty, risk, expense, and burdensome, protracted, and costly litigation that would be involved

4    in prosecuting and defending the Action.  This Agreement shall be for settlement purposes only,

5    and nothing in this Agreement shall constitute, be construed as, or be admissible in evidence as

6    any admission of the validity of any claim or any fact alleged by Plaintiff in this Action or in any

7    other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability

8    of any kind on the part of Defendants or admission by any of the Parties of the validity or lack

9    thereof of any claim, allegation, or defense asserted in the Action or in any other action.

10          NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among

11   Plaintiff, the Settlement Class, and Defendants that, subject to the approval of the Court after a

12   hearing as provided for in this Settlement, and in consideration of the benefits flowing to the Parties

13   from the Settlement set forth herein, the Released Claims shall be fully and finally compromised,

14   settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the

15   terms and conditions set forth in this Settlement Agreement.

16   **II.    AGREEMENT**

17          **1.    Definitions**

18          As used herein, in addition to any definitions set forth elsewhere in this Settlement

19   Agreement, the following terms shall have the meanings set forth below.

20          1.1    "Action" means the case captioned *Colombo v. YouTube, LLC and Google LLC*,

21   No. 3:22-cv-06987-JD (N.D. Cal.).

22          1.2    "Agreement" or "Settlement Agreement" means this Stipulation of Class Action

23   Settlement.

24          1.3    "Approved Claim" means a complete and timely claim for Settlement benefits, as

25   evidenced by a timely Claim Form submitted by a Settlement Class Member that has been

26   approved for payment by the Settlement Administrator.

27

28

1    1.4    "Claim Form" means the document substantially in the form attached hereto as

2    Exhibit A, as approved by the Court.

3    1.5    "Claims Deadline" means the date by which all Claim Forms must be postmarked

4    or submitted electronically to be considered timely, and shall be set as a date no later than ninety

5    (90) calendar days following the Notice Date, subject to Court approval.  The Claims Deadline

6    shall be clearly set forth in the order preliminarily approving the Settlement, as well as in the

7    Notice and the Claim Form.

8    1.6    "Class Counsel" means the law firms of Robbins Geller Rudman & Dowd LLP and

9    Milberg Coleman Bryson Phillips Grossman, PLLC.

10    1.7    "Class Representative" means Plaintiff Nathan Colombo.

11    1.8    "Court" means the United States District Court for the Northern District of

12    California, the Honorable James Donato presiding, or any judge who shall succeed him as the

13    judge assigned to the Action.

14    1.9    "Defendants" or "YouTube" means Defendants YouTube, LLC and Google LLC.

15    1.10    "Defendants' Counsel" or "YouTube's Counsel" means the law firm of Perkins

16    Coie LLP.

17    1.11    "Effective Date" means the date on which the Final Judgment becomes Final, as

18    defined herein.

19    1.12    "Escrow Account" means the separate, interest-bearing escrow account to be

20    established by Class Counsel, and administered by and at Huntington Bank which shall be the

21    "Escrow Agent."

22    1.13    "Fee Award" means the amount of attorneys' fees and expenses awarded to Class

23    Counsel by the Court to be paid out of the Settlement Fund.

24    1.14    "Final Approval Hearing" means the hearing before the Court where the Parties

25    will request that the Final Judgment be entered by the Court finally approving the Settlement as

26    fair, reasonable, and adequate in the best interests of the Settlement Class as a whole, and Class

27

28

Counsel will request that the Court approve the requested Fee Award and the service award to the Class Representative.

1.15    "Final Judgment" means the final judgment to be entered by the Court approving the Settlement of the Action in accordance with this Settlement Agreement after the Final Approval Hearing.

1.16    The Final Judgment becomes "Final" one business day after the latest of the following events: (a) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (b) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any modification (except insofar as agreed upon by the Parties), of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for notices of appeals, motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (c) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

1.17    "Net Settlement Fund" means the Settlement Fund, plus any interest or investment income earned on the Settlement Fund, less any Fee Award, service award to the Class Representative, Taxes and Tax Expenses, and Settlement Administration Expenses.

1.18    "Notice" means the notices of this proposed Settlement and Final Approval Hearing, which are to be disseminated to the Settlement Class substantially in the manner set forth in this Settlement Agreement and approved by the Court, fulfilling the requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure, and are substantially in the form of Exhibits A, B and E attached hereto.

1.19    "Notice Date" means the date by which the Notice is disseminated to the Settlement Class, which shall be a date no later than thirty-five (35) calendar days after entry of Preliminary Approval.

1.20    "Objection/Exclusion Deadline" means the date by which a written objection to the Settlement or a request for exclusion by a person within the Settlement Class must be made, which shall be designated as a date twenty-one (21) calendar days prior to the Final Approval Hearing, or such other date as ordered by the Court.

1.21    "Parties" means Plaintiff and Defendants, collectively.

1.22    "Plaintiff" means Nathan Colombo.

1.23    "Preliminary Approval" means that an order has been issued by the Court ("Preliminary Approval Order") in substantially the form set forth in Exhibit D, making each of the following rulings: (a) preliminarily approving the Agreement and finding that the Settlement is within the range of potential final approval as fair, reasonable, and adequate; (b) confirming certification of the Settlement Class, for settlement purposes; and (c) approving the form and manner of the Notice and directing that Notice be sent to the Settlement Class.

1.24    "Released Claims" means any and all claims or causes of action, whether known or unknown (including "Unknown Claims"), arising from or related to Plaintiff's allegations regarding YouTube's possession, collection, capture, storage, use, or disclosure of biometric identifiers, biometric information, or any data derived from images of faces in videos uploaded to YouTube, including all claims and issues that were asserted or that could have been asserted in the Action and claims for any violation of the BIPA or other Illinois statutory or common law related to alleged scans of face geometry.  No prospective future claims based on conduct occurring after the Effective Date of the Settlement are released by this Settlement.

1.25    "Released Parties" means YouTube, LLC and Google LLC including their respective affiliates and partners, and their respective present or former administrators, predecessors, successors, assigns, transferees, parents, subsidiaries, holding companies, investors, divisions, associates, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, vendors, accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers,

1    employee benefit plans, underwriters, shareholders lenders, auditors, investment advisors, and

2    former companies.

3        1.26    "Releasing Parties" means Plaintiff and the Settlement Class Members and their

4    respective present or past heirs, executors, estates, administrators, trustees, assigns, agents,

5    consultants, independent contractors, insurers, attorneys, accountants, financial and other advisors,

6    investment bankers, underwriters, lenders, and any other representatives of any of these persons

7    and entities.

8        1.27    "Settlement Administration Expenses" means all costs and fees incurred by the

9    Settlement Administrator in administering the Settlement, including, but not limited to: preparing

10   and publishing the Notice and any other means of following up with the Settlement Class;

11   establishing and maintaining any Settlement Website; making Settlement Payments to the

12   Settlement Class; receiving requests for exclusion; resolving any disputed claims; performing

13   administrative work related to unclaimed payments; reporting periodically to Class Counsel and

14   Defendants' Counsel; and preparing and providing any declarations or reports required by this

15   Agreement or the Court.

16       1.28    "Settlement Administrator" means Verita Global, LLC, subject to approval of the

17   Court, which will provide certain aspects of the Notice, Settlement Website, as well as the

18   processing of Approved Claims as Settlement Payments to Settlement Class Members as set forth

19   in this Agreement.

20       1.29    "Settlement Amount" means Six Million, Twenty-Two Thousand, Five Hundred

21   Dollars ($6,022,500), in U.S. dollars.

22       1.30    "Settlement Class" means the following: all residents of the State of Illinois who

23   uploaded a video to YouTube on which Face Blur was run.  YouTube represents, based on its best

24   estimates, that the Settlement Class contains approximately 16,500 individuals.  Excluded from

25   the Settlement Class are: (a) any Judge, Magistrate Judge, or mediator presiding over this Action

26   and members of their families; (b) YouTube, YouTube's subsidiaries, parent companies,

27   successors, predecessors, and any entity in which YouTube or its parents have a controlling interest

28

and its current or former employees, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Settlement Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's Counsel and YouTube's Counsel; and (f) the legal representatives, successors, and assigns of any such excluded persons.

1.31    "Settlement Class Member" means a person who falls within the definition of the Settlement Class.  Accordingly, a person who properly executes and files a timely request for exclusion from the Settlement Class is not a Settlement Class Member.

1.32    "Settlement Failure" is deemed to occur when this Settlement Agreement is not approved by any court or is terminated for any reason or when an occurrence precludes the Effective Date from coming to pass.

1.33    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto which is non-reversionary and which may be reduced by payments and deductions as provided herein or by Court order.  The Settlement Fund shall be used to pay Approved Claims; Notice and Administration Expenses; Taxes and tax-related expenses due as a result of interest earned on the Settlement Fund; Class Counsel's Fee Award, and the Class Representative service award, as approved by the Court.

1.34    "Settlement Payment" means the payments to be made in response to Approved Claims.

1.35    "Settlement Website" means the website to be created, launched, and maintained by the Settlement Administrator, which will provide access to Settlement-related case documents, including this Agreement, the Notice, Claim Form, and other relevant documents.

1.36    "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with all interest, penalties, additions to tax, and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.37    "Unknown Claims" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or

her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement, or seek exclusion from the Settlement Class.  Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this paragraph.

## 2.    Conditional Certification

2.1    For purposes of effectuating this Settlement Agreement only, the Parties agree that: (a) the Settlement Class shall be certified in accordance with the definition of Settlement Class provided above; (b) Class Counsel shall be appointed as counsel for the Class; and (c) Plaintiff shall represent the Settlement Class for settlement purposes.

2.2    Defendants conditionally agree and consent to certification of the Settlement Class for settlement purposes only, and within the context of the Settlement Agreement only.  If the Settlement Agreement, for any reason, is not finally approved or is terminated: (a) Defendants reserve the right to assert any and all objections and defenses to certification of a class; (b) neither the Settlement Agreement nor any order or other action relating to the Settlement Agreement shall

be offered by any person as evidence in support of a motion to certify a class for a purpose other than settlement; (c) the settlement proposed in the Settlement Agreement shall become null and void and shall have no legal effect and may never be mentioned in court or in any court filings; and (c) the Parties will return to their respective positions existing immediately before the execution of the Settlement Agreement.

### 3.     Settlement Relief

3.1     Defendants shall pay or cause to be paid into the Escrow Account the Settlement Amount ($6,022,500) within sixty (60) calendar days after the issuance of an order from the Court preliminarily approving the terms of this Settlement, or receipt of detailed wire instructions and a completed W-9, whichever is later.  Defendants' sole obligation under this Settlement is payment of the Settlement Amount pursuant to Paragraph 3.1.

### a.     The Escrow Agent

3.2     The Escrow Agent shall invest the Settlement Amount deposited pursuant to Paragraph 3.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, or in money funds holding only instruments backed by the full faith and credit of the United States Government, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent.  All costs and risks related to the investment of the Settlement Fund in accordance with the guidelines set forth in this paragraph shall be borne by the Settlement Fund.  Any interest or earning on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class Members.

3.3     The Escrow Agent shall not disburse the Settlement Fund except: (a) as provided in this Settlement Agreement; (b) by an order of the Court; or (c) with the written agreement of counsel for the Parties.

3.4     Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Settlement Agreement, the Escrow Agent is authorized to execute such

transactions as are consistent with the terms of this Settlement Agreement.  Other than the obligation to pay or cause to be paid the Settlement Amount into the Escrow Account set forth in Paragraph 3.1 herein, the Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (a) any act, omission, or determination by the Escrow Agent, Class Counsel, Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; or (b) any transaction executed by the Escrow Agent or any designees or agents thereof.  Other than the obligation to cause the payment of the Settlement Amount pursuant to Paragraph 3.1, the Released Parties shall have no obligation to make any other payments into the Escrow Account or to any Settlement Class Member pursuant to this Settlement Agreement.

3.5    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall be subject to the jurisdiction of the Court.

3.6    The Escrow Agent, without further approval of Defendants or the Court, may pay as incurred and from the Settlement Fund, all Notice and Administration Expenses subject only to the approval of Class Counsel.

**b.    Taxes and Settlement Fund**

3.7    The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1, and shall be interest bearing.  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of Paragraph 3.7, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause the preparation and delivery of, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)    For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow

Agent.  The Escrow Agent shall be solely responsible for timely and properly filing, or causing to be filed, all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, but not limited to, the returns described in Treasury Regulation §1.468B-2(k)).  Such returns (as well as the election described in Paragraph 3.7(a) hereof) shall be consistent with Paragraph 3.7 and in all events shall reflect that all Taxes including any estimated Taxes, interest, or penalties on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 3.7(c) hereof.  Released Parties shall not have liability or responsibility for any such Taxes.

(b)    All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraph 3.7 (including, but not limited to, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in Paragraph 3.7) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses.  Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Settlement Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)); neither the Released Parties nor their counsel are responsible nor shall they have any liability therefor.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraph 3.7.

3.8    The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Net Settlement Fund to Settlement Class Members pursuant to this Agreement.

3.9    The Settlement Administrator and Class Counsel are responsible for communicating with Settlement Class Members regarding the distribution of the Net Settlement Fund and amounts paid under the Settlement.

3.10    Each Representative Plaintiff and Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

**4.    Settlement Benefits**

4.1    Settlement Class Members who wish to file a claim for a Settlement Payment must submit a Claim Form which will be available in paper and electronically.  The Claim Form will require a claiming Settlement Class Member to provide the following: (a) full name; (b) current U.S. Mail address; (c) the email address associated with their YouTube account; and (d) if necessary, additional information about the time during which they were located in Illinois as well as their YouTube use.  The Claim Form will require an affirmation that the person is a member of the Settlement Class, and an affirmation of the truth of the contents of the Claim Form.  The electronic Claim Form will provide Settlement Class Members with the option of having their Settlement Payment transmitted to them electronically, through Automated Clearing House direct deposit, or other reliable means.

4.2    Settlement Class Members shall have until the Claims Deadline to submit a Claim Form.  Each Settlement Class Member with an Approved Claim shall be entitled to a Settlement Payment in the amount equal to that Settlement Class Member's pro rata share of the Net Settlement Fund.

4.3    Within sixty (60) calendar days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall send Settlement Payments from the Settlement

1   Fund by check or electronic deposit, as elected by the Settlement Class Members with Approved

2   Claims.

3          4.4    Each payment issued to a Settlement Class Member via check will state on the face

4   of the check that it will become null and void unless cashed within ninety (90) calendar days after

5   the date of issuance.

6          4.5    In the event that an electronic deposit to a Settlement Class Member cannot be

7   processed, the Settlement Administrator shall attempt to contact the Settlement Class Member

8   within thirty (30) calendar days to correct the problem.

9          4.6    To the extent that a check issued to a Settlement Class Member is not cashed within

10  one hundred twenty (120) calendar days after the date of issuance or an electronic deposit is unable

11  to be processed within one hundred twenty (120) calendar days of issuance, such funds shall

12  remain in the Settlement Fund and shall be apportioned pro rata to participating Settlement Class

13  Members with Approved Claims whose Settlement Payments were processed or negotiated, in a

14  second distribution, if economically feasible.  To the extent that any second (or subsequent)

15  distribution is impracticable or such residual funds remain in the Settlement Fund after an

16  additional ninety (90) calendar days, such funds shall revert to the American Civil Liberties Union

17  of Illinois, as approved by the Court.

18         4.7    No amount paid by Defendants into the Escrow Account shall revert to Defendants

19  unless there is a Settlement Failure.  In no event shall any such amount be paid to any Class

20  Counsel except for the amount of a Court-approved Fee Award.

21         4.8    Within twenty-one (21) calendar days after the distributions referenced in

22  Paragraph 4.2, the Parties will file with the Court a Post-Distribution Accounting as contemplated

23  in the Northern District of California Procedural Guidance for Class Action Settlements

24  (https://www.cand.uscourts.gov/for=s/procedural-guidance-for-class-action-settlements/).

25         **5.    Releases**

26         5.1    The obligations incurred pursuant to this Settlement Agreement shall be a full and

27  final disposition of the Action and any and all Released Claims, as against all Released Parties.

28

5.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

5.3     Upon entry of the Final Judgment, the Releasing Parties, and each of them, shall be barred from initiating, asserting, or prosecuting against Released Parties any Released Claims.  In the event any member of the Settlement Class attempts to prosecute an action in contravention of the Final Judgment and this Agreement, counsel for any of the Parties may forward this Agreement and the Final Judgment to such Settlement Class Member and advise him, her, or it of the releases provided pursuant to this Agreement.  If so requested by Defendants or Defendants' Counsel, Class Counsel shall provide this notice.

5.4     Upon the Effective Date, the Released Parties shall by operation of the Final Judgment have, fully, finally, and forever released, relinquished, and discharged all claims against Plaintiff, the Settlement Class, and Class Counsel that arise out of or relate in any way to the commencement, prosecution, settlement, or resolution of the Action, except for claims to enforce the terms of the Settlement.

**6.     Notice to the Settlement Class**

6.1     Direct Notice List.  Within fourteen (14) calendar days of the Preliminary Approval Order, Defendants shall provide to the Settlement Administrator a list of email addresses for YouTube users who, based on a reasonable review of Defendants' records, are Members of the Settlement Class (this list is the "Direct Notice List").  Defendants do not make any representations as to the accuracy or completeness of the Direct Notice List.  The Settlement Administrator shall keep strictly confidential the Direct Notice List and all personal information linked to or obtained or derived therefrom, including all identifying information, mailing address, email addresses, telephone numbers, and any other contact information.  The Direct Notice List may not be used by the Settlement Administrator for any purpose other than advising specific individual Settlement Class Members of their rights, mailing Settlement Payments, and otherwise effectuating the terms

1  of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of

2  the Settlement.

3      6.2     The Notice shall be disseminated as follows:

4          (a)     Email Notice by Settlement Administrator.  No later than the Notice Date,

5  the Settlement Administrator shall send Notice via email substantially in the form attached as

6  Exhibit B, with a link to a Spanish language version to all Settlement Class Members to each email

7  address on the Direct Notice List.

8          (b)     Reminder Notice.  No later than fourteen (14) calendar days before the

9  Claims Deadline, the Settlement Administrator shall send a reminder notice via email to all

10  Settlement Class Members who were sent an email substantially in the form attached as Exhibit

11  B, with a link to a Spanish language version.

12          (c)     Settlement Website.  Expeditiously after Preliminary Approval of the

13  Settlement and commencement of the notice program, the Notice shall be posted to the Settlement

14  Website, which shall be administered and maintained by the Settlement Administrator and shall

15  include the ability to file Claim Forms online.  The Notice provided on the Settlement Website

16  will be in English and Spanish and shall be substantially in the form attached as Exhibit A.  The

17  content of the Settlement Website, the URL of the Settlement Website, and any materials posted

18  on the Settlement Website shall be subject to approval of Class Counsel and Defendants' Counsel.

19  The content of the Settlement Website shall be identical to the content of the Notice attached as

20  Exhibit A and no additional content, verbiage, or visuals shall be permitted on the Settlement

21  Website without the express written consent of Defendants' Counsel.

22          (d)     Targeted Internet Ad Campaign.  The Settlement Administrator shall

23  arrange for an Internet banner ad campaign generating approximately 1.865 million impressions

24  targeting Illinois YouTube users and Illinois adults 25-54 years of age via the Meta Audience

25  Network. [2]  The banner ads shall be substantially in the form attached as Exhibit E.

26  _____

27  [2]  If a Facebook page is required to enable the Facebook banner ads, the Settlement Administrator
shall prohibit any user-generated content from being posted or visible on that Facebook page. That
Facebook page cannot contain any content, verbiage, or visuals other than the content of the Notice

28  attached as Exhibit E.

(e)    Class Action Fairness Act of 2005 Notice.  The Settlement Administrator will be responsible for providing the notice of Settlement required by 28 U.S.C. §1715 within ten (10) days after Plaintiff moves for preliminary approval of this Settlement.  Any costs associated with providing such notices shall be paid by Defendants.

**7.    Objecting to the Settlement and Requesting Exclusion from the Settlement Class**

7.1    Any Settlement Class Member who intends to object to this Agreement and/or Class Counsel's request for a Fee Award, must present the objection in writing filed with the Court, which must be personally signed by the objector, and must include the following: (a) the objector's name, address, and email; (b) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (c) whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (d) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (e) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, who must enter an appearance with the Court in accordance with the Local Rules; and (f) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel). Any Settlement Class Member who fails to timely file and serve a written objection in compliance with the provisions set forth herein and pursuant to this Agreement shall not be permitted to object to the approval of this Settlement Agreement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement Agreement or its terms by appeal or any other means.  Any Settlement Class Member who wishes to be heard at the Final Approval Hearing as to any objection to this Agreement must so state in their filed objection.

7.2    A Settlement Class Member may request to be excluded from the Settlement Class by sending a written request that is received on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  To exercise the right to be excluded, a

Settlement Class Member must timely send a written request for exclusion to the Settlement Administrator providing his/her name, address, email, signature, name and number of the Action, and a statement that he or she wishes to be excluded from the Settlement Class. The Settlement Administrator shall create a dedicated e-mail address to receive exclusion requests electronically. A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked (or received, if not postmarked) within the time specified in the Notice, shall be invalid, and the person(s) serving such a request shall remain a Member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved. Any Member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (a) be bound by any orders or the Final Judgment; (b) be entitled to relief under this Settlement Agreement; (c) gain any rights by virtue of this Agreement; or (d) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by the person requesting exclusion. Typed signatures shall not be allowed. So-called "mass" or "class" opt-outs shall not be allowed. If a person both submits a Claim Form and a request for exclusion, the request for exclusion will be deemed invalid and the person will be deemed a Settlement Class Member.

7.3    A person cannot both object to and exclude themselves from this Settlement Agreement. Any Settlement Class Member who attempts to both object to and exclude themselves from this Settlement Agreement will be deemed to have excluded themselves (except if the Settlement Class Member submits a valid Claim Form) and will forfeit the right to object to the terms of this Settlement Agreement.

7.4    Upon request, the Settlement Administrator shall provide Defendants with a list of persons who have submitted valid requests for exclusion. Within seven (7) days after the Objection/Exclusion Deadline, the Settlement Administrator shall provide Defendants with a final list of persons who submitted valid requests for exclusion. If the number of Settlement Class Members who request exclusion exceeds ███████, then Defendants may, in their sole discretion, notify Class Counsel in writing that they have elected to terminate this Settlement

1   Agreement.  Such notification of intent to terminate the Settlement Agreement must be provided

2   a minimum of seven (7) calendar days before the Final Approval Hearing.  Such notification of

3   termination shall effect an immediate termination of the Settlement Agreement and constitute a

4   Settlement Failure.

5       **8.    Settlement Administration**

6       8.1    The Settlement Administrator shall, under the supervision of the Class Counsel,

7   administer the relief provided by this Settlement Agreement by providing Notice and processing

8   Claim Forms in a reasonable, cost effective, and timely manner.  The Settlement Administrator

9   shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement

10  Administrator shall maintain all such records as are required by applicable law in accordance with

11  its normal business practices and such records will be made available to Class Counsel upon

12  request.  The Settlement Administrator shall also provide reports and other information to the

13  Court as the Court may require.  Without limiting the foregoing, the Settlement Administrator

14  shall:

15      (a)    receive requests to be excluded from the Settlement Class and promptly

16  provide Class Counsel and Defendants' Counsel copies thereof.  If the Settlement Administrator

17  receives any exclusion forms after the deadline for the submission of such forms, the Settlement

18  Administrator shall promptly provide copies thereof to Class Counsel and Defendants' Counsel;

19      (b)    provide weekly reports to Class Counsel regarding the number of Claim

20  Forms received and the categorization and description of Claim Forms rejected, in whole or in

21  part, by the Settlement Administrator; and

22      (c)    make available for inspection by Class Counsel the Claim Forms received

23  by the Settlement Administrator at any time upon reasonable notice.

24      8.2    The Settlement Administrator shall be obliged to employ reasonable procedures to

25  screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud,

26  including by cross-referencing Approved Claims with the Class List.  The Settlement

27  Administrator shall determine whether a Claim Form submitted by a Settlement Class Member is

28

an Approved Claim and shall reject Claim Forms that fail to: (a) comply with the instructions on the Claim Form or the terms of this Agreement; or (b) provide full and complete information as requested on the Claim Form.  In the event a person submits a timely Claim Form by the Claims Deadline but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such person reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than twenty-eight (28) calendar days after the Claims Deadline.  In the event the Settlement Administrator receives such information more than twenty-eight (28) calendar days after the Claims Deadline, then any such claim shall be denied.  The Settlement Administrator may contact any person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form.  Class Counsel and Defendants' Counsel shall both have the right to challenge the acceptance or rejection of a Claim Form submitted by a Settlement Class Member by the Settlement Administrator.  The Settlement Administrator shall follow any joint decisions of Class Counsel and Defendants' Counsel as to the validity of any disputed submitted Claim Form.  Where Class Counsel and Defendants' Counsel disagree as to the validity of a submitted Claim Form, the Settlement Administrator will resolve the dispute and the Claim Form will be treated in the manner designated by the Settlement Administrator.

**9.    Preliminary Approval and Final Approval**

9.1    Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for entry of Preliminary Approval of the Settlement set forth in this Agreement, which order shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination substantially in the form of Exhibits A, B, C, D and E hereto.  The order granting Preliminary Approval shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all Exhibits to this Agreement) so long as they are consistent in all material

1  respects with the terms of the Final Judgment set forth below and do not limit or impair the rights

2  of the Settlement Class.

3       9.2    After Notice is given, the Parties shall request and seek to obtain from the Court a

4  Final Judgment, which will (among other things):

5              (a)    find that the Court has personal jurisdiction over all Settlement Class

6  Members and that the Court has subject matter jurisdiction to approve the Agreement, including

7  all Exhibits thereto;

8              (b)    approve the Settlement Agreement and the proposed Settlement as fair,

9  reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct

10 the Parties and their counsel to implement and consummate the Agreement according to its terms

11 and provisions; and declare the Agreement to be binding, and have *res judicata* and preclusive

12 effect, on all pending and future lawsuits or other proceedings maintained by or on behalf of

13 Plaintiff and the Releasing Parties with respect to the Released Claims;

14             (c)    find that the Notice implemented pursuant to the Agreement: (i) constitutes

15 the best practicable notice under the circumstances; (ii) constitutes notice that is reasonably

16 calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the

17 Action, their right to object to the Settlement or exclude themselves from the Settlement Class,

18 and to appear at the Final Approval Hearing; (iii) is reasonable and constitutes due, adequate, and

19 sufficient notice to all persons entitled to receive notice; and (iv) meets all applicable requirements

20 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution,

21 and the rules of the Court;

22             (d)    find that the Class Representative and Class Counsel adequately represent

23 the Settlement Class for purposes of entering into and implementing the Agreement;

24             (e)    dismiss the Action (including all individual claims and Settlement Class

25 claims presented thereby) on the merits and with prejudice, without fees or costs to any party

26 except as provided in the Settlement Agreement;

27

28

(f)    incorporate the Releases set forth above, make the Releases effective as of the Effective Date, and forever discharge the Released Parties from the Released Claims as set forth herein;

(g)    permanently bar and enjoin all Settlement Class Members who have not properly sought exclusion from the Settlement Class from initiating, asserting, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)    without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

(i)    incorporate any other provisions, as the Court deems necessary and just.

9.3    The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Settlement Agreement.

**10.    Termination of the Settlement Agreement**

10.1    Defendants or the Class Representative on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so to all other Parties hereto within twenty-one (21) calendar days of any of the following events: (a) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect or a ruling conditionally approving this Agreement subject to proposed changes to, or additions of, material terms (including, but not limited to, changes or additions to the relief set forth in Section 3.9, the notice provisions of Section 6, and the releases provided in Section 5, including the definitions of "Released Claims" and "Released Parties"); (b) the Court's refusal to grant final approval of this Agreement as provided in Section 9, above, without any material revision (including, but not limited to, changes or additions to the relief set forth in Section 3, the notice provisions of Section 6, and the releases provided in Section 5, including the definitions of "Released Claims" and

"Released Parties"); (c) the Court's refusal to enter the Final Judgment in this Action in any material respect; (d) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (e) the date Defendants terminate the Settlement Agreement pursuant to Paragraph 7.4 above.

**11.    Class Counsel's Fee Award and Service Award to Class Representative**

11.1    Class Counsel shall move the Court for a Fee Award.  Payment of the Court-approved Fee Award shall be made from the Settlement Fund.  Defendants are not responsible for Class Counsel's allocation of the Fee Award amongst themselves.

11.2    Any Fee Award by the Court shall be paid to Class Counsel by the Settlement Administrator from the Settlement Fund within three (3) business days of the later of: (a) entry of the Final Judgment; or (b) an order granting such Fee Award, notwithstanding the existence of any timely filed objections thereto or to the Settlement.  Payment of the Fee Award shall be made via wire transfer to an account or accounts designated by Class Counsel after providing necessary information for electronic transfer.  The Fee Award paid to Class Counsel will be subject to potential repayment pursuant to the terms set forth below.

11.3    Each Class Counsel's law firm receiving any portion of a Fee Award, as a condition of receiving such payment, agrees on behalf of itself and each equity partner and/or shareholder of it that the law firm and its equity partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.  Class Counsel executing this Settlement stipulate, warrant, and represent that they have actual authority to enter into the obligations set forth in this paragraph on behalf of the law firms indicated below, and the shareholders, members, and/or partners of those law firms respectively.  In the event of a Settlement Failure, and in the event that the Fee Award has been paid to any extent, then Class Counsel with respect to the Fee Award paid shall within thirty (30) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund plus

interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.  If the Fee Award is reduced on appeal or by virtue of an objection thereto or a collateral attack on the awarded fees, Class Counsel shall repay the portion of the Fee Award by which it is reduced and any interest earned thereon at the same rate as earned on the Settlement Fund.  This full or partial repayment of the Fee Award shall be applied to the Net Settlement Fund and distributed in accordance with the terms of the Agreement.

11.4    Class Counsel intend to file a motion for Court approval of a service award to the Class Representative, to be paid from the Settlement Fund.

11.5    Neither the Settlement nor the Settlement Agreement is conditioned upon the Court's approval of: (a) any attorneys' fees or expenses (or the amount of such fees or expenses) sought by Class Counsel; or (b) any service award (or the amount of any service award).  Any modification by the Court to any awarded attorneys' fees or to any service award shall not constitute a Settlement Failure.

**12.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

12.1    In the event of a Settlement Failure, this Settlement Agreement shall be canceled and terminated subject to Paragraph 10.1 unless Class Counsel and Defendants' Counsel mutually agree in writing to proceed with this Agreement.  If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Parties.  Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the requested Fee Award to Class Counsel and/or the award to Plaintiff set forth in Section 11 above shall not prevent the Effective Date from occurring, nor shall it be grounds for termination of this Agreement.

12.2    In the event of a Settlement Failure, the Parties shall be restored to their respective positions as of the date of the signing of this Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated

as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* as if this Settlement Agreement had never been entered into.

12.3    In the event of a Settlement Failure, the Settlement Fund, together with any earnings thereon at the same rate as earned by the Settlement Fund, less any Taxes paid or due, less Settlement Administrative Expenses actually incurred (whether paid or payable from the Settlement Fund), shall be returned to Defendants within thirty (30) calendar days after written notification of such event in accordance with instructions provided by Defendants' Counsel to Class Counsel.  At the request of Defendants' Counsel, Class Counsel or their designees shall apply for any tax refund owed on the amounts in the Settlement Fund and pay the proceeds, after any deduction of any fees or expenses incurred in connection with such application(s), of such refund to Defendants or as otherwise directed.

**13.    Miscellaneous Provisions**

13.1    The Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals.  Class Counsel and Defendants' Counsel agree to cooperate with one another in seeking Preliminary Approval, and entry of the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

13.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Defendants, or each or any of them, in bad faith or without a reasonable basis.  The Parties agree that their respective counsel at all times complied with the requirements of Fed. R. Civ. P. 11.

13.3    Each signatory to this Agreement warrants: (a) that he, she, or it has all requisite power and authority to execute, deliver and perform this Settlement Agreement and to consummate the transactions contemplated herein; (b) that the execution, delivery, and performance of this Settlement Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory; and (c) that this Settlement Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid, and binding obligation.

13.4    The Parties have relied upon the advice and representation of counsel, selected by them, concerning the claims hereby released.  The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

13.5    Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:

    (a)    is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the Settlement Amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

    (b)    is, may be deemed, or shall be used, offered or received against Defendants, as an admission, concession, or evidence of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

    (c)    is, may be deemed, or shall be used, offered, or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the

1    Settlement, this Agreement, and any acts performed and/or documents executed in furtherance of

2    or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be

3    necessary to effectuate the provisions of this Agreement.  Further, if this Settlement Agreement is

4    approved by the Court, any Party or any of the Released Parties may file this Agreement and/or

5    the Final Judgment in any action that may be brought against such Party or Parties in order to

6    support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release,

7    good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue

8    preclusion or similar defense or counterclaim;

9              (d)       is, may be deemed, or shall be construed against Plaintiff, the Settlement

10   Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any

11   of them, as an admission or concession that the consideration to be given hereunder represents an

12   amount equal to, less than, or greater than that amount that could have or would have been

13   recovered after trial; and

14             (e)       is, may be deemed, or shall be construed as or received in evidence as an

15   admission or concession against Plaintiff, the Settlement Class, the Releasing Parties, or each and

16   any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims

17   are with or without merit or that damages recoverable in the Action would have exceeded or would

18   have been less than any particular amount.

19         13.6    The headings used herein are used for the purpose of convenience only and are not

20   meant to have legal effect.

21         13.7    The waiver by one Party of any breach of this Settlement Agreement by any other

22   Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement

23   Agreement.

24         13.8    All of the Exhibits to this Settlement Agreement are material and integral parts

25   hereof and are fully incorporated herein by reference.

26         13.9    This Settlement Agreement and its Exhibits set forth the entire agreement and

27   understanding of the Parties with respect to the matters set forth herein, and supersede all prior

28

1 negotiations, agreements, arrangements, and undertakings with respect to the matters set forth

2 herein.  No representations, warranties, or inducements have been made to any Party concerning

3 this Settlement Agreement or its Exhibits other than the representations, warranties and covenants

4 contained and memorialized in such documents.  This Settlement Agreement may be amended or

5 modified only by a written instrument signed by or on behalf of all Parties or their respective

6 successors-in-interest.

7       13.10   Except as otherwise provided herein, each Party shall bear its own attorneys' fees

8 and costs incurred in any way related to the Action.

9       13.11   Plaintiff represents and warrants that he has not assigned any claim or right or

10 interest relating to any of the Released Claims against the Released Parties to any other person or

11 Party and that they are fully entitled to release the same.

12       13.12   Each counsel or other person executing this Settlement Agreement, any of its

13 Exhibits, or any related Settlement documents on behalf of any Party hereto, hereby warrants and

14 represents that such person has the full authority to do so and has the authority to take appropriate

15 action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its

16 terms.

17       13.13   This Settlement Agreement may be executed in one or more counterparts.  All

18 executed counterparts and each of them shall be deemed to be one and the same instrument.

19 Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this

20 Settlement Agreement.  A complete set of original executed counterparts shall be filed with the

21 Court if the Court so requests.

22       13.14   The Court shall retain jurisdiction with respect to implementation and enforcement

23 of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the

24 Court for purposes of implementing and enforcing the Settlement embodied in this Settlement

25 Agreement.

26       13.15   This Settlement Agreement shall be governed by and construed in accordance with

27 the laws of the State of California without reference to the conflicts of laws provisions thereof.

28

1    13.16  This Settlement Agreement is deemed to have been prepared by counsel for all

2  Parties, as a result of arm's-length negotiations among the Parties.  Whereas all Parties have

3  contributed substantially and materially to the preparation of this Settlement Agreement, it shall

4  not be construed more strictly against one Party than another.

5    13.17  Where this Settlement Agreement requires notice to the Parties, such notice shall

6  be sent to the following counsel.  For Plaintiff: Stuart Davidson, Robbins Geller Rudman & Dowd

7  LLP, 225 NE Mizner Boulevard, Suite 720, Boca Raton, Florida   33432; Gary Klinger, Milberg

8  Coleman Bryson Phillips Grossman, PLLC, 221 West Monroe Street, Suite 2100, Chicago, Illinois

9  60606.  For YouTube: Susan Fahringer, Perkins Coie LLP, 1201 Third Avenue, Suite 4900,

10  Seattle, Washington 98101.

11    13.18  All time periods and dates described in this Agreement are subject to the Court's

12  approval.  These time periods and dates may be changed by the Court or by the Parties' written

13  agreement without notice to the Settlement Class.  The Parties reserve the right, subject to the

14  Court's approval, to make any reasonable extensions of time that might be necessary to carry out

15  any provision of this Agreement.

16    13.19  The Parties, Class Counsel, and Defendants' Counsel agree not to make any

17  statements, written or verbal, or to cause or encourage any person to make any statements, written

18  or verbal, that defame, or in any way criticize the personal or business reputation, practices, or

19  conduct of the Parties and their respective counsel concerning all Released Claims, as well as the

20  litigation of this Action, this Settlement, and any negotiations of the Settlement by the Parties and

21  their counsel.

22    13.20  All agreements and orders entered during the course of this Action relating to the

23  confidentiality of information shall survive this Settlement Agreement.

24

25                          **[SIGNATURES APPEAR ON FOLLOWING PAGE]**

26

27

28

1    DATED: 5/21/2025

                                    Signed by:
                                    _____
                                    4CE6C288FDFA442...
2                                   Nathan Colombo, individually and as
                                    representative of the Class

3    DATED: _____

4                                   _____
                                    Cassandra Knight
                                    Vice President of Litigation & Discovery on
                                    behalf of Google LLC and YouTube LLC

5    **IT IS SO STIPULATED BY COUNSEL:**

6    DATED: 5/21/2025

                                    ROBBINS GELLER RUDMAN
7                                       & DOWD LLP
                                    STUART A. DAVIDSON (*pro hac vice*)
8                                   ALEXANDER C. COHEN (*pro hac vice*)

9

10

11                                  _____
                                    STUART A. DAVIDSON

12                                  225 NE Mizner Boulevard, Suite 720
                                    Boca Raton, FL 33432
13                                  Telephone: 561/750-3000
                                    sdavidson@rgrdlaw.com
14                                  acohen@rgrdlaw.com

15                                  ROBBINS GELLER RUDMAN
                                        & DOWD LLP
16                                  AELISH M. BAIG
                                    Post Montgomery Center
17                                  One Montgomery Street, Suite 1800
                                    San Francisco, CA 94104
18                                  Telephone: 415/288-4545
                                    aelishb@rgrdlaw.com
19

20                                  MILBERG COLEMAN BRYSON
                                        PHILLIPS GROSSMAN, PLLC
21                                  GARY KLINGER (*pro hac vice*)

22

23                                  _____
                                    GARY KLINGER
24

25                                  221 West Monroe Street, Suite
                                    2100 Chicago, IL 60606
26                                  Telephone: 866/252-0878
                                    gklinger@milberg.com

27

28

STIPULATION OF CLASS ACTION SETTLEMENT - 3:22-cv-06987-JD                    - 30 -

DATED: _____    _____
                               Nathan Colombo, individually and as
                               representative of the Class

DATED: 5/21/2025              _____
                               Cassandra Knight
                               Vice President of Litigation & Discovery on
                               behalf of Google LLC and YouTube LLC

**IT IS SO STIPULATED BY COUNSEL:**

DATED: _____    ROBBINS GELLER RUDMAN
                                & DOWD LLP
                               STUART A. DAVIDSON (*pro hac vice*)
                               ALEXANDER C. COHEN (*pro hac vice*)




                              _____
                               STUART A. DAVIDSON

                               225 NE Mizner Boulevard, Suite 720
                               Boca Raton, FL  33432
                               Telephone:  561/750-3000
                               sdavidson@rgrdlaw.com
                               acohen@rgrdlaw.com

                               ROBBINS GELLER RUDMAN
                                 & DOWD LLP
                               AELISH M. BAIG
                               Post Montgomery Center
                               One Montgomery Street, Suite 1800
                               San Francisco, CA  94104
                               Telephone:  415/288-4545
                               aelishb@rgrdlaw.com


                               MILBERG COLEMAN BRYSON
                                 PHILLIPS GROSSMAN, PLLC
                               GARY KLINGER (*pro hac vice*)




                              _____
                               GARY KLINGER

                               221 West Monroe Street, Suite
                               2100 Chicago, IL  60606
                               Telephone:  866/252-0878
                               gklinger@milberg.com

1            MILBERG COLEMAN BRYSON
             PHILLIPS GROSSMAN, PLLC
2            JONATHAN B. COHEN
            800 South Gay Street, Suite 1100
3            Knoxville, TN 37929
            Telephone: 865/247-0080
4            jcohen@milberg.com

5
            MILBERG COLEMAN BRYSON
6             PHILLIPS GROSSMAN, PLLC
            NICK SUCIU, III
7            6905 Telegraph Road, Suite 115
            Bloomfield Hills, MI 48301
8            Telephone: 313/303-3472
            nsuciu@milberg.com
9
            MILBERG COLEMAN BRYSON
10             PHILLIPS GROSSMAN, PLLC
            JOHN J. NELSON
11            ALEXANDER WOLF
            401 West Broadway, Suite 1760
12            San Diego, CA 92101
            Telephone: 858/209-6941
13            jnelson@milberg.com
            awolf@milberg.com
14

15            Attorneys for Plaintiff

16  DATED: May 21, 2025    PERKINS COIE LLP

17

18

19            SUSAN D. FAHRINGER
            LAUREN TSUJI
20            NICOLA MENALDO

21            1201 Third Avenue, Suite 4900
            Seattle, WA 98101
22            Telephone: 206/359-8000
            SFahringer@perkinscoie.com
23            NMenaldo@perkinscoie.com
            LTsuji@perkinscoie.com
24
            SUNITA BALI
25            505 Howard Street, Suite 1000
            San Francisco, CA 94105
26            Telephone: 415/344-7000
            SBali@perkinscoie.com
27
            HAYDEN M. SCHOTTLAENDER
28            500 North Akard Street, Suite 3300

STIPULATION OF CLASS ACTION SETTLEMENT - 3:22-cv-06987-JD    - 31 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dallas, TX  75201
Telephone:  214/965-7700
HSchottlaender@perkinscoie.com

KATHLEEN A. STETSKO
110 North Wacker Drive, Suite 3400
Chicago, IL  60606
Telephone:  312/324-8400
kstetsko@perkinscoie.com
Attorneys for Defendants YouTube, LLC and
Google LLC

# EXHIBIT A

**Official Notice from the United States District Court for the Northern District of California**

YOUTUBE USERS IN ILLINOIS MAY BE ENTITLED TO PAYMENT FROM A CLASS ACTION SETTLEMENT IF THEY UPLOADED A VIDEO TO YOUTUBE ON WHICH FACE BLUR WAS RUN.

*A federal court has authorized this Notice. You are <u>not</u> being sued.*
*This is <u>not</u> a solicitation from a lawyer.*

YouTube, LLC and Google LLC (collectively, "YouTube" or "Defendants") have settled a class action that claimed Defendants collected and stored biometric data without the proper notice and consent in violation of Illinois law as part of its Face Blur feature.  Defendants have denied those allegations and that it violated any law, and has further argued that Face Blur is a privacy protective feature.[1]  The Court has not decided who is right or wrong.

You are a Class Member and included in the Settlement if you are or were a YouTube user residing in Illinois and you uploaded a video to YouTube on which Face Blur was run.

Class Members who file valid claims will be eligible to receive a pro rata share from a $6,022,500 Settlement Fund. Each share is currently estimated to be approximately $200 per person, but could be more or less depending on the number of valid claims and deductions from the fund for court-approved costs of notifying people about the Settlement, the lawyers' fees, an award to the person who helped bring the lawsuit, and certain taxes.

The Court in charge of this case has not yet decided if the Settlement is fair. Payments will be made only if the Court decides the Settlement is fair and approves the Settlement.

If you are a Class Member, your legal rights are affected whether you act or do not act. Read this Notice carefully. Your rights and options – and the Court-ordered deadlines to exercise them – are explained in this Notice.

---

[1] The terms of the Settlement are in the Stipulation of Class Action Settlement, dated [XXX] ( "Settlement     Agreement"     or     "Agreement"),     which     can     be     viewed     at www.youtubefaceblurbipasettlement.com.  All capitalized terms not defined in this Notice have the same meanings as in the Agreement.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive a payment from this Settlement is by submitting a timely and properly completed Claim Form that obtains approval from the Settlement Administrator. The Claim Form must be submitted no later than _____, 202_. You can submit your Claim Form online at **www.youtubefaceblurbipasettlement.com** or by mail to the Settlement Administrator. By submitting a Claim Form, you will give up certain rights to sue Defendants. | _____, 202_ |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against Defendants related to the legal claims resolved by this Settlement. | _____, 2025 |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not exclude yourself from the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. If you object, you may also file a claim for a payment. You may object to the Settlement and ask the Court for permission to speak at the Final Approval Hearing about your objection, but you do not need to attend the Final Approval Hearing for your objection to be considered. | _____, 2025 |
| **DO NOTHING** | Unless you exclude yourself, you are automatically part of the Settlement. If you do nothing, you will not get a payment from this Settlement, and you will give up the right to sue, continue to sue, or be part of another lawsuit against Defendants related to the legal claims resolved by this Settlement. | No Deadline |

**Basic Information**

1. **Why should I read this Notice?**

    This Notice explains the lawsuit, the Settlement, your rights, what payments are available, and how to get them.

    The Honorable James Donato of the United States District Court for the Northern District of California is in charge of this class action. The lawsuit is known as *Colombo v. YouTube, LLC and Google LLC*, No. 3:22-cv-06987-JD.

2. **What is this lawsuit about?**

    A YouTube user in Illinois sued Defendants claiming that YouTube's Face Blur feature involved facial recognition technology and violated the Illinois Biometric Information Privacy Act ("BIPA"). The BIPA is an Illinois state law that prohibits the collection and storage, of "biometric

data" without first giving notice and getting consent. Defendants deny all allegations of wrongdoing and liability and further contend that Face Blur is a feature designed to protect the privacy of individuals shown in YouTube videos. For more information, please visit www.youtubefaceblurbipasettlement.com.

3. **What is a class action and who is involved?**

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of other people who have similar claims. These people together are a "Settlement Class" or "Settlement Class Members." One court resolves the issues in the case for everyone in the Settlement Class – except for those people who choose to exclude themselves from the Settlement Class. In this case, Nathan Colombo is the Class Representative. He is from Illinois and claims that he uploaded a video to YouTube on which Face Blur was run.

4. **Why is there a Settlement?**

**The Court has not decided who should win the case.** Instead both sides agreed to a settlement. That way both sides avoid the cost and risks of trial, and Class Members will get guaranteed payments now whereas they might otherwise get nothing or might only get payments years from now, if at all.

**Who Is Included in the Settlement**

To see if you can get a payment, you first need to determine whether you are included in this lawsuit.

5. **Am I Included as part of the Settlement Class?**

Defendants' records were used to notify some likely Settlement Class Members via email. Regardless of whether you received such an email, you might be part of the Settlement Class if, while residing in Illinois, you uploaded a video to YouTube on which Face Blur was run.

6. **Are there exceptions to being included?**

Some users are excluded because they work for Defendants or are related to the judges or lawyers in the case. The Settlement Agreement has a list of the categories of people who are excluded: (a) any Judge, Magistrate Judge, or mediator presiding over this lawsuit and members of their families; (b) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Settlement Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's counsel and Defendants' counsel (as identified in this Notice); and (f) the legal representatives, successors, and assigns of any such excluded persons.

7. **I'm still unsure if I am included.**

If you are still not sure whether you are included, you can get free help at www.youtubefaceblurbipasettlement.com, by calling the Settlement Administrator at [1-800-###-####] or by calling the lawyers appointed to represent Settlement Class Members in this case, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") of San Francisco, California at (800) 449-4900 and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") of Chicago, Illinois at (866) 252-0878. Please do not contact the Court or Defendants.

### The Settlement Benefits

8. **What does the Settlement provide?**

Defendants have agreed to pay $6,022,500 to settle this case. If the Settlement is approved by the Court, that money will go into a "Settlement Fund" to pay for everything related to the Settlement. Most of the money will go to Settlement Class Members who submit valid Claim forms (more about that in the question below). The rest will be used to pay the Court-approved costs of notifying people about the Settlement, the lawyers' fees, an award to the Class Representative who helped bring the lawsuit, and certain taxes.

9. **How much will my payment be?**

Payments will likely be approximately $200 per Settlement Class Member who timely submits a valid Claim Form. The exact amount of payment per claim will depend on how many Settlement Class Members file valid claims and the amount of fees, expenses, and Class Representative award approved by the Court to be deducted from the Settlement Fund. The Settlement Website will periodically be updated to provide the estimated payment amount based on the number of participating Settlement Class Members.

10. **How can I get a payment?**

If you are a Settlement Class Member and want to receive a payment you must complete and submit a valid Claim Form **no later than [Claims Deadline]**. Please file your claim electronically on **www.youtubefaceblurbipasettlement.com**. Not only is submitting online easier and more secure, but it is completely free and takes only minutes. You can get payment by a check or electronically through Zelle, PayPal, or direct deposit.

If you want to get a paper copy of the Claim Form, you can go to www.youtubefaceblurbipasettlement.com or call toll free, 1-800-000-0000.

11. **When will I get my payment?**

We can't give you a date yet. Payments will be made about two months after the Court approves the Settlement. The Court will consider final approval of the Settlement on [Final Approval Hearing Date.] Even if the Court approves the Settlement there may be appeals. It is always uncertain whether and when appeals can be resolved, and resolving them can take more than a year.

All checks will expire and become void 90 days after they are issued. If there is any money left because of uncashed checks or returned electronic payments, you may get a second payment if you filed a valid claim. If there is money left after the second round of payments, that money may be donated to the American Civil Liberties Union of Illinois.

The Settlement Website will be updated to inform Settlement Class Members of the progress of the Settlement. Please be patient.

### What happens if you remain in the Settlement

### 12. What am I giving up if I stay in the Settlement Class?

Unless you timely exclude yourself by the [exclusion deadline], you are staying in the Settlement Class. That means that if the Court approves the Settlement, you are giving up the right to file your own lawsuit against, or seek further money from, Defendants and other related parties for any of the issues or claims in the case – whether or not you are currently aware of those claims.

The specific scope of the claims you are releasing is in Paragraph 1.24 of the Settlement Agreement, which is available through the "Court Documents" link on the Settlement Website. If you have any questions, you can talk to the lawyers listed in Question 14 for free, or you can, of course, talk to your own lawyer if you have questions about what the release means.

### 13. What happens if I do nothing at all?

If you are a Settlement Class Member and do nothing (meaning you don't submit a Claim Form and don't exclude yourself), you will not get anything from this Settlement and you will release your claims as explained above.

### The Lawyers Representing You

### 14. Do I have a lawyer in this case?

The Court has appointed the law firms of Robbins Geller ((800) 449-4900) and Milberg ((866) 252-0878) to represent you and all Settlement Class Members. These firms are called "Class Counsel." The law firms are experienced in handling similar class action cases. More information about Robbins Geller and Milberg, their practices, and their lawyers' experience is available at www.rgrdlaw.com and www.milberg.com.

They believe, after fighting with Defendants in court for over two years, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be separately charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

### 15. How will the lawyers be paid?

The Court will determine how much Class Counsel will be paid for attorneys' fees and expenses in this case. The amounts will be paid from the $6,022,500 Settlement Fund. Class

Counsel will apply for an attorney's fee award of no more than 25% of the Settlement Fund, plus expenses.

Class Counsel will also ask the Court to approve an award of up to $5,000 to compensate the Class Representative for his services on behalf of the Settlement Class.

Class Counsel's application for an award of attorney's fees, expenses, and the Class Representative award will be made available on the "Court Documents" page at www.youtubefaceblurbipasettlement.com on the date it is filed or as quickly thereafter as possible.

## Excluding Yourself from the Settlement Class

### 16. How do I get out of the Settlement?

To exclude yourself from the Settlement Class, and no longer be part of the Settlement, you must mail or email a letter stating that you want to be excluded from the Settlement Class in *Colombo v. YouTube, LLC and Google LLC*, No. 3:22-cv-06987-JD. Your request for exclusion must include your name, address, email address, and your personal non-electronic signature. If your email address is different than the email address associated with your YouTube account, please also include an email address associated with your account. You must mail or email your exclusion request **no later than [objection/exclusion deadline]** to: YouTube Biometric Privacy Settlement Administrator [email & U.S. Mail Address]. You must make this request for exclusion on an individual basis, exclusions on a "mass" or "class" basis are not permitted in this case.

### 17. If I do not exclude myself, can I sue Defendants for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims being resolved by this Settlement. If you have a pending case against Defendants, **please speak with your attorney immediately**.

### 18. If I exclude myself, can I still get anything from the Settlement?

No. If you exclude yourself, you will not receive any payment

## Objecting to or Commenting on the Settlement

### 19. How do I object or comment on the Settlement or the request for attorneys' fees, expenses, and Class Representative award?

You can comment on, or object to, the Settlement, Class Counsel's request for attorney's fees, expenses, and/or an award for the Class Representative.

You can ask the Court to deny approval of the Settlement. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no payments will be made now, and the litigation will continue. If that is what you want to happen, you must object.

Any objection to the proposed Settlement must be in writing. If you file a written objection before the deadline, you may, but don't have to, appear at the Final Approval Hearing. If you want to appear, you can do so yourself or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney.

All written objections must contain the following:

● The name and case number of this lawsuit (*Colombo v. YouTube, LLC and Google LLC*, No. 3:22-cv-06987-JD).

● Your full name, mailing address, and email address.

● If you use a different email address for your YouTube account please also provide that information.

● An explanation of why you believe you are a Settlement Class Member.

● A statement that identifies whether you are objecting only on your own behalf, on behalf of a subsection of the Settlement Class, or on behalf of the Settlement Class as a whole.

● All reasons for your objection or comment, including all citations to legal authority and evidence supporting the objection.

● Whether you intend to personally appear and/or testify at the Final Approval Hearing (either personally or through counsel), and what witnesses you will ask to speak.

● The name and contact information of any and all attorneys representing, advising, and/or assisting you, including any counsel who may be entitled to compensation for any reason related to your objection or comment, who must enter an appearance with the Court in accordance with the Local Rules.

● Your handwritten or electronically imaged signature. An attorney's signature, or typed signature, is not sufficient.

To be considered by the Court, your comment or objection must be received by the Court either by mailing it to the Class Action Clerk, United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, or by filing it electronically or in person at any location of the United States District Court for the Northern District of California. **To be considered, your comment or objection must be filed as described above before the [objection/ exclusion deadline].**

- 7 -

20. **What is the difference between objecting and excluding myself from the Settlement Class?**

Objecting means that you disagree with some aspect of the Settlement and think the Court should not approve the Settlement. An objection, or a comment, allows your views to be heard in court. You can object only if you stay in the Settlement Class.

Excluding yourself from the Settlement Class means that you are no longer a Settlement Class Member and do not want the Settlement to apply to you. If you exclude yourself, you lose any right to receive any payments or benefits from the Settlement or to object to the Settlement because the case no longer affects you, but retain the right to sue Defendants on your own at your own expense.

<div align="center">

**The Court's Final Approval Hearing**

</div>

21. **When and where will the Court decide whether to approve the Settlement?**

The Court is scheduled to hold the Final Approval Hearing on ____, 2025 at _____[p.m./a.m.]. in Courtroom __ of the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, ____ Floor, San Francisco, California. The hearing may be rescheduled to a different date or time or location without another notice to Settlement Class Members. Please review the Settlement Website for any updated information regarding the Final Approval Hearing.

At the Final Approval Hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. The Court may listen to people who appear at the hearing and who have provided notice of their intent to appear at the hearing. The Court may also consider Class Counsel's application for attorneys' fees, expenses, and the award to the Class Representative.

22. **Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you submit a written objection or comment, you do not have to come to the Court to talk about it. As long as you submit your written objection or comment on time, and follow the requirements above, the Court will consider it.

You may also pay your own attorney to attend, but it is not required.

23. **May I speak at the Final Approval Hearing?**

Yes. You may ask the Court for permission to speak at the Final Approval Hearing. At the hearing, the Court may hear any objections and arguments concerning the fairness of the Settlement and/or Class Counsel's request for attorneys' fees, expenses, and Class Representative award.

To do so, you must include in your objection or comment a statement saying that it is your "Notice of Intent to Appear in *Colombo v. YouTube, LLC and Google LLC*, No. 3:22-cv-06987-

JD." It must include your name, address, email, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your submission and notice of intent to appear must be filed with the Court and received no later than **[objection/exclusion deadline]**.

You cannot speak at the hearing if you exclude yourself from the Settlement Class.

**Getting More Information**

24. **How do I get more information?**

This Notice summarizes the proposed Settlement. More details are in the Stipulation of Class Action Settlement, in the Court's Orders, and other relevant documents, which are available online at **www.youtubefaceblurbipasettlement.com**.

You can also get information about this case by accessing the Court docket, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102 between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

You may also contact the Settlement Administrator at 1-800-000-0000 or write to YouTube Biometric Information Privacy Litigation, Settlement Administrator, c/o _____, P.O. Box _____, _____, or call Class Counsel Robbins Geller (800-449-4900) and Milberg (866-252-0878).

**PLEASE DO NOT TELEPHONE DEFENDANTS, THE COURT, OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

All questions regarding the Settlement or claims process should be directed to the Settlement Administrator or to Class Counsel.

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA.

- 9 -

# EXHIBIT B

**YouTube users in Illinois may be entitled to payment if they uploaded a video to YouTube on which Face Blur was run.**

Don't worry, you are not being sued.  This is an official Court notice, not an ad for a lawyer.

A settlement has been reached in a class-action lawsuit against YouTube, LLC and Google LLC (collectively, "YouTube" or "Defendants").  That lawsuit alleged that Defendants violated Illinois law by collecting and storing biometric data without the proper notice and consent as part of its Face Blur feature.  Defendants deny those allegations and any wrongdoing, and further argued that Face Blur was a privacy-protective feature.

You may be entitled to payment in connection with the settlement of that lawsuit. You can fill out a short claim form no later than [claims deadline] and potentially get an estimated $200 by clicking below.

**/Claim now/**

**Am I a Settlement Class Member?**

You are a class member if you are or were a resident of the State of Illinois who uploaded a video to YouTube on which Face Blur was run.  Excluded from the Settlement Class are: (i) any Judge, Magistrate Judge, or mediator presiding over this Action and members of their families; (ii) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and its current or former employees, officers, and directors; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendants' counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

For more information, please visit www.youtubefaceblurbipasettlement.com..

**What can I get?**

Valid claims may receive approximately $200 from a $6,022,500 Settlement Fund.  Valid members of the Settlement Class may submit only one claim.  The amount you receive may be less than or greater than this amount depending on the number of valid claims filed.  This fund will also be used to pay the costs of notifying people about the settlement, the lawyers' fees, award payment to the users who helped bring the lawsuit, and certain taxes.

**How do I get my money?**

**If you believe you are a Settlement Class Member, you must submit a short claim form to receive a portion of the Settlement Fund.  You can do so either by mail to [address], or online at www.youtubefaceblurbipasettlement.com.  Under either method, your claim form must be received no later than [claims deadline].**  Submitting a claim online is easy, secure, and completely free.  You can also get a claim form by calling toll free, 1-800-000-0000.

**What are my other options?**

If you are part of the Settlement Class but do not want money from the Settlement and want to keep your right to file your own lawsuit against Defendants for any of the issues or claims in the case, you must exclude yourself from the Settlement Class by sending a written request to be excluded providing your name, physical address, email, "wet" (non-electronic) signature, and name and number of the action to [the Settlement Administrator] **no later than [objection/exclusion deadline]**. Nobody may submit a request for exclusion on your behalf.

If you stay in the Settlement Class, you may object to any aspect of the Settlement, including the requests for attorneys' fees, expenses, and award to the Class Representative. You and/or your lawyer also have the right to appear before the Court. Your written objection must be filed with the Court **no later than [objection/exclusion deadline]**. Specific instructions about how to object or exclude yourself from the Settlement Class are available at www.youtubefaceblurbipasettlement.com.

If you do nothing, and the Court approves the Settlement, you will receive no money, but will be bound by all orders of the Court and judgments in this case. In addition, you will no longer be able to file your own lawsuit for any of the issues or claims in the case.

**Do I have a lawyer?**

The Court has appointed the law firms Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") to represent the Settlement Class as "Class Counsel." You do not have to pay Class Counsel or anyone else to participate. Class Counsel intend to request that the Court award them attorneys' fees from the settlement fund not to exceed 25%, plus litigation expenses. If you want to be represented by your own lawyer in this case, you may hire one at your expense. Nathan Colombo is a Settlement Class Member like you and the Court appointed him as the "Class Representative." He will request an award not to exceed $5,000 for his service on behalf of the Settlement Class.

**When will the Court consider the proposed settlement?**

The Court has scheduled a hearing on the fairness of Settlement at [time] on [month] day, 2025 at the Philip Burton Federal Building and U.S. Courthouse, 450 Golden Gate Avenue, Courtroom __, ____ floor, San Francisco, California 94102. The Court will consider whether to approve the Settlement; any objections; and the requests for award to the Class Representative, and attorneys' fees and expenses to Class Counsel. The briefs and declarations in support of these requests will be posted on the website on [date]. You may ask to appear at the hearing but you do not have to. The date, time, and location of the hearing may change. Please review the website for any updated information regarding the final hearing.

**How do I get more information?**

This notice is only a summary. For more information about the case and the Settlement, visit www.youtubefaceblurbipasettlement.com or contact the administrator at 1-800-000-0000, write to YouTube Biometric Litigation, Settlement Administrator, c/o [address], or call Class Counsel Robbins Geller (800) 449-4900 and Milberg (000) 000-0000.

- 2 -

**PLEASE DO NOT CALL OR WRITE THE COURT OR DEFENDANTS FOR INFORMATION OR AD ICE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**

4906-8749-2139.v2

# EXHIBIT

## CLAIM FORM

*Colombo v. YouTube, LLC and Google LLC*
**No.    22 cv 0        JD**
**United States District Court, Northern District of California**
**SUBMIT BY                              , 202_**
ONLINE AT www.youtubefaceblurbipasettlement.com
OR MAIL TO:
SETTLEMENT ADMINISTRATOR
ADDRESS

## GENERAL CLAIM FORM INFORMATION

This Claim Form[1] should be filled out and submitted by mail if you received a notice of class action settlement and/or you believe you are a Settlement Class Member.  The Settlement Class consists of "[a]ll residents of the State of Illinois who uploaded a video to YouTube on which Face Blur was run."

If you wish to submit a Claim by mail, please provide all of the information requested below. Please print clearly in blue or black ink.  You may only submit one claim, even if you have multiple YouTube accounts.  Duplicated claims will be rejected.  This Claim Form must be postmarked by **no later than** DD, MM, 202_.

**If your Claim Form is incomplete or missing information, the Settlement Administrator may contact you for additional information.  If you do not respond by the deadline provided by the Settlement Administrator, the Settlement Administrator will be unable to process your Claim, and you will waive your right to receive money under the Settlement.**

**If you have any questions, please contact the Settlement Administrator by email at Questions   youtubefaceblurbipasettlement.com, by telephone at [NUMBER], or by mail at the address listed above.  Submission of this Claim Form does not guarantee payment.  Your Claim Form must be approved by the Settlement Administrator.  You must notify the Settlement Administrator if your contact or payment information changes.  If you do not, even if you submit a valid claim under the Settlement, you may not receive your payment.**

## Claimant Information

_____

Full Name of Class Member

_____

Street/P.O. Box                          City              State            Zip Code

---

[1]    Unless otherwise noted, all capitalized terms herein are defined in the Stipulation of Class Action Settlement, available at www. youtubefaceblurbipasettlement.com.

_____

Email Address


_____

Contact Telephone Number


Email Address associated with your YouTube account:

_____

Email Address


Class Member Affirmation

      I am or was a resident in the state of Illinois.

      During the time I resided in Illinois, I uploaded at least one YouTube video on which Face Blur was run.

      By submitting this Claim I affirm under penalty of perjury that, to the best of my knowledge, each box I check and the information I provide herein is true and accurate.

      I have not submitted another Claim.


Signature_____          Date_____


Payment type: There are four different payment options:

1.     ***Check***: No additional information is required. The check will be payable to the individual's full name and it will be mailed to the address you entered above.

2.     ***Zelle***: Please provide your email address for Zelle.

     _____

     Email Address for Zelle

3.     ***PayPal***: Please provide your email address or telephone number associated with your PayPal account.

     _____    _____

Email Address for PayPal    Confirm Email Address for PayPal

_____  _____
Telephone Number for PayPal   Confirm Telephone Number for PayPal

4. ***Direct Deposit***: Please provide your routing number, account number, bank name, and account type.

_____  _____
Routing Number       Bank Account Number

            _____
            Confirm Bank Account Number

_____  _____
Bank Account Name      Account Type

## <u>ONLINE CLAIM FORM</u>

Once individuals access the website, the first step is to provide the email address associated with their YouTube account.  If an individual comes to the website by clicking a link in the email notice, the email associated with their account will be prepopulated.  (See screenshot below.)



Next, the individuals are required to provide their name and address.  (See screenshot below.)

Afterwards, the individuals are required to choose a payment type to receive the settlement funds.  Depending on their selection, the individuals are required to provide additional information regarding their selected payment type.  There are 4 different payment options:

1. **Check**: No additional information is required.  The check will be payable to the individual's full name and it will be mailed to the address provided in the previous steps.  (See the following screenshot.)



2.  **elle**: The individual is required to provide their email address or telephone number associated with their Zelle account. (See the following screenshot.)



3.  **PayPal**: The individual is required to provide their email address or telephone number associated with their PayPal account. (See the following screenshot.)



4.  **Direct Deposit**  The individual is required to provide routing number, account number, bank name and account type. (See the following screenshot.)



Next, individuals are required to fill out an affirmation section.  (See the following screenshot.)

## Class Member Affirmation

* ☐ **I am or was a resident in the state of Illinois.**

* ☐ **During that time I lived in Illinois, I uploaded at least one YouTube video on which Face Blur was run.**

* ☐ **By submitting this Claim I affirm under penalty of perjury that, to the best of my knowledge, each box I check and the information I provide herein is true and accurate.**

* ☐ **I have not submitted another Claim.**

[ Agree and Submit ]

Afterwards, a submission confirmation is displayed accompanied by the individual's claim number.  (See the following screenshot.)

## Claim Submitted

**Your claim has been submitted. Your Claim Number is: YT-00000000003**

Please note your Claim Number and date of filing for your records.

If an email was provided, a confirmation email will be sent to you shortly.

**Your claim must be approved by the Settlement Administrator before you will be entitled to any payment.**

# EXHIBIT

1

UNITED STATES DISTRICT COURT

2

NORTHERN DISTRICT OF CALIFORNIA

3

4   NATHAN COLOMBO, Individually and on     )   Case No. 3:22-cv-06987-JD

5   Behalf of All Others Similarly Situated,     )
                                                 )   [PROPOSED] ORDER GRANTING
6                                                )   MOTION FOR PRELIMINARY APPROVAL
                              Plaintiff,          )
7                                                )   OF CLASS ACTION SETTLEMENT
                                                 )
8         vs.                                     )
                                                 )
9                                                )
    YOUTUBE, LLC and GOOGLE LLC,                 )
10                                               )
11                            Defendants.         )
                                                 )
12                                               )
13  _____             )
                                                 )
14                                               )

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4905-3329-4892.v2

1    WHEREAS, an action is pending before this Court entitled *Colombo v. YouTube, LLC and*

2    *Google LLC*, No. 3:22-cv-06987-JD ("Action");

3    WHEREAS, Plaintiff has moved, pursuant to Rule 23(e) of the Federal Rules of Civil

4    Procedure, for an order preliminarily approving the settlement of the Action ("Plaintiff's Motion,"

5    ECF ___), in accordance with a Settlement Agreement filed on May 21, 2025 (ECF ___)

6    ("Settlement Agreement"), which, together with the exhibits annexed thereto, sets forth the terms

7    and conditions for a proposed settlement of the Action and for dismissal of the Action with

8    prejudice upon the terms and conditions set forth therein; and the Court having read and considered

9    the Settlement Agreement and the exhibits annexed thereto;

10    WHEREAS, unless otherwise defined, all terms used herein have the same meanings as set

11    forth in the Settlement Agreement; and

12    WHEREAS, the Court has read and considered Plaintiff's Motion, and finds that there is a

13    sufficient basis for granting preliminary approval of the settlement memorialized by the Settlement

14    Agreement ("Settlement"), authorizing dissemination of notice, and authorizing the steps needed

15    to determine whether the Settlement should be finally approved and the litigation dismissed.

16    NOW, THEREFORE IT IS HEREBY ORDERED:

17    1.    The Court does hereby preliminarily and conditionally approve and certify, for

18    settlement purposes, the following Settlement Class:

19    All residents of the State of Illinois who uploaded a video to YouTube on which

20    Face Blur was run.[1]

21

22

23    _____

24    [1] Excluded from this definition are: (a) any Judge, Magistrate Judge, or mediator presiding over this Action and members of their families; (b) Defendants, Defendants' subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and its current or former employees, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Settlement Class; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) Plaintiff's counsel and Defendants' counsel; and (f) the legal representatives, successors, and assigns of any such excluded persons.

25

26

27

28    [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
      SETTLEMENT - 3:22-cv-06987-JD                                                                - 1 -
      4905-3329-4892.v2

2.      Based on the information provided: the Settlement Class is ascertainable; it consists of thousands of Settlement Class Members satisfying numerosity; there are common questions of law and fact, including whether Defendant YouTube, LLC's and Google LLC's (collectively, "YouTube" or "Defendants") use of the Face Blur feature violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *e . e .*, satisfying commonality; the proposed Class Representative's claim is typical in that he is a Member of the Settlement Class and alleges that he uploaded a video to YouTube on which Face Blur was run and that he has been damaged by the same conduct as the other Members of the Settlement Class; the proposed Class Representative and Class Counsel fully, fairly, and adequately protect the interests of the Settlement Class; questions of law and fact common to Members of the Settlement Class predominate over questions affecting only individual Members for settlement purposes; and a class action for settlement purposes is superior to other available methods for the fair and efficient adjudication of this Action.

3.      For purposes of settlement only, the Court appoints Plaintiff Nathan Colombo as the Class Representative and the Court appoints the law firms of Robbins Geller Rudman & Dowd LLP and Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel.

4.      The proposed Settlement is preliminarily approved as likely to be approved under Fed. R. Civ. P. 23(e)(2) and as meriting notice to the Settlement Class for its consideration. Considering the factors set forth in Fed. R. Civ. P. 23(e)(2), the Court preliminarily finds as follows:

(a)      Class Representative and Class Counsel have adequately represented the Settlement Class;

(b)      the Settlement was the result of serious, informed, non-collusive negotiations at arms-length with the assistance of Shirish Gupta of JAMS, a well-respected and experienced private mediator;

(c)      the relief provided to the Settlement Class is adequate given the risks and uncertainty of continued litigation and trial; and

1    (d)    the proposal treats all Settlement Class Members equitably relative to each

2    other.

3    5.    The Court finds that the terms of the Settlement are sufficiently fair, reasonable,

4    and adequate to allow dissemination of the Notice to Members of the Settlement Class.  This

5    determination is not a final finding that the Settlement is fair, reasonable and adequate, but it is a

6    determination that the Settlement is within the range of reasonableness as to disseminate notice to

7    the Settlement Class and hold a hearing on final approval of the proposed Settlement.

8    6.    A hearing (the "Final Approval Hearing") shall be held before this Court on

9    _____, 2025, at the United States District Court for the Northern District of California, 450

10   Golden Gate Avenue, San Francisco, California, Courtroom _____ to determine (a) whether the

11   proposed Settlement of the Action on the terms and conditions provided for in the Settlement

12   Agreement is fair, reasonable, and adequate to Settlement Class Members and should be approved

13   by the Court; (b) whether a Final Judgment should be entered; (c) whether the proposed plan of

14   allocation is fair, reasonable, and adequate and should be approved; (d) the Fee Award that should

15   be awarded to Class Counsel; and (e) any award to the Class Representative.  The Final Approval

16   Hearing may be postponed, adjourned, or continued by further order of this Court, without further

17   notice to the parties or Members of the Settlement Class.

18   7.    The Court appoints and designates Verita Global, LLC, as the Settlement

19   Administrator and it shall be required to perform all of the duties of the Settlement Administrator

20   as set forth in the Settlement Agreement and this Order.  The Settlement Administrator shall

21   provide Notice as set forth in Section 6 of the Settlement Agreement.

22   8.    To the extent it has not already done so, within fourteen (14) calendar days after

23   entry of this Order, Defendants shall produce to the Settlement Administrator the Direct Notice

24   List.

25   9.    Within thirty-five (35) calendar days after entry of this Order, the Settlement

26   Administrator shall: (a) disseminate notice of the pendency and settlement of this Action to each

27   email address included on the Direct Notice List substantially in the form attached as Exhibit B to

28

1   the Settlement Agreement, with a link to a Spanish language version; (b) cause the Notice

2   substantially in English and Spanish in the form attached as Exhibit A to the Settlement

3   Agreement, relevant Court documents, and frequently asked questions and answers to be posted

4   to the Settlement Website; and (c) arrange for an Internet banner ad campaign generating

5   approximately 1.865 million impressions targeting Illinois YouTube users and Illinois adults 25-

6   54 years of age via the Meta Audiences Network.  No later than the date fourteen (14) calendar

7   days before the Claims Deadline, the Settlement Administrator shall send a reminder notice

8   substantially in the form attached as Exhibit B to the Settlement Agreement, with a link to a

9   Spanish language version, to each email address included on the Direct Notice List.

10       10.    The Court finds that the distribution of the Notice, substantially in the manner and

11   forms set forth in this Order meet the requirements of Fed. R. Civ. P. 23 and due process, and is

12   the best notice practicable under the circumstances and shall constitute due and sufficient notice

13   to all persons entitled thereto.

14       11.    The Settlement Website and Notice shall provide an address (U.S. mail and email)

15   for the purpose of receiving requests for exclusion from the Settlement Class and shall include the

16   ability to file claims online.  Settlement Class Members shall have until [claims date] to submit a

17   Claim Form substantially in the form attached as Exhibit C to the Settlement Agreement, the

18   content and form of which the Court approves.

19       12.    No later than [date], Plaintiff must file his papers in support of Class Counsel's

20   application for attorneys' fees and expenses, and no later than [date], Plaintiff must file his papers

21   in support of final approval of the Settlement Agreement and in response to any objections.

22       13.    All persons who meet the definition of the Settlement Class and who wish to

23   exclude themselves from the Settlement Class must submit their request for exclusion in writing

24   to the Settlement Administrator, postmarked no later than the Objection/Exclusion deadline of

25   [date].  To exercise the right to be excluded, a Settlement Class Member must timely send a written

26   request for exclusion to the Settlement Administrator providing his/her name, address, email,

27   signature, the name and number of the Action, and a statement that he or she wishes to be excluded

28

from the Settlement Class for purposes of the Settlement Agreement. A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the person(s) serving such a request shall remain a Member(s) of the Settlement Class and shall be bound as a Settlement Class Member by the Settlement Agreement, if approved. Any Member of the Settlement Class who validly elects to be excluded from the Settlement Agreement shall not: (a) be bound by any orders or the Final Judgment; (b) be entitled to relief under the Settlement Agreement; (c) gain any rights by virtue of the Stipulation; or (d) be entitled to object to any aspect of the Settlement Agreement. The request for exclusion must be personally signed by the person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed. To be valid, a request for exclusion must be postmarked or received by the date specified in this Order and the Notice.

14.     Any Settlement Class Member who intends to object to the Settlement Agreement and/or the request for a Fee Award, must present the objection in writing only to the Court, which must be personally signed by the objector, and must include: (a) the objector's name, address, and email; (b) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (c) whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (d) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (e) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, who must enter an appearance with the Court in accordance with the Local Rules; and (f) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel).

15.     Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Order and as detailed in the Notice, and at the same time provide copies to

1   designated counsel for the Parties, shall not be permitted to object to the Settlement Agreement at

2   the Final Approval Hearing, and shall be foreclosed from seeking any review of the Settlement

3   Agreement by appeal or other means and shall be deemed to have waived his or her objections and

4   be forever barred from making any such objections in the Action or any other action or proceeding.

5       16.    All funds held by the Escrow Agent shall be deemed and considered to be in

6   *u od a leg*  , and shall remain subject to the jurisdiction of the Court, until such time as such

7   funds shall be distributed pursuant to the Stipulation and/or further order (s) of the Court.

8       17.    Neither Defendants nor their counsel shall have any responsibility for the plan of

9   allocation or any application for attorneys' fees or expenses submitted by Class Counsel, and such

10  matters will be considered separately from the fairness, reasonableness, and adequacy of the

11  Settlement Agreement.

12      18.    Neither the Settlement Agreement, nor the Settlement contained therein, nor any

13  act performed or document executed pursuant to or in furtherance of the Settlement Agreement:

14  (a) is, may be deemed, or shall be used, offered or received against the Released Parties, or each

15  or any of them, as an admission, concession or evidence of, the validity of any Released Claims,

16  the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have

17  been asserted in the Action, the violation of any law or statute, the reasonableness of the Settlement

18  amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the

19  Released Parties, or any of them; (b) is, may be deemed, or shall be used, offered, or received

20  against Defendants, as an admission, concession or evidence of any fault, misrepresentation, or

21  omission with respect to any statement or written document approved or made by the Released

22  Parties, or any of them; (c) is, may be deemed, or shall be used, offered, or received against the

23  Released Parties, or each or any of them, as an admission or concession with respect to any

24  liability, negligence, fault, or wrongdoing as against any Released Parties, in any civil, criminal,

25  or administrative proceeding in any court, administrative agency, or other tribunal.  However, the

26  Settlement Agreement, and any acts performed and/or documents executed in furtherance of or

27  pursuant to the Settlement Agreement may be used in any proceedings as may be necessary to

28

1  effectuate the provisions of the Settlement Agreement.  Further, if the Settlement Agreement is

2  approved by the Court, any Party or any of the Released Parties may file the Settlement Agreement

3  and/or the Final Judgment in any action that may be brought against such Party or Parties in order

4  to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release,

5  good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue

6  preclusion or similar defense or counterclaim; (d) is, may be deemed, or shall be construed against

7  Plaintiff, the Settlement Class, the Releasing Parties, or each or any of them, or against the

8  Released Parties, or each or any of them, as an admission or concession that the consideration to

9  be given hereunder represents an amount equal to, less than, or greater than that amount that could

10 have or would have been recovered after trial; and (e) is, may be deemed, or shall be construed as

11 or received in evidence as an admission or concession against Plaintiff, the Settlement Class, the

12 Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them,

13 that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action

14 would have exceeded or would have been less than any particular amount.

15       19.   If the Settlement Agreement is terminated or fails to become effective for the

16 reasons set forth above, the Parties shall be restored to their respective positions as of the date of

17 the signing of the Settlement Agreement.  In such event, any Final Judgment or other order entered

18 by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated,

19 *nunc pro tunc*, and the Parties shall be returned to the status *quo ante* as if the Settlement

20 Agreement had never been entered into.

21       20.   Pending final determination of whether the proposed Settlement Agreement shall

22 be approved, neither Plaintiff nor any Settlement Class Member, directly or indirectly, or in any

23 other capacity, may commence or prosecute against Defendants, any action or proceeding in any

24 court or tribunal asserting any of the Released Claims.

25       21.   Pending final determination of whether the proposed Settlement Agreement should

26 be approved, Defendants shall not, directly or indirectly, representatively, or in any other capacity,

1    commence or prosecute against Plaintiff or any Settlement Class Member, or Class Counsel, any

2    action or proceeding in any court or tribunal asserting any Releasing Defendants' Claims.

3        IT IS SO ORDERED.

4    DATED: _____

5                                    _____

6                                    THE HONORABLE JAMES DONATO

7                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

# Digital Creatives

*Colombo v. YouTube, LLC and Google LLC* | Notice of Settlement

May 20, 2025



**NOTE**: All creatives displayed herein are for representative purposes only and may not be to scale. Some ads are built on responsive platforms and may not display all text in view based on placement, screen size, etc.

*Colombo v. YouTube, LLC and Google LLC*

# Facebook and Instagram

| | |
|---:|:---|
| **Image Text** | YouTube Face Blur Class Action Settlement |
| | LEARN MORE |
| | YouTubeFaceBlurBIPASettlement.com |
| **Headline** | YouTube Face Blur Class Action Settlement |
| **Description** | YouTube users in Illinois may be entitled to payment if they uploaded a video to YouTube on which Face Blur was run. |
| **Call to Action** | Learn more |
| **Website URL** | https://youtubefaceblurbipasettlement.com/ |
| *URL as displayed* | youtubefaceblurbipasettlement.com |


veritaglobal.com

*Colombo v. YouTube, LLC and Google LLC*

---

**Facebook Page**

---





**Facebook Desktop Feed Ad**

YouTube Face Blur Class Action Settlement
Sponsored
YouTube users in Illinois may be entitled to payment if they uploaded a video to YouTube on which Face Blur was run.
YouTube Face Blur Class Action Settlement
LEARN MORE
YouTubeFaceBlurBIPASettlement.com
YOUTUBEFACEBLURBIPASETTLEMENT.COM
YouTube Face Blur Class Action Settlement
Learn more
Share

**Facebook Mobile Feed Ad**

YouTube Face Blur Class Action Settlement
Sponsored
YouTube users in Illinois may be entitled to payment if they uploaded a video to YouTube on which Face Blur was run.
YouTube Face Blur Class Action Settlement
LEARN MORE
YouTubeFaceBlurBIPASettlement.com
youtubefaceblurbipasettlement.com
YouTube Face Blur Class Action Settlement
Learn...
Like
Comment
Share

**Facebook Stories Ad**

YouTube Face Blur Class Action Settl...
Sponsored
YouTube Face Blur Class Action Settlement
LEARN MORE
YouTubeFaceBlurBIPASettlement.com
YouTube users in Illinois may be entitled to payment if they uploaded a video... More
Learn more

**Instagram News Feed Ad**                    **Instagram Stories**







# EXHIBIT 2

# FIRM RESUME

**Robbins Geller**
**Rudman & Dowd** LLP

# TABLE OF CONTENTS

Introduction

**Practice Areas and Services**

Securities Fraud.................................................................................................... 2
Shareholder Derivative and Corporate Governance Litigation......................... 9
Options Backdating Litigation............................................................................ 12
Corporate Takeover Litigation............................................................................ 12
Antitrust................................................................................................................. 15
Consumer Fraud and Privacy.............................................................................. 16
Human Rights, Labor Practices, and Public Policy........................................... 20
Environment and Public Health.......................................................................... 21
Pro Bono................................................................................................................ 22

**Prominent Cases, Precedent-Setting Decisions, and Judicial Commendations**

Prominent Cases.................................................................................................. 24
Precedent-Setting Decisions............................................................................... 33
Additional Judicial Commendations................................................................... 40

**Attorney Biographies**

Partners................................................................................................................. 48
Of Counsel............................................................................................................. 132
Counsel.................................................................................................................. 157
Special Counsel.................................................................................................... 158
Forensic Accountants.......................................................................................... 158

# INTRODUCTION

Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm") is a 200-lawyer firm with offices in Boca Raton, Chicago, Manhattan, Melville, Nashville, San Diego, San Francisco, Philadelphia, Washington, D.C., and Wilmington (www.rgrdlaw.com). The Firm is actively engaged in complex litigation, emphasizing securities, consumer, antitrust, insurance, healthcare, human rights, and employment discrimination class actions. The Firm's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys, who have successfully prosecuted thousands of class action lawsuits and numerous individual cases, recovering billions of dollars.

This successful track record stems from our experienced attorneys, including many who came to the Firm from federal or state law enforcement agencies. The Firm also includes several dozen former federal and state judicial clerks.

The Firm is committed to practicing law with the highest level of integrity in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to treat others with respect and dignity.

We strive to be good corporate citizens and work with a sense of global responsibility. Contributing to our communities and environment is important to us. We often take cases on a *pro bono* basis and are committed to the rights of workers, and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety, and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights and other social issues.

# PRACTICE AREAS AND SERVICES

## Securities Fraud

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – often with the help of their advisors, such as bankers, lawyers, and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Robbins Geller is the leader in the fight to protect investors from corporate securities fraud. We utilize a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Firm attorneys to lead roles in hundreds of complex class-action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors. Currently, Robbins Geller attorneys are lead or named counsel in hundreds of securities class action or large institutional-investor cases. Some notable current and past cases include:

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of *$7.2 billion* for the benefit of investors. *This is the largest securities class action recovery in history*.

- *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of *$1.575 billion* after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class. In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of damages. The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. *The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the eighth-largest settlement ever in a post-PSLRA securities fraud case.* According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

- ***In re Valeant Pharms. Int'l, Inc. Sec. Litig.***, No. 3:15-cv-07658 (D.N.J.).  As sole lead counsel, Robbins Geller attorneys obtained a $1.2 billion settlement in the securities case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations."  The settlement resolves claims that defendants made false and misleading statements regarding Valeant's business and financial performance during the class period, attributing Valeant's dramatic growth in revenues and profitability to "innovative new marketing approaches" as part of a business model that was low risk and "durable and sustainable."  *Valeant* is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever.

- ***In re Am. Realty Cap. Props., Inc. Litig.***, No. 1:15-mc-00040 (S.D.N.Y.).  As sole lead counsel, Robbins Geller attorneys zealously litigated the case arising out of ARCP's manipulative accounting practices and obtained a $1.025 billion settlement.  For five years, the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers.  The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

- ***In re UnitedHealth Grp. Inc. PSLRA Litig.***, No. 06-CV-1691 (D. Minn.).  Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances.  The Firm obtained an $895 million recovery on behalf of UnitedHealth shareholders, and former CEO William A. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders, bringing the total recovery for the class to over $925 million, the largest stock option backdating recovery ever, and ***a recovery that is more than four times larger than the next largest options backdating recovery***.  Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- ***Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)***, No. 03 Civ. 8269 (S.D.N.Y.).  Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001.  The Firm's attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- ***Luther v. Countrywide Fin. Corp.***, No. 12-cv-05125 (C.D. Cal.).  Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time.  The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities.  The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis.  As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

- ***In re Wachovia Preferred Sec. & Bond/Notes Litig.***, No. 09-cv-06351 (S.D.N.Y.).  On behalf of investors in bonds and preferred securities issued between 2006 and 2008, Robbins Geller and co-

counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company and Wachovia auditor KPMG LLP. *The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 25 largest securities class action recoveries in history*. The settlement is also one of the biggest securities class action recoveries arising from the credit crisis. The lawsuit focused on Wachovia's exposure to "pick-a-pay" loans, which the bank's offering materials said were of "pristine credit quality," but which were actually allegedly made to subprime borrowers, and which ultimately massively impaired the bank's mortgage portfolio. Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors on behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund. At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.

- *AOL Time Warner Cases I & II*, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cnty.). Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA.

- *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.). Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer common stock during the January 19, 2006 to January 23, 2009 class period. The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme. As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

- *In re Dynegy Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc., and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

- *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.). In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan. The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action. The result was achieved after more than five years of hard-fought litigation and an extensive investigation.

- *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz.). As sole lead counsel, Robbins Geller obtained a $350 million settlement in *Smilovits v. First Solar, Inc*. The settlement, which was reached after a long legal battle and on the day before jury selection, resolves claims that First Solar violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. The settlement is the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.). As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders. The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis. The remarkable result was achieved following seven years of extensive litigation. After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors. Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

- *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action.

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, one of the largest IPOs in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.

- **Silverman v. Motorola, Inc.**, No. 1:07-cv-04507 (N.D. Ill.).  The Firm served as lead counsel on behalf of a class of investors in Motorola, Inc., ultimately recovering $200 million for investors just two months before the case was set for trial.  This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement.

- **City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.**, No. 5:12-cv-05162 (W.D. Ark.).  Robbins Geller attorneys and lead plaintiff City of Pontiac General Employees' Retirement System achieved a $160 million settlement in a securities class action case arising from allegations published by *The New York Times* in an article released on April 21, 2012 describing an alleged bribery scheme that occurred in Mexico.  The case charged that Wal-Mart portrayed itself to investors as a model corporate citizen that had proactively uncovered potential corruption and promptly reported it to law enforcement, when in truth, a former in-house lawyer had blown the whistle on Wal-Mart's corruption years earlier, and Wal-Mart concealed the allegations from law enforcement by refusing its own in-house and outside counsel's calls for an independent investigation.  Robbins Geller "achieved an exceptional [s]ettlement with skill, perseverance, and diligent advocacy," said Judge Hickey when granting final approval.

- **Bennett v. Sprint Nextel Corp.**, No. 2:09-cv-02122 (D. Kan.).  As co-lead counsel, Robbins Geller obtained a $131 million recovery for a class of Sprint investors.  The settlement, secured after five years of hard-fought litigation, resolved claims that former Sprint executives misled investors concerning the success of Sprint's ill-advised merger with Nextel and the deteriorating credit quality of Sprint's customer base, artificially inflating the value of Sprint's securities.

- **In re LendingClub Sec. Litig.**, No. 3:16-cv-02627 (N.D. Cal.).  Robbins Geller attorneys obtained a $125 million settlement for the court-appointed lead plaintiff Water and Power Employees' Retirement, Disability and Death Plan of the City of Los Angeles and the class.  The settlement resolved allegations that LendingClub promised investors an opportunity to get in on the ground floor of a revolutionary lending market fueled by the highest standards of honesty and integrity.  The settlement ranked among the top ten largest securities recoveries ever in the Northern District of California.

- **Knurr v. Orbital ATK, Inc.**, No. 1:16-cv-01031 (E.D. Va.).  In the *Orbital* securities class action, Robbins Geller obtained court approval of a $108 million recovery for the class.  The Firm succeeded in overcoming two successive motions to dismiss the case, and during discovery were required to file ten motions to compel, all of which were either negotiated to a resolution or granted in large part, which resulted in the production of critical evidence in support of plaintiffs' claims.  Believed to be the fourth-largest securities class action settlement in the history of the Eastern District of Virginia, the settlement provides a recovery for investors that is more than ten times larger than the reported median recovery of estimated damages for all securities class action settlements in 2018.

- **Hsu v. Puma Biotechnology**, No. SACV15-0865 (C.D. Cal.).  After a two-week jury trial, Robbins Geller attorneys won a complete plaintiffs' verdict against both defendants on both claims, with the jury finding that Puma Biotechnology, Inc. and its CEO, Alan H. Auerbach, committed securities fraud.  The Puma case is only the fifteenth securities class action case tried to a verdict since the Private Securities Litigation Reform Act was enacted in 1995.

- **Marcus v. J.C. Penney Co., Inc.**, No. 13-cv-00736 (E.D. Tex.).  Robbins Geller attorneys obtained a $97.5 million recovery on behalf of J.C. Penney shareholders.  The result resolves claims that J.C. Penney and certain officers and directors made misstatements and/or omissions regarding the company's financial position that resulted in artificially inflated stock prices.  Specifically, defendants failed to disclose and/or misrepresented adverse facts, including that J.C. Penney

would have insufficient liquidity to get through year-end and would require additional funds to make it through the holiday season, and that the company was concealing its need for liquidity so as not to add to its vendors' concerns.

- ***Monroe County Employees' Retirement System v. The Southern Company***, No. 1:17-cv-00241 (N.D. Ga.). As lead counsel, Robbins Geller obtained an $87.5 million settlement in a securities class action on behalf of plaintiffs Monroe County Employees' Retirement System and Roofers Local No. 149 Pension Fund. The settlement resolves claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant in Kemper County, Mississippi. Plaintiffs alleged that these misstatements caused The Southern Company's stock price to be artificially inflated during the class period. Prior to resolving the case, Robbins Geller uncovered critical documentary evidence and deposition testimony supporting plaintiffs' claims. In granting final approval of the settlement, the court praised Robbins Geller for its "hard-fought litigation in the Eleventh Circuit" and its "experience, reputation, and abilities of [its] attorneys," and highlighted that the firm is "well-regarded in the legal community, especially in litigating class-action securities cases

- ***Chicago Laborers Pension Fund v. Alibaba Grp. Holding Ltd.***, No. CIV535692 (Cal. Super. Ct., San Mateo Cnty.). Robbins Geller attorneys and co-counsel obtained a $75 million settlement in the Alibaba Group Holding Limited securities class action, resolving investors' claims that Alibaba violated the Securities Act of 1933 in connection with its September 2014 initial public offering. Chicago Laborers Pension Fund served as a plaintiff in the action.

- ***Luna v. Marvell Tech. Grp., Ltd.***, No. 3:15-cv-05447 (N.D. Cal.). In the *Marvell* litigation, Robbins Geller attorneys represented the Plumbers and Pipefitters National Pension Fund and obtained a $72.5 million settlement. The case involved claims that Marvell reported revenue and earnings during the class period that were misleading as a result of undisclosed pull-in and concession sales. The settlement represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors who purchased shares during the February 19, 2015 through December 7, 2015 class period.

- ***Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.***, No. 3:09-cv-00882 (M.D. Tenn.). In the *Psychiatric Solutions* case, Robbins Geller represented lead plaintiff and class representative Central States, Southeast and Southwest Areas Pension Fund in litigation spanning more than four years. Psychiatric Solutions and its top executives were accused of insufficiently staffing their in-patient hospitals, downplaying the significance of regulatory investigations and manipulating their malpractice reserves. Just days before trial was set to commence, attorneys from Robbins Geller achieved a $65 million settlement that was the fourth-largest securities recovery ever in the district and one of the largest in a decade.

- ***Plumbers & Pipefitters Nat'l Pension Fund v. Burns***, No. 3:05-cv-07393 (N.D. Ohio). After 11 years of hard-fought litigation, Robbins Geller attorneys secured a $64 million recovery for shareholders in a case that accused the former heads of Dana Corp. of securities fraud for trumpeting the auto parts maker's condition while it actually spiraled toward bankruptcy. The Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.

- ***Villella v. Chemical and Mining Company of Chile Inc.***, No. 1:15-cv-02106 (S.D.N.Y.) Robbins Geller attorneys, serving as lead consel, obtained a $62.5 million settlement against Sociedad

Química y Minera de Chile S.A. ("SQM"), a Chilean mining company. The case alleged that SQM violated the Securities Exchange Act of 1934 by issuing materially false and misleading statements regarding the company's failure to disclose that money from SQM was channeled illegally to electoral campaigns for Chilean politicians and political parties as far back as 2009. SQM had also filed millions of dollars' worth of fictitious tax receipts with Chilean authorities in order to conceal bribery payments from at least 2009 through fiscal 2014. Due to the company being based out of Chile and subject to Chilean law and rules, the Robbins Geller litigation team put together a multilingual litigation team with Chilean expertise. Depositions are considered unlawful in the country of Chile, so Robbins Geller successfully moved the court to compel SQM to bring witnesses to the United States.

- *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-cv-01445 (S.D.N.Y.). As lead counsel, Robbins Geller obtained a $50 million class action settlement against BHP, a Australian-based mining company that was accused of failing to disclose significant safety problems at the Fundão iron-ore dam, in Brazil. The Firm achieved this result for lead plaintiffs City of Birmingham Retirement and Relief System and City of Birmingham Firemen's and Policemen's Supplemental Pension System, on behalf of purchasers of the American Depositary Shares ("ADRs") of defendants BHP Billiton Limited and BHP Billiton Plc (together, "BHP") from September 25, 2014 to November 30, 2015.

- *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851 (D. Minn.). After four and a half years of litigation and mere weeks before the jury selection, Robbins Geller obtained a $50 million settlement on behalf of investors in medical device company St. Jude Medical. The settlement resolves accusations that St. Jude Medical misled investors by utilizing heavily discounted end-of-quarter bulk sales to meet quarterly expectations, which created a false picture of demand by increasing customer inventory due of St. Jude Medical devices. The complaint alleged that the risk of St. Jude Medical's reliance on such bulk sales manifested when it failed to meet its forecast guidance for the third quarter of 2009, which the company had reaffirmed only weeks earlier.

- *Deka Investment GmbH v. Santander Consumer USA Holdings Inc.*, No. 3:15-cv-02129 (N.D. Tex.). Robbins Geller and co-counsel secured a $47 million settlement in a securities class action against Santander Consumer USA Holdings Inc. ("SCUSA"). The case alleges that SCUSA, 2 of its officers, 10 of its directors, as well as 17 underwriters of its January 23, 2014 multi-billion dollar IPO violated §§11, 12(a)(2), and 15 of the Securities Act of 1933 as a result of their negligence in connection with misrepresentations in the prospectus and registration statement for the IPO ("Offering Documents"). The complaint also alleged that SCUSA and two of its officers violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 as a result of their fraud in issuing misleading statements in the IPO Offering Documents as well as in subsequent statements to investors.

- *Snap Inc. Securities Cases*, JCCP No. 4960 (Cal. Super. Ct., Los Angeles Cnty). Robbins Geller, along with co-counsel, reached a settlement in the Snap, Inc. securities class action, providing for the payment of $32,812,500 to eligible settlement class members. The securities class action sought remedies under §§11, 12(a)(2) and 15 of the Securities Act of 1933. The case alleged that Snap, certain Snap officers and directors, and the underwriters for Snap's Initial Public Offering ("IPO") were liable for materially false and misleading statements and omissions in the Registration Statement for the IPO, related to trends and uncertainties in Snap's growth metrics, a potential patent-infringement action, and stated risk factors.

Robbins Geller's securities practice is also strengthened by the existence of a strong appellate department, whose collective work has established numerous legal precedents. The securities practice also utilizes an

extensive group of in-house economic and damage analysts, investigators, and forensic accountants to aid in the prosecution of complex securities issues.

## Shareholder Derivative and Corporate Governance Litigation

The Firm's shareholder derivative and corporate governance practice is focused on preserving corporate assets and enhancing long-term shareowner value. Shareowner derivative actions are often brought by institutional investors to vindicate the rights of the corporation injured by its executives' misconduct, which can effect violations of the nation's securities, anti-corruption, false claims, cyber-security, labor, environmental, and/or health & safety laws.

Robbins Geller attorneys have aided Firm clients in significantly enhancing shareowner value by obtaining hundreds of millions of dollars in financial clawbacks and successfully negotiating corporate governance enhancements. Robbins Geller has worked with its institutional clients to address corporate misconduct such as options backdating, bribery of foreign officials, pollution, off-label marketing, and insider trading and related self-dealing. Additionally, the Firm works closely with noted corporate governance consultants Robert Monks and Richard Bennett and their firm, ValueEdge Advisors LLC, to shape corporate governance practices that will benefit shareowners.

Robbins Geller's efforts have conferred substantial benefits upon shareowners, and the market effect of these benefits measures in the billions of dollars. The Firm's significant achievements include:

- *City of Westland Police & Fire Ret. Sys. v. Stumpf (Wells Fargo Derivative Litigation)*, No. 3:11-cv-02369 (N.D. Cal.). Prosecuted shareholder derivative action on behalf of Wells Fargo & Co. alleging that Wells Fargo's executives allowed participation in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, *i.e.*, the execution and submission of false legal documents in courts across the country without verification of their truth or accuracy, and failed to disclose Wells Fargo's lack of cooperation in a federal investigation into the bank's mortgage and foreclosure practices. In settlement of the action, Wells Fargo agreed to provide $67 million in homeowner down-payment assistance, credit counseling, and improvements to its mortgage servicing system. The initiatives will be concentrated in cities severely impacted by the bank's foreclosure practices and the ensuing mortgage foreclosure crisis. Additionally, Wells Fargo agreed to change its procedures for reviewing shareholder proposals and a strict ban on stock pledges by Wells Fargo board members.

- *In re Ormat Techs., Inc. Derivative Litig.*, No. CV10-00759 (Nev. Dist. Ct., Washoe Cnty.). Robbins Geller brought derivative claims for breach of fiduciary duty and unjust enrichment against the directors and certain officers of Ormat Technologies, Inc., a leading geothermal and recovered energy power business. During the relevant time period, these Ormat insiders caused the company to engage in accounting manipulations that ultimately required restatement of the company's financial statements. The settlement in this action includes numerous corporate governance reforms designed to, among other things: (i) increase director independence; (ii) provide continuing education to directors; (iii) enhance the company's internal controls; (iv) make the company's board more independent; and (iv) strengthen the company's internal audit function.

- *In re Alphatec Holdings, Inc. Derivative S'holder Litig.*, No. 37-2010-00058586 (Cal. Super. Ct., San Diego Cnty.). Obtained sweeping changes to Alphatec's governance, including separation of the Chairman and CEO positions, enhanced conflict of interest procedures to address related-party transactions, rigorous director independence standards requiring that at least a majority of directors be outside independent directors, and ongoing director education and training.

- ***In re Finisar Corp. Derivative Litig.***, No. C-06-07660 (N.D. Cal.). Prosecuted shareholder derivative action on behalf of Finisar against certain of its current and former directors and officers for engaging in an alleged nearly decade-long stock option backdating scheme that was alleged to have inflicted substantial damage upon Finisar. After obtaining a reversal of the district court's order dismissing the complaint for failing to adequately allege that a pre-suit demand was futile, Robbins Geller lawyers successfully prosecuted the derivative claims to resolution obtaining over $15 million in financial clawbacks for Finisar. Robbins Geller attorneys also obtained significant changes to Finisar's stock option granting procedures and corporate governance. As a part of the settlement, Finisar agreed to ban the repricing of stock options without first obtaining specific shareholder approval, prohibit the retrospective selection of grant dates for stock options and similar awards, limit the number of other boards on which Finisar directors may serve, require directors to own a minimum amount of Finisar shares, annually elect a Lead Independent Director whenever the position of Chairman and CEO are held by the same person, and require the board to appoint a Trading Compliance officer responsible for ensuring compliance with Finisar's insider trading policies.

- ***Loizides v. Schramm (Maxwell Technology Derivative Litigation)***, No. 37-2010-00097953 (Cal. Super. Ct., San Diego Cnty.). Prosecuted shareholder derivative claims arising from the company's alleged violations of the Foreign Corrupt Practices Act of 1977 ("FCPA"). As a result of Robbins Geller's efforts, Maxwell insiders agreed to adopt significant changes in Maxwell's internal controls and systems designed to protect Maxwell against future potential violations of the FCPA. These corporate governance changes included establishing the following, among other things: a compliance plan to improve board oversight of Maxwell's compliance processes and internal controls; a clear corporate policy prohibiting bribery and subcontracting kickbacks, whereby individuals are accountable; mandatory employee training requirements, including the comprehensive explanation of whistleblower provisions, to provide for confidential reporting of FCPA violations or other corruption; enhanced resources and internal control and compliance procedures for the audit committee to act quickly if an FCPA violation or other corruption is detected; an FCPA and Anti-Corruption Compliance department that has the authority and resources required to assess global operations and detect violations of the FCPA and other instances of corruption; a rigorous ethics and compliance program applicable to all directors, officers, and employees, designed to prevent and detect violations of the FCPA and other applicable anti-corruption laws; an executive-level position of Chief Compliance Officer with direct board-level reporting responsibilities, who shall be responsible for overseeing and managing compliance issues within the company; a rigorous insider trading policy buttressed by enhanced review and supervision mechanisms and a requirement that all trades are timely disclosed; and enhanced provisions requiring that business entities are only acquired after thorough FCPA and anti-corruption due diligence by legal, accounting, and compliance personnel at Maxwell.

- ***In re SciClone Pharms., Inc. S'holder Derivative Litig.***, No. CIV 499030 (Cal. Super. Ct., San Mateo Cnty.). Robbins Geller attorneys successfully prosecuted the derivative claims on behalf of nominal party SciClone Pharmaceuticals, Inc., resulting in the adoption of state-of-the-art corporate governance reforms. The corporate governance reforms included the establishment of an FCPA compliance coordinator; the adoption of an FCPA compliance program and code; and the adoption of additional internal controls and compliance functions.

- ***Policemen & Firemen Ret. Sys. of the City of Detroit v. Cornelison (Halliburton Derivative Litigation)***, No. 2009-29987 (Tex. Dist. Ct., Harris Cnty.). Prosecuted shareholder derivative claims on behalf of Halliburton Company against certain Halliburton insiders for breaches of fiduciary duty arising from Halliburton's alleged violations of the FCPA. In the settlement, Halliburton agreed, among other things, to adopt strict intensive controls and systems designed to detect and deter the payment of bribes and other improper payments to foreign officials, to

enhanced executive compensation clawback, director stock ownership requirements, a limitation on the number of other boards that Halliburton directors may serve, a lead director charter, enhanced director independence standards, and the creation of a management compliance committee.

• ***In re UnitedHealth Grp. Inc. PSLRA Litig.***, No. 06-CV-1691 (D. Minn.).  In the *UnitedHealth* case, our client, CalPERS, obtained sweeping corporate governance improvements, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercises, as well as executive compensation reforms that tie pay to performance.  In addition, the class obtained $925 million, the largest stock option backdating recovery ever and four times the next largest options backdating recovery.

• ***In re Fossil, Inc. Derivative Litig.***, No. 3:06-cv-01672 (N.D. Tex.).  The settlement agreement included the following corporate governance changes: declassification of elected board members; retirement of three directors and addition of five new independent directors; two-thirds board independence requirements; corporate governance guidelines providing for "Majority Voting" election of directors; lead independent director requirements; revised accounting measurement dates of options; addition of standing finance committee; compensation clawbacks; director compensation standards; revised stock option plans and grant procedures; limited stock option granting authority, timing, and pricing; enhanced education and training; and audit engagement partner rotation and outside audit firm review.

• ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Sinegal (Costco Derivative Litigation)***, No. 2:08-cv-01450 (W.D. Wash.).  The parties agreed to settlement terms providing for the following corporate governance changes: the amendment of Costco's bylaws to provide "Majority Voting" election of directors; the elimination of overlapping compensation and audit committee membership on common subject matters; enhanced Dodd-Frank requirements; enhanced internal audit standards and controls, and revised information-sharing procedures; revised compensation policies and procedures; revised stock option plans and grant procedures; limited stock option granting authority, timing, and pricing; and enhanced ethics compliance standards and training.

• ***In re F5 Networks, Inc. Derivative Litig.***, No. C-06-0794 (W.D. Wash.).  The parties agreed to the following corporate governance changes as part of the settlement: revised stock option plans and grant procedures; limited stock option granting authority, timing, and pricing; "Majority Voting" election of directors; lead independent director requirements; director independence standards; elimination of director perquisites; and revised compensation practices.

- *In re Community Health Sys., Inc. S'holder Derivative Litig.*, No. 3:11-cv-00489 (M.D. Tenn.). Robbins Geller obtained unprecedented corporate governance reforms on behalf of Community Health Systems, Inc. in a case against the company's directors and officers for breaching their fiduciary duties by causing Community Health to develop and implement admissions criteria that systematically steered patients into unnecessary inpatient admissions, in contravention of Medicare and Medicaid regulations. The governance reforms obtained as part of the settlement include two shareholder-nominated directors, the creation of a Healthcare Law Compliance Coordinator with specified qualifications and duties, a requirement that the board's compensation committee be comprised solely of independent directors, the implementation of a compensation clawback that will automatically recover compensation improperly paid to the company's CEO or CFO in the event of a restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy. In addition to these reforms, $60 million in financial relief was obtained, which is the largest shareholder derivative recovery ever in Tennessee and the Sixth Circuit.

## Options Backdating Litigation

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country in 2006. Robbins Geller was at the forefront of investigating and prosecuting options backdating derivative and securities cases. The Firm has recovered over $1 billion in damages on behalf of injured companies and shareholders.

- *In re KLA-Tencor Corp. S'holder Derivative Litig.*, No. C-06-03445 (N.D. Cal.). After successfully opposing the special litigation committee of the board of directors' motion to terminate the derivative claims, Robbins Geller recovered $43.6 million in direct financial benefits for KLA-Tencor, including $33.2 million in cash payments by certain former executives and their directors' and officers' insurance carriers.

- *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. C-06-03894 (N.D. Cal.). Robbins Geller recovered $54.9 million in financial benefits, including $14.6 million in cash, for Marvell, in addition to extensive corporate governance reforms related to Marvell's stock option granting practices, board of directors' procedures, and executive compensation.

- *In re KB Home S'holder Derivative Litig.*, No. 06-CV-05148 (C.D. Cal.). Robbins Geller served as co-lead counsel for the plaintiffs and recovered more than $31 million in financial benefits, including $21.5 million in cash, for KB Home, plus substantial corporate governance enhancements relating to KB Home's stock option granting practices, director elections, and executive compensation practices.

## Corporate Takeover Litigation

Robbins Geller has earned a reputation as the leading law firm in representing shareholders in corporate takeover litigation. Through its aggressive efforts in prosecuting corporate takeovers, the Firm has secured for shareholders billions of dollars of additional consideration as well as beneficial changes for shareholders in the context of mergers and acquisitions.

The Firm regularly prosecutes merger and acquisition cases post-merger, often through trial, to maximize the benefit for its shareholder class. Some of these cases include:

- *In re Tesla Motors, Inc. S'holder Litig.,* No. 12711-VCS (Del. Ch.). Robbins Geller, along with co-counsel, secured a $60 million partial settlement after nearly four years of litigation against Tesla. This partial settlement is one of the largest derivative recoveries in a stockholder action challenging a merger. This partial settlement resolves the claims brought against defendants Kimbal Musk, Antonio J. Gracias, Stephen T. Jurvetson, Brad W. Buss, Ira Ehrenpreis, and Robyn M. Denholm, but not the claims against defendant Elon Musk.

- *In re Kinder Morgan, Inc. S'holders Litig.*, No. 06-C-801 (Kan. Dist. Ct., Shawnee Cnty.). In the largest recovery ever for corporate takeover class action litigation, the Firm negotiated a settlement fund of $200 million in 2010.

- *In re Dole Food Co., Inc. S'holder Litig.*, No. 8703-VCL (Del. Ch.). Robbins Geller and co-counsel went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders. The litigation challenged the 2013 buyout of Dole by its billionaire Chief Executive Officer and Chairman, David H. Murdock. On August 27, 2015, the court issued a post-trial ruling that Murdock and fellow director C. Michael Carter – who also served as Dole's General Counsel, Chief Operating Officer, and Murdock's top lieutenant – had engaged in fraud and other misconduct in connection with the buyout and are liable to Dole's former stockholders for over $148 million, the largest trial verdict ever in a class action challenging a merger transaction.

- *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C.). Robbins Geller, along with co-counsel, obtained a $146.25 million settlement on behalf of Duke Energy Corporation investors. The settlement resolves accusations that defendants misled investors regarding Duke's future leadership following its merger with Progress Energy, Inc., and specifically, their premeditated coup to oust William D. Johnson (CEO of Progress) and replace him with Duke's then-CEO, John Rogers. This historic settlement represents the largest recovery ever in a North Carolina securities fraud action, and one of the five largest recoveries in the Fourth Circuit.

- *In re Rural Metro Corp. S'holders Litig.*, No. 6350-VCL (Del. Ch.). Robbins Geller and co-counsel were appointed lead counsel in this case after successfully objecting to an inadequate settlement that did not take into account evidence of defendants' conflicts of interest. In a post-trial opinion, Delaware Vice Chancellor J. Travis Laster found defendant RBC Capital Markets, LLC liable for aiding and abetting Rural/Metro's board of directors' fiduciary duty breaches in the $438 million buyout of Rural/Metro, citing "the magnitude of the conflict between RBC's claims and the evidence." RBC was ordered to pay nearly $110 million as a result of its wrongdoing, the largest damage award ever obtained against a bank over its role as a merger adviser. The Delaware Supreme Court issued a landmark opinion affirming the judgment on November 30, 2015, *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816 (Del. 2015).

- *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL (Del. Ch.). Robbins Geller exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. For efforts in achieving these results, the Robbins Geller lawyers prosecuting the case were named Attorneys of the Year by *California Lawyer* magazine in 2012.

- *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.). After objecting to a modest recovery of just a few cents per share, the Firm took over the litigation and obtained a common fund settlement of $50 million.

- ***In re Chaparral Res., Inc. S'holders Litig.***, No. 2633-VCL (Del. Ch.).  After a full trial and a subsequent mediation before the Delaware Chancellor, the Firm obtained a common fund settlement of $41 million (or 45% increase above merger price) for both class and appraisal claims.

- ***Laborers' Local #231 Pension Fund v. Websense, Inc.***, No. 37-2013-00050879-CU-BT-CTL (Cal. Super. Ct., San Diego Cnty.).  Robbins Geller successfully obtained a record-breaking $40 million in *Websense*, which is believed to be the largest post-merger common fund settlement in California state court history.  The class action challenged the May 2013 buyout of Websense by Vista Equity Partners (and affiliates) for $24.75 per share and alleged breach of fiduciary duty against the former Websense board of directors, and aiding and abetting against Websense's financial advisor, Merrill Lynch, Pierce, Fenner & Smith, Inc.  Claims were pursued by the plaintiff in both California state court and the Delaware Court of Chancery.

- ***In re Onyx Pharms., Inc. S'holder Litig.***, No. CIV523789 (Cal. Super. Ct., San Mateo Cnty.).  Robbins Geller obtained $30 million in a case against the former Onyx board of directors for breaching its fiduciary duties in connection with the acquisition of Onyx by Amgen Inc. for $125 per share at the expense of shareholders.  At the time of the settlement, it was believed to set the record for the largest post-merger common fund settlement in California state court history.  Over the case's three years, Robbins Geller defeated defendants' motions to dismiss, obtained class certification, took over 20 depositions, and reviewed over one million pages of documents.  Further, the settlement was reached just days before a hearing on defendants' motion for summary judgment was set to take place, and the result is now believed to be the second largest post-merger common fund settlement in California state court history.

- ***Harrah's Entertainment***, No. A529183 (Nev. Dist. Ct., Clark Cnty.).  The Firm's active prosecution of the case on several fronts, both in federal and state court, assisted Harrah's shareholders in securing an additional $1.65 billion in merger consideration.

- ***In re Chiron S'holder Deal Litig.***, No. RG 05-230567 (Cal. Super. Ct., Alameda Cnty.).  The Firm's efforts helped to obtain an additional $800 million in increased merger consideration for Chiron shareholders.

- ***In re Dollar Gen. Corp. S'holder Litig.***, No. 07MD-1 (Tenn. Cir. Ct., Davidson Cnty.).  As lead counsel, the Firm secured a recovery of up to $57 million in cash for former Dollar General shareholders on the eve of trial.

- ***In re Prime Hosp., Inc. S'holders Litig.***, No. 652-N (Del. Ch.).  The Firm objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm.  The litigation yielded a common fund of $25 million for shareholders.

- ***In re UnitedGlobalCom, Inc. S'holder Litig.***, No. 1012-VCS (Del. Ch.).  The Firm secured a common fund settlement of $25 million just weeks before trial.

- ***In re eMachines, Inc. Merger Litig.***, No. 01-CC-00156 (Cal. Super. Ct., Orange Cnty.).  After four years of litigation, the Firm secured a common fund settlement of $24 million on the brink of trial.

- ***In re PeopleSoft, Inc. S'holder Litig.***, No. RG-03100291 (Cal. Super. Ct., Alameda Cnty.).  The Firm successfully objected to a proposed compromise of class claims arising from takeover defenses by PeopleSoft, Inc. to thwart an acquisition by Oracle Corp., resulting in shareholders receiving an increase of over $900 million in merger consideration.

- ***ACS S'holder Litig.***, No. CC-09-07377-C (Tex. Cty. Ct., Dallas Cnty.). The Firm forced ACS's acquirer, Xerox, to make significant concessions by which shareholders would not be locked out of receiving more money from another buyer.

## Antitrust

Robbins Geller's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, market allocation, tying, and other anti-competitive conduct. The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization, market allocation, and tying cases throughout the United States.

- ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation***, MDL No. 1720 (E.D.N.Y.). Robbins Geller attorneys, serving as co-lead counsel on behalf of merchants, obtained a settlement amount of $5.54 billion. In approving the settlement, the court noted that Robbins Geller and co-counsel "demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required, litigating on behalf of a class of over 12 million for over fourteen years, across a changing legal landscape, significant motion practice, and appeal and remand. Class counsel's pedigree and efforts alone speak to the quality of their representation."

- ***Dahl v. Bain Cap. Partners, LLC***, No. 07-cv-12388 (D. Mass.). Robbins Geller attorneys served as co-lead counsel on behalf of shareholders in this antitrust action against the nation's largest private equity firms that colluded to restrain competition and suppress prices paid to shareholders of public companies in connection with leveraged buyouts. Robbins Geller attorneys recovered more than $590 million for the class from the private equity firm defendants, including Goldman Sachs Group Inc. and Carlyle Group LP.

- ***Alaska Elec. Pension Fund v. Bank of Am. Corp.***, No. 14-cv-07126 (S.D.N.Y.). Robbins Geller attorneys prosecuted antitrust claims against 14 major banks and broker ICAP plc who were alleged to have conspired to manipulate the ISDAfix rate, the key interest rate for a broad range of interest rate derivatives and other financial instruments in contravention of the competition laws. The class action was brought on behalf of investors and market participants who entered into interest rate derivative transactions between 2006 and 2013. Final approval has been granted to settlements collectively yielding $504.5 million from all defendants.

- ***In re Currency Conversion Fee Antitrust Litig.***, 01 MDL No. 1409 (S.D.N.Y.). Robbins Geller attorneys served as lead counsel and recovered $336 million for a class of credit and debit cardholders. The court praised the Firm as "indefatigable," noting that the Firm's lawyers "vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

- ***In re SSA Bonds Antitrust Litig.***, No. 1:16-cv-03711 (S.D.N.Y.). Robbins Geller attorneys are serving as co-lead counsel in a case against several of the world's largest banks and the traders of certain specialized government bonds. They are alleged to have entered into a wide-ranging price-fixing and bid-rigging scheme costing pension funds and other investors hundreds of millions. To date, three of the more than a dozen corporate defendants have settled for $95.5 million.

- ***In re Aftermarket Auto. Lighting Prods. Antitrust Litig.***, 09 MDL No. 2007 (C.D. Cal.). Robbins Geller attorneys served as co-lead counsel in this multi-district litigation in which plaintiffs allege that defendants conspired to fix prices and allocate markets for automotive lighting products. The last defendants settled just before the scheduled trial, resulting in total settlements of more than $50 million. Commenting on the quality of representation, the court commended the Firm for

"expend[ing] substantial and skilled time and efforts in an efficient manner to bring this action to conclusion."

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 02 MDL No. 1486 (N.D. Cal.). Robbins Geller attorneys served on the executive committee in this multi-district class action in which a class of purchasers of dynamic random access memory (or DRAM) chips alleged that the leading manufacturers of semiconductor products fixed the price of DRAM chips from the fall of 2001 through at least the end of June 2002.  The case settled for more than $300 million.

- *Microsoft I-V Cases*, JCCP No. 4106 (Cal. Super. Ct., San Francisco Cnty.).  Robbins Geller attorneys served on the executive committee in these consolidated cases in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing, and spreadsheet markets.  In a settlement approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

## Consumer Fraud and Privacy

In our consumer-based economy, working families who purchase products and services must receive truthful information so they can make meaningful choices about how to spend their hard-earned money. When financial institutions and other corporations deceive consumers or take advantage of unequal bargaining power, class action suits provide, in many instances, the only realistic means for an individual to right a corporate wrong.

Robbins Geller attorneys represent consumers around the country in a variety of important, complex class actions.  Our attorneys have taken a leading role in many of the largest federal and state consumer fraud, privacy, environmental, human rights, and public health cases throughout the United States.  The Firm is also actively involved in many cases relating to banks and the financial services industry, pursuing claims on behalf of individuals victimized by abusive telemarketing practices, abusive mortgage lending practices, market timing violations in the sale of variable annuities, and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act.   Below are a few representative samples of our robust, nationwide consumer and privacy practice.

- *In re Nat'l Prescription Opiate Litig.*  Robbins Geller serves on the Plaintiffs' Executive Committee to spearhead more than 2,900 federal lawsuits brought on behalf of governmental entities and other plaintiffs in the sprawling litigation concerning the nationwide prescription opioid epidemic.  In reporting on the selection of the lawyers to lead the case, *The National Law Journal* reported that "[t]he team reads like a 'Who's Who' in mass torts."

- *Apple Inc. Device Performance Litigation*.  Robbins Geller serves on the Plaintiffs' Executive Committee to advance judicial interests of efficiency and protect the interests of the proposed class in the *Apple* litigation.  The case alleges Apple misrepresented its iPhone devices and the nature of updates to its mobile operating system (iOS), which allegedly included code that significantly reduced the performance of older-model iPhones and forced users to incur expenses replacing these devices or their batteries.

- *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*  Robbins Geller served as co-lead class counsel in a case against Mylan Pharmaceuticals and Pfizer alleging anti-competitive behavior that allowed the price of ubiquitous, life-saving EpiPen auto-injector devices to rise over 600%, resulting in inflated prices for American families.  Two settlements totaling $609 million were reached after five years of litigation and weeks prior to trial.

- ***Cordova v. Greyhound Lines, Inc.***  Robbins Geller represented California bus passengers *pro bono* in a landmark consumer and civil rights case against Greyhound for subjecting them to discriminatory immigration raids.  Robbins Geller achieved a watershed court ruling that a private company may be held liable under California law for allowing border patrol to harass and racially profile its customers.  The case heralds that Greyhound passengers do not check their rights and dignity at the bus door and has had an immediate impact, not only in California but nationwide.  Within weeks of Robbins Geller filing the case, Greyhound added "know your rights" information to passengers to its website and on posters in bus stations around the country, along with adopting other business reforms.

- ***In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.***  As part of the Plaintiffs' Steering Committee, Robbins Geller reached a series of settlements on behalf of purchasers, lessees, and dealers that total well over $17 billion, the largest settlement in history, concerning illegal "defeat devices" that Volkswagen installed on many of its diesel-engine vehicles.  The device tricked regulators into believing the cars were complying with emissions standards, while the cars were actually emitting between 10 and 40 times the allowable limit for harmful pollutants.

- ***In re Facebook Biometric Info. Privacy Litig.***, No. 3:15-cv-03747 (N.D. Cal.).  Robbins Geller served as co-lead class counsel in a cutting-edge certified class action, securing a record-breaking $650 million all-cash settlement, the largest privacy settlement in history.  The case concerned Facebook's alleged privacy violations through its collection of its users' biometric identifiers without informed consent through its "Tag Suggestions" feature, which uses proprietary facial recognition software to extract from user-uploaded photographs the unique biometric identifiers (*i.e.*, graphical representations of facial features, also known as facial geometry) associated with people's faces and identify who they are.  The Honorable James Donato called the settlement "a groundbreaking settlement in a novel area" and praised the unprecedented 22% claims rate as "pretty phenomenal" and "a pretty good day in class settlement history."

- ***Yahoo Data Breach Class Action***.  Robbins Geller helped secure final approval of a $117.5 million settlement in a class action lawsuit against Yahoo, Inc. arising out of Yahoo's reckless disregard for the safety and security of its customers' personal, private information.  In September 2016, Yahoo revealed that personal information associated with at least 500 million user accounts, including names, email addresses, telephone numbers, dates of birth, hashed passwords, and security questions and answers, was stolen from Yahoo's user database in late 2014.  The company made another announcement in December 2016 that personal information associated with more than one billion user accounts was extracted in August 2013.  Ten months later, Yahoo announced that the breach in 2013 actually affected all three billion existing accounts.  This was the largest data breach in history, and caused severe financial and emotional damage to Yahoo account holders.  In 2017, Robbins Geller was appointed to the Plaintiffs' Executive Committee charged with overseeing the litigation.

- ***Trump University***.  After six and a half years of tireless litigation and on the eve of trial, Robbins Geller, serving as co-lead counsel, secured a historic recovery on behalf of Trump University students around the country.  The settlement provides $25 million to approximately 7,000 consumers, including senior citizens who accessed retirement accounts and maxed out credit cards to enroll in Trump University.  The extraordinary result means individual class members are eligible for upwards of $35,000 in restitution.  The settlement resolves claims that President Donald J. Trump and Trump University violated federal and state laws by misleadingly marketing "Live Events" seminars and mentorships as teaching Trump's "real-estate techniques" through his "hand-picked" "professors" at his so-called "university."  Robbins Geller represented the class on a *pro bono* basis.

- ***In re Morning Song Bird Food Litig.***  Robbins Geller obtained final approval of a settlement in a civil Racketeer Influenced and Corrupt Organizations Act consumer class action against The Scotts Miracle-Gro Company and its CEO James Hagedorn.  The settlement of up to $85 million provides full refunds to consumers around the country and resolves claims that Scotts Miracle-Gro knowingly sold wild bird food treated with pesticides that are hazardous to birds.  In approving the settlement, Judge Houston commended Robbins Gelller's "skill and quality of work [as] extraordinary" and the case as "aggressively litigated."  The Robbins Geller team battled a series of dismissal motions before achieving class certification for the plaintiffs in March 2017, with the court finding that "Plaintiffs would not have purchased the bird food if they knew it was poison." Defendants then appealed the class certification to the Ninth Circuit, which was denied, and then tried to have the claims from non-California class members thrown out, which was also denied.

- ***Bank Overdraft Fees Litigation***.  The banking industry charges consumers exorbitant amounts for "overdraft" of their checking accounts, even if the customer did not authorize a charge beyond the available balance and even if the account would not have been overdrawn had the transactions been ordered chronologically as they occurred – that is, banks reorder transactions to maximize such fees.  The Firm brought lawsuits against major banks to stop this practice and recover these false fees.  These cases have recovered over $500 million thus far from a dozen banks and we continue to investigate other banks engaging in this practice.

- ***Visa and MasterCard Fees***.  After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer-protection verdicts ever awarded in the United States.  The Firm's attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from cardholders.  The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- ***Sony Gaming Networks & Customer Data Security Breach Litigation.***  The Firm served as a member of the Plaintiffs' Steering Committee, helping to obtain a precedential opinion denying in part Sony's motion to dismiss plaintiffs' claims involving the breach of Sony's gaming network, leading to a $15 million settlement.

- ***Tobacco Litigation***.  Robbins Geller attorneys have led the fight against Big Tobacco since 1991. As an example, Robbins Geller attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles, and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states.  In 1992, Robbins Geller attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

- **Garment Workers Sweatshop Litigation**.  Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target, and J.C. Penney.  In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan.  This case was a companion to two other actions, one which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and another which alleged violations of California's Unfair Practices Law by the U.S. retailers.  These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones.  The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- **In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.**  Robbins Geller serves on the Plaintiffs' Steering Committee in *Intel*, a massive multidistrict litigation pending in the United States District Court for the District of Oregon.  *Intel* concerns serious security vulnerabilities – known as "Spectre" and "Meltdown" – that infect nearly all of Intel's x86 processors manufactured and sold since 1995, the patching of which results in processing speed degradation of the impacted computer, server or mobile device.

- **West Telemarketing Case**.  Robbins Geller attorneys secured a $39 million settlement for class members caught up in a telemarketing scheme where consumers were charged for an unwanted membership program after purchasing Tae-Bo exercise videos.  Under the settlement, consumers were entitled to claim between one and one-half to three times the amount of all fees they unknowingly paid.

- **Dannon Activia®**.  Robbins Geller attorneys secured the largest ever settlement for a false advertising case involving a food product.  The case alleged that Dannon's advertising for its Activia® and DanActive® branded products and their benefits from "probiotic" bacteria were overstated.  As part of the nationwide settlement, Dannon agreed to modify its advertising and establish a fund of up to $45 million to compensate consumers for their purchases of Activia® and DanActive®.

- **Mattel Lead Paint Toys**.  In 2006-2007, toy manufacturing giant Mattel and its subsidiary Fisher-Price announced the recall of over 14 million toys made in China due to hazardous lead and dangerous magnets.  Robbins Geller attorneys filed lawsuits on behalf of millions of parents and other consumers who purchased or received toys for children that were marketed as safe but were later recalled because they were dangerous.  The Firm's attorneys reached a landmark settlement for millions of dollars in refunds and lead testing reimbursements, as well as important testing requirements to ensure that Mattel's toys are safe for consumers in the future.

- **Tenet Healthcare Cases**.  Robbins Geller attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals.  The Firm's attorneys represented uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," which resulted in price gouging of the uninsured.  The case was settled with Tenet changing its practices and making refunds to patients.

- **Pet Food Products Liability Litigation**.  Robbins Geller served as co-lead counsel in this massive,

100+ case products liability MDL in the District of New Jersey concerning the death of and injury to thousands of the nation's cats and dogs due to tainted pet food. The case settled for $24 million.

## Human Rights, Labor Practices, and Public Policy

Robbins Geller attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights. These include:

- *Does I v. The Gap, Inc.*, No. 01 0031 (D. N. Mar. I.). In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target, and J.C. Penney. In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: *Does I v. Advance Textile Corp.*, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and *UNITE v. The Gap, Inc.*, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *Liberty Mutual Overtime Cases*, No. JCCP 4234 (Cal. Super. Ct., Los Angeles Cnty.). Robbins Geller attorneys served as co-lead counsel on behalf of 1,600 current and former insurance claims adjusters at Liberty Mutual Insurance Company and several of its subsidiaries. Plaintiffs brought the case to recover unpaid overtime compensation and associated penalties, alleging that Liberty Mutual had misclassified its claims adjusters as exempt from overtime under California law. After 13 years of complex and exhaustive litigation, Robbins Geller secured a settlement in which Liberty Mutual agreed to pay $65 million into a fund to compensate the class of claims adjusters for unpaid overtime. The Liberty Mutual action is one of a few claims adjuster overtime actions brought in California or elsewhere to result in a successful outcome for plaintiffs since 2004.

- *Veliz v. Cintas Corp.*, No. 5:03-cv-01180 (N.D. Cal.). Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that any misconduct was protected by the First Amendment, finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

Shareholder derivative litigation brought by Robbins Geller attorneys at times also involves stopping anti-union activities, including:

- **Southern Pacific/Overnite**.  A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- **Massey Energy**.  A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million-dollar penalties.

- **Crown Petroleum**.  A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

## Environment and Public Health

Robbins Geller attorneys have also represented plaintiffs in class actions related to environmental law. The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs").  The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds.  Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Robbins Geller have been involved in several other significant environmental cases, including:

- **Public Citizen v. U.S. D.O.T.**  Robbins Geller attorneys represented a coalition of labor, environmental, industry, and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO, and California Trucking Industry in a challenge to a decision by the Bush administration to lift a Congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act.  The suit was dismissed by the United States Supreme Court, the court holding that because the D.O.T. lacked discretion to prevent crossborder trucking, an environmental assessment was not required.

- **Sierra Club v. AK Steel**.  Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, the Resource Conservation Recovery Act, and the Clean Water Act.

- **MTBE Litigation**.  Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- **Exxon Valdez**.  Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- **Avila Beach**.  A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avila Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, and the Resource Conservation and Recovery Act and state laws such as California's Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations.  Companies can be found liable for negligence, trespass, or intentional environmental damage, be forced to pay for reparations, and to come into

compliance with existing laws. Prominent cases litigated by Robbins Geller attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and litigation involving the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

Robbins Geller attorneys have led the fight against Big Tobacco since 1991. As an example, Robbins Geller attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles, and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Robbins Geller attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

## Pro Bono

Robbins Geller provides counsel to those unable to afford legal representation as part of a continuous and longstanding commitment to the communities in which it serves. Over the years the Firm has dedicated a considerable amount of time, energy, and a full range of its resources for many *pro bono* and charitable actions.

Robbins Geller has been honored for its *pro bono* efforts by the California State Bar (including a nomination for the President's Pro Bono Law Firm of the Year award) and the San Diego Volunteer Lawyer's Program, among others.

Some of the Firm's and its attorneys' *pro bono* and charitable actions include:

- Representing public school children and parents in Tennessee challenging the state's private school voucher law, known as the Education Savings Account (ESA) Pilot Program. Robbins Geller helped achieve favorable rulings enjoining implementation of the ESA for violating the Home Rule provision of the Tennessee Constitution, which prohibits the General Assembly from passing laws that target specific counties without local approval.

- Representing California bus passengers *pro bono* in a landmark consumer and civil rights case against Greyhound for subjecting them to discriminatory immigration raids. Robbins Geller achieved a watershed court ruling that a private company may be held liable under California law for allowing border patrol to harass and racially profile its customers. The case heralds that Greyhound passengers do not check their rights and dignity at the bus door and has had an immediate impact, not only in California but nationwide. Within weeks of Robbins Geller filing the case, Greyhound added "know your rights" information to passengers to its website and on posters in bus stations around the country, along with adopting other business reforms.

- Working with the Homeless Action Center (HAC) to provide no-cost, barrier-free, culturally competent legal representation that makes it possible for people who are homeless (or at risk of becoming homeless) to access social safety net programs that help restore dignity and provide sustainable income, healthcare, mental health treatment, and housing. Based in Oakland and Berkeley, the non-profit is the only program in the Bay Area that specializes in legal services to those who are chronically homeless. In 2016, HAC provided assistance to 1,403 men and 936 women, and 1,691 cases were completed. An additional 1,357 cases were still pending when the year ended. The results include 512 completed SSI cases with a success rate of 87%.

- Representing Trump University students in two class actions against President Donald J. Trump. The historic settlement provides $25 million to approximately 7,000 consumers. This means individual class members are eligible for upwards of $35,000 in restitution – an extraordinary result.

- Representing children diagnosed with Autism Spectrum Disorder, as well as children with significant disabilities, in New York to remedy flawed educational policies and practices that cause substantial harm to these and other similar children year after year.

- Representing 19 San Diego County children diagnosed with Autism Spectrum Disorder in their appeal of the San Diego Regional Center's termination of funding for a crucial therapy. The victory resulted in a complete reinstatement of funding and set a precedent that allows other children to obtain the treatments they need.

- Serving as Northern California and Hawaii District Coordinator for the United States Court of Appeals for the Ninth Circuit's Pro Bono program since 1993.

- Representing the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the U.S. Supreme Court.

- Obtaining political asylum, after an initial application had been denied, for an impoverished Somali family whose ethnic minority faced systematic persecution and genocidal violence in Somalia, as well as forced female mutilation.

- Working with the ACLU in a class action filed on behalf of welfare applicants subject to San Diego County's "Project 100%" program. Relief was had when the County admitted that food-stamp eligibility could not hinge upon the Project 100% "home visits," and again when the district court ruled that unconsented "collateral contacts" violated state regulations. The decision was noted by the *Harvard Law Review*, *The New York Times*, and *The Colbert Report*.

- Filing numerous *amicus curiae* briefs on behalf of religious organizations and clergy that support civil rights, oppose government-backed religious-viewpoint discrimination, and uphold the American traditions of religious freedom and church-state separation.

- Serving as *amicus* counsel in a Ninth Circuit appeal from a Board of Immigration Appeals deportation decision. In addition to obtaining a reversal of the BIA's deportation order, the Firm consulted with the Federal Defenders' Office on cases presenting similar fact patterns, which resulted in a precedent-setting *en banc* decision from the Ninth Circuit resolving a question of state and federal law that had been contested and conflicted for decades.

# PROMINENT CASES, PRECEDENT-SETTING DECISIONS, AND JUDICIAL COMMENDATIONS

## Prominent Cases

Over the years, Robbins Geller attorneys have obtained outstanding results in some of the most notorious and well-known cases, frequently earning judicial commendations for the quality of their representation.

- ***In re Enron Corp. Sec. Litig***., No. H-01-3624 (S.D. Tex.).  Investors lost billions of dollars as a result of the massive fraud at Enron.  In appointing Robbins Geller lawyers as sole lead counsel to represent the interests of Enron investors, the court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers.  Robbins Geller attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of ***$7.2 billion*** for the benefit of investors.  ***This is the largest securities class action recovery in history***.

  The court overseeing this action had utmost praise for Robbins Geller's efforts and stated that "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country."  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

  The court further commented: "[I]n the face of extraordinary obstacles, the skills, expertise, commitment, and tenacity of [Robbins Geller] in this litigation cannot be overstated.  Not to be overlooked are the unparalleled results, . . . which demonstrate counsel's clearly superlative litigating and negotiating skills."  *Id*. at 789.

  The court stated that the Firm's attorneys "are to be commended for their zealousness, their diligence, their perseverance, their creativity, the enormous breadth and depth of their investigations and analysis, and their expertise in all areas of securities law on behalf of the proposed class."  *Id*.

  In addition, the court noted, "This Court considers [Robbins Geller] 'a lion' at the securities bar on the national level," noting that the Lead Plaintiff selected Robbins Geller because of the Firm's "outstanding reputation, experience, and success in securities litigation nationwide."  *Id*. at 790.

  The court further stated that "Lead Counsel's fearsome reputation and successful track record undoubtedly were substantial factors in . . . obtaining these recoveries."  *Id*.

  Finally, Judge Harmon stated: "As this Court has explained [this is] an extraordinary group of attorneys who achieved the largest settlement fund ever despite the great odds against them."  *Id*. at 828.

- ***Jaffe v. Household Int'l, Inc.***, No. 02-C-05893 (N.D. Ill). As sole lead counsel, Robbins Geller obtained a record-breaking settlement of ***$1.575 billion*** after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a securities fraud verdict in favor of the class.  In 2015, the Seventh Circuit Court of Appeals upheld the jury's verdict that defendants made false or misleading statements of material fact about the company's business practices and financial results, but remanded the case for a new trial on the issue of whether the individual defendants "made" certain false statements, whether those false statements caused plaintiffs' losses, and the amount of

damages. The parties reached an agreement to settle the case just hours before the retrial was scheduled to begin on June 6, 2016. *The $1.575 billion settlement, approved in October 2016, is the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit and the eighth-largest settlement ever in a post-PSLRA securities fraud case.* According to published reports, the case was just the seventh securities fraud case tried to a verdict since the passage of the PSLRA.

In approving the settlement, the Honorable Jorge L. Alonso noted the team's "skill and determination" while recognizing that "Lead Counsel prosecuted the case vigorously and skillfully over 14 years against nine of the country's most prominent law firms" and "achieved an exceptionally significant recovery for the class." The court added that the team faced "significant hurdles" and "uphill battles" throughout the case and recognized that "[c]lass counsel performed a very high-quality legal work in the context of a thorny case in which the state of the law has been and is in flux." The court succinctly concluded that the settlement was "a spectacular result for the class." *Jaffe v. Household Int'l, Inc.*, No. 02-C-5892, 2016 U.S. Dist. LEXIS 156921, at *8 (N.D. Ill. Nov. 10, 2016); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893, Transcript at 56, 65 (N.D. Ill. Oct. 20, 2016).

- *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.). As sole lead counsel, Robbins Geller attorneys obtained a $1.2 billion settlement in the securities case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." The settlement resolves claims that defendants made false and misleading statements regarding Valeant's business and financial performance during the class period, attributing Valeant's dramatic growth in revenues and profitability to "innovative new marketing approaches" as part of a business model that was low risk and "durable and sustainable." *Valeant* is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever.

- *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.). As sole lead counsel, Robbins Geller attorneys zealously litigated the case arising out of ARCP's manipulative accounting practices and obtained a $1.025 billion settlement. For five years, the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

  In approving the settlement, the Honorable Alvin K. Hellerstein lauded the Robbins Geller litigation team, noting: "My own observation is that plaintiffs' representation is adequate and that the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller]. At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous."

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, Robbins Geller represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. For example, in 2006, the issue of high-level executives backdating stock options made national headlines. During that time, many law firms, including Robbins Geller, brought shareholder derivative lawsuits against the companies' boards of directors for breaches of their fiduciary duties or for improperly granting backdated options. Rather than pursuing a shareholder derivative case, the Firm filed a securities fraud class action against the company on behalf of CalPERS. In doing so, Robbins Geller faced significant and unprecedented legal

obstacles with respect to loss causation, *i.e.*, that defendants' actions were responsible for causing the stock losses. Despite these legal hurdles, Robbins Geller obtained an $895 million recovery on behalf of the UnitedHealth shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders. The total recovery for the class was over $925 million, the largest stock option backdating recovery ever, and ***a recovery that is more than four times larger than the next largest options backdating recovery***. Moreover, Robbins Geller obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms that tie pay to performance.

- ***Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)***, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico, and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Robbins Geller attorneys recovered more than $650 million for their clients, substantially more than they would have recovered as part of the class.

- ***Luther v. Countrywide Fin. Corp.***, No. 12-cv-05125 (C.D. Cal.). Robbins Geller attorneys secured a $500 million settlement for institutional and individual investors in what is the largest RMBS purchaser class action settlement in history, and one of the largest class action securities settlements of all time. The unprecedented settlement resolves claims against Countrywide and Wall Street banks that issued the securities. The action was the first securities class action case filed against originators and Wall Street banks as a result of the credit crisis. As co-lead counsel Robbins Geller forged through six years of hard-fought litigation, oftentimes litigating issues of first impression, in order to secure the landmark settlement for its clients and the class.

  In approving the settlement, Judge Mariana R. Pfaelzer repeatedly complimented plaintiffs' attorneys, noting that it was "beyond serious dispute that Class Counsel has vigorously prosecuted the Settlement Actions on both the state and federal level over the last six years." Judge Pfaelzer also commented that "[w]ithout a settlement, these cases would continue indefinitely, resulting in significant risks to recovery and continued litigation costs. It is difficult to understate the risks to recovery if litigation had continued." *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302, 2013 U.S. Dist. LEXIS 179190, at *44, *56 (C.D. Cal. Dec. 5, 2013).

  Judge Pfaelzer further noted that the proposed $500 million settlement represents one of the "largest MBS class action settlements to date. Indeed, this settlement easily surpasses the next largest . . . MBS settlement." *Id.* at *59.

- ***In re Wachovia Preferred Sec. & Bond/Notes Litig.***, No. 09-cv-06351 (S.D.N.Y.). In litigation over bonds and preferred securities, issued by Wachovia between 2006 and 2008, Robbins Geller and co-counsel obtained a significant settlement with Wachovia successor Wells Fargo & Company ($590 million) and Wachovia auditor KPMG LLP ($37 million). ***The total settlement – $627 million – is one of the largest credit-crisis settlements involving Securities Act claims and one of the 25 largest securities class action recoveries in history***. The settlement is also one of the biggest securities class action recoveries arising from the credit crisis.

As alleged in the complaint, the offering materials for the bonds and preferred securities misstated and failed to disclose the true nature and quality of Wachovia's mortgage loan portfolio, which exposed the bank and misled investors to tens of billions of dollars in losses on mortgage-related assets. In reality, Wachovia employed high-risk underwriting standards and made loans to subprime borrowers, contrary to the offering materials and their statements of "pristine credit quality." Robbins Geller served as co-lead counsel representing the City of Livonia Employees' Retirement System, Hawaii Sheet Metal Workers Pension Fund, and the investor class.

- *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller obtained a recovery of $600 million for investors. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, the Firm aggressively pursued class claims and won numerous courtroom victories, including a favorable decision on defendants' motion to dismiss. *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit. Judge Marbley commented: "[T]his is an extraordinary settlement relative to all the other settlements in cases of this nature and certainly cases of this magnitude. . . . This was an outstanding settlement. . . . [I]n most instances, if you've gotten four cents on the dollar, you've done well. You've gotten twenty cents on the dollar, so that's been extraordinary. *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-CV-575, Transcript at 16, 32 (S.D. Ohio Oct. 19, 2007). Judge Marbley further stated:

> The quality of representation in this case was superb. Lead Counsel, [Robbins Geller], are nationally recognized leaders in complex securities litigation class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action. Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

*In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007).

- *AOL Time Warner Cases I & II*, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles Cnty.). Robbins Geller represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. Robbins Geller attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- ***Abu Dhabi Commercial Bank v. Morgan Stanley & Co.***, No. 1:08-cv-07508-SAS-DCF (S.D.N.Y.), and ***King County, Washington v. IKB Deutsche Industriebank AG***, No. 1:09-cv-08387-SAS (S.D.N.Y.). The Firm represented multiple institutional investors in successfully pursuing recoveries from two failed structured investment vehicles, each of which had been rated "AAA" by Standard & Poors and Moody's, but which failed fantastically in 2007.  The matter settled just prior to trial in 2013. This result was only made possible after Robbins Geller lawyers beat back the rating agencies' longtime argument that ratings were opinions protected by the First Amendment.

- ***In re HealthSouth Corp. Sec. Litig.***, No. CV-03-BE-1500-S (N.D. Ala.).  As court-appointed co-lead counsel, Robbins Geller attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs.   The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA.  Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA.  HealthSouth and its financial advisors perpetrated one of the largest and most pervasive frauds in the history of U.S. healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions.  In March 2009, Judge Karon Bowdre commented in the *HealthSouth* class certification opinion: "The court has had many opportunities since November 2001 to examine the work of class counsel and the supervision by the Class Representatives.  The court finds both to be far more than adequate." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 275 (N.D. Ala. 2009).

- ***In re Facebook Biometric Info. Privacy Litig.***, No. 3:15-cv-03747 (N.D. Cal.).  Robbins Geller served as co-lead class counsel in a cutting-edge certified class action, securing a record-breaking $650 million all-cash settlement, the largest privacy settlement in history.  The case concerned Facebook's alleged privacy violations through its collection of its users' biometric identifiers without informed consent through its "Tag Suggestions" feature, which uses proprietary facial recognition software to extract from user-uploaded photographs the unique biometric identifiers (*i.e.*, graphical representations of facial features, also known as facial geometry) associated with people's faces and identify who they are.  The Honorable James Donato called the settlement "a groundbreaking settlement in a novel area" and praised the unprecedented 22% claims rate as "pretty phenomenal" and "a pretty good day in class settlement history."

- ***In re Dynegy Inc. Sec. Litig.***, No. H-02-1571 (S.D. Tex.).  As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc., and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Robbins Geller attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company.  Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller and The Regents believe will benefit all of Dynegy's stockholders.

- ***Jones v. Pfizer Inc.***, No. 1:10-cv-03864 (S.D.N.Y.).  Lead plaintiff Stichting Philips Pensioenfonds obtained a $400 million settlement on behalf of class members who purchased Pfizer common stock during the January 19, 2006 to January 23, 2009 class period. The settlement against Pfizer resolves accusations that it misled investors about an alleged off-label drug marketing scheme.  As sole lead counsel, Robbins Geller attorneys helped achieve this exceptional result after five years of hard-fought litigation against the toughest and the brightest members of the securities defense bar by litigating this case all the way to trial.

In approving the settlement, United States District Judge Alvin K. Hellerstein commended the Firm, noting that "[w]ithout the quality and the toughness that you have exhibited, our society would not be as good as it is with all its problems.  So from me to you is a vote of thanks for devoting yourself to this work and doing it well. . . .  You did a really good job.  Congratulations."

- *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased Qwest securities.  In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice.  After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC.  In 2008, Robbins Geller attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, No. 1:09-cv-03701 (S.D.N.Y.).  Robbins Geller attorneys served as lead counsel for a class of investors and obtained court approval of a $388 million recovery in nine 2007 residential mortgage-backed securities offerings issued by J.P. Morgan.  The settlement represents, on a percentage basis, the largest recovery ever achieved in an MBS purchaser class action.  The result was achieved after more than five years of hard-fought litigation and an extensive investigation.  In granting approval of the settlement, the court stated the following about Robbins Geller attorneys litigating the case: "[T]here is no question in my mind that this is a very good result for the class and that the plaintiffs' counsel fought the case very hard with extensive discovery, a lot of depositions, several rounds of briefing of various legal issues going all the way through class certification."

- *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz.).  As sole lead counsel, Robbins Geller obtained a $350 million settlement in *Smilovits v. First Solar, Inc.*  The settlement, which was reached after a long legal battle and on the day before jury selection, resolves claims that First Solar violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  The settlement is the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

- *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.).  As sole lead counsel, Robbins Geller obtained a $272 million settlement on behalf of Goldman Sachs' shareholders.  The settlement concludes one of the last remaining mortgage-backed securities purchaser class actions arising out of the global financial crisis.  The remarkable result was achieved following seven years of extensive litigation.  After the claims were dismissed in 2010, Robbins Geller secured a landmark victory from the Second Circuit Court of Appeals that clarified the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of MBS investors.  Specifically, the Second Circuit's decision rejected the concept of "tranche" standing and concluded that a lead plaintiff in an MBS class action has class standing to pursue claims on behalf of purchasers of other securities that were issued from the same registration statement and backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities.

In approving the settlement, the Honorable Loretta A. Preska of the Southern District of New York complimented Robbins Geller attorneys, noting:

> Counsel, thank you for your papers.  They were, by the way, extraordinary

papers in support of the settlement, and I will particularly note Professor Miller's declaration in which he details the procedural aspects of the case and then speaks of plaintiffs' counsel's success in the Second Circuit essentially changing the law.

I will also note what counsel have said, and that is that this case illustrates the proper functioning of the statute.

\*        \*        \*

Counsel, you can all be proud of what you've done for your clients. You've done an extraordinarily good job.

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783, Transcript at 10-11 (S.D.N.Y. May 2, 2016).

- *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01033 (M.D. Tenn.). As sole lead counsel, Robbins Geller obtained a groundbreaking $215 million settlement for former HCA Holdings, Inc. shareholders – the largest securities class action recovery ever in Tennessee. Reached shortly before trial was scheduled to commence, the settlement resolves claims that the Registration Statement and Prospectus HCA filed in connection with the company's massive $4.3 billion 2011 IPO contained material misstatements and omissions. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action. At the hearing on final approval of the settlement, the Honorable Kevin H. Sharp described Robbins Geller attorneys as "gladiators" and commented: "Looking at the benefit obtained, the effort that you had to put into it, [and] the complexity in this case . . . I appreciate the work that you all have done on this." *Schuh v. HCA Holdings, Inc.*, No. 3:11-CV-01033, Transcript at 12-13 (M.D. Tenn. Apr. 11, 2016).

- *Silverman v. Motorola, Inc.*, No. 1:07-cv-04507 (N.D. Ill.). The Firm served as lead counsel on behalf of a class of investors in Motorola, ultimately recovering $200 million for investors just two months before the case was set for trial. This outstanding result was obtained despite the lack of an SEC investigation or any financial restatement. In May 2012, the Honorable Amy J. St. Eve of the Northern District of Illinois commented: "The representation that [Robbins Geller] provided to the class was significant, both in terms of quality and quantity." *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 U.S. Dist. LEXIS 63477, at *11 (N.D. Ill. May 7, 2012), *aff'd*, 739 F.3d 956 (7th Cir. 2013).

In affirming the district court's award of attorneys' fees, the Seventh Circuit noted that "no other law firm was willing to serve as lead counsel. Lack of competition not only implies a higher fee but also suggests that most members of the securities bar saw this litigation as too risky for their practices." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013).

- *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.). Robbins Geller attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, one of the largest IPOs in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the court stated the following about the Robbins Geller attorneys handling the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization.  The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court.  Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

*In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- *In re Dollar Gen. Corp. Sec. Litig.*, No. 01-CV-00388 (M.D. Tenn.).  Robbins Geller attorneys served as lead counsel in this case in which the Firm recovered $172.5 million for investors.  The *Dollar General* settlement was the largest shareholder class action recovery ever in Tennessee.

- *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-CV-2838 (N.D. Ga.).  As co-lead counsel representing Coca-Cola shareholders, Robbins Geller attorneys obtained a recovery of $137.5 million after nearly eight years of litigation.  Robbins Geller attorneys traveled to three continents to uncover the evidence that ultimately resulted in the settlement of this hard-fought litigation.  The case concerned Coca-Cola's shipping of excess concentrate at the end of financial reporting periods for the sole purpose of meeting analyst earnings expectations, as well as the company's failure to properly account for certain impaired foreign bottling assets.

- *Schwartz v. TXU Corp.*, No. 02-CV-2243 (N.D. Tex.).  As co-lead counsel, Robbins Geller attorneys obtained a recovery of over $149 million for a class of purchasers of TXU securities.  The recovery compensated class members for damages they incurred as a result of their purchases of TXU securities at inflated prices.  Defendants had inflated the price of these securities by concealing the fact that TXU's operating earnings were declining due to a deteriorating gas pipeline and the failure of the company's European operations.

- *In re Doral Fin. Corp. Sec. Litig.*, 05 MDL No. 1706 (S.D.N.Y.). In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement, finding in his order:

> The services provided by Lead Counsel [Robbins Geller] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation. Such efficiency and effectiveness supports the requested fee percentage.
>
> Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . . Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.
>
> . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . . The ability of [Robbins Geller] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation . . . .

  *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706, Order at 4-5 (S.D.N.Y. July 17, 2007).

- *In re Exxon Valdez*, No. A89 095 Civ. (D. Alaska), and *In re Exxon Valdez Oil Spill Litig.*, No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Robbins Geller attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. The jury awarded hundreds of millions in compensatory damages, as well as $5 billion in punitive damages (the latter were later reduced by the U.S. Supreme Court to $507 million).

- *Mangini v. R.J. Reynolds Tobacco Co.*, No. 939359 (Cal. Super. Ct., San Francisco Cnty.). In this case, R.J. Reynolds admitted that "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- *Does I v. The Gap, Inc.*, No. 01 0031 (D. N. Mar. I.). In this groundbreaking case, Robbins Geller attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target, and J.C. Penney. In the first action of its kind, Robbins Geller attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: *Does I v. Advance Textile Corp.*, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and *UNITE v. The Gap, Inc.*, No. 300474 (Cal. Super. Ct., San Francisco Cty.), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts in bringing about the precedent-setting settlement of the actions.

- *Hall v. NCAA (Restricted Earnings Coach Antitrust Litigation)*, No. 94-2392 (D. Kan.). Robbins

Geller attorneys were lead counsel and lead trial counsel for one of three classes of coaches in these consolidated price-fixing actions against the National Collegiate Athletic Association.  On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn.).  Robbins Geller attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- *In re Honeywell Int'l, Inc. Sec. Litig.*, No. 00-cv-03605 (D.N.J.).  Robbins Geller attorneys served as lead counsel for a class of investors that purchased Honeywell common stock.  The case charged Honeywell and its top officers with violations of the federal securities laws, alleging the defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc. and that defendants falsified Honeywell's financial statements.  After extensive discovery, Robbins Geller attorneys obtained a $100 million settlement for the class.

- *Schwartz v. Visa Int'l*, No. 822404-4 (Cal. Super. Ct., Alameda Cnty.).  After years of litigation and a six-month trial, Robbins Geller attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  Robbins Geller attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The court ordered Visa and MasterCard to return $800 million in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the court ordered full disclosure of the hidden fee.

- *Thompson v. Metro. Life Ins. Co.*, No. 00-cv-5071 (S.D.N.Y.).  Robbins Geller attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, MDL No. 1061 (D.N.J.).  In one of the first cases of its kind, Robbins Geller attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

## Precedent-Setting Decisions

Robbins Geller attorneys operate at the vanguard of complex class action of litigation.  Our work often changes the legal landscape, resulting in an environment that is more-favorable for obtaining recoveries for our clients.

- *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018), *cert. denied*, 588 U.S. __ (2019).  In July 2018, the Ninth Circuit ruled in plaintiffs' favor in the *Toshiba* securities class action.  Following appellate briefing and oral argument by Robbins Geller attorneys, a three-judge Ninth Circuit panel reversed the district court's prior dismissal in a unanimous, 36-page opinion, holding that Toshiba ADRs are a "security" and the Securities Exchange Act of 1934 could apply to those ADRs that were purchased in a domestic transaction.  *Id*. at 939, 949.  The court adopted the Second and Third Circuits' "irrevocable liability" test for  determining whether the transactions were domestic and held that plaintiffs must be allowed to amend their complaint to allege that the purchase of Toshiba ADRs on the over-the-counter market was a domestic purchase and that the alleged fraud was in connection with the purchase.

- *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, No. 15-1439 (U.S.).  In March 2018, the U.S. Supreme Court ruled in favor of investors represented by Robbins Geller, holding that state courts continue to have jurisdiction over class actions asserting violations of the Securities Act of 1933.  The court's ruling secures investors' ability to bring Securities Act actions when companies fail to make full and

fair disclosure of relevant information in offering documents. The court confirmed that the Securities Litigation Uniform Standards Act of 1998 was designed to preclude securities class actions asserting violations of state law – not to preclude securities actions asserting federal law violations brought in state courts.

- ***Mineworkers' Pension Scheme v. First Solar Inc.***, 881 F.3d 750 (9th Cir. 2018), *cert. denied*, 588 U.S. __ (2019). In January 2018, the Ninth Circuit upheld the district court's denial of defendants' motion for summary judgment, agreeing with plaintiffs that the test for loss causation in the Ninth Circuit is a general "proximate cause test," and rejecting the more stringent revelation of the fraudulent practices standard advocated by the defendants. The opinion is a significant victory for investors, as it forecloses defendants' ability to immunize themselves from liability simply by refusing to publicly acknowledge their fraudulent conduct.

- ***In re Quality Sys., Inc. Sec. Litig.***, No. 15-55173 (9th Cir.). In July 2017, Robbins Geller's Appellate Practice Group scored a significant win in the Ninth Circuit in the *Quality Systems* securities class action. On appeal, a three-judge Ninth Circuit panel unanimously reversed the district court's prior dismissal of the action against Quality Systems and remanded the case to the district court for further proceedings. The decision addressed an issue of first impression concerning "mixed" future and present-tense misstatements. The appellate panel explained that "non-forward-looking portions of mixed statements are not eligible for the safe harbor provisions of the PSLRA . . . . Defendants made a number of mixed statements that included projections of growth in revenue and earnings based on the state of QSI's sales pipeline." The panel then held *both* the non-forward-looking and forward-looking statements false and misleading and made with scienter, deeming them actionable. Later, although defendants sought rehearing by the Ninth Circuit sitting *en banc*, the circuit court denied their petition.

- ***Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.***, No. CV-10-J-2847-S (N.D. Ala.). In the *Regions Financial* securities class action, Robbins Geller represented Local 703, I.B. of T. Grocery and Food Employees Welfare Fund and obtained a $90 million settlement in September 2015 on behalf of purchasers of Regions Financial common stock during the class period. In August 2014, the Eleventh Circuit Court of Appeals affirmed the district court's decision to certify a class action based upon alleged misrepresentations about Regions Financial's financial health before and during the recent economic recession, and in November 2014, the U.S. District Court for the Northern District of Alabama denied defendants' third attempt to avoid plaintiffs' motion for class certification.

- ***Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund***, No. 13-435 (U.S.). In March 2015, the U.S. Supreme Court ruled in favor of investors represented by Robbins Geller that investors asserting a claim under §11 of the Securities Act of 1933 with respect to a misleading statement of opinion do not, as defendant Omnicare had contended, have to prove that the statement was subjectively disbelieved when made. Rather, the court held that a statement of opinion may be actionable either because it was not believed, or because it lacked a reasonable basis in fact. This decision is significant in that it resolved a conflict among the federal circuit courts and expressly overruled the Second Circuit's widely followed, more stringent pleading standard for §11 claims involving statements of opinion. The Supreme Court remanded the case back to the district court for determination under the newly articulated standard. In August of 2016, upon remand, the district court applied the Supreme Court's new test and denied defendants' motion to dismiss in full.

- ***NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.***, 693 F.3d 145 (2d Cir. 2012). In a

securities fraud action involving mortgage-backed securities, the Second Circuit rejected the concept of "tranche" standing and found that a lead plaintiff has class standing to pursue claims on behalf of purchasers of securities that were backed by pools of mortgages originated by the same lenders who had originated mortgages backing the lead plaintiff's securities. The court noted that, given those common lenders, the lead plaintiff's claims as to its purchases implicated "the same set of concerns" that purchasers in several of the other offerings possessed. The court also rejected the notion that the lead plaintiff lacked standing to represent investors in different tranches.

- *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012). The panel reversed in part and affirmed in part the dismissal of investors' securities fraud class action alleging violations of §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in connection with a restatement of financial results of the company in which the investors had purchased stock.

  The panel held that the third amended complaint adequately pleaded the §10(b), §20A, and Rule 10b-5 claims. Considering the allegations of scienter holistically, as the U.S. Supreme Court directed in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27, 48-49 (2011), the panel concluded that the inference that the defendant company and its chief executive officer and former chief financial officer were deliberately reckless as to the truth of their financial reports and related public statements following a merger was at least as compelling as any opposing inference.

- *Fox v. JAMDAT Mobile, Inc.*, 185 Cal. App. 4th 1068 (2010). Concluding that Delaware's shareholder ratification doctrine did not bar the claims, the California Court of Appeal reversed dismissal of a shareholder class action alleging breach of fiduciary duty in a corporate merger.

- *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009). The Third Circuit flatly rejected defense contentions that where relief is sought under §11 of the Securities Act of 1933, which imposes liability when securities are issued pursuant to an incomplete or misleading registration statement, class certification should depend upon findings concerning market efficiency and loss causation.

- *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S 27 (2011), *aff'g* 585 F.3d 1167 (9th Cir. 2009). In a securities fraud action involving the defendants' failure to disclose a possible link between the company's popular cold remedy and a life-altering side effect observed in some users, the U.S. Supreme Court unanimously affirmed the Ninth Circuit's (a) rejection of a bright-line "statistical significance" materiality standard, and (b) holding that plaintiffs had successfully pleaded a strong inference of the defendants' scienter.

- *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). Aided by former U.S. Supreme Court Justice O'Connor's presence on the panel, the Fifth Circuit reversed a district court order denying class certification and also reversed an order granting summary judgment to defendants. The court held that the district court applied an incorrect fact-for-fact standard of loss causation, and that genuine issues of fact on loss causation precluded summary judgment.

- *In re F5 Networks, Inc., Derivative Litig.*, 207 P.3d 433 (Wash. 2009). In a derivative action alleging unlawful stock option backdating, the Supreme Court of Washington ruled that shareholders need not make a pre-suit demand on the board of directors where this step would be futile, agreeing with plaintiffs that favorable Delaware case law should be followed as persuasive authority.

- *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009). In a rare win for investors in the Fifth

Circuit, the court reversed an order of dismissal, holding that safe harbor warnings were not meaningful when the facts alleged established a strong inference that defendants knew their forecasts were false. The court also held that plaintiffs sufficiently alleged loss causation.

- *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009). In a victory for investors in the Third Circuit, the court reversed an order of dismissal, holding that shareholders pled with particularity why the company's repeated denials of price discounts on products were false and misleading when the totality of facts alleged established a strong inference that defendants knew their denials were false.

- *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342 (3d Cir. 2009). The Third Circuit held that claims filed for violation of §10(b) of the Securities Exchange Act of 1934 were timely, adopting investors' argument that because scienter is a critical element of the claims, the time for filing them cannot begin to run until the defendants' fraudulent state of mind should be apparent.

- *Rael v. Page*, 222 P.3d 678 (N.M. Ct. App. 2009). In this shareholder class and derivative action, Robbins Geller attorneys obtained an appellate decision reversing the trial court's dismissal of the complaint alleging serious director misconduct in connection with the merger of SunCal Companies and Westland Development Co., Inc., a New Mexico company with large and historic landholdings and other assets in the Albuquerque area. The appellate court held that plaintiff's claims for breach of fiduciary duty were direct, not derivative, because they constituted an attack on the validity or fairness of the merger and the conduct of the directors. Although New Mexico law had not addressed this question directly, at the urging of the Firm's attorneys, the court relied on Delaware law for guidance, rejecting the "special injury" test for determining the direct versus derivative inquiry and instead applying more recent Delaware case law.

- *Lane v. Page*, No. 06-cv-1071 (D.N.M. 2012). In May 2012, while granting final approval of the settlement in the federal component of the Westland cases, Judge Browning in the District of New Mexico commented:

  > Class Counsel are highly skilled and specialized attorneys who use their substantial experience and expertise to prosecute complex securities class actions. In possibly one of the best known and most prominent recent securities cases, Robbins Geller served as sole lead counsel – *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.). *See* Report at 3. The Court has previously noted that the class would "receive high caliber legal representation" from class counsel, and throughout the course of the litigation the Court has been impressed with the quality of representation on each side. *Lane v. Page*, 250 F.R.D. at 647.

  *Lane v. Page*, 862 F. Supp. 2d 1182, 1253-54 (D.N.M. 2012).

  In addition, Judge Browning stated: "'Few plaintiffs' law firms could have devoted the kind of time, skill, and financial resources over a five-year period necessary to achieve the pre- and post-Merger benefits obtained for the class here.' . . . [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class [Robbins Geller is] both skilled and experienced, and used those skills and experience for the benefit of the class." *Id.* at 1254.

- *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008). In a case of first impression, the Ninth Circuit held that the Securities Act of 1933's specific non-removal features had not been trumped by the general removal provisions of the Class Action Fairness Act of 2005.

- *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008). The Ninth Circuit upheld defrauded investors' loss causation theory as plausible, ruling that a limited temporal gap between the time defendants' misrepresentation was publicly revealed and the subsequent decline in stock value was reasonable where the public had not immediately understood the impact of defendants' fraud.

- *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007). The Second Circuit held that the filing of a class action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district court rulings that *American Pipe* tolling did not apply under these circumstances.

- *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007). In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does not apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use. In April 2007, the Honorable D. Brooks Smith praised Robbins Geller partner Joe Daley's efforts in this litigation:

  > Thank you very much Mr. Daley and a thank you to all counsel. As Judge Cowen mentioned, this was an exquisitely well-briefed case; it was also an extremely well-argued case, and we thank counsel for their respective jobs here in the matter, which we will take under advisement. Thank you.

  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 06-2911, Transcript at 35:37-36:00 (3d Cir. Apr. 12, 2007).

- *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007). The Supreme Court of Delaware held that the Alaska Electrical Pension Fund, for purposes of the "corporate benefit" attorney-fee doctrine, was presumed to have caused a substantial increase in the tender offer price paid in a "going private" buyout transaction. The Court of Chancery originally ruled that Alaska's counsel, Robbins Geller, was not entitled to an award of attorney fees, but Delaware's high court, in its published opinion, reversed and remanded for further proceedings.

- *Crandon Cap. Partners v. Shelk*, 157 P.3d 176 (Or. 2007). Oregon's Supreme Court ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims. The Firm's attorneys convinced Oregon's highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006). In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- *In re Guidant S'holders Derivative Litig.*, 841 N.E.2d 571 (Ind. 2006). Answering a certified question from a federal court, the Supreme Court of Indiana unanimously held that a pre-suit demand in a derivative action is excused if the demand would be a futile gesture. The court adopted a "demand futility" standard and rejected defendants' call for a "universal demand" standard that might have immediately ended the case.

- ***Denver Area Meat Cutters v. Clayton***, 209 S.W.3d 584 (Tenn. Ct. App. 2006).  The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes.  In their effort to secure relief for Clayton Homes stockholders, the Firm's attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts.  The temporary halt to Buffet's acquisition received national press attention.

- ***DeJulius v. New Eng. Health Care Emps. Pension Fund***, 429 F.3d 935 (10th Cir. 2005).  The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- ***In re Daou Sys.***, 411 F.3d 1006 (9th Cir. 2005).  The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 397 F.3d 249 (5th Cir.), *reh'g denied and opinion modified*, 409 F.3d 653 (5th Cir. 2005).  The Fifth Circuit upheld investors' accounting-fraud claims, holding that fraud is pled as to both defendants when one knowingly utters a false statement and the other knowingly fails to correct it, even if the complaint does not specify who spoke and who listened.

- ***City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.***, 399 F.3d 651 (6th Cir. 2005).  The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Ill. Mun. Ret. Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004).  The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004).  The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Sols. Inc.***, 365 F.3d 353 (5th Cir. 2004).  The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***Smith v. Am. Family Mut. Ins. Co.***, 289 S.W.3d 675 (Mo. Ct. App. 2009).  Capping nearly a decade of hotly contested litigation, the Missouri Court of Appeals reversed the trial court's judgment notwithstanding the verdict for auto insurer American Family and reinstated a unanimous jury verdict for the plaintiff class.

- ***Troyk v. Farmers Grp., Inc.***, 171 Cal. App. 4th 1305 (2009).  The California Court of Appeal held that Farmers Insurance's practice of levying a "service charge" on one-month auto insurance policies, without specifying the charge in the policy, violated California's Insurance Code.

- ***Lebrilla v. Farmers Grp., Inc.***, 119 Cal. App. 4th 1070 (2004).  Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest

automobile insurers in California, and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- *In re Monumental Life Ins. Co.*, 365 F.3d 408, 416 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "'computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.'"

- *Dent v. National Football League*, No. 15-15143 (9th Cir.). In September 2018, the United States Court of Appeals for the Ninth Circuit issued an important decision reversing the district court's previous dismissal of the *Dent v. National Football League* litigation, concluding that the complaint brought by NFL Hall of Famer Richard Dent and others should not be dismissed on labor-law preemption grounds. The case was remanded to the district court for further proceedings.

- *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). In a leading decision interpreting the scope of Proposition 64's new standing requirements under California's Unfair Competition Law (UCL), the California Supreme Court held that consumers alleging that a manufacturer has misrepresented its product have "lost money or property" within the meaning of the initiative, and thus have standing to sue under the UCL, if they "can truthfully allege that they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise." *Id*. at 317. *Kwikset* involved allegations, proven at trial, that defendants violated California's "Made in the U.S.A." statute by representing on their labels that their products were "Made in U.S.A." or "All-American Made" when, in fact, the products were substantially made with foreign parts and labor.

- *Safeco Ins. Co. of Am. v. Superior Court*, 173 Cal. App. 4th 814 (2009). In a class action against auto insurer Safeco, the California Court of Appeal agreed that the plaintiff should have access to discovery to identify a new class representative after her standing to sue was challenged.

- *Consumer Privacy Cases*, 175 Cal. App. 4th 545 (2009). The California Court of Appeal rejected objections to a nationwide class action settlement benefiting Bank of America customers.

- *Koponen v. Pac. Gas & Elec. Co.*, 165 Cal. App. 4th 345 (2008). The Firm's attorneys obtained a published decision reversing the trial court's dismissal of the action, and holding that the plaintiff's claims for damages arising from the utility's unauthorized use of rights-of-way or easements obtained from the plaintiff and other landowners were not barred by a statute limiting the authority of California courts to review or correct decisions of the California Public Utilities Commission.

- *Sanford v. MemberWorks, Inc.*, 483 F.3d 956 (9th Cir. 2007). In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, the Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- *Ritt v. Billy Blanks Enters.*, 870 N.E.2d 212 (Ohio Ct. App. 2007). In the Ohio analog to the *West*

case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179 (Haw. 2006). The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

- *Branick v. Downey Sav. & Loan Ass'n*, 39 Cal. 4th 235 (2006). Robbins Geller attorneys were part of a team of lawyers that briefed this case before the Supreme Court of California. The court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004. Proposition 64 amended California's Unfair Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006). The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage-related fees were actionable.

- *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004), and *Santiago v. GMAC Mortg. Grp., Inc.*, 417 F.3d 384 (3d Cir. 2005). In two groundbreaking federal appellate decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

## Additional Judicial Commendations

Robbins Geller attorneys have been praised by countless judges all over the country for the quality of their representation in class-action lawsuits. In addition to the judicial commendations set forth in the Prominent Cases and Precedent-Setting Decisions sections, judges have acknowledged the successful results of the Firm and its attorneys with the following plaudits:

- On October 5, 2022, at the final approval hearing of the settlement, the Honorable Paul A. Fioravanti, Jr. stated: "The settlement achieved here is, in short, impressive. . . . This litigation was hard fought. The issues were complex. . . . Plaintiffs' lead counsel here are among the most highly respected practitioners in this Court with a reputation for exacting substantial awards for the classes that they represent. . . . Again, the benefit was outstanding. . . . Counsel, this was an interesting case. I know you worked really hard on it. Fantastic result. The fee was well deserved." *City of Warren Gen. Emps.' Ret. Sys. v. Roche*, No. 2019-0740-PAF, Transcript at 26-29 (Del. Ch. Oct. 5, 2022).

- On February 4, 2021, in granting final approval of the settlement, the Honorable Mark H. Cohen of the United States District Court for the Northern District of Georgia stated: "Lead Counsel successfully achieved a greater-than-average settlement 'in the face of significant risks.'" Robbins Geller's "hard-fought litigation in the Eleventh Circuit" and "[i]n considering the experience, reputation, and abilities of the attorneys, the Court recognize[d] that Lead Counsel is well-regarded in the legal community, especially in litigating class-action securities cases." *Monroe County Employees' Retirement System v. The Southern Company*, No. 1:17-cv-00241, Order at 8-9 (N.D. Ga. Feb. 4, 2021).

- On December 18, 2020, at the final approval hearing of the settlement, the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California commended Robbins Geller, stating: "Counsel performed excellent work in not only investigating and analyzing the core of the issues, but in negotiating and demanding the necessary reforms to prevent malfeasance for the benefit of the shareholders and the consumers. The Court complements counsel for its excellence." *In re RH S'holder Derivative Litig.*, No. 4:18-cv-02452-YGR, Order and Final Judgment at 3 (N.D. Cal. Dec. 18, 2020).

- On October 23, 2020, at the final approval hearing of the settlement, the Honorable P. Kevin Castel of the United States District Court for the Southern District of New York praised the firm, "[Robbins Geller] has been sophisticated and experienced." He also noted that: "[ T]he quality of the representation . . . was excellent. The experience of counsel is also a factor. Robbins Geller certainly has the extensive experience and they were litigating against national powerhouses . . . ." *City of Birmingham Ret. & Relief Sys. v. BRF S.A.*, No. 18 Civ. 2213 (PKC), Transcript at 12-13, 18 (S.D.N.Y. Oct. 23, 2020).

- In May 2020, in granting final approval of the settlement, the Honorable Mark L. Wolf praised Robbins Geller: "[T]he class has been represented by excellent honorable counsel . . . . [T]he fund was represented by experienced, energetic, able counsel, the fund was engaged and informed, and the fund followed advice of experienced counsel. Counsel for the class have been excellent, and I would say honorable."  Additionally, Judge Wolf noted, "I find that the work that's been done primarily by Robbins Geller has been excellent and honorable and efficient. . . . [T]his has been a challenging case, and they've done an excellent job."  *McGee v. Constant Contact, Inc.*, No. 1:15-cv-13114-MLW, Transcript at 21, 31, 61 (D. Mass. May 27, 2020).

- In December 2019, the Honorable Margo K. Brodie noted in granting final approval of the settlement that "[Robbins Geller and co-counsel] have also demonstrated the utmost professionalism despite the demands of the extreme perseverance that this case has required, litigating on behalf of a class of over 12 million for over fourteen years, across a changing legal landscape, significant motion practice, and appeal and remand. Class counsel's pedigree and efforts alone speak to the quality of their representation."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 1:05-md-01720-MKB-JO, Memorandum & Order (E.D.N.Y. Dec. 16, 2019).

- In October 2019, the Honorable Claire C. Cecchi noted that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action."  The court further commended the Firm and co-counsel for "conduct[ing] the [l]itigation . . . with skill, perseverance, and diligent advocacy."  *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 2:08-cv-00235-CCC-JAD, Order at 4 (D.N.J. Oct. 3, 2019); *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's, London Members of Syndicates*, No. 2:08-cv-00235-CCC-JAD, Order Awarding Attorneys' Fees and Expenses/Charges and Service Awards at 3 (D.N.J. Oct. 3, 2019).

- In June 2019, the Honorable T.S. Ellis, III noted that Robbins Geller "achieved the [$108 million] [s]ettlement with skill, perseverance, and diligent advocacy." At the final approval hearing, the court further commended Robbins Geller by stating, "I think the case was fully and appropriately litigated [and] you all did a very good job. . . . [T]hank you for your service in the court. . . . [You're] first-class lawyers . . . ." *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031, Order Awarding Attorneys' Fees and Expenses at 3 (E.D. Va. June 7, 2019); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031, Transcript at 28-29 (E.D. Va. June 7, 2019).

- In June 2019, in granting final approval of the settlement, the Honorable John A. Houston stated: Robbins Geller's "skill and quality of work was extraordinary . . . . I'll note from the top that this has been an aggressively litigated action." *In re Morning Song Bird Food Litig.*, No. 3:12-cv-01592-JAH-AGS, Transcript at 4, 9 (S.D. Cal. June 3, 2019).

- In May 2019, in granting final approval of the settlement, the Honorable Richard H. DuBois stated: Robbins Geller is "highly experienced and skilled" for obtaining a "fair, reasonable, and adequate" settlement in the "interest of the [c]lass [m]embers" after "extensive investigation." *Chicago Laborers Pension Fund v. Alibaba Grp. Holding Ltd.*, No. CIV535692, Judgment and Order Granting Final Approval of Class Action Settlement at 3 (Cal. Super. Ct., San Mateo Cnty. May 17, 2019).

- In April 2019, the Honorable Kathaleen St. J. McCormick noted: "[S]ince the inception of this litigation, plaintiffs and their counsel have vigorously prosecuted the claims brought on behalf of the class. . . . When Vice Chancellor Laster appointed lead counsel, he effectively said: Go get a good result. And counsel took that to heart and did it. . . . The proposed settlement was the product of intense litigation and complex mediation. . . . [Robbins Geller has] only built a considerable track record, never burned it, which gave them the credibility necessary to extract the benefits achieved." *In re Calamos Asset Mgmt., Inc. S'holder Litig.*, No. 2017-0058-JTL, Transcript at 87, 93, 95, 98 (Del. Ch. Apr. 25, 2019).

- In April 2019, the Honorable Susan O. Hickey noted that Robbins Geller "achieved an exceptional [s]ettlement with skill, perseverance, and diligent advocacy." *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162, Order Awarding Attorneys' Fees and Expenses at 3 (W.D. Ark. Apr. 8, 2019).

- In January 2019, the Honorable Margo K. Brodie noted that Robbins Geller "has arduously represented a variety of plaintiffs' groups in this action[,] . . . [has] extensive antitrust class action litigation experience . . . [and] negotiated what [may be] the largest antitrust settlement in history." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 34 (E.D.N.Y. 2019).

- On December 20, 2018, at the final approval hearing for the settlement, the court lauded Robbins Geller's attorneys and their work: "[T]his is a pretty extraordinary settlement, recovery on behalf of the members of the class. . . . I've been very impressed with the level of lawyering in the case . . . and with the level of briefing . . . and I wanted to express my appreciation for that and for the work that everyone has done here." The court concluded, "your clients were all blessed to have you, [and] not just because of the outcome." *Duncan v. Joy Global, Inc.*, No. 16-CV-1229, Transcript at 12, 20-21 (E.D. Wis. Dec. 20, 2018).

- In October 2017, the Honorable William Alsup noted that Robbins Geller and lead plaintiff "vigorously prosecuted this action." *In re LendingClub Sec. Litig.*, No. 3:16-cv-02627-WHA, Order at 13 (N.D. Cal. Oct. 20, 2017).

- On November 9, 2018, in granting final approval of the settlement, the Honorable Jesse M. Furman commented: "[Robbins Geller] did an extraordinary job here. . . . [I]t is fair to say [this was] probably the most complicated case I have had since I have been on the bench. . . . I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable [a] job in briefing it and arguing as you have done. You have in my view done an extraordinary service to the class. . . . I think you have done an extraordinary job and deserve thanks and commendation for that." *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 1:14-cv-07126-JMF-OTW, Transcript at 27-28 (S.D.N.Y. Nov. 9, 2018).

- On September 12, 2018, at the final approval hearing of the settlement, the Honorable William H. Orrick of the Northern District of California praised Robbins Geller's "high-quality lawyering" in a case that "involved complicated discovery and complicated and novel legal issues," resulting in an "excellent" settlement for the class. The "lawyering . . . was excellent" and the case was "very well litigated." *In re Lidoderm Antitrust Litig.*, No. 14-MDL-02521-WHO, Transcript at 11, 14, 22 (N.D. Cal. Sept. 12, 2018).

- On March 31, 2017, in granting final approval of the settlement, the Honorable Gonzalo P. Curiel hailed the settlement as "extraordinary" and "all the more exceptional when viewed in light of the risk" of continued litigation. The court further commended Robbins Geller for prosecuting the case on a *pro bono* basis: "Class Counsel's exceptional decision to provide nearly seven years of legal services to Class Members on a *pro bono* basis evidences not only a lack of collusion, but also that Class Counsel are in fact representing the best interests of Plaintiffs and the Class Members in this Settlement. Instead of seeking compensation for fees and costs that they would otherwise be entitled to, Class Counsel have acted to allow maximum recovery to Plaintiffs and Class Members. Indeed, that Eligible Class Members may receive recovery of 90% or greater is a testament to Class Counsel's representation and dedication to act in their clients' best interest." In addition – at the final approval hearing, the court commented that "this is a case that has been litigated – if not fiercely, zealously throughout." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302, 1312 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *Low v. Trump University LLC and Donald J. Trump*, No. 10-cv-0940 GPC-WVG, and *Cohen v. Donald J. Trump*, No. 13-cv-2519-GPC-WVG, Transcript at 7 (S.D. Cal. Mar. 30, 2017).

- In January 2017, at the final approval hearing, the Honorable Kevin H. Sharp of the Middle District of Tennessee commended Robbins Geller attorneys, stating: "It was complicated, it was drawn out, and a lot of work clearly went into this [case] . . . . I think there is some benefit to the shareholders that are above and beyond money, a benefit to the company above and beyond money that changed hands." *In re Community Health Sys., Inc. S'holder Derivative Litig.*, No. 3:11-cv-00489, Transcript at 10 (M.D. Tenn. Jan. 17, 2017).

- In November 2016, at the final approval hearing, the Honorable James G. Carr stated: "I kept throwing the case out, and you kept coming back. . . . And it's both remarkable and noteworthy and a credit to you and your firm that you did so. . . . [Y]ou persuaded the Sixth Circuit. As we know, that's no mean feat at all." Judge Carr further complimented the Firm, noting that it "goes without question or even saying" that Robbins Geller is very well-known nationally and that the settlement is an excellent result for the class. He succinctly concluded that "given the tenacity and the time and the effort that [Robbins Geller] lawyers put into [the case]" makes the class "a lot better off." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, No. 3:05-cv-07393-JGC, Transcript at 4, 10, 14, 17 (N.D. Ohio Nov. 18, 2016).

- In September 2016, in granting final approval of the settlement, Judge Arleo commended the "vigorous and skilled efforts" of Robbins Geller attorneys for obtaining "an excellent recovery." Judge Arleo added that the settlement was reached after "contentious, hard-fought litigation" that ended with "a very, very good result for the class" in a "risky case." *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 2:12-cv-05275-MCA-LDW, Transcript of Hearing at 18-20 (D.N.J. Sept. 28, 2016).

- In August 2015, at the final approval hearing for the settlement, the Honorable Karen M. Humphreys praised Robbins Geller's "extraordinary efforts" and "excellent lawyering," noting that the settlement "really does signal that the best is yet to come for your clients and for your prodigious labor as professionals. . . .  I wish more citizens in our country could have an appreciation of what this [settlement] truly represents." *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH, Transcript at 8, 25 (D. Kan. Aug. 12, 2015).

- In August 2015, the Honorable Judge Max O. Cogburn, Jr. noted that "plaintiffs' attorneys were able [to] achieve the big success early" in the case and obtained an "excellent result."  The "extraordinary" settlement was because of "good lawyers . . . doing their good work." *Nieman v. Duke Energy Corp.*, No. 3:12-cv-456, Transcript at 21, 23, 30 (W.D.N.C. Aug. 12, 2015).

- In July 2015, in approving the settlement, the Honorable Douglas L. Rayes of the District of Arizona stated: "Settlement of the case during pendency of appeal for more than an insignificant amount is rare.  The settlement here is substantial and provides favorable recovery for the settlement class under these circumstances."  He continued, noting, "[a]s against the objective measures of . . . settlements [in] other similar cases, [the recovery] is on the high end." *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, No. 2:06-cv-02674-DLR, Transcript at 8, 11 (D. Ariz. July 28, 2015).

- In June 2015, at the conclusion of the hearing for final approval of the settlement, the Honorable Susan Richard Nelson of the District of Minnesota noted that it was "a pleasure to be able to preside over a case like this," praising Robbins Geller in achieving "an outstanding [result] for [its] clients," as she was "very impressed with the work done on th[e] case." *In re St. Jude Med., Inc. Sec. Litig.*, No. 0:10-cv-00851-SRN-TNL, Transcript at 7 (D. Minn. June 12, 2015).

- In May 2015, at the fairness hearing on the settlement, the Honorable William G. Young noted that the case was "very well litigated" by Robbins Geller attorneys, adding that "I don't just say that as a matter of form. . . . I thank you for the vigorous litigation that I've been permitted to be a part of." *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, Transcript at 8-9 (D. Mass. May 12, 2015).

- In January 2015, the Honorable William J. Haynes, Jr. of the Middle District of Tennessee described the settlement as a "highly favorable result achieved for the Class" through Robbins Geller's "diligent prosecution . . . [and] quality of legal services."  The settlement represents the fourth-largest securities recovery ever in the Middle District of Tennessee and one of the largest in more than a decade. *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882, 2015 U.S. Dist. LEXIS 181943, at *6-*7 (M.D. Tenn. Jan. 16, 2015).

- In September 2014, in approving the settlement for shareholders, Vice Chancellor John W. Noble noted "[t]he litigation caused a substantial benefit for the class. It is unusual to see a $29 million recovery." Vice Chancellor Noble characterized the litigation as "novel" and "not easy," but "[t]he lawyers took a case and made something of it." The court commended Robbins Geller's efforts in obtaining this result: "The standing and ability of counsel cannot be questioned" and "the benefits achieved by plaintiffs' counsel in this case cannot be ignored." *In re Gardner Denver, Inc. S'holder Litig.*, No. 8505-VCN, Transcript at 26-28 (Del. Ch. Sept. 3, 2014).

- In May 2014, at the conclusion of the hearing for final approval of the settlement, the Honorable Elihu M. Berle stated: "I would finally like to congratulate counsel on their efforts to resolve this case, on excellent work – it was the best interest of the class – and to the exhibition of professionalism. So I do thank you for all your efforts." *Liberty Mutual Overtime Cases*, No. JCCP 4234, Transcript at 20:1-5 (Cal. Super. Ct., Los Angeles Cnty. May 29, 2014).

- In March 2014, Ninth Circuit Judge J. Clifford Wallace (presiding) expressed the gratitude of the court: "Thank you. I want to especially thank counsel for this argument. This is a very complicated case and I think we were assisted no matter how we come out by competent counsel coming well prepared. . . . It was a model of the type of an exercise that we appreciate. Thank you very much for your work . . . you were of service to the court." *Eclectic Properties East, LLC v. The Marcus & Millichap Co.*, No. 12-16526, Transcript (9th Cir. Mar. 14, 2014).

- In February 2014, in approving a settlement, Judge Edward M. Chen noted the "very substantial risks" in the case and recognized Robbins Geller had performed "extensive work on the case." *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-6140, 2014 U.S. Dist. LEXIS 20044, at *5, *11-*12 (N.D. Cal. Feb. 18, 2014).

- In August 2013, in granting final approval of the settlement, the Honorable Richard J. Sullivan stated: "Lead Counsel is to be commended for this result: it expended considerable effort and resources over the course of the action researching, investigating, and prosecuting the claims, at significant risk to itself, and in a skillful and efficient manner, to achieve an outstanding recovery for class members. Indeed, the result – and the class's embrace of it – is a testament to the experience and tenacity Lead Counsel brought to bear." *City of Livonia Emps. Ret. Sys. v. Wyeth*, No. 07 Civ. 10329, 2013 U.S. Dist. LEXIS 113658, at *13 (S.D.N.Y. Aug. 7, 2013).

- In July 2013, in granting final approval of the settlement, the Honorable William H. Alsup stated that Robbins Geller did "excellent work in this case," and continued, "I look forward to seeing you on the next case." *Fraser v. Asus Comput. Int'l*, No. C 12-0652, Transcript at 12:2-3 (N.D. Cal. July 11, 2013).

- In June 2013, in certifying the class, U.S. District Judge James G. Carr recognized Robbins Geller's steadfast commitment to the class, noting that "plaintiffs, with the help of Robbins Geller, have twice successfully appealed this court's orders granting defendants' motion to dismiss." *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515, 524 (N.D. Ohio 2013).

- In November 2012, in granting appointment of lead plaintiff, Chief Judge James F. Holderman commended Robbins Geller for its "substantial experience in securities class action litigation" and commented that the Firm "is recognized as 'one of the most successful law firms in securities class actions, if not the preeminent one, in the country.' *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.)." He continued further that, "'Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recovery ever [$*7.2* billion in *Enron*], as well as the largest recoveries in the Fifth, Sixth, Eighth, Tenth and Eleventh Circuits.'" *Bristol Cnty. Ret. Sys. v. Allscripts Healthcare Sols., Inc.*, No. 12 C 3297, 2012 U.S. Dist. LEXIS 161441, at *21 (N.D. Ill. Nov. 9, 2012).

- In June 2012, in granting plaintiffs' motion for class certification, the Honorable Inge Prytz Johnson noted that other courts have referred to Robbins Geller as "'one of the most successful law firms in securities class actions . . . in the country.'" *Local 703, I.B. v. Regions Fin. Corp.*, 282 F.R.D. 607, 616 (N.D. Ala. 2012) (quoting *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008)), *aff'd in part and vacated in part on other grounds*, 762 F.3d 1248 (11th Cir. 2014).

- In June 2012, in granting final approval of the settlement, the Honorable Barbara S. Jones commented that "class counsel's representation, from the work that I saw, appeared to me to be of the highest quality." *In re CIT Grp. Inc. Sec. Litig.*, No. 08 Civ. 6613, Transcript at 9:16-18 (S.D.N.Y. June 13, 2012).

- In March 2012, in granting certification for the class, Judge Robert W. Sweet referenced the *Enron* case, agreeing that Robbins Geller's "'clearly superlative litigating and negotiating skills'" give the Firm an "'outstanding reputation, experience, and success in securities litigation nationwide,'" thus, "'[t]he experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.'" *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012).

- In March 2011, in denying defendants' motion to dismiss, Judge Richard Sullivan commented: "Let me thank you all. . . . [The motion] was well argued . . . and . . . well briefed . . . . I certainly appreciate having good lawyers who put the time in to be prepared . . . ." *Anegada Master Fund Ltd. v. PxRE Grp. Ltd.*, No. 08-cv-10584, Transcript at 83 (S.D.N.Y. Mar. 16, 2011).

- In January 2011, the court praised Robbins Geller attorneys: "They have gotten very good results for stockholders. . . . [Robbins Geller has] such a good track record." *In re Compellent Techs., Inc. S'holder Litig.*, No. 6084-VCL, Transcript at 20-21 (Del. Ch. Jan. 13, 2011).

- In August 2010, in reviewing the settlement papers submitted by the Firm, Judge Carlos Murguia stated that Robbins Geller performed "a commendable job of addressing the relevant issues with great detail and in a comprehensive manner . . . . The court respects the [Firm's] experience in the field of derivative [litigation]." *Alaska Elec. Pension Fund v. Olofson*, No. 08-cv-02344-CM-JPO (D. Kan.) (Aug. 20, 2010 e-mail from court re: settlement papers).

- In June 2009, Judge Ira Warshawsky praised the Firm's efforts in *In re Aeroflex, Inc. S'holder Litig.*: "There is no doubt that the law firms involved in this matter represented in my opinion the cream of the crop of class action business law and mergers and acquisition litigators, and from a judicial point of view it was a pleasure working with them." *In re Aeroflex, Inc. S'holder Litig.*, No. 003943/07, Transcript at 25:14-18 (N.Y. Sup. Ct., Nassau Cnty. June 30, 2009).

- In March 2009, in granting class certification, the Honorable Robert Sweet of the Southern District

of New York commented in *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 74 (S.D.N.Y. 2009): "As to the second prong, the Specialist Firms have not challenged, in this motion, the qualifications, experience, or ability of counsel for Lead Plaintiff, [Robbins Geller], to conduct this litigation. Given [Robbins Geller's] substantial experience in securities class action litigation and the extensive discovery already conducted in this case, this element of adequacy has also been satisfied."

- In June 2008, the court commented, "Plaintiffs' lead counsel in this litigation, [Robbins Geller], has demonstrated its considerable expertise in shareholder litigation, diligently advocating the rights of Home Depot shareholders in this Litigation. [Robbins Geller] has acted with substantial skill and professionalism in representing the plaintiffs and the interests of Home Depot and its shareholders in prosecuting this case." *City of Pontiac Gen. Emps.' Ret. Sys. v. Langone*, No. 2006-122302, Findings of Fact in Support of Order and Final Judgment at 2 (Ga. Super. Ct., Fulton Cnty. June 10, 2008).

- In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel T.K. Hurley said the following:

    First, I thank counsel. As I said repeatedly on both sides, we have been very, very fortunate. We have had fine lawyers on both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy. Something that is increasingly important today in our society. . . . I want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. . . . I thank the lawyers on both sides for the extraordinary effort that has been brought to bear here . . . .

    *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 03-80593-CIV, Transcript at 26, 28-29 (S.D. Fla. Dec. 7, 2006).

- In *Stanley v. Safeskin Corp.*, No. 99 CV 454 (S.D. Cal.), where Robbins Geller attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

    I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

    *Stanley v. Safeskin Corp.*, No. 99 CV 454, Transcript at 13 (S.D. Cal. May 25, 2004).

# ATTORNEY BIOGRAPHIES

## Mario Alba Jr. | Partner

Mario Alba is a partner in the Firm's Melville office.  He is a member of the Firm's Institutional Outreach Team, which provides advice to the Firm's institutional clients, including numerous public pension systems and Taft-Hartley funds throughout the United States, and consults with them on issues relating to corporate fraud in the U.S. securities markets, as well as corporate governance issues and shareholder litigation.  Some of Alba's institutional clients are currently involved in securities cases involving Clarivate plc, Dentsply Sirona Inc., Generac Holdings Inc., Acadia Healthcare Company, Inc., Green Dot Corporation, Waste Management, Inc., Amgen, Inc., Virtu Financial, Inc., The Walt Disney Company, Daimler, and National Instruments Corporation.

Alba's institutional clients are/were also involved in other types of class actions, namely, *In re National Prescription Opiate Litigation*, *In re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation* ($609 million total recovery), *Forth v. Walgreen Co.*, and *In re Humira (Adalimumab) Antitrust Litigation*.

Alba has served as lead counsel in numerous cases and is responsible for initiating, investigating, researching, and filing securities and consumer fraud class actions.  He has recovered hundreds of millions of dollars in numerous actions, including cases against BHP Billiton Limited ($50 million recovery), BRF S.A. ($40 million recovery), L3 Technologies, Inc. ($34.5 million recovery), Impax Laboratories Inc. ($33 million recovery), Reckitt Benckiser Group plc ($19.6 million recovery), Super Micro Computer, Inc. ($18.25 million recovery), and NBTY, Inc. ($16 million recovery).

Alba has lectured at numerous institutional investor conferences throughout the United States on various shareholder issues, including at the Opal Public Funds Summit, Koried Plan Sponsor Educational Institute, Georgia Association of Public Pension Trustees (GAPPT) Annual Conference, Illinois Public Pension Fund Association, the New York State Teamsters Conference, the American Alliance Conference, and the TEXPERS/IPPFA Joint Conference at the New York Stock Exchange, among others.

## Education
B.S., St. John's University, 1999; J.D., Hofstra University School of Law, 2002

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2022-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024; Rising Star, *Super Lawyers Magazine*, 2012-2013, 2016-2017; B.S., Dean's List, St. John's University, 1999; Selected as participant in Hofstra Moot Court Seminar, Hofstra University School of Law

# Michael Albert | Partner

Michael Albert is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation.  Albert is a member of the Firm's Lead Plaintiff Advisory Team, which advises institutional investors in connection with lead plaintiff motions, and assists them in securing appointment as lead plaintiff.

Albert has been a member of litigation teams that have successfully recovered hundreds of millions of dollars for investors in securities class actions, including: *In re Alphabet, Inc. Securities Litigation* ($350 million recovery), *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ($272 million recovery), *City of Pontiac General Employees' Retirement Systems v. Wal-Mart Stores, Inc.* ($160 million recovery), and *In re LendingClub Securities Litigation* ($125 million recovery).  Albert was also a member of the litigation team that obtained a $85 million cash settlement in a consumer class action against Scotts Miracle-Gro.

## Education
B.A., University of Wisconsin-Madison, 2010; J.D., University of Virginia School of Law, 2014

## Honors / Awards
Impact Case Award: *In re Alphabet, Inc. Securities Litigation*, *Benchmark Litigation*, 2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Best Lawyer in America, *Best Lawyers®*, 2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; Rising Star, *Super Lawyers Magazine*, 2020-2024; Managing Board Member, *Virginia Tax Review*, University of Virginia School of Law

# Matthew I. Alpert | Partner

Matthew Alpert is a partner in the Firm's San Diego office and focuses on the prosecution of securities fraud litigation. Alpert's current cases include securities fraud cases against PayPal (D.N.J.) and Shoals Technologies Group (M.D. Tenn.). Most recently, Alpert and a team of Robbins Geller attorneys obtained a $434 million settlement in *In re Under Armour Sec. Litig.* (D. Md.) after nearly seven years of hard-fought litigation and less than a month before a jury trial in Baltimore was scheduled to commence. Alpert was also a member of the litigation team that successfully obtained class certification in a securities fraud class action against Regions Financial, a class certification decision that was substantively affirmed by the United States Court of Appeals for the Eleventh Circuit in *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248 (11th Cir. 2014). Upon remand, the United States District Court for the Northern District of Alabama granted class certification again, rejecting defendants' post-*Halliburton II* arguments concerning stock price impact. Alpert and the Robbins Geller team litigated the case until it eventually settled for $90 million.

Some of Alpert's previous cases include: the individual opt-out actions of the AOL Time Warner class action – *Regents of the Univ. of Cal. v. Parsons* (Cal. Super. Ct., Los Angeles Cnty.) and *Ohio Pub. Emps. Ret. Sys. v. Parsons* (Ohio. Ct. of Common Pleas, Franklin Cnty.) (total settlement over $600 million); *In re Under Armour Sec. Litig.* (D. Md.); ($434 million settlement); *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.* (N.D. Ala.) ($90 million settlement); *In re MGM Mirage Sec. Litig.* (D. Nev.) ($75 million); *In re CIT Grp. Inc. Sec. Litig.* (S.D.N.Y.) ($75 million settlement); *Luna v. Marvell Tech. Grp., Ltd.* (N.D. Cal.) ($72.5 million settlement); *Deka Investment GmbH v. Santander Consumer USA Holdings Inc.* (N.D. Tex.) ($47 million settlement); *In re Bridgestone Sec. Litig.* (M.D. Tenn.) ($30 million settlement); *In re Walter Energy, Inc. Sec. Litig.* (N.D. Ala.) ($25 million); *City of Hialeah Emps.' Ret. Sys. & Laborers Pension Trust Fund for N. Cal. v. Toll Brothers, Inc.* (E.D. Pa.) ($25 million settlement); *In re Molycorp, Inc. Sec. Litig.* (D. Colo.) ($20.5 million settlement); *In re Banc of California Sec. Litig.* (C.D. Cal.) ( $19.75 million); *Zimmerman v. Diplomat Pharmacy, Inc.* (E.D. Mich.) ($14.1 million); *Batwin v. Occam Networks, Inc.* (C.D. Cal.) ($13.9 million settlement); *Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.* (D. Nev.) ($12.5 million settlement); *Kmiec v. Powerwave Techs. Inc.* (C.D. Cal.) ($8.2 million); *In re Sunterra Corp. Sec. Litig.* (D. Nev.) ($8 million settlement); and *Luman v. Anderson* (W.D. Mo.) ($4.25 million settlement).

## Education
B.A., University of Wisconsin at Madison, 2001; J.D., Washington University, St. Louis, 2005

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015-2019

# Darryl J. Alvarado | Partner

Darryl Alvarado is a partner in the Firm's San Diego office. He focuses his practice on securities fraud and other complex civil litigation. Alvarado was a member of the trial team in *Smilovits v. First Solar, Inc.*, which recovered $350 million for aggrieved investors. The *First Solar* settlement, reached on the eve of trial after more than seven years of litigation and an interlocutory appeal to the U.S. Supreme Court, is the fifth-largest PSLRA recovery ever obtained in the Ninth Circuit. Alvarado recently litigated *Monroe County Employees' Retirement System v. The Southern Company*, which recovered $87.5 million for investors after more than three years of litigation. The settlement resolved securities fraud claims stemming from defendants' issuance of misleading statements and omissions regarding the construction of a first-of-its-kind "clean coal" power plant in Kemper County, Mississippi. Alvarado helped secure $388 million for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* That settlement is, on a percentage basis, the largest recovery ever achieved in an RMBS class action. He was also a member of a team of attorneys that secured $95 million for investors in Morgan Stanley-issued RMBS in *In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*.

Alvarado was a member of a team of lawyers that obtained landmark settlements, on the eve of trial, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated* and *King County, Washington v. IKB Deutsche Industriebank AG*. He was integral in obtaining several precedent-setting decisions in those cases, including defeating the rating agencies' historic First Amendment defense and defeating the ratings agencies' motions for summary judgment concerning the actionability of credit ratings. Alvarado was also a member of a team of attorneys responsible for obtaining for aggrieved investors $27 million in *In re Cooper Companies Securities Litigation*, $19.5 million in *City of Pontiac General Employees' Retirement System v. Lockheed Martin Corporation*, and comprehensive corporate governance reforms to address widespread off-label marketing and product safety violations in *In re Johnson & Johnson Derivative Litigation*.

## Education

B.A., University of California, Santa Barbara, 2004; J.D., University of San Diego School of Law, 2007

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023-2025; Future Star, *Benchmark Litigation*, 2024; Rising Star, *Super Lawyers Magazine*, 2015-2022; 40 & Under Hot List, *Benchmark Litigation*, 2018-2021; Top 40 Under 40, *Daily Journal*, 2021; "Outstanding Young Attorneys," *San Diego Daily Transcript*, 2011

# Dory P. Antullis | Partner

Dory Antullis is a partner in the Firm's Boca Raton office. Her litigation practice focuses on complex class actions, covering consumer fraud, public nuisance, environmental litigation, privacy litigation, pharmaceuticals, RICO, and antitrust litigation. Antullis also works with the Firm's settlement department, negotiating and documenting intricate, high-stakes settlements.

Antullis is a core member of the Firm's opioids team, leading the effort on behalf of cities, counties, and third-party payors around the country in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio). In addition to serving on several committees in the MDL, she was a member of the winning trial team on behalf of the People of the State of California in San Francisco's bellwether case against Allergan, Teva, Walgreens, and others in the prescription opioid supply chain. Together with a trial win against Walgreens, the case has resulted in settlements valued at over $350 million. Antullis was also part of a small group of lawyers who negotiated and drafted settlement documents for the national opioid settlements with major distributors, manufacturers, and pharmacies – now totaling more than $50 billion.

Antullis has also been an integral part of Robbins Geller's history of successful privacy and data breach class action cases. She is currently serving as Interim Co-Lead Class Counsel in *In re Luxottica of America, Inc. Data Breach Litig.*, No. 1:20-cv-00908 (S.D. Ohio), and Liaison Counsel in *DeSue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275 (S.D. Fla.) ($3 million class settlement). Antullis's heavy lifting at every stage of the litigation in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752 (N.D. Cal.), helped to secure a $117.5 million recovery in the largest data breach in history. Antullis successfully defeated two rounds of dispositive briefing, worked with leadership and computer privacy and damages experts to plan a winning strategy for the case, and drafted an innovative motion for class certification that immediately preceded a successful mediation with defendants in that litigation. Antullis also provided meaningful "nuts-and-bolts" support in other data breach class actions, including *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, No. 2:19-md-02904 (D.N.J.) (representing class of LabCorp customers), and *In re Solara Med. Supplies Customer Data Breach Litig.*, No. 3:19-cv-02284 (S.D. Cal.) ($5.06 million settlement). And she currently represents consumers in state and federal court against North Broward Hospital District for a 2021 data breach.

## Education

B.A., Rice University, 1999; J.D., Columbia Law School, 2003

## Honors / Awards

Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; National Merit Scholar, Rice University; Golden Key National Honor Society, Rice University; Nominated for *The Rice Undergraduate* academic journal, Rice University; Michael I. Sovern Scholar, Columbia Law School; Hague Appeal for Peace, Committee for a Just and Effective Response to 9/11, Columbia Law School; Columbia Mediation and Political Asylum Clinics, Columbia Law School; Harlem Tutorial Program, Columbia Law School; Journal of Eastern European Law, Columbia Law School; Columbia Law Women's Association, Columbia Law School

# Stephen R. Astley | Partner

Stephen Astley is a partner in the Firm's Boca Raton office. Astley devotes his practice to representing institutional and individual shareholders in their pursuit to recover investment losses caused by fraud. He has been lead counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for his clients and investors.

Most recently, Astley obtained a $434 million settlement in *In re Under Armour Sec. Litig.* The case settled just prior to the commencement of trial in Baltimore, Maryland, and represents the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history. Other notable settlements include: *In re Nutanix Inc. Sec. Litig.* (N.D. Cal.) ($71 million settlement); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.* (N.D. Ill.) ($60 million settlement); *In re ADT Inc. S'holder Litig.* (Fla. Cir. Ct., 15th Jud. Cir.) ($30 million settlement); *In re Red Hat, Inc. Sec. Litig.* (E.D.N.C.) ($20 million settlement); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

Prior to joining the Firm, Astley was with the Miami office of Hunton & Williams, where he concentrated his practice on class action defense, including securities class actions and white collar criminal defense. Additionally, he represented numerous corporate clients accused of engaging in unfair and deceptive practices. Astley was also an active duty member of the United States Navy's Judge Advocate General's Corps where he was the Senior Defense Counsel for the Naval Legal Service Office Pearl Harbor Detachment. In that capacity, Astley oversaw trial operations for the Detachment and gained substantial first-chair trial experience as the lead defense counsel in over 75 courts-martial and administrative proceedings. Additionally, from 2002-2003, Astley clerked for the Honorable Peter T. Fay, U.S. Court of Appeals for the Eleventh Circuit.

## Education
B.S., Florida State University, 1992; M. Acc., University of Hawaii at Manoa, 2001; J.D., University of Miami School of Law, 1997

## Honors / Awards
J.D., *Cum Laude*, University of Miami School of Law, 1997; United States Navy Judge Advocate General's Corps., Lieutenant

# A. Rick Atwood, Jr. | Partner

Rick Atwood is a partner in the Firm's San Diego office. As a recipient of the *California Lawyer* Attorney of the Year ("CLAY") Award for his work on behalf of shareholders, he has successfully represented shareholders in securities class actions, merger-related class actions, and shareholder derivative suits in federal and state courts in more than 30 jurisdictions. Through his litigation efforts at both the trial and appellate levels, Atwood has helped recover billions of dollars for public shareholders, including the largest post-merger common fund recoveries on record. Atwood is also part of the Firm's Delaware Practice Group.

Atwood was a key member of the litigation team in *In re Kinder Morgan, Inc. S'holders Litig.*, where he helped obtain an unprecedented $200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history. In *In re Dole Food Co., Inc. S'holder Litig.*, which went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders, Atwood helped obtain $148 million, the largest trial verdict ever in a class action challenging a merger transaction.

Atwood also led the litigation team that obtained an $89.4 million recovery for shareholders in *In re Del Monte Foods Co. S'holders Litig.*, after which the Delaware Court of Chancery stated that "it was only through the effective use of discovery that the plaintiffs were able to 'disturb[ ] the patina of normalcy surrounding the transaction.'" The court further commented that "Lead Counsel engaged in hard-nosed discovery to penetrate and expose problems with practices that Wall Street considered 'typical.'" One Wall Street banker even wrote in *The Wall Street Journal* that "'Everybody does it, but Barclays is the one that got caught with their hand in the cookie jar . . . . Now everybody has to rethink how we conduct ourselves in financing situations.'" Atwood's other significant opinions include *Goldstein v. Denner* ($84 million recovery), *Brown v. Brewer* ($45 million recovery), and *In re Prime Hosp., Inc. S'holders Litig.* ($25 million recovery).

## Education

B.A., University of Tennessee, Knoxville, 1987; B.A., Katholieke Universiteit Leuven, Belgium, 1988; J.D., Vanderbilt School of Law, 1991

## Honors / Awards

Best Lawyer in America, *Best Lawyers®*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Recommended Lawyer, *The Legal 500*, 2017-2019; M&A Litigation Attorney of the Year in California, *Corporate International*, 2015; Super Lawyer, *Super Lawyers Magazine*, 2014-2017; Attorney of the Year, *California Lawyer*, 2012; B.A., Great Distinction, Katholieke Universiteit Leuven, Belgium, 1988; B.A., Honors, University of Tennessee, Knoxville, 1987; Authorities Editor, *Vanderbilt Journal of Transnational Law*, 1991

# Aelish M. Baig | Partner

Aelish Marie Baig is a partner in the Firm's San Francisco office and specializes in consumer and securities fraud actions. Baig has litigated a number of cases through jury trial, resulting in multi-million and billion dollar awards and settlements for her clients.

Baig was one of the originators of the national opioid litigation, filing among the earliest complaints against the opioid industry defendants and working on all aspects of that litigation. In 2022, Baig served as co-trial counsel in a federal bench trial in San Francisco in a case selected as a bellwether in the national multi-district opioid litigation. The team achieved combined settlements of over $350 million for San Francisco and contributed to securing more than $50 billion for local governments nationwide to be used for abatement of the national opioid epidemic. For her work in co-leading the trial team and securing a historic trial result against Walgreens for the City and County of San Francisco, she was honored by *The National Law Journal* as one of the "Elite Women of the Plaintiffs Bar" and she received "California Lawyer Attorney of the Year" by the *Daily Journal*.

Baig was also appointed to leadership in the *Juul* ($1.7 billion settlement) and *McKinsey* ($230 million settlement) MDL litigations. She was recently appointed to the Plaintiffs' Steering Committee of the national social media litigation MDL against the country's largest social media platforms (Meta, YouTube, Snapchat, and Tiktok) for fueling addiction and other mental health issues among youth. She represents numerous local and state governments and school districts across the country that have filed federal cases against opioids, McKinsey, Juul, and/or social media defendants. Baig has also prosecuted securities fraud and derivative actions obtaining millions of dollars in recoveries against corporations such as Wells Fargo, Celera, Pall, and Prudential.

## Education

B.A., Brown University, 1992; J.D., Washington College of Law at American University, 1998

## Honors / Awards

Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Leading Lawyer in America, *Lawdragon*, 2020-2025; Best Lawyer in America, *Best Lawyers®*, 2024-2025; Recommended Lawyer, *The Legal 500*, 2023-2024; Ranked by *Chambers USA*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Leading Commercial Litigator, *Daily Journal*, 2024; Class Action/Mass Tort Litigation Trailblazer, *The National Law Journal*, 2023; Elite Women of the Plaintiffs Bar, Elite Trial Lawyers, *The National Law Journal*, 2023; Plaintiffs' Lawyers Trailblazer, *The National Law Journal*, 2021, 2023; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2023; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2023; Best Lawyer in Northern California: One to Watch, *Best Lawyers®*, 2021; Featured in "Lawyer Limelight" series, *Lawdragon*, 2020; Litigation Trailblazer, *The National Law Journal*, 2019; California Trailblazer, *The Recorder*, 2019; Super Lawyer, *Super Lawyers Magazine*, 2012-2013; J.D., *Cum Laude*, Washington College of Law at American University, 1998; Senior Editor, *Administrative Law Review*, Washington College of Law at American University

# Randall J. Baron | Partner

Randy Baron is a partner in the Firm's San Diego office. He specializes in securities litigation, corporate takeover litigation, and breach of fiduciary duty actions. For almost two decades, Baron has headed up a team of lawyers whose accomplishments include obtaining instrumental rulings both at injunction and trial phases, and establishing liability of financial advisors and investment banks. With an in-depth understanding of merger and acquisition and breach of fiduciary duty law, an ability to work under extreme time pressures, and the experience and willingness to take a case through trial, he has been responsible for recovering more than a billion dollars for shareholders.

Notable achievements over the years include: *In re Kinder Morgan, Inc. S'holders Litig.* (Kan. Dist. Ct., Shawnee Cnty.), where Baron obtained an unprecedented $200 million common fund for former Kinder Morgan shareholders, the largest merger & acquisition class action recovery in history; *In re Dole Food Co., Inc. S'holder Litig.* (Del. Ch.), where he went to trial in the Delaware Court of Chancery on claims of breach of fiduciary duty on behalf of Dole Food Co., Inc. shareholders and obtained $148 million, the largest trial verdict ever in a class action challenging a merger transaction; and *In re Rural/Metro Corp. S'holders Litig.* (Del. Ch.), where Baron and co-counsel obtained nearly $110 million total recovery for shareholders against Royal Bank of Canada Capital Markets LLC. In *In re Del Monte Foods Co. S'holders Litig.* (Del. Ch.), he exposed the unseemly practice by investment bankers of participating on both sides of large merger and acquisition transactions and ultimately secured an $89 million settlement for shareholders of Del Monte. Baron was one of the lead attorneys representing about 75 public and private institutional investors that filed and settled individual actions in *In re WorldCom Sec. Litig.* (S.D.N.Y.), where more than $657 million was recovered, the largest opt-out (non-class) securities action in history. Most recently, Baron successfully obtained a partial settlement of $60 million in *In re Tesla Motors, Inc. S'holder Litig.*, a case that alleged that the members of the Tesla Board of Directors breached their fiduciary duties, unjustly enriched themselves, and wasted corporate assets in connection with their approval of Tesla's acquisition of SolarCity Corp. in 2016.

## Education

B.A., University of Colorado at Boulder, 1987; J.D., University of San Diego School of Law, 1990

## Honors / Awards

Fellow, Advisory Board, Litigation Counsel of America (LCA); Rated Distinguished by Martindale-Hubbell; Litigation Star, *Benchmark Litigation*, 2016-2019, 2023-2025; Best Lawyer in America, *Best Lawyers®*, 2019-2025; Ranked by *Chambers USA*, 2016-2024; Hall of Fame, *The Legal 500*, 2020-2024; National Practice Area Star, *Benchmark Litigation*, 2019-2020, 2024; California - Litigation Star, *Benchmark Litigation*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Lawyer of the Year: Derivatives and Futures Law, *Best Lawyers®*, 2023; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2022; Leading Lawyer in America, *Lawdragon*, 2011, 2017-2019, 2021-2022; Southern California Best Lawyer, *Best Lawyers®*, 2019-2021; Super Lawyer, *Super Lawyers Magazine*, 2014-2016, 2018-2020; Local Litigation Star, *Benchmark Litigation*, 2018, 2020; Leading Lawyer, *The Legal 500*, 2014-2019; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Winning Litigator, *The National Law Journal*, 2018; Titan of the Industry, *The American Lawyer*, 2018; Recommended Lawyer, *The Legal 500*, 2017; Mergers & Acquisitions Trailblazer, *The National Law Journal*, 2015-2016; Litigator of the Week, *The American Lawyer*, October 16, 2014; Attorney of the Year, *California Lawyer*, 2012; Litigator of the Week, *The American Lawyer*, October 7, 2011; J.D., *Cum Laude*, University of San Diego School of Law, 1990

## James E. Barz | Partner

Jim Barz is a partner with the Firm and manages the Firm's Chicago office. Barz is an experienced trial lawyer who has been lead counsel in dozens of evidentiary and contested hearings, tried 18 cases to verdict, and argued 9 cases in the Seventh Circuit. Barz is a registered CPA, former federal prosecutor, and an adjunct professor at Northwestern University School of Law from 2008 to 2024, teaching courses on trial advocacy and class action litigation.

Barz has represented investors in securities fraud class actions that have resulted in recoveries of over $2 billion. Barz was the lead counsel in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, and secured a $1.21 billion recovery for investors, a case that *Vanity Fair* reported as "the corporate scandal of its era." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest securities class action settlement ever. Barz was recognized as a Litigator of the Week by *The American Lawyer* for his work in the case.

Barz has also secured substantial recoveries for investors in *HCA* ($215 million, M.D. Tenn.); *Motorola* ($200 million, N.D. Ill.); *Exelon* ($173 million, N.D. Ill.); *Sprint* ($131 million, D. Kan.); *Orbital ATK* ($108 million, E.D. Va.); *Walgreens* ($105 million, N.D. Ill.); *Psychiatric Solutions* ($65 million, M.D. Tenn.); *H ospira* ($60 million, N.D. Ill.); and other matters. Barz also handles whistleblower, antitrust, and pro bono matters and was recently honored by the Judges of the United States District Court for the Northern District of Illinois with an Award for Excellence in Pro Bono Service in 2021.

## Education

B.B.A., Loyola University Chicago, School of Business Administration, 1995; J.D., Northwestern University School of Law, 1998

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2018-2025; Leading Lawyer in America, *Lawdragon*, 2025; Litigation Star, *Benchmark Litigation*, 2025; Recommended Lawyer, *The Legal 500*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023; Midwest Trailblazer, *The American Lawyer*, 2022; Award for Excellence in Pro Bono Service, United States District Court for the Northern District of Illinois, 2021; Litigator of the Week, *The American Lawyer*, 2021; Leading Lawyer, Law Bulletin Media, 2018; B.B.A., *Summa Cum Laude*, Loyola University Chicago, School of Business Administration, 1995; J.D., *Cum Laude*, Northwestern University School of Law, 1998

# Lea Malani Bays | Partner

Lea Malani Bays is a partner in the Firm's San Diego office. She focuses on e-discovery issues, from preservation through production, and provides counsel to the Firm's multi-disciplinary e-discovery team consisting of attorneys, forensic analysts, and database professionals. Through her role as counsel to the e-discovery team, Bays is very familiar with the various stages of e-discovery, including identification of relevant electronically stored information, data culling, predictive coding protocols, privilege, and responsiveness reviews, as well as having experience in post-production discovery through trial preparation. Through speaking at various events, she is also a leader in shaping the broader dialogue on e-discovery issues.

Bays was recently part of the litigation team that earned the approval of a $131 million settlement in favor of plaintiffs in *Bennett v. Sprint Nextel Corp.* The settlement, which resolved claims arising from Sprint Corporation's ill-fated merger with Nextel Communications in 2005, represents a significant recovery for the plaintiff class, achieved after five years of tireless effort by the Firm. Prior to joining Robbins Geller, Bays was a Litigation Associate at Kaye Scholer LLP's New York office. She has experience in a wide range of litigation, including complex securities litigation, commercial contract disputes, business torts, antitrust, civil fraud, and trust and estate litigation.

## Education

B.A., University of California, Santa Cruz, 1997; J.D., New York Law School, 2007

## Honors / Awards

Law360 Distinguished Legal Writing Award, *The Burton Awards Program*, 2025; Ranked by *Chambers USA*, 2019-2022; J.D., *Magna Cum Laude*, New York Law School, 2007; Executive Editor, *New York Law School Law Review*; Legal Aid Society's Pro Bono Publico Award; NYSBA Empire State Counsel; Professor Stephen J. Ellmann Clinical Legal Education Prize; John Marshall Harlan Scholars Program, Justice Action Center

# Alexandra S. Bernay | Partner

Xan Bernay is a partner in the Firm's San Diego office, where she specializes in antitrust and unfair competition class-action litigation. She has also worked on some of the Firm's largest securities fraud class actions, including the *Enron* litigation, which recovered an unprecedented $7.2 billion for investors. Bernay currently serves as co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, in which a settlement of $5.5 billion was upheld by the Second Circuit Court of Appeals. This case was brought on behalf of millions of U.S. merchants against Visa and MasterCard and various card-issuing banks, challenging the way these companies set and collect tens of billions of dollars annually in merchant fees. The settlement is believed to be the largest antitrust class action settlement of all time.

Additionally, Bernay is involved in *In re Remicade Antitrust Litig.*, a large case that settled for $25 million involving anticompetitive conduct in the biosimilars market, where the Firm was sole lead counsel for the end-payor plaintiffs. She is also part of the litigation team in *In re American Airlines/JetBlue Antitrust Litig.* pending in the Eastern District of New York. That case is brought on behalf of airline passengers who overpaid for tickets because of alleged anticompetitive conduct between American and JetBlue. She is also a member of the team *in In re Dealer Mgmt. Sys. Antitrust Litig.* (N.D. Ill.), which involves anticompetitive conduct related to dealer management systems on behalf of auto dealerships across the country. Another representative case is against Lloyd's of London. That action is a massive civil RICO case against the insurance company and its syndicates.

Bernay has also had experience in large consumer class actions, including *In re Checking Account Overdraft Litig.*, which case was brought on behalf of bank customers who were overcharged for debit card transactions and resulted in more than $500 million in settlements with major banks that manipulated customers' debit transactions to maximize overdraft fees. She also helped try to verdict a case against one of the world's largest companies who was sued on behalf of consumers. Her more recent trial experience includes a jury trial related to foreign exchange trading against one of the largest banks in the world, where the jury found that plaintiffs had proved a conspiracy as to a large network of banks. She was responsible for many of the successful trial motions in the case.

## Education

B.A., Humboldt State University, 1997; J.D., University of San Diego School of Law, 2000

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2023-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2023; Distinguished Alumni, Forever Humboldt Alumni Association, 2023; Litigator of the Week, *Global Competition Review*, October 1, 2014

## Kenneth J. Black | Partner

Kenneth Black is a partner in the Firm's San Francisco office, where his practice focuses on complex securities litigation and shareholder derivative litigation. Before joining the Firm, Black was a Sanctions Investigator at the Office of Foreign Assets Control, U.S. Treasury Department, where he investigated and assembled the evidentiary cases against targets of U.S. financial sanctions, and tracked the finances and assets of those targets.

## Education

B.A., University of Michigan, 2004; M.A., American University, 2007; J.D., University of Michigan Law School, 2013

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Comments Editor, *Michigan Journal of Private Equity & Venture Capital Law*, University of Michigan Law School

## Erin W. Boardman | Partner

Erin Boardman is a partner in the Firm's Melville office, where her practice focuses on representing individual and institutional investors in class actions brought pursuant to the federal securities laws. She has been involved in the prosecution of numerous securities class actions that have resulted in millions of dollars in recoveries for defrauded investors, including: *Medoff v. CVS Caremark Corp.* (D.R.I.) ($48 million recovery); *Construction Laborers Pension Tr. of Greater St. Louis v. Autoliv Inc.* (S.D.N.Y.) ($22.5 million recovery); *In re Gildan Activewear Inc. Sec. Litig.* (S.D.N.Y.) (resolved as part of a $22.5 million global settlement); *In re L.G. Phillips LCD Co., Ltd., Sec. Litig.* (S.D.N.Y.) ($18 million recovery); *In re Giant Interactive Grp., Inc. Sec. Litig.* (S.D.N.Y.) ($13 million recovery); *In re Coventry HealthCare, Inc. Sec. Litig.* (D. Md.) ($10 million recovery); *Lenartz v. American Superconductor Corp.* (D. Mass.) ($10 million recovery); *Dudley v. Haub* (D.N.J.) ($9 million recovery); *Hildenbrand v. W Holding Co.* (D.P.R.) ($8.75 million recovery); *In re Doral Fin. Corp. Sec. Litig.* (D.P.R.) ($7 million recovery); and *Van Dongen v. CNinsure Inc.* (S.D.N.Y.) ($6.625 million recovery). During law school, Boardman served as Associate Managing Editor of *the Journal of Corporate, Financial and Commercial Law*, interned in the chambers of the Honorable Kiyo A. Matsumoto in the United States District Court for the Eastern District of New York, and represented individuals on a *pro bono* basis through the Workers' Rights Clinic.

## Education

B.A., State University of New York at Binghamton, 2003; J.D., Brooklyn Law School, 2007

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2022-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2024; Rising Star, *Super Lawyers Magazine*, 2015-2018; B.A., *Magna Cum Laude*, State University of New York at Binghamton, 2003

# Nicolle B. Brito | Partner

Nicolle Brito is a partner in the Firm's Boca Raton office. Her practice focuses on complex class actions and multi-district litigation, covering consumer fraud, public nuisance, environmental litigation, privacy litigation, pharmaceuticals, and RICO.

Brito was a member of the Firm's opioids team, leading the effort on behalf of cities and counties around the country in *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio). She was a member of the winning trial team on behalf of the People of the State of California in San Francisco's bellwether case against Allergan, Teva, Walgreens, and others in the prescription opioid supply chain, ultimately yielding $350 million in settlement funds after a successful liability trial.

Brito is currently a member of the Firm's PFAS litigation team, filing suit on behalf of governmental entities for PFAS contamination related to AFFF products. She is also a member of the Social Media litigation team, seeking to hold the technology industry accountable for social media youth addiction.

Before joining the Firm, Brito worked in complex arbitration, insurance, and personal injury law, where she gained significant litigation experience.

## Education

B.A., Florida International University, 2003; J.D., Nova Southeastern University Shepard Broad College of Law, 2007

## Honors / Awards

Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2025; 500 X - The Next Generation, *Lawdragon*, 2023; J.D., *Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 2007

# Douglas R. Britton | Partner

Doug Britton is a partner in the Firm's San Diego office. His practice focuses on securities fraud and corporate governance. Britton has been involved in settlements exceeding $1 billion and has secured significant corporate governance enhancements to improve corporate functioning. Notable achievements include *In re WorldCom, Inc. Sec. & "ERISA" Litig.*, where he was one of the lead partners that represented a number of opt-out institutional investors and secured an unprecedented recovery of $651 million; *In re SureBeam Corp. Sec. Litig.*, where he was the lead trial counsel and secured an impressive recovery of $32.75 million; and *In re Amazon.com, Inc. Sec. Litig.*, where he was one of the lead attorneys securing a $27.5 million recovery for investors.

## Education

B.B.A., Washburn University, 1991; J.D., Pepperdine University School of Law, 1996

## Honors / Awards

J.D., *Cum Laude*, Pepperdine University School of Law, 1996

# Luke O. Brooks | Partner

Luke Brooks is a partner in the Firm's securities litigation practice group in the San Diego office.  He focuses primarily on securities fraud litigation on behalf of individual and institutional investors, including state and municipal pension funds, Taft-Hartley funds, and private retirement and investment funds. Brooks served as trial counsel in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs.  Other prominent cases recently prosecuted by Brooks include *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, in which plaintiffs recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities, and a pair of cases – *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.* ("Cheyne") and *King County, Washington, et al. v. IKB Deutsche Industriebank AG* ("Rhinebridge") – in which plaintiffs obtained a settlement, on the eve of trial in Cheyne, from the major credit rating agencies and Morgan Stanley arising out of the fraudulent ratings of bonds issued by the Cheyne and Rhinebridge structured investment vehicles.  *Reuters* described the settlement as a "landmark" deal and emphasized that it was the "first time S&P and Moody's have settled accusations that investors were misled by their ratings."  An article published in *Rolling Stone* magazine entitled "The Last Mystery of the Financial Crisis" similarly credited Robbins Geller with uncovering "a mountain of evidence" detailing the credit rating agencies' fraud.  Most recently, Brooks served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial.  The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

## Education

B.A., University of Massachusetts at Amherst, 1997; J.D., University of San Francisco, 2000

## Honors / Awards

Litigation Star, *Benchmark Litigation*, 2023-2025; California - Litigation Star, *Benchmark Litigation*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Local Litigation Star, *Benchmark Litigation*, 2017-2018, 2020; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Recommended Lawyer, *The Legal 500*, 2017-2018; Member, *University of San Francisco Law Review*, University of San Francisco

# Spencer A. Burkholz | Partner

Spence Burkholz is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He has over 25 years of experience in prosecuting securities class actions and private actions on behalf of large institutional investors. Burkholz was one of the lead trial attorneys in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Burkholz has also recovered billions of dollars for injured shareholders in cases such as *Enron* ($7.2 billion), *WorldCom* ($657 million), *Countrywide* ($500 million), *Qwest* ($445 million), *Wells Fargo* ($300 million), *Envision* ($177.5 million), *McKesson* ($141 million), *Cardinal Health* ($109 million), and *Cisco Systems* ($99.25 million).

## Education

B.A., Clark University, 1985; J.D., University of Virginia School of Law, 1989

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Leading Lawyer in America, *Lawdragon*, 2018-2025; Litigation Star, *Benchmark Litigation*, 2023-2025; National Practice Area Star, *Benchmark Litigation*, 2020, 2024-2025; Best Lawyer in America, *Best Lawyers®*, 2018-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Top 20 Trial Lawyer in California, *Benchmark Litigation*, 2019, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Titan of the Plaintiffs Bar, *Law360*, 2024; Top Plaintiff Lawyer, *Daily Journal*, 2017, 2023; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020, 2022; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Southern California Best Lawyer, *Best Lawyers®*, 2018-2021; Super Lawyer, *Super Lawyers Magazine*, 2015-2016, 2020; Top 100 Trial Lawyer, *Benchmark Litigation*, 2018-2020; Local Litigation Star, *Benchmark Litigation*, 2015-2018, 2020; Lawyer of the Year, *Best Lawyers®*, 2020; Recommended Lawyer, *The Legal 500*, 2017-2019; California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Plaintiff Attorney of the Year, *Benchmark Litigation*, 2018; B.A., *Cum Laude*, Clark University, 1985; *Phi Beta Kappa*, Clark University, 1985

# Michael G. Capeci | Partner

Michael Capeci is a partner in the Firm's Melville office. His practice focuses on prosecuting complex securities class action lawsuits in federal and state courts. Throughout his tenure with the Firm, Capeci has led the litigation teams prosecuting numerous class action cases in federal and/or state court alleging violations of the Securities Exchange Act of 1934 and/or the Securities Act of 1933, such as: *Strougo v. Mallinckrodt plc* ($46 million recovery); *Gordon v. Vanda Pharmaceuticals, Inc.* ($11.5 million recovery); *Nayani v. LifeStance Health Group, Inc.* ($50 million recovery); and *Chester County Emps.' Ret. Fund v. Alnylam Pharmaceuticals, Inc.* ($7 million recovery). In addition, Capeci has played an integral role in the teams prosecuting securities class action cases such as: *In re BHP Billiton Ltd. Sec. Litig.* ($50 million recovery); *Galestan v. OneMain Holdings, Inc.* ($9 million recovery); and *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.* ($19.5 million recovery).

## Education

B.S., Villanova University, 2007; J.D., Hofstra University School of Law, 2010

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2022-2024; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Rising Star, *Super Lawyers Magazine*, 2014-2021; J.D., *Cum Laude*, Hofstra University School of Law, 2010

# Jennifer N. Caringal | Partner

Jennifer Caringal is a partner in the Firm's San Diego office, where her practice focuses on complex securities litigation. Jennifer is a member of the Firm's Lead Plaintiff Advisory Team, which advises institutional investors in connection with lead plaintiff motions, and assists them in securing appointment as lead plaintiff.

Caringal served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

## Education

B.A., University of Illinois, 2006; J.D., Washington University in St. Louis, School of Law, 2012

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2024; They've Got Next: The 40 Under 40, *Bloomberg Law*, 2022; Rising Star, *Super Lawyers Magazine*, 2021-2022; Best Lawyer in Southern California: One to Watch, *Best Lawyers®*, 2021

# Rachel A. Cocalis | Partner

Rachel Cocalis is a partner in the Firm's San Diego office. She represents pension funds and class members in securities fraud class actions. Cocalis was on the team of Robbins Geller attorneys who obtained a $97.5 million recovery in *Marcus v. J.C. Penney Company, Inc*.

Most recently, Cocalis was a key member of the Robbins Geller litigation team in *Monroe County Employees' Retirement System v. The Southern Company* in which a $87.5 million settlement was reached after three years of litigation. The settlement resolved claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant that was designed to transform coal into synthetic gas that could then be used to fuel the power plant. Cocalis was also on the litigation team that obtained a settlement of up to $85 million in *In re Morning Song Bird Food Litigation*, resolving claims that Scotts Miracle-Gro knowingly sold wild bird food treated with pesticides that are hazardous to birds.

## Education

B.A., Princeton University, 2010; J.D., University of California, Hastings College of the Law, 2016

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2025; 500 X - The Next Generation, *Lawdragon*, 2024; J.D., *magna cum laude*, University of California, Hastings College of the Law, 2016; B.A., High Honors, Princeton University, 2010

# Brian E. Cochran | Partner

Brian Cochran is a partner in the Firm's San Diego and Chicago offices. He focuses his practice on complex securities, shareholder, consumer protection, and ERISA litigation. Cochran specializes in case investigation and initiation and lead plaintiff issues arising under the Private Securities Litigation Reform Act of 1995. He has developed dozens of cases under the federal securities laws and recovered billions of dollars for injured investors and consumers. Several of Cochran's cases have pioneered new ground, such as cases on behalf of cryptocurrency investors and in blank check companies (a.k.a "SPACs"), and sparked follow-on governmental investigations into corporate malfeasance.

Cochran was a member of the litigation team that achieved a $1.21 billion settlement in the *Valeant Pharmaceuticals* securities litigation. Cochran also developed the *Dynamic Ledger* securities litigation, one of the first cases to challenge a cryptocurrency issuer's failure to register under the federal securities laws, which settled for $25 million. In addition, Cochran was part of the team that secured a historic $25 million settlement on behalf of Trump University students, which Cochran prosecuted on a *pro bono* basis. Other notable recoveries include: *Rite Aid Merger* ($192.5 million); *Exelon* ($173 million); *Alta Mesa* ($126.3 million); *Micro Focus* ($107.5 million); *Walgreens* ($105 million); *VMWare* ($102.5 million); *Scotts Miracle-Gro* (up to $85 million); *Psychiatric Solutions* ($65 million); *SQM Chemical & Mining Co. of Chile* ($62.5 million); *GE ERISA* ($61 million); *Grubhub* ($42 million); *Sea, Ltd.* ($40 million, subject to court approval); *Big Lots* ($38 million); *Credit Suisse* ($32.5 million); *GoHealth* ($29.5 million); *Reckitt Benckiser* ($19.6 million); *DouYu* ($15 million); *REV Group* ($14.25 million); *Fifth Street Finance* ($14 million); *Third Avenue Management* ($14 million); *Funko* ($14 million, subject to court approval); *LJM* ($12.85 million); *Sealed Air* ($12.5 million); and *Camping World* ($12.5 million).

## Education

A.B., Princeton University, 2006; J.D., University of California at Berkeley School of Law, Boalt Hall, 2012

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2025; Best Lawyer in America, *Best Lawyers®*, 2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Leading Lawyer, *The Legal 500*, 2024; 40 & Under List, *Benchmark Litigation*, 2021, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; Next Generation Partner, *The Legal 500*, 2020-2023; Rising Star, *Super Lawyers Magazine*, 2020-2022; Rising Star, *The Legal 500*, 2019; A.B., with Honors, Princeton University, 2006; J.D., Order of the Coif, University of California at Berkeley School of Law, Boalt Hall, 2012

# Mark Conover | Partner

Mark Conover is a partner with Robbins Geller, based in the Firm's San Diego office. With over 50 felony jury trials and a distinguished career as a former federal prosecutor, Conover brings a wealth of trial experience to the Firm. He focuses on complex investigations, securities fraud litigation, and high-stakes trials, drawing on his extensive background in handling large-scale financial fraud, public corruption, and corporate misconduct cases.

Conover began his legal career as a litigation associate at Luce, Forward, Hamilton & Scripps LLP, before joining the U.S. Attorney's Office for the Southern District of California. There, he rose through the ranks to serve as second-in-command, overseeing the day-to-day administration of one of the largest U.S. Attorney's offices in the nation. At the U.S. Attorney's Office, Conover also served as Chief of the Major Frauds and Public Corruption Section, where he oversaw the prosecution of complex cases that resulted in groundbreaking convictions and exceptional outcomes. He played a key role in prosecuting high-profile cases, including the conviction of a sitting U.S. Congressman.

Throughout his tenure at the U.S. Attorney's Office, Conover prosecuted and convicted high-level executives at publicly traded companies and led investigations into violations of the Foreign Corrupt Practices Act (FCPA). His strategic collaborations with agencies such as the FBI, IRS, SEC, and DOJ have been instrumental in tackling multi-jurisdictional investigations and holding corporate and government wrongdoers accountable. These experiences gave him invaluable insights into the investigation of securities fraud by the DOJ and the SEC.

In addition to his legal practice, Conover has served as an adjunct professor at California Western School of Law for over a decade, mentoring the next generation of lawyers. He also served for many years as a DOJ mediator, successfully resolving disputes across the country.

## Education

B.S., Utah Valley University, 2001; J.D., University of Southern California School of Law, 2004

# Sheri M. Coverman | Partner

Sheri Coverman is a partner in the Firm's Boca Raton office. Her practice focuses on complex class actions, including securities, corporate governance, and consumer fraud litigation.

Coverman is a member of the Firm's Institutional Outreach Team, which provides advice to the Firm's institutional clients, including numerous public pension systems and Taft-Hartley funds throughout the United States, on issues related to corporate fraud, shareholder litigation, and corporate governance issues. Coverman frequently addresses trustees regarding their options for seeking redress for losses due to violations of securities laws and assists in ongoing litigation involving many Firm clients. Coverman's institutional clients are also involved in other types of class actions, namely: *In re National Prescription Opiate Litigation*.

## Education

B.A., University of Florida, 2008; J.D., University of Florida Levin College of Law, 2011

# Desiree Cummings │ Partner

Desiree Cummings is a partner with the Firm and is based in the Manhattan office. Cummings focuses her practice on complex securities litigation, consumer and privacy litigation, and breach of fiduciary duty actions and is part of the Firm's Delaware Practice Group.

Before joining Robbins Geller, Cummings spent several years prosecuting securities fraud as an Assistant Attorney General with the New York State Office of the Attorney General's Investor Protection Bureau. As an Assistant Attorney General, Cummings was instrumental in the office's investigation and prosecution of J.P. Morgan and Goldman Sachs in connection with the marketing, sale and issuance of residential mortgage-backed securities, resulting in recoveries worth over $1.6 billion for the State of New York. In connection with investigating and prosecuting securities fraud as part of a federal and state RMBS Working Group, Cummings was awarded the Louis J. Lefkowitz Award for Exceptional Service. Cummings began her career as a litigator at Paul, Weiss, Rifkind, Wharton & Garrison LLP where she spent several years representing major financial institutions, a pharmaceutical manufacturer, and public and private companies in connection with commercial litigations and state and federal regulatory investigations.

At Robbins Geller, Cummings represents institutional and individual investors in securities and breach of fiduciary duty cases. Cummings also represents consumers and serves on the Plaintiffs' Steering Committee in *In re Blackbaud Inc. Customer Data Security Breach Litigation*, a data breach multi-district litigation pending in the United States District Court for the District of South Carolina.

## Education

B.A., Binghamton University, 2001, *cum laude*; J.D., University of Michigan Law School, 2004

## Honors / Awards

Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2023-2025; Leading Lawyer in America, *Lawdragon*, 2023-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2024; 500 X – The Next Generation, *Lawdragon*, 2023; Louis J. Lefkowitz Award for Exceptional Service, New York State Office of the Attorney General, 2012

# Joseph D. Daley | Partner

Joseph Daley is a partner in the Firm's San Diego office, serves on the Firm's Securities Hiring Committee, and is a member of the Firm's Appellate Practice Group. Precedents include: *Fikes Wholesale, Inc. v. Visa U.S.A., Inc.*, 62 F.4th 704 (2d Cir. 2023); *City of Birmingham Ret. & Relief Sys. v. Davis*, 806 F. App'x 17 (2d Cir. 2020); *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36 (2d Cir. 2017); *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935 (10th Cir. 2005); *Frank v. Dana Corp.* ("*Dana I*"), 547 F.3d 564 (6th Cir. 2008); *Frank v. Dana Corp.* ("*Dana II*"), 646 F.3d 954 (6th Cir. 2011*); Freidus v. Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248 (11th Cir. 2009*); In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012); *Rosenbloom v. Pyott* ("*Allergan*"), 765 F.3d 1137 (9th Cir. 2014); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011); and *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004). Daley is admitted to practice before the U.S. Supreme Court, as well as before 12 U.S. Courts of Appeals around the nation.

## Education

B.S., Jacksonville University, 1981; J.D., University of San Diego School of Law, 1996

## Honors / Awards

Best Lawyer in America, *Best Lawyers*®, 2024-2025; Seven-time Super Lawyer, *Super Lawyers Magazine*; Appellate Moot Court Board, Order of the Barristers, University of San Diego School of Law; Best Advocate Award (Traynore Constitutional Law Moot Court Competition), First Place and Best Briefs (Alumni Torts Moot Court Competition and USD Jessup International Law Moot Court Competition)

## Stuart A. Davidson | Partner

Stuart Davidson is a partner in the Firm's Boca Raton office. His practice focuses on complex consumer class actions, including cases involving deceptive and unfair trade practices, privacy and data breach issues, and antitrust violations. He has served as class counsel in some of the nation's most significant privacy and consumer cases, including: *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747-JD (N.D. Cal.) ($650 million recovery in a cutting-edge class action concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-md-02752-LHK (N.D. Cal.) ($117.5 million recovery in the largest data breach in history); *Kehoe v. Fidelity Federal Bank & Trust*, No. 9:03-cv-80593-DTKH (S.D. Fla.) ($50 million recovery in Driver's Privacy Protection Act case on behalf of half-a-million Florida drivers against a national bank); *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, No. 3:11-md-02258-AJB-MDD (S.D. Cal.) (settlement valued at $15 million concerning the massive data breach of Sony's PlayStation Network); and *In re Solara Medical Supplies Data Breach Litigation*, No. 3:19-cv-02284-H-KSC (S.D. Cal.) ($5 million all-cash settlement for victims of healthcare data breach).

Davidson currently serves as Plaintiffs' Co-Lead Counsel in *In re Perry Johnson & Associates Medical Transcription Data Security Breach Litigation*, No. 1:24-md-03096-RPK-LGD (E.D.N.Y.), *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 2:19-md-02904-MCA-MAH (D.N.J.) (representing class of LabCorp customers), *In re Independent Living Systems Data Breach Litigation*, No. 1:23-cv-21060-KMW (S.D. Fla.), *Garner v. Amazon.com, Inc.*, No. 2:21-cv-00750-RSL (W.D. Wash.) (alleging Amazon's illegal wiretapping through Alexa-enabled devices), *In re American Financial Resources, Inc. Data Breach Litigation*, No. 2:22-cv-01757-MCA-JSA (D.N.J.), *In re Fortra Tile Transfer Software Data Security Breach Litigation*, No. 1:24-md-03090-RAR (S.D. Fla.) (representing Aetna patients), on Plaintiffs' Executive Committee in *In re Lakeview Loan Servicing Data Breach Litigation*, No. 1:22-cv-20955-DPG (S.D. Fla.), and on Plaintiffs' Steering Committee in *In re FTX Cryptocurrency Exchange Collapse Litigation*, No. 1:23-md-03076-KMM (S.D. Fla.). Davidson also currently represents the State of Arkansas in a major antitrust enforcement action, *State of Arkansas ex rel. Griffin v. Syngenta Crop Protection AG*, No. 4:22-cv-01287-BSM (E.D. Ark.).

Davidson also spearheaded several aspects of *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, No. 2:17-md-02785-DDC-TJJ (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen, which allowed the prices of the life-saving EpiPen to rise over 600% in 9 years), served as Co-Lead Class Counsel in three cases brought against Genworth Life Insurance Company on behalf of long-term care insureds, *Skochin v. Genworth Life. Ins. Co.*, No. 3:19-cv-00049-REP (E.D. Va.); *Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-00019-REP (E.D. Va.); and *Haney v. Genworth Life Ins. Co.*, No. 3:22-cv-00055-REP (E.D. Va.), recovering hundreds of millions of dollars in cash damages for policyholders, and served as Plaintiffs' Co-Lead Counsel in *In re NHL Players' Concussion Injury Litigation*, No. 0:14-md-02551-SRN-BRT (D. Minn.) (representing retired National Hockey League players in multidistrict litigation suit against the NHL regarding injuries suffered due to repetitive head trauma and concussions), and in *In re Pet Food Products Liability Litigation*, No. 1:07-cv-02867-NLH-AMD (D.N.J.) ($24 million recovery in multidistrict consumer class action on behalf of thousands of aggrieved pet owners nationwide against some of the nation's largest pet food manufacturers, distributors, and retailers). He also served as Plaintiffs' Co-Lead Counsel in *In re UnitedGlobalCom, Inc. Shareholder Litigation*, C.A. No. 1012-VCS (Del. Ch.) ($25 million recovery weeks before trial); *In re Winn-Dixie Stores, Inc. Shareholder Litigation*, No. 16-2011-CA-010616 (Fla. Cir. Ct.) ($11.5 million recovery for former Winn-Dixie shareholders following the corporate buyout by BI-LO); and *In re AuthenTec, Inc. Shareholder Litigation*, No. 5-2012-CA-57589 (Fla. Cir. Ct.) ($10 million recovery for former

AuthenTec shareholders following a merger with Apple). The latter two cases are the two largest merger and acquisition recoveries in Florida history.

Davidson is a former lead assistant public defender in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, he tried over 30 jury trials and defended individuals charged with major crimes ranging from third-degree felonies to life and capital felonies.

## Education

B.A., State University of New York at Geneseo, 1993; J.D., Nova Southeastern University Shepard Broad College of Law, 1996

## Honors / Awards

Law360 Distinguished Legal Writing Award, *The Burton Awards Program*, 2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Leading Lawyer in America, *Lawdragon*, 2023-2025; Litigation Star, *Benchmark Litigation*, 2023-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Recommended Lawyer, *The Legal 500*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2020-2024; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2022; Super Lawyer, *Super Lawyers Magazine*, 2021-2022; One of "Florida's Most Effective Lawyers" in the Privacy category, American Law Media, 2020; J.D., *Summa Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 1996; Associate Editor, *Nova Law Review*, Book Awards in Trial Advocacy, International Law, and Criminal Pretrial Practice

## Jason C. Davis | Partner

Jason Davis is a partner in the Firm's San Francisco office where he practices securities class actions and complex litigation involving equities, fixed-income, synthetic, and structured securities issued in public and private transactions. Davis was on the trial team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Most recently, he was part of the litigation team in *Luna v. Marvell Tech. Grp., Ltd.*, resulting in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors.

Before joining the Firm, Davis focused on cross-border transactions, mergers and acquisitions at Cravath, Swaine and Moore LLP in New York.

## Education

B.A., Syracuse University, 1998; J.D., University of California at Berkeley, Boalt Hall School of Law, 2002

## Honors / Awards

B.A., *Summa Cum Laude*, Syracuse University, 1998; International Relations Scholar of the year, Syracuse University; Teaching fellow, examination awards, Moot court award, University of California at Berkeley, Boalt Hall School of Law

## Mark J. Dearman | Partner

Mark Dearman is a partner in the Firm's Boca Raton office, where his practice focuses on consumer fraud, securities fraud, mass torts, antitrust, and whistleblower litigation.

Dearman, along with other Robbins Geller attorneys, is currently leading the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*, No. 1:17-md-02804 (N.D. Ohio). He was appointed to the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924 (S.D. Fla.), and as Chair of the Plaintiffs' Executive Committee in *In re Apple Inc. Device Performance Litigation*, No. 5:18-md-02827 (N.D. Cal.), Dearman, along with co-counsel, obtained a $310 million settlement. His other recent representative cases include serving as class counsel in *In re Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 3:19-md-02913 (N.D. Cal.); *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, No. 3:21-md-02996 (N.D. Cal.); *In re Facebook Biometric Information Privacy Litigation*, No. 3:15-cv-03747 (N.D. Cal.) ($650 million recovery in a class action concerning Facebook's alleged privacy violations through its collection of user's biometric identifiers without informed consent); *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, No. 2:17-md-02785 (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen); *In re FieldTurf Artificial Turf Sales & Marketing Practices Litigation*, No. 3:17-md-02779 (D.N.J.); *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942 (S.D. Cal. 2012); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, 2016 U.S. Dist. LEXIS 1357 (N.D. Cal. Jan. 5, 2016); *In re Aluminum Warehousing Antitrust Litigation*, 95 F. Supp. 3d 419 (S.D.N.Y. 2015); *In re Liquid Aluminum Sulfate Antitrust Litigation*, No. 2:16-md-2687 (D.N.J.); *In re Winn-Dixie Stores, Inc. Shareholder Litigation*, No. 16-2011-CA-010616 (Fla. 4th Jud. Cir. Ct., Duval Cnty.); *Gemelas v. Dannon Co. Inc.*, No. 1:08-cv-00236 (N.D. Ohio); and *In re AuthenTec, Inc. Shareholder Litigation*, No. 05-2012-CA-57589 (Fla. 18th Jud. Cir. Ct., Brevard Cnty.).

## Education

B.A., University of Florida, 1990; J.D., Nova Southeastern University, 1993

## Honors / Awards

AV rated by Martindale-Hubbell; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Leading Lawyer in America, *Lawdragon*, 2023-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Best Lawyer in America, *Best Lawyers*®, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2020-2024; Recommended Lawyer, *The Legal 500*, 2023; Super Lawyer, *Super Lawyers Magazine*, 2014-2020; In top 1.5% of Florida Civil Trial Lawyers in *Florida Trend*'s Florida Legal Elite, 2004, 2006

## Kathleen B. Douglas | Partner

Kathleen Douglas is a partner in the Firm's Boca Raton office. She focuses her practice on securities fraud class actions and consumer fraud. Most recently, Douglas and a team of Robbins Geller attorneys obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever.

Douglas was also a key member of the litigation team in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, in which she and team of Robbins Geller attorneys achieved a substantial $925 million recovery. In addition to the monetary recovery, UnitedHealth also made critical changes to a number of its corporate governance policies, including electing a shareholder-nominated member to the company's Board of Directors. Likewise, in *Nieman v. Duke Energy Corp.*, she and a team of attorneys obtained a $146.25 million recovery, which is the largest recovery in North Carolina for a case involving securities fraud and is one of the five largest recoveries in the Fourth Circuit. In addition, Douglas was a member of the team of attorneys that represented investors in *Knurr v. Orbital ATK, Inc.*, which recovered $108 million for shareholders and is believed to be the fourth-largest securities class action settlement in the history of the Eastern District of Virginia. Douglas has served as class counsel in several class actions brought on behalf of Florida emergency room physicians. These cases were against some of the nation's largest Health Maintenance Organizations and settled for substantial increases in reimbursement rates and millions of dollars in past damages for the class.

### Education
B.S., Georgetown University, 2004; J.D., University of Miami School of Law, 2007

### Honors / Awards
Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2023-2025; Future Star, *Benchmark Litigation*, 2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; 40 & Under List, *Benchmark Litigation*, 2023; 40 & Under Hot List, *Benchmark Litigation*, 2021; Rising Star, *Super Lawyers Magazine*, 2012-2017; B.S., *C um Laude*, Georgetown University, 2004

## Daniel S. Drosman | Partner

Dan Drosman is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He focuses his practice on securities fraud and other complex civil litigation and has obtained significant recoveries for investors in cases such as *Morgan Stanley*, *Cisco Systems*, *The Coca-Cola Company*, *Petco*, *PMI*, and *America West*. Drosman served as lead trial counsel in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. Drosman also helped secure a $388 million recovery for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.* On a percentage basis, that settlement is the largest recovery ever achieved in an RMBS class action. Drosman also served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial. The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

Most recently, Drosman led a team of Robbins Geller attorneys to a record-breaking $809.5 million

settlement in *In re Twitter, Inc. Sec. Litig.*, which settled the day before trial was set to commence. The settlement is the largest securities fraud class action recovery in the Ninth Circuit in the last decade and one of the top 20 shareholder class action settlements of all time. Drosman was part of the Robbins Geller litigation team in *Monroe County Employees' Retirement System v. The Southern Company* in which an $87.5 million settlement was reached after three years of litigation. The settlement resolved claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant that was designed to transform coal into synthetic gas that could then be used to fuel the power plant. In another recent case, Drosman and the Robbins Geller litigation team obtained a $62.5 million settlement in *Villella v. Chemical and Mining Company of Chile Inc.*, which alleged that Sociedad Química y Minera de Chile S.A. ("SQM") violated the Securities Exchange Act of 1934 by issuing materially false and misleading statements regarding the Company's failure to disclose that money from SQM was channeled illegally to electoral campaigns for Chilean politicians and political parties as far back as 2009. SQM had also filed millions of dollars' worth of fictitious tax receipts with Chilean authorities in order to conceal bribery payments from at least 2009 through fiscal year 2014.

In a pair of cases – *Abu Dhabi Commercial Bank, et al. v. Morgan Stanley & Co. Inc.* ("*Cheyne*" litigation) and *King County, Washington, et al. v. IKB Deutsche Industriebank AG* ("*Rhinebridge*" litigation) – Drosman led a group of attorneys prosecuting fraud claims against the credit rating agencies, where he is distinguished as one of the few plaintiffs' counsel to defeat the rating agencies' traditional First Amendment defense and their motions for summary judgment based on the mischaracterization of credit ratings as mere opinions not actionable in fraud.

Before joining the Firm, Drosman served as an Assistant District Attorney for the Manhattan District Attorney's Office, and an Assistant United States Attorney in the Southern District of California, where he investigated and prosecuted violations of the federal narcotics, immigration, and official corruption law.

## Education

B.A., Reed College, 1990; J.D., Harvard Law School, 1993

## Honors / Awards

Legend, *Lawdragon*, 2025; Leading Lawyer in America, *Lawdragon*, 2018-2025; Litigation Star, *Benchmark Litigation*, 2023-2025; Best Lawyer in America, *Best Lawyers®*, 2019-2025; Recommended Lawyer, *The Legal 500*, 2017-2018, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Lawyer of the Year, *Best Lawyers®*, 2022, 2024; West Trailblazer, *The American Lawyer*, 2022; Top Plaintiff Lawyer, *Daily Journal*, 2022; Plaintiff Litigator of the Year, *Benchmark Litigation*, 2022; Titan of the Plaintiffs Bar, *Law360*, 2022; Southern California Best Lawyers, *The Wall Street Journal*, 2021; Southern California Best Lawyer, *Best Lawyers®*, 2019-2021; Super Lawyer, *Super Lawyers Magazine*, 2017-2020; Top 100 Lawyer, *Daily Journal*, 2017; Department of Justice Special Achievement Award, Sustained Superior Performance of Duty; B.A., Honors, Reed College, 1990; *Phi Beta Kappa*, Reed College, 1990

# Thomas E. Egler | Partner

Thomas Egler is a partner in the Firm's San Diego office and focuses his practice on representing clients in major complex, multidistrict litigations, such as *Lehman Brothers*, *Countrywide Mortgage Backed Securities*, *WorldCom*, *AOL Time Warner*, and *Qwest*. He has represented institutional investors both as plaintiffs in individual actions and as lead plaintiffs in class actions.

Most recently, along with co-counsel and a team of Robbins Geller attorneys, Egler led the effort on behalf of cities and counties around the country in *In re National Prescription Opiate Litigation*. In 2022, Egler served on the team of counsel in a federal bench trial in San Francisco in a case that had been selected as a bellwether in the multidistrict litigation. The team achieved combined settlements of nearly $70 million for San Francisco and more than $50 billion nationally from multiple pharmaceutical companies who were defendants in the national litigation. The Honorable Charles R. Breyer of the Northern District of California ruled that Walgreens, the only defendant remaining in the San Francisco case, was liable for its role in the opioid crisis in San Francisco.

Egler also has been a Lawyer Representative to the Ninth Circuit Judicial Conference from the Southern District of California, is a member of the Hon. William B. Enright Inn of Court in San Diego, and in the past has served on the Executive Board of the San Diego chapter of the Association of Business Trial Lawyers. Before joining the Firm, Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

## Education

B.A., Northwestern University, 1989; J.D., The Catholic University of America, Columbus School of Law, 1995

## Honors / Awards

Best Lawyer in America, *Best Lawyers*®, 2024-2025; Leading Lawyer in America, *Lawdragon*, 2024; Super Lawyer, *Super Lawyers Magazine*, 2017-2018; Associate Editor, *Catholic University Law Review*

# Alan I. Ellman | Partner

Alan Ellman is a partner in the Firm's Melville office, where he concentrates his practice on prosecuting complex securities fraud cases on behalf of institutional investors. Most recently, Ellman was on the team of Robbins Geller attorneys who obtained a $34.5 million recovery in *Patel v. L-3 Communications Holdings, Inc.*, which represents a high percentage of damages that plaintiffs could reasonably expect to be recovered at trial and is more than eight times higher than the average settlement of cases with comparable investor losses. He was also on the team of attorneys who recovered in excess of $34 million for investors in *In re OSG Sec. Litig.*, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity.

Ellman was also on the team of Robbins Geller attorneys who achieved final approval in *Curran v. Freshpet, Inc.*, which provides for the payment of $10.1 million for the benefit of eligible settlement class members. Additionally, he was on the team of attorneys who obtained final approval of a $7.5 million recovery in *Plymouth County Retirement Association v. Advisory Board Company*. In 2006, Ellman received a Volunteer and Leadership Award from Housing Conservation Coordinators (HCC) for his *pro bono* service defending a client in Housing Court against a non-payment action, arguing an appeal before the Appellate Term, and staffing HCC's legal clinic. He also successfully appealed a *pro bono* client's criminal sentence before the Appellate Division.

## Education

B.S., B.A., State University of New York at Binghamton, 1999; J.D., Georgetown University Law Center, 2003

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2017-2024; Pro Bono Publico Award, *Casa Cornelia Law Center*, 2021-2022; Rising Star, *Super Lawyers Magazine*, 2014-2015; B.S., B.A., *Cum Laude*, State University of New York at Binghamton, 1999

# Jason A. Forge | Partner

Jason Forge is a partner in the Firm's San Diego office. He specializes in complex investigations, litigation, and trials. As a federal prosecutor and private practitioner, Forge has conducted and supervised scores of jury and bench trials in federal and state courts, including the month-long trial of a defense contractor who conspired with Congressman Randy "Duke" Cunningham in the largest bribery scheme in congressional history. He recently obtained a $350 million settlement with Alphabet, Inc., which was made possible only by first winning a unanimous published appellate decision, reversing a district court order that had dismissed the entire case. This is the largest ever post-reversal securities fraud recovery in the Ninth Circuit.

In addition to Alphabet, Forge has secured nine-figure payouts from other corporate goliaths, including Wal-Mart ($160 million) and Pfizer ($400 million). *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.* was the first successful securities fraud case against Wal-Mart. And in the case against Pfizer, Forge led an investigation that uncovered key documents that Pfizer had not produced in discovery. Although fact discovery in the case had already closed, the district judge ruled that the documents had been improperly withheld and ordered that discovery be reopened, including reopening the depositions of Pfizer's former CEO, CFO, and General Counsel. Less than six months after

completing these depositions, Pfizer settled the case for $400 million.

Forge also was a key member of the Firm's winning trial team in *Hsu v. Puma Biotechnology, Inc.* – one of only 13 securities fraud class action verdicts for investors in nearly 30 years. After that trial victory, Forge joined a Robbins Geller litigation team that had defeated 12 motions for summary judgment against 40 defendants and was about to depose 17 experts in the home stretch to trial. Forge led the effort to use these depositions to disprove a truth-on-the-market argument that nine defense experts had embraced. After the last of these expert depositions, the defendants dropped their lead truth-on-the-market expert and the Robbins Geller team secured a $1.025 billion settlement from American Realty Capital Properties and other defendants that included a record $237 million contribution from individual defendants and represented more than twice the recovery rate obtained by several funds that had opted out of the class.

Forge was a key member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions, including a federal RICO charge, against President Donald J. Trump. The settlement returned over 90% of the money thousands of students paid to "enroll" in Trump University. He represented the class on a *pro bono* basis. Forge successfully prosecuted another federal RICO case against Scotts Miracle-Gro, resulting in full refunds (totaling over $40 million) for customers who purchased bird feed that Scotts had illegally treated with a pesticide known to be hazardous to birds. He was also a member of the litigation team that obtained a $125 million settlement in *In re LendingClub Securities Litigation*, a settlement that ranked among the top ten largest securities recoveries ever in the Northern District of California.

## Education

B.B.A., The University of Michigan Ross School of Business, 1990; J.D., The University of Michigan Law School, 1993

## Honors / Awards

Plaintiff Litigator of the Year, *Benchmark Litigation*, 2025; Impact Case Award: *In re Alphabet, Inc. Securities Litigation*, *Benchmark Litigation*, 2025; Leading Lawyer in America, *Lawdragon*, 2022-2025; Litigation Star, *Benchmark Litigation*, 2023-2025; Recommended Lawyer, *The Legal 500*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Best Lawyer in America, *Best Lawyers®*, 2019-2023; Southern California Best Lawyer, *Best Lawyers®*, 2019-2021; Local Litigation Star, *Benchmark Litigation*, 2020; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Top 100 Lawyer, *Daily Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; Two-time recipient of Department of Justice's Director's Award for Superior Performance by Litigation Team; numerous commendations from Federal Bureau of Investigation (including commendation from FBI Director Robert Mueller III), Internal Revenue Service, and Defense Criminal Investigative Service; J.D., *Magna Cum Laude*, Order of the Coif, The University of Michigan Law School, 1993; B.B.A., High Distinction, The University of Michigan Ross School of Business, 1990

# William J. Geddish | Partner

William Geddish is a partner with the Firm and is based in the Melville office, where his practice focuses on complex securities litigation. Before joining the Firm, he was an associate in the New York office of a large international law firm, where his practice focused on complex commercial litigation.

Since joining the Firm, Geddish has played a significant role in the following litigations: *In re Barrick Gold Sec. Litig.* ($140 million recovery); *Scheufele v. Tableau Software, Inc.* ($95 million recovery); *Landmen Partners, Inc. v. The Blackstone Grp., L.P.* ($85 million recovery); *In re Jeld-Wen Holding, Inc. Sec. Litig.* ($40 million recovery); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.* ($33 million recovery); *City of Roseville Emps' Ret. Sys. v. EnergySolutions, Inc.* ($26 million recovery); *Beaver Cnty. Emps' Ret. Fund v. Tile Shop Holdings, Inc.* ($9.5 million recovery); and *Barbara Marciano v. Schell & Kampeter, Inc.* ($2 million recovery).

## Education

B.A., Sacred Heart University, 2006, J.D., Hofstra University School of Law, 2009

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2013-2024; 500 X – The Next Generation, *Lawdragon*, 2023; J.D., *Magna Cum Laude*, Hofstra University School of Law, 2009; Gina Maria Escarce Memorial Award, Hofstra University School of Law

# Paul J. Geller | Partner

Paul Geller is a founding partner of Robbins Geller and head of the Firm's Consumer Practice Group. Over the last 30 years, Geller has served as lead counsel in some of the country's most high-profile consumer, antitrust, and securities class actions and has recovered billions for communities, consumers, and investors harmed by corporate abuse.

Before devoting his practice to the representation of consumers and investors, Geller defended companies in high-stakes class action and multi-district litigation, providing him with an invaluable perspective from "both sides of the 'v.'" An experienced trial lawyer, he has tried bench and jury trials on behalf of plaintiffs and defendants and has argued before numerous state, federal, and appellate courts throughout the United States.

Geller's ability to earn respect and trust from all sides in difficult negotiations has been recognized by the bar and legal publications. *Chambers* notes that "Paul is a consummate professional who has the ability to work seamlessly and collaboratively to address daunting challenges that arise in complex mass tort litigation."

He serves as a key leader of the nationwide litigation against the companies responsible for the U.S. opioid addiction crisis. He played a key role in negotiating and architecting the complex settlements that resulted in over $50 billion being paid to communities across the country struggling with the fallout of the opioid crisis.

He has also successfully litigated and negotiated precedent-setting class recoveries in multiple practice areas, including data privacy, antitrust, products liability, and securities cases.

- **Facebook Data Privacy Case – $650 Million**: He secured the then-largest privacy class action

settlement in history – a $650 million recovery in a cutting-edge class action against Facebook.  The case concerned Facebook's use of biometric identifiers through its "tag" feature, which Geller's team challenged under a new biometric privacy law that had never before been applied in a class action.  The federal judge that presided over the case called it a "landmark result" and a "major win for consumers."  In addition to the monetary recovery, Facebook disabled the tag feature altogether, deleting 1 billion facial profiles and discontinuing the related facial recognition program.

- **Volkswagen "Clean Diesel" Case – $17 Billion**: Geller was a member of the leadership team representing consumers in the massive Volkswagen "Clean Diesel" emissions case. The San Francisco legal newspaper *The Recorder* labeled the group that was appointed in that case, which settled for more than $17 billion, a "class action dream team."

- **"EpiPen" Antitrust Case – $609 Million**: As lead counsel, Geller secured a recovery of $609 million for overcharged purchasers of the "EpiPen" device in a nationwide class action alleging that the manufacturer and marketer of the EpiPen engaged in anti-competitive and unfair business conduct in their sale and marketing of the auto-injector device. The American Antitrust Institute honored Geller and the litigation team for Outstanding Antitrust Litigation Achievement in Private Law Practice for this result.

## Education

B.S., University of Florida, 1990; J.D., Emory University School of Law, 1993

## Honors / Awards

Rated AV by Martindale-Hubbell; Fellow, Litigation Counsel of America (LCA) Proven Trial Lawyers; Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Leading Plaintiff Consumer Lawyer, *Lawdragon*, 2022-2025; Leading Lawyer in America, *Lawdragon*, 2006-2007, 2009-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Best Lawyer in America, *Best Lawyers®*, 2017-2025; Super Lawyer, *Super Lawyers Magazine*, 2007-2024; Recommended Lawyer, *The Legal 500*, 2016, 2019, 2023-2024; Ranked by *Chambers USA*, 2021-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2022; South Trailblazer, *The American Lawyer*, 2022; Class Action MVP, *Law360*, 2022; Florida Best Lawyer in America, *Best Lawyers®*, 2017-2021; One of "Florida's Most Effective Lawyers" in the Privacy category, American Law Media, 2020; Legend, *Lawdragon*, 2020; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2018; Lawyer of the Year, *Best Lawyers®*, 2018; Attorney of the Month, *Attorney At Law*, 2017; Featured in "Lawyer Limelight" series, *Lawdragon*, 2017; Top Rated Lawyer, South Florida's Legal Leaders, *Miami Herald*, 2015; Litigation Star, *Benchmark Litigation*, 2013; "Legal Elite," *Florida Trend Magazine*; One of "Florida's Most Effective Lawyers," American Law Media; One of Florida's top lawyers in *South Florida Business* Journal; One of the Nation's Top "40 Under 40," *The National Law Journal*; One of Florida's Top Lawyers, *Law & Politics*; Editor, *Emory Law Journal*; Order of the Coif, Emory University School of Law

# Robert D. Gerson | Partner

Robert Gerson is a partner in the Firm's Melville office, where he practices securities fraud litigation and other complex matters.

Since joining the Firm, Gerson has played a significant role in prosecuting numerous high-stakes investor litigations. Most recently, Gerson and a team of Robbins Geller attorneys obtained a $27.5 million settlement in *Luna v. Carbonite, Inc.*, following a precedent-setting decision by the U.S. Court of Appeals for the First Circuit. Gerson was also a member of the team in *In re Dell Technologies Inc. Class V Stockholders Litigation*, which settled in 2023 for $1 billion in cash – a record in the Delaware Chancery Court and the largest settlement in U.S. state court history. Other notable cases Gerson has played a critical role in at the Firm include: *UA Local 13 & Employers Group Insurance Fund v. Sealed Air Corp.* ($12.5 million recovery); *In re PPDAI Group Sec. Litig.* ($9 million recovery); and *Sponn v. Emergent BioSolutions Inc.* ($6.5 million recovery).

## Education
B.A., University of Maryland, 2006; J.D., New York Law School, 2009

## Honors / Awards
Best Lawyer in America: One to Watch, *Best Lawyers*®, 2024-2025; Super Lawyer, *Super Lawyers Magazine*, 2021-2024; 500 X – The Next Generation, *Lawdragon*, 2023; Rising Star, *Super Lawyers Magazine*, 2015-2020

# Jonah H. Goldstein | Partner

Jonah Goldstein is a partner in the Firm's San Diego office and is responsible for prosecuting complex securities cases and obtaining recoveries for investors. He also represents corporate whistleblowers who report violations of the securities laws. Goldstein has achieved significant settlements on behalf of investors including in *In re HealthSouth Sec. Litig.* (over $670 million recovered against HealthSouth, UBS and Ernst & Young), *In re Cisco Sec. Litig.* (approximately $100 million), and *Marcus v. J.C. Penney Company, Inc.* ($97.5 million recovery). Goldstein also served on the Firm's trial team in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), which settled after two weeks of trial for $100 million, and aided in the $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the fourth-largest securities recovery ever in the Middle District of Tennessee and one of the largest in more than a decade. Most recently, he was part of the litigation team in *Luna v. Marvell Tech. Grp., Ltd.*, resulting in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors. Before joining the Firm, Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court and as an Assistant United States Attorney for the Southern District of California, where he tried numerous cases and briefed and argued appeals before the Ninth Circuit Court of Appeals.

## Education

B.A., Duke University, 1991; J.D., University of Denver College of Law, 1995

## Honors / Awards

Recommended Lawyer, *The Legal 500*, 2018-2019; Comments Editor, *University of Denver Law Review*, University of Denver College of Law

# Benny C. Goodman III | Partner

Benny Goodman is a partner in the Firm's San Diego office.  He primarily represents plaintiffs in shareholder actions on behalf of aggrieved corporations.  Goodman has recovered hundreds of millions of dollars in shareholder derivative actions pending in state and federal courts across the nation.  Most recently, he led a team of lawyers in litigation brought on behalf of Community Health Systems, Inc., resulting in a $60 million payment to the company, the largest recovery in a shareholder derivative action in Tennessee and the Sixth Circuit, as well as best-in-class value-enhancing corporate governance reforms that included two shareholder-nominated directors to the Community Health Board of Directors.

Similarly, Goodman recovered a $25 million payment to Lumber Liquidators and numerous corporate governance reforms, including a shareholder-nominated director, in *In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.*  In *In re Google Inc. S'holder Derivative Litig.*, Goodman achieved groundbreaking corporate governance reforms designed to mitigate regulatory and legal compliance risk associated with online pharmaceutical advertising, including among other things, the creation of a $250 million fund to help combat rogue pharmacies from improperly selling drugs online.

## Education
B.S., Arizona State University, 1994; J.D., University of San Diego School of Law, 2000

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2018-2025; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2021; Recommended Lawyer, *The Legal 500*, 2017

# Elise J. Grace | Partner

Elise Grace is a partner in the San Diego office and counsels the Firm's institutional clients on options to secure premium recoveries in securities litigation both within the United States and internationally. Grace is a frequent lecturer and author on securities and accounting fraud, and develops annual MCLE and CPE accredited educational programs designed to train public fund representatives on practices to protect and maximize portfolio assets, create long-term portfolio value, and best fulfill fiduciary duties. Grace has routinely been named a Recommended Lawyer by *The Legal 500* and named a Leading Plaintiff Financial Lawyer by *Lawdragon*. Grace has prosecuted various significant securities fraud class actions, as well as the AOL Time Warner state and federal securities opt-out litigations, which resulted in a combined settlement of over $629 million for defrauded investors. Before joining the Firm, Grace practiced at Clifford Chance, where she defended numerous Fortune 500 companies in securities class actions and complex business litigation.

## Education

B.A., University of California, Los Angeles, 1993; J.D., Pepperdine School of Law, 1999

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Securities Litigation Lawyer of the Year, *Lawyer Monthly*, 2023; Recommended Lawyer, *The Legal 500*, 2016-2017; J.D., *Magna Cum Laude*, Pepperdine School of Law, 1999; American Jurisprudence Bancroft-Whitney Award – Civil Procedure, Evidence, and Dalsimer Moot Court Oral Argument; Dean's Academic Scholarship Recipient, Pepperdine School of Law; B.A., *Summa Cum Laude*, University of California, Los Angeles, 1993; B.A., *Phi Beta Kappa*, University of California, Los Angeles, 1993

# Tor Gronborg | Partner

Tor Gronborg is a partner in the Firm's San Diego office and a member of the Firm's Management Committee. He often lectures on topics such as the Federal Rules of Civil Procedure and electronic discovery. Gronborg has served as lead or co-lead counsel in numerous securities fraud cases that have collectively recovered more than $4.4 billion for investors. Most recently, Gronborg and a team of Robbins Geller attorneys obtained an $809 million settlement in *In re Twitter, Inc. Sec. Litig.*, a case that did not settle until the day before trial was set to commence.

In addition to *Twitter*, Gronborg's work has included significant recoveries against corporations such as Valeant Pharmaceuticals ($1.21 billion), Cardinal Health ($600 million), Motorola ($200 million), Duke Energy ($146.25 million), Sprint Nextel Corp. ($131 million), and Prison Realty ($104 million), to name a few. Gronborg was also a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, No. SACV15-0865 (C.D. Cal.), a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial and ultimately settled for 100% of the claimed damages plus prejudgment interest.

On three separate occasions, Gronborg's pleadings have been upheld by the federal Courts of Appeals (*Broudo v. Dura Pharms., Inc.*, 339 F.3d 933 (9th Cir. 2003), *rev'd on other grounds*, 544 U.S. 336 (2005); *In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005); *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008)).

## Education

B.A., University of California, Santa Barbara, 1991; Rotary International Scholar, University of Lancaster, U.K., 1992; J.D., University of California, Berkeley, 1995

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2022-2025; Litigation Star, *Benchmark Litigation*, 2023-2025; National Practice Area Star, *Benchmark Litigation*, 2025; Best Lawyer in America, *Best Lawyers®*, 2022-2025; Recommended Lawyer, *The Legal 500*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; West Trailblazer, *The American Lawyer*, 2022; Super Lawyer, *Super Lawyers Magazine*, 2013-2022; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2019; Moot Court Board Member, University of California, Berkeley; AFL-CIO history scholarship, University of California, Santa Barbara

# Ellen Gusikoff Stewart | Partner

Ellen Stewart is a partner in the Firm's San Diego office, and is a member of the Firm's Summer Associate Hiring Committee. She currently practices in the Firm's settlement department, negotiating and documenting complex securities, merger, ERISA, and derivative action settlements. Notable recent settlements include: *Evanston Police Pension Fund v. McKesson Corp.* (N.D. Cal. 2023) ($141 million); *In re Twitter Inc. Sec. Litig.* (N.D. Cal. 2022) ($809.5 million); *In re Facebook Biometric Info. Privacy Litig.* (N.D. Cal. 2021) ($650 million); *In re Am. Realty Cap. Props., Inc. Litig.* (S.D.N.Y. 2020) ($1.025 billion); *Klein v. Altria Group, Inc.* (E.D. Va. 2022) ($90 million); *KBC Asset Management v. 3D Systems Corp.* (D.S.C. 2018) ($50 million); and *Luna v. Marvell Tech. Grp.* (N.D. Cal. 2018) ($72.5 million).

Stewart has served on the Federal Bar Association Ad Hoc Committee for the revisions to the Settlement Guidelines for the Northern District of California, was a contributor to the Guidelines and Best Practices – Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions manual of the Bolch Judicial Institute at the Duke University School of Law, and speaks at conferences around country on current settlement and notice issues.

## Education
B.A., Muhlenberg College, 1986; J.D., Case Western Reserve University, 1989

## Honors / Awards
Rated Distinguished by Martindale-Hubbell

# Robert Henssler | Partner

Bobby Henssler is a partner in the Firm's San Diego office, where he focuses his practice on securities fraud and other complex civil litigation. He has obtained significant recoveries for investors in cases such as *Under Armour*, *Blackstone*, and *J.C. Penney*.

Most recently, Henssler led a team of Robbins Geller attorneys in obtaining a $434 million settlement in *In re Under Armour Sec. Litig.* The case was previously dismissed with prejudice in 2019, but then resurrected through a highly unusual procedural maneuver, a successful motion for an indicative ruling: asking the federal judge who had dismissed the case to issue an indicative opinion informing the Fourth Circuit that he would revive the original case if it were remanded to him. Over the next five years, the Robbins Geller team defeated defendants' motions for summary judgment and to exclude plaintiffs' expert witnesses. The case settled just weeks before a jury trial was set to begin in Baltimore, Maryland. The $434 million recovery is the second largest securities-fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

Henssler was also lead counsel in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action. Henssler has had many other successful results, including in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* ($1.21 billion), *Marcus v. J.C. Penney Company, Inc.* ($97.5 million recovery), *Landmen Partners Inc. v. The Blackstone Group L.P.* ($85 million recovery), *In re Novatel Wireless Sec. Litig.* ($16 million recovery), *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC* ($14 million settlement), and *Kmiec v. Powerwave Technologies, Inc.* ($8.2 million settlement), to name a few.

## Education

B.A., University of New Hampshire, 1997; J.D., University of San Diego School of Law, 2001

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2025; Leading Litigator in America, *Lawdragon*, 2024-2025; Best Lawyer in America, *Best Lawyers®*, 2025; Top 100 Lawyer, *Daily Journal*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2020-2021, 2023-2024; California Lawyer of the Year, *Daily Journal*, 2022; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020; Recommended Lawyer, *The Legal 500*, 2018-2019

## Steven F. Hubachek | Partner

Steve Hubachek is a partner in the Firm's San Diego office. He is a member of the Firm's appellate group, where his practice concentrates on federal appeals. He has more than 25 years of appellate experience, has argued over 100 federal appeals, including 3 cases before the United States Supreme Court and 7 cases before en banc panels of the Ninth Circuit Court of Appeals. Prior to his work with the Firm, Hubachek joined Perkins Coie in Seattle, Washington, as an associate. He was admitted to the Washington State Bar in 1987 and was admitted to the California State Bar in 1990, practicing for many years with Federal Defenders of San Diego, Inc. He also had an active trial practice, including over 30 jury trials, and was Chief Appellate Attorney for Federal Defenders.

## Education

B.A., University of California, Berkeley, 1983; J.D., University of California College of the Law, San Francisco, 1987

## Honors / Awards

AV rated by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2014-2022; Super Lawyer, *Super Lawyers Magazine*, 2007-2009, 2019-2021; Assistant Federal Public Defender of the Year, National Federal Public Defenders Association, 2011; Appellate Attorney of the Year, San Diego Criminal Defense Bar Association, 2011 (co-recipient); President's Award for Outstanding Volunteer Service, Mid City Little League, San Diego, 2011; E. Stanley Conant Award for exceptional and unselfish devotion to protecting the rights of the indigent accused, 2009 (joint recipient); *The Daily Transcript* Top Attorneys, 2007; J.D., *Cum Laude*, Order of the Coif, Thurston Honor Society, University of California College of the Law, San Francisco, 1987

# Andrew W. Hutton | Partner

Drew Hutton is a partner in the Firm's San Diego office. Hutton has prosecuted a variety of securities actions, achieving high-profile recoveries and results. Representative cases against corporations and their auditors include *AOL Time Warner* ($2.5 billion) and *Williams Cos.* ($311 million). Representative cases against corporations and their executives include *Broadcom* ($150 million), *Bank OZK* ($45 million), and *Clarent* (class plaintiff's 10b-5 jury verdict against former CEO). Hutton is also active in shareholder derivative litigation, achieving monetary recoveries and governance changes, including *Premier* ($71 million), *Affiliated Computer Servs.* ($30 million), *KB Home* ($30 million), and *KeyCorp* (modified CEO stock options and governance). Hutton has also litigated securities cases in bankruptcy court (*WorldCom* – $15 million for individual claimant), and a complex options case before FINRA (eight-figure settlement for structured products investor).

Hutton is also experienced in complex, multi-district consumer litigation. Representative nationwide insurance cases include *Prudential* ($4 billion), *Metro. Life Ins. Co.* ($2 billion), and *Conseco Life Ins. Co.* ($200 million). Representative nationwide consumer lending cases include a $30 million class settlement of Truth-in-Lending claims against American Express, and a $24 million class settlement of RICO and RESPA claims against Community Bank of Northern Virginia (now PNC Bank).

Before joining Robbins Geller, Hutton was a public company accountant, Certified Public Accountant, and broker of stocks, options, and insurance products. Hutton has also served as an expert litigation consultant in both financial and corporate governance capacities. Hutton is often responsible for working with experts retained by the Firm in litigation and has conducted dozens of depositions of financial professionals, including audit partners, CFOs, directors, bankers, actuaries, and opposing experts.

## Education

B.A., University of California, Santa Barbara, 1983; J.D., Loyola Law School, 1994

# James I. Jaconette | Partner

James Jaconette is one of the founding partners of the Firm and is located in its San Diego office. He manages cases in the Firm's securities class action and shareholder derivative litigation practices. He has served as one of the lead counsel in securities cases with recoveries to individual and institutional investors totaling over $8 billion. He also advises institutional investors, including hedge funds, pension funds, and financial institutions. Landmark securities actions in which he contributed in a primary litigating role include *In re Informix Corp. Sec. Litig.*, and *In re Dynegy Inc. Sec. Litig.* and *In re Enron Corp. Sec. Litig.*, where he represented lead plaintiff The Regents of the University of California. Most recently, Jaconette was part of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action.

## Education

B.A., San Diego State University, 1989; M.B.A., San Diego State University, 1992; J.D., University of California Hastings College of the Law, 1995

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; J.D., *Cum Laude*, University of California Hastings College of the Law, 1995; Associate Articles Editor, *Hastings Law Journal*, University of California Hastings College of the Law; B.A., with Honors and Distinction, San Diego State University, 1989

# J. Marco Janoski Gray | Partner

Marco Janoski is a partner in the Firm's San Diego office. His practice focuses on complex securities litigation and class actions. An experienced litigator, Janoski has secured record-setting recoveries for investors, including trial verdicts and large recoveries secured on the eve of trial.

Janoski recently served on the litigation team in *In re Alphabet, Inc. Securities Litigation* representing plaintiffs in a securities fraud case where Robbins Geller achieved a $350 million recovery. The recovery is the largest ever privacy or cybersecurity-related securities class action recovery and the Ninth Circuit's largest ever securities class action recovery following a complete dismissal. Janoski also served on the litigation teams in two securities fraud cases that are among the top ten securities recoveries of 2023: *In re Envision Healthcare Corporation Securities Litigation* ($177.5 million recovery) and *Louisiana Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.* ($109 million recovery). He served on the Firm's trial team in *In re Twitter, Inc. Securities Litigation* and helped secure an $809.5 million recovery for investors. The *Twitter* case settled the day before trial was set to commence in 2021 and is the largest securities fraud class action recovery in the Ninth Circuit in the last decade. Likewise, he and a team of Firm lawyers secured a $350 million settlement on the eve of trial in 2020 in *Smilovits v. First Solar, Inc.*, the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit at the time. Janoski also served on the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial in federal court.

## Education

Universidad Complutense de Madrid, 2010-2011; B.A., University of California, Santa Barbara, 2011; J.D., University of California College of the Law, San Francisco (formerly UC Hastings), 2015

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2024-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; 40 & Under List, *Benchmark Litigation*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2024; 500 X – The Next Generation, *Lawdragon*, 2023; J.D., *Magna Cum Laude*, University of California College of the Law, San Francisco (formerly UC Hastings), 2015

# Chad Johnson | Partner

Chad Johnson, a former Deputy Attorney General for the State of New York, is the Managing Partner of the Firm's Manhattan office. Johnson's background includes the rare combination of decades as a securities fraud prosecutor, as a defense lawyer, and as a plaintiffs' lawyer. Johnson has been litigating securities fraud cases and fiduciary duty actions for over 30 years. Johnson is one of the leaders of the Firm's Delaware Practice Group. Johnson's cases in the private sector have recovered more than $9 billion for investors.

Johnson served as Deputy Attorney General for the State of New York and as the head of New York securities fraud unit. As a senior member of the Attorney General's Office for the State of New York, Johnson pursued securities cases against Wall Street fraudsters. While Deputy Attorney General for the State of New York and Chief of the New York Investor Protection Bureau, Johnson helped recover $16.65 billion from Bank of America and $13 billion from JP Morgan Chase for toxic residential mortgage-backed securities (RMBS) created and sold by those banks.

In the private sector, Johnson represents some of the world's largest and most sophisticated asset managers, public pension funds, and sovereign wealth funds. Johnson also represents whistleblowers and individual investors.

Johnson's cases have resulted in some of the largest recoveries on record for shareholders. This includes recent recoveries of $1 billion in the Dell Class V litigation, $122 million recovered in the Viacom stockholders litigation, and $100 million recovered in the Pattern Energy stockholders litigation – all of which were litigated in the Delaware Court of Chancery. Johnson also has led securities cases in federal courts across the country that have resulted in significant recoveries for shareholders, including: the WorldCom securities litigation (more than $6 billion recovered for shareholders); the Wachovia securities litigation ($627 million recovered for shareholders); the Williams securities litigation ($311 million recovered for shareholders); and the Washington Mutual securities litigation ($208 million recovered for shareholders).

Among other cases he is currently handling, Johnson is helping to lead the Boeing securities litigation pending in the Northern District of Virginia concerning years of false and misleading statements made by Boeing and its top executives regarding the Company's supposed safety practices and other crucial matters.

Johnson has successfully tried cases in federal and state courts, in the Delaware Court of Chancery, and in arbitration tribunals in the United States and overseas. Johnson also advises institutional and other investors about how best to enforce their rights as shareholders in the United States and abroad.

## Education

B.A., University of Michigan, 1989; J.D., Harvard Law School, 1993

## Honors / Awards

J.D., *Cum Laude*, Harvard Law School, 1993; B.A., High Distinction, University of Michigan, 1989

# Evan J. Kaufman | Partner

Evan Kaufman is a partner in the Firm's Melville office.  He has recovered hundreds of millions of dollars for class members in securities, ERISA, and complex class actions.

Kaufman served as lead counsel in the *SandRidge Energy* securities litigation and obtained a $35.75 million global settlement, including $21.8 million for SandRidge common stock purchasers.  As lead counsel in the *TD Banknorth* litigation, Kaufman and the Firm achieved a $50 million recovery after successfully objecting to a $3 million settlement submitted to the court on behalf of the class.  The court in the *TD Banknorth* litigation stated: "This is one of the cases – there's probably been a half a dozen since I've been a judge that I handled which have – really through the sheer diligence and effort of plaintiffs' counsel – resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers . . . it appears plainly from the papers that you and your co-counsel have diligently, and at great personal expense and through the devotion of many thousands of hours of your time, prosecuted this case to a successful conclusion."

Kaufman served as co-lead class counsel on behalf of 212,000 participants in General Electric's 401(k) plan and obtained $61 million for the class, which was the largest recovery ever in an ERISA case alleging a retirement plan improperly offered proprietary funds.  During the *GE ERISA* final settlement approval hearing, the court described the case as "hard-fought" with "interesting and difficult issues."  Kaufman served as lead counsel or as an integral part of the team in other ERISA actions, including on behalf of participants in the retirement plans of Invesco, JP Morgan, and Wakemed.

Kaufman achieved notable results in numerous other securities class actions, including recovering $26 million in the *EnergySolutions* litigation, and in cases against Lockheed Martin, State Street, Fidelity, Warner Chilcott, Talkspace, Third Avenue Management, and Giant Interactive, among others.

In the *Third Avenue Management* litigation, when approving the $14.25 million settlement obtained by Kaufman and the Firm, the court commended the parties for their "wisdom" and "diligence" and concluded that "lead counsel diligently and with quality represented the interests of the class."   In the *Giant Interactive* litigation, the court acknowledged the efforts of Kaufman and the Firm in achieving the favorable settlement for the class: "The Court also recognizes the diligence and hard work of plaintiffs' counsel in achieving such a settlement, particularly in light of the fact that this case (unlike many other securities class actions) was independently developed by plaintiffs' counsel, as opposed to following, or piggybacking on, a regulatory investigation or settlement."

## Education
B.A., University of Michigan, 1992; J.D., Fordham University School of Law, 1995

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine,* 2013-2015, 2017-2020, 2023-2024; Member, *Fordham International Law Journal,* Fordham University School of Law

# Ashley M. Kelly | Partner

Ashley Kelly is a partner in the Firm's San Diego office, where she represents large institutional and individual investors as a member of the Firm's antitrust and securities fraud practices. Her work is primarily federal and state class actions involving the federal antitrust and securities laws, common law fraud, breach of contract, and accounting violations. Kelly's case work has been in the financial services, oil & gas, e-commerce, and technology industries. In addition to being an attorney, she is a Certified Public Accountant. Kelly was an important member of the litigation team that obtained a $500 million settlement on behalf of investors in *Luther v. Countrywide Fin. Corp.*, which was the largest residential mortgage-backed securities purchaser class action recovery in history.

## Education

B.S., Pennsylvania State University, 2005; J.D., Rutgers University-Camden, 2011

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers*®, 2024-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; Rising Star, *Super Lawyers Magazine*, 2016, 2018-2021

# Christopher R. Kinnon | Partner

Christopher Kinnon is a partner in the Firm's San Diego office, where his practice focuses on securities fraud litigation. Kinnon and a team of Robbins Geller attorneys obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* (D.N.J.), a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever. In addition, Kinnon and a team of Robbins Geller attorneys obtained an $809 million settlement in *In re Twitter, Inc. Sec. Litig.*, a case that did not settle until the day before trial was set to commence.

Most recently, Kinnon was a key member of a team of Robbins Geller attorneys who obtained a $434 million settlement in *In re Under Armour Sec. Litig.* The case was previously dismissed with prejudice in 2019, but then resurrected through a highly unusual procedural maneuver, a successful motion for an indicative ruling: asking the federal judge who had dismissed the case to issue an indicative opinion informing the Fourth Circuit that he would revive the original case if it were remanded to him. Over the next five years, the Robbins Geller team defeated defendants' motions for summary judgment and to exclude plaintiffs' expert witnesses. The case settled just weeks before a jury trial was set to begin in Baltimore, Maryland. The $434 million recovery is the second largest securities-fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

Kinnon is currently representing investors in securities fraud actions against Green Dot Corporation (C.D. Cal.) and PricewaterhouseCoopers LLP (D.N.J.).

Before law school, Kinnon was a municipal sanitation worker and an elected executive board member with the Canadian Union of Public Employees, Local 1004 (CUPE 1004). Before that, he was a recording artist signed to prominent record labels in Canada and the United States.

## Education

B.A., University of British Columbia, 2008; J.D., University of Michigan Law School, 2017

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2024-2025; California Lawyer of the Year, *Daily Journal*, 2022

# David A. Knotts | Partner

David Knotts is a partner in the Firm's San Diego office. He focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. Knotts is also part of the Firm's Delaware Practice Group. Knotts has significant trial experience in high-stakes corporate litigation.

Knotts has been counsel of record for shareholders on a number of significant recoveries in courts throughout the country, including serving as one of the lead litigators on *Chabot v. Walgreens Boots Alliance, Inc.*, which culminated in a $192.5 million recovery for a class of Rite Aid investors. The *Walgreens* settlement was approved by the Middle District of Pennsylvania in February 2024 and resulted in the second largest securities recovery in Pennsylvania federal court history. That recovery represents a rarity in securities fraud litigation, whereby target-company investors obtained a significant cash recovery from an unaffiliated acquirer based on allegations that the acquirer issued misleading statements during the pendency of a merger.

In addition, Knotts served among lead counsel in *In re Rural/Metro Corp. S'holders Litig.*, which resulted in a groundbreaking $110 million post-trial recovery affirmed by the Delaware Supreme Court, as well as *In re Del Monte Foods Co. S'holders Litig.* ($89.4 million), *Websense* ($40 million), *In re Onyx S'holders Litig.* ($30 million), *Harman* ($28 million), and *Joy Global* ($20 million). *Websense* and *Onyx* are both believed to be the largest post-merger class settlements in California state court history. When Knotts presented the settlement as lead counsel for the stockholders in *Joy Global*, the United States District Court for the Eastern District of Wisconsin noted that "this is a pretty extraordinary settlement, recovery on behalf of the members of the class. . . . [I]t's always a pleasure to work with people who are experienced and who know what they are doing." In addition to ongoing litigation work, Knotts has taught a full-semester course on M&A litigation at the University of California Berkeley School of Law.

Before joining Robbins Geller, Knotts was an associate at one of the largest law firms in the world and represented corporate clients in various aspects of state and federal litigation, including major antitrust matters, trade secret disputes, and unfair competition claims.

## Education

B.S., University of Pittsburgh, 2001; J.D., Cornell Law School, 2004

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; 40 & Under List, *Benchmark Litigation*, 2023; 40 & Under Hot List, *Benchmark Litigation*, 2018, 2020-2021; Next Generation Partner, *The Legal 500*, 2019-2021; Recommended Lawyer, *The Legal 500*, 2017-2019; Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California; Casa Cornelia Inns of Court; J.D., *Cum Laude*, Cornell Law School, 2004

## Laurie L. Largent | Partner

Laurie Largent is a partner in the Firm's San Diego, California office.  Her practice focuses on securities class action and shareholder derivative litigation and she has helped recover millions of dollars for injured shareholders.  Largent was part of the litigation team that obtained a $265 million recovery in *In re Massey Energy Co. Sec. Litig.*, in which Massey was found accountable for a tragic explosion at the Upper Big Branch mine in Raleigh County, West Virginia.  She also helped obtain $67.5 million for Wyeth shareholders in *City of Livonia Emps.' Ret. Sys. v. Wyeth*, settling claims that the defendants misled investors about the safety and commercial viability of one of the company's leading drug candidates.  Most recently, Largent was on the team that secured a $64 million recovery for Dana Corp. shareholders in *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, in which the Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.  Some of Largent's other cases include: *In re Sanofi-Aventis Sec. Litig.* (S.D.N.Y.) ($40 million); *In re Bridgepoint Educ., Inc. Sec. Litig.* (S.D. Cal.) ($15.5 million); *Ross v. Abercrombie & Fitch Co.* (S.D. Ohio) ($12 million); *Maiman v. Talbott* (C.D. Cal.) ($8.25 million); *In re Cafepress Inc. S'holder Litig.* (Cal. Super. Ct., San Mateo Cnty.) ($8 million); and *Krystek v. Ruby Tuesday, Inc.* (M.D. Tenn.) ($5 million).  Largent's current cases include securities fraud cases against Dell, Inc. (W.D. Tex.) and Banc of California (C.D. Cal.).

Largent is a past board member on the San Diego County Bar Foundation and the San Diego Volunteer Lawyer Program. She has also served as an Adjunct Business Law Professor at Southwestern College in Chula Vista, California.

### Education
B.B.A., University of Oklahoma, 1985; J.D., University of Tulsa, 1988

### Honors / Awards
California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Board Member, San Diego County Bar Foundation, 2013-2017; Board Member, San Diego Volunteer Lawyer Program, 2014-2017

## Kevin A. Lavelle | Partner

Kevin Lavelle is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation.

Lavelle has served on numerous litigation teams and helped obtain over $500 million for investors.  His work includes several significant recoveries against corporations, including HCA Holdings, Inc. ($215 million); Altria Group and JUUL Labs ($90 million); Endo Pharmaceuticals ($63 million); and Intercept Pharmaceuticals ($55 million), among others.

### Education
B.A., College of the Holy Cross, 2008; J.D., Brooklyn Law School, 2013

### Honors / Awards
500 X – The Next Generation, *Lawdragon*, 2023-2024; J.D., *Cum Laude*, Brooklyn Law School, 2013; B.A., *Cum Laude*, College of the Holy Cross, 2008

# Nathan R. Lindell | Partner

Nate Lindell is a partner in the Firm's San Diego office, where his practice focuses on representing aggrieved investors in complex civil litigation. He has helped achieve numerous significant recoveries for investors, including:*In re Enron Corp. Sec. Litig.* ($7.2 billion recovery); *In re HealthSouth Corp. Sec. Litig.* ($671 million recovery); *Luther v. Countrywide Fin. Corp.* ($500 million recovery); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.* ($388 million recovery); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* ($272 million recovery); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.* ($95 million recovery); *Massachusetts Bricklayers & Masons Tr. Funds v. Deutsche Alt-A Sec., Inc.* ($32.5 million recovery); *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.* ($24.9 million recovery); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.* ($21.2 million recovery); and *Genesee Cnty. Emps.' Ret. Sys. v. Thornburg Mortg., Inc.* ($11.25 million recovery). In October 2016, Lindell successfully argued in front of the New York Supreme Court, Appellate Division, First Judicial Department, for the reversal of an earlier order granting defendants' motion to dismiss in *Phoenix Light SF Limited v. Morgan Stanley*.

Lindell was also a member of the litigation team responsible for securing a landmark victory from the Second Circuit Court of Appeals in its precedent-setting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* decision, which dramatically expanded the scope of permissible class actions asserting claims under the Securities Act of 1933 on behalf of mortgage-backed securities investors, and ultimately resulted in a $272 million recovery for investors.

## Education
B.S., Princeton University, 2003; J.D., University of San Diego School of Law, 2006

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015-2017; Charles W. Caldwell Alumni Scholarship, University of San Diego School of Law; CALI/AmJur Award in Sports and the Law

# Ting H. Liu | Partner

Ting Liu is a partner in the Firm's San Diego office, where she represents large institutional and individual investors. Her practice focuses on complex securities litigation. Liu was a member of the trial team that obtained a $350 million settlement on the eve of trial in *Smilovits v. First Solar, Inc.*, the fifth-largest PSLRA settlement recovered in the Ninth Circuit at the time. She was also a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

## Education
B.A., University of Washington, 2012; J.D., University of San Diego School of Law, 2015

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2023-2025; 40 & Under List, *Benchmark Litigation*, 2024; Rising Star, *Law360*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024

## Ryan Llorens | Partner

Ryan Llorens is a partner in the Firm's San Diego office. Llorens' practice focuses on litigating complex securities fraud cases. He has worked on a number of securities cases that have resulted in significant recoveries for investors, including: *In re HealthSouth Corp. Sec. Litig.* ($670 million); *AOL Time Warner* ($629 million); *In re AT&T Corp. Sec. Litig.* ($100 million); *In re Fleming Cos. Sec. Litig.* ($95 million); and *In re Cooper Cos., Inc. Sec Litig.* ($27 million).

## Education
B.A., Pitzer College, 1997; J.D., University of San Diego School of Law, 2002

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015

## Andrew S. Love | Partner

Andrew Love is a partner in the Firm's San Francisco office and a member of the Firm's Appellate Practice Group. His practice focuses primarily on appeals of securities fraud class actions. Love has successfully briefed and argued cases on behalf of defrauded investors and consumers in several U.S. Courts of Appeal, as well as in the California appellate courts. Recent published cases include *New England Carpenters Guaranteed Annuity Pension Funds v. DeCarlo*, 80 F.4th 158 (2d Cir. 2023), *Stafford v. Rite Aid Corp.*, 998 F.3d 862 (9th Cir. 2021), *Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1 (1st Cir. 2021), and *Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017). He was also co-counsel in *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061 (2018).

Before joining the Firm and for more than two decades, Love represented inmates on California's death row in appellate and habeas corpus proceedings, successfully arguing capital cases in both the California Supreme Court and the Ninth Circuit. He co-chaired the Capital Case Defense Seminar (2004-2013), recognized as the largest conference for death penalty practitioners in the country. Additionally, he was on the faculty of the National Institute for Trial Advocacy's Post-Conviction Skills Seminar. Love is a member of the California Academy of Appellate Lawyers.

## Education
University of Vermont, 1981; J.D., University of San Francisco School of Law, 1985

## Honors / Awards
J.D., *Cum Laude*, University of San Francisco School of Law, 1985; McAuliffe Honor Society, University of San Francisco School of Law, 1982-1985

# Erik W. Luedeke | Partner

Erik Luedeke is a partner in the Firm's San Diego office, where he represents individual and institutional investors in breach of fiduciary duty and securities fraud litigation in state and federal courts nationwide. Luedeke is a member of the Firm's Delaware Practice Group. As corporate fiduciaries, directors and officers are duty-bound to act in the best interest of the corporation and its shareholders. When they fail to do so they breach their fiduciary duty and may be held liable for harm caused to the corporation. Luedeke's shareholder derivative practice focuses on litigating breach of fiduciary duty and related claims on behalf of corporations and shareholders injured by wayward corporate fiduciaries. Notable shareholder derivative actions in which he recently participated and the recoveries he helped to achieve include *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms), *In re Lumber Liquidators Holdings, Inc. S'holder Derivative Litig.* ($26 million in financial relief plus substantial governance), and *In re Google Inc. S'holder Derivative Litig.* ($250 million in financial relief to fund substantial governance).

Luedeke's practice also includes the prosecution of complex securities class action cases on behalf of aggrieved investors. Luedeke was a member of the litigation team in *Jaffe v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), that resulted in a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial ending in a plaintiffs' verdict. He was also a member of the litigation teams in *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.) ($925 million recovery), and *In re Questcor Pharms., Inc. Sec. Litig.*, No. 8:12-cv-01623 (C.D. Cal.) ($38 million recovery).

## Education

B.S./B.A., University of California Santa Barbara, 2001; J.D., University of San Diego School of Law, 2006

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2015-2017; Student Comment Editor, *San Diego International Law Journal*, University of San Diego School of Law

# Christopher H. Lyons | Partner

Christopher Lyons is a partner in the Firm's Nashville and Wilmington offices, and manages the Wilmington office. He focuses his practice on representing institutional and individual investors in merger-related class action litigation and in complex securities litigation. Lyons has been a significant part of litigation teams that have achieved substantial recoveries for investors. Notable Delaware cases that Lyons has co-led include *Bioverativ* (*Goldstein v. Denner*) ($124 million recovery), *Good Technology* ($52 million – about 1.5 times the consideration paid to common stockholders in the challenged private-company merger), *Blackhawk Network Holdings* ($29.5 million), and *The Fresh Market* (*Morrison v. Berry*) ($27.5 million recovered). Lyons has also been part of teams litigating federal securities cases that led to substantial recoveries, including *Envision* ($177.5 million), *CoreCivic* (*Grae v. Corrections Corporation of America*) ($56 million recovered), and *Nissan* ($36 million). His *pro bono* work includes representing individuals who are appealing denial of necessary medical benefits by TennCare (Tennessee's Medicaid program), through the Tennessee Justice Center.

Both during and before his time at Robbins Geller, Lyons has litigated extensively in Delaware courts, having tried cases on behalf of both plaintiffs and defendants in the Delaware Court of Chancery. Before joining Robbins Geller, Lyons practiced at a prominent Delaware law firm, where he mostly represented corporate officers and directors defending against breach of fiduciary duty claims in the Delaware Court of Chancery and in the Delaware Supreme Court. Before that, he clerked for Vice Chancellor J. Travis Laster of the Delaware Court of Chancery. Lyons now applies the expertise he gained from those experiences to help investors uncover wrongful conduct and recover the money and other remedies to which they are rightfully entitled.

## Education

B.A., Colorado College, 2006; J.D., Vanderbilt University Law School, 2010

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2018-2020, 2022-2024; Recommended Lawyer, *The Legal 500*, 2024; 40 & Under List, *Benchmark Litigation*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2022-2024; 500 X – The Next Generation, *Lawdragon*, 2023; 40 & Under Hot List, *Benchmark Litigation*, 2021; B.A., Distinction in International Political Economy, Colorado College, 2006; J.D., Law & Business Certificate, Vanderbilt University Law School, 2010

# Noam Mandel | Partner

Noam Mandel is a partner in the Firm's Manhattan office. Mandel has extensive experience in all aspects of litigation on behalf of investors, including securities law claims, corporate derivative actions, fiduciary breach class actions, and appraisal litigation. Mandel has represented investors in federal and state courts throughout the United States and has significant experience advising investors concerning their interests in litigation and investigating and prosecuting claims on their behalf.

Mandel has served as counsel in numerous outstanding securities litigation recoveries, including in *In re Nortel Networks Corporation Securities Litigation* ($1.07 billion shareholder recovery), *Ohio Public Employees Retirement System v. Freddie Mac* ($410 million shareholder recovery), and *In re Satyam Computer Services, Ltd. Securities Litigation* ($150 million shareholder recovery). Mandel has also served as counsel in notable fiduciary breach class and derivative actions, particularly before the Court of Chancery of the State of Delaware. These actions include the groundbreaking fiduciary duty litigation challenging the CVS/Caremark merger (*Louisiana Municipal Police Employees' Retirement System v. Crawford*), which resulted in more than $3.3 billion in additional consideration for Caremark shareholders. Mandel also served as counsel in *In re Dell Technologies Inc. Class V Stockholders Litigation*, which resulted in a $1 billion recovery for stockholders.

## Education

B.S., Georgetown University, School of Foreign Service, 1998; J.D., Boston University School of Law, 2002

## Honors / Awards

J.D., *Cum Laude*, Boston University School of Law, 2002; Member, *Boston University Law Review*, Boston University School of Law

# Mark T. Millkey | Partner

Mark Millkey is a partner in the Firm's Melville office. He has significant experience in the areas of securities and consumer litigation, as well as in federal and state court appeals.

During his career, Millkey has worked on a major consumer litigation against MetLife that resulted in a benefit to the class of approximately $1.7 billion, as well as a securities class action against Royal Dutch/Shell that settled for a minimum cash benefit to the class of $130 million and a contingent value of more than $180 million. Since joining Robbins Geller, he has worked on securities class actions that have resulted in more than $1.5 billion in settlements.

## Education

B.A., Yale University, 1981; M.A., University of Virginia, 1983; J.D., University of Virginia, 1987

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2013-2024

# David W. Mitchell | Partner

David Mitchell is a partner in the Firm's San Diego office and focuses his practice on antitrust and securities fraud litigation. He is a former federal prosecutor who has tried nearly 20 jury trials. As head of the Firm's Antitrust and Competition Law Practice Group, he has served as lead or co-lead counsel in numerous cases and has helped achieve substantial settlements for shareholders. His most notable antitrust cases include *Dahl v. Bain Cap. Partners, LLC*, obtaining more than $590 million for shareholders, and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, in which a settlement of $5.5 billion was approved in the Eastern District of New York. This case was brought on behalf of millions of U.S. merchants against Visa and MasterCard and various card-issuing banks, challenging the way these companies set and collect tens of billions of dollars annually in merchant fees. The settlement is believed to be the largest antitrust class action settlement of all time.

Additionally, Mitchell served as co-lead counsel in the ISDAfix Benchmark action against 14 major banks and broker ICAP plc, obtaining $504.5 million for plaintiffs. Currently, Mitchell serves as court-appointed lead counsel in *In re Aluminum Warehousing Antitrust Litig.*, *City of Providence, Rhode Island v. BATS Global Markets Inc.*, *In re SSA Bonds Antitrust Litig.*, *In re Remicade Antitrust Litig.*, and *In re 1-800 Contacts Antitrust Litig.*

## Education

B.A., University of Richmond, 1995; J.D., University of San Diego School of Law, 1998

## Honors / Awards

Member, Enright Inn of Court; Super Lawyer, *Super Lawyers Magazine*, 2016-2025; Best Lawyer in America, *Best Lawyers®*, 2018-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Leading Lawyer in America, *Lawdragon*, 2020-2024; Top 50 Lawyers in San Diego, *Super Lawyers Magazine*, 2021; Southern California Best Lawyer, *Best Lawyers®*, 2018-2021; Honoree, Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2018; Antitrust Trailblazer, *The National Law Journal*, 2015; "Best of the Bar," *San Diego Business Journal*, 2014

# Danielle S. Myers | Partner

Danielle Myers is a partner in the Firm's San Diego office and focuses her practice on complex securities litigation. Myers oversees the Portfolio Monitoring Program® and provides legal recommendations to the Firm's institutional investor clients on their options to maximize recoveries in securities litigation, both within the United States and internationally, from inception to settlement.

Myers advises the Firm's clients in connection with lead plaintiff applications and has helped secure appointment of the Firm's clients as lead plaintiff and the Firm's appointment as lead counsel in hundreds of securities class actions, which cases have yielded more than $4 billion for investors, including 2018-2024 recoveries in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) ($1.2 billion); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) ($1.025 billion); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314 (N.D. Cal.) ($809.5 million); *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033 (N.D. Cal.) ($490 million); *In re Under Armour Sec. Litig.*, No. 1:17-cv-00388 (D. Md.) ($434 million); *Smilovits v. First Solar, Inc.*, No. 2:12-cv-00555 (D. Ariz.) ($350 million); *Flynn v. Exelon Corp.*, No. 1:19-cv-08209 (N.D. Ill.) ($173 million); *City of Pontiac Gen. Ret. Sys. v. Wal-Mart Stores, Inc.*, No. 5:12-cv-5162 (W.D. Ark.) ($160 million); *Evellard v. LendingClub Corp.*, No. 3:16-cv-02627 (N.D. Cal.) ($125 million); *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, No. 2:19-cv-03347 (S.D. Ohio) ($109 million); *Knurr v. Orbital ATK, Inc.*, No. 1:16-cv-01031 (E.D. Va.) ($108 million); *In re Novo Nordisk Sec. Litig.*, No 3:17-cv-00209 (D.N.J.) ($100 million); *Karinski v. Stamps.com, Inc.*, No. 2:19-cv-01828 (C.D. Cal.) ($100 million); and *Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-00736 (E.D. Tex.) ($97.5 million). Myers is also a frequent presenter on securities fraud and corporate governance reform at conferences and events around the world.

## Education

B.A., University of California at San Diego, 1997; J.D., University of San Diego, 2008

## Honors / Awards

Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Leading Lawyer in America, *Lawdragon*, 2022-2025; Future Star, *Benchmark Litigation*, 2019-2020, 2023-2025; Leading Lawyer, *The Legal 500*, 2020-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2023; Top 100 Leaders in Law Honoree, *San Diego Business Journal*, 2022; Best Lawyer in Southern California: One to Watch, *Best Lawyers®*, 2021; Next Generation Lawyer, *The Legal 500*, 2017-2019; Recommended Lawyer, *The Legal 500*, 2019; Rising Star, *Super Lawyers Magazine*, 2015-2018; One of the "Five Associates to Watch in 2012," *Daily Journal*; Member, *San Diego Law Review*; CALI Excellence Award in Statutory Interpretation

## Eric I. Niehaus | Partner

Eric Niehaus is a partner in the Firm's San Diego office, where his practice focuses on complex securities and derivative litigation. His efforts have resulted in numerous multi-million dollar recoveries to shareholders and extensive corporate governance changes. Notable examples include: *In re NYSE Specialists Sec. Litig.* (S.D.N.Y.); *In re Novatel Wireless Sec. Litig.* (S.D. Cal.); *Batwin v. Occam Networks, Inc.* (C.D. Cal.); *Commc'ns Workers of Am. Plan for Employees' Pensions and Death Benefits v. CSK Auto Corp.* (D. Ariz.); *Marie Raymond Revocable Trust v. Mat Five* (Del. Ch.); and *Kelleher v. ADVO, Inc.* (D. Conn.). He most recently prosecuted a case against Stamps.com in the Central District of California that resulted in a $100 million settlement for shareholders of the company's stock. Before joining the Firm, Niehaus worked as a Market Maker on the American Stock Exchange in New York and the Pacific Stock Exchange in San Francisco.

### Education

B.S., University of Southern California, 1999; J.D., California Western School of Law, 2005

### Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2015-2016; J.D., *Cum Laude*, California Western School of Law, 2005; Member, *California Western Law Review*

## Erika Oliver | Partner

Erika Oliver is a partner in the Firm's San Diego office. Before joining the Firm, Erika served as a judicial law clerk to the Honorable Anthony J. Battaglia of the Southern District of California. At the Firm, her practice focuses on complex securities litigation. Most recently, Erika and Luke Brooks defeated defendants' motion to dismiss securities fraud claims arising from purchases on Israel's Tel Aviv Stock Exchange in *In re Teva Sec. Litig.* (D. Conn.). Erika was also a member of the litigation teams of Robbins Geller attorneys that successfully recovered hundreds of millions of dollars for investors in securities class actions, including *Purple Mountain Trust v. Wells Fargo & Co.* (N.D. Cal.) ($300 million recovery), *Evanston Police Pension Fund v. McKesson Corp.* (N.D. Cal.) ($141 million recovery), *In re Novo Nordisk Sec. Litig.* (D.N.J.) ($100 million recovery), *Fleming v. Impax Labs. Inc.* (N.D. Cal.) ($33 million recovery), and *In re Banc of California Sec. Litig.* (C.D. Cal.) ($19.75 million recovery).

### Education

B.S., San Diego State University, 2009; J.D., University of San Diego School of Law, 2015

### Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2024-2025; Leading Litigator in America, *Lawdragon*, 2024-2025; 40 & Under List, *Benchmark Litigation*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2021-2024; Top 40 Under 40, *Daily Journal*, 2023; 500 X – The Next Generation, *Lawdragon*, 2023; Rising Star, *Law360*, 2023; Best Lawyer in Southern California: One to Watch, *Best Lawyers®*, 2021; J.D., *Magna Cum Laude*, University of San Diego School of Law, 2015; B.S., *Cum Laude*, San Diego State University, 2009

# Lucas F. Olts | Partner

Luke Olts is a partner in the Firm's San Diego office, where his practice focuses on securities litigation on behalf of individual and institutional investors. Olts recently served as lead counsel in *In re Facebook Biometric Info. Privacy Litig.*, a cutting-edge class action concerning Facebook's alleged privacy violations through its collection of users' biometric identifiers without informed consent that resulted in a $650 million settlement. Olts has focused on litigation related to residential mortgage-backed securities, and has served as lead counsel or co-lead counsel in some of the largest recoveries arising from the collapse of the mortgage market. For example, he was a member of the team that recovered $388 million for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, and a member of the litigation team responsible for securing a $272 million settlement on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* Olts also served as co-lead counsel in *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, which recovered $627 million under the Securities Act of 1933. He also served as lead counsel in *Siracusano v. Matrixx Initiatives, Inc.*, in which the U.S. Supreme Court unanimously affirmed the decision of the Ninth Circuit that plaintiffs stated a claim for securities fraud under §10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Olts also served on the litigation team in *In re Deutsche Bank AG Sec. Litig.*, in which the Firm obtained a $18.5 million settlement in a case against Deutsche Bank and certain of its officers alleging violations of the Securities Act of 1933. Before joining the Firm, Olts served as a Deputy District Attorney for the County of Sacramento, where he tried numerous cases to verdict, including crimes of domestic violence, child abuse, and sexual assault.

## Education

B.A., University of California, Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004

## Honors / Awards

Future Star, *Benchmark Litigation*, 2018-2020, 2023-2025; Global Plaintiff Lawyer, *Lawdragon*, 2024; Next Generation Lawyer, *The Legal 500*, 2017; Top Litigator Under 40, *Benchmark Litigation*, 2017; Under 40 Hotlist, *Benchmark Litigation*, 2016

# Steven W. Pepich | Partner

Steve Pepich is a partner in the Firm's San Diego office.  His practice has focused primarily on securities class action litigation, but has also included a wide variety of complex civil cases, including representing plaintiffs in mass tort, royalty, civil rights, human rights, ERISA, and employment law actions.  Pepich has participated in the successful prosecution of numerous securities class actions, including: *Carpenters Health & Welfare Fund v. Coca-Cola Co.* ($137.5 million recovery); *In re Fleming Cos. Inc. Sec. & Derivative Litig.* ($95 million recovered); *In re Boeing Sec. Litig.* ($92 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.* ($65 million recovery); *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp.* ($43 million recovery); *In re Advanced Micro Devices Sec. Litig.* ($34 million recovery); and *Gohler v. Wood*, ($17.2 million recovery).  Pepich was a member of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers for recovery of unpaid wages.  He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million.

## Education
B.S., Utah State University, 1980; J.D., DePaul University, 1983

# Daniel J. Pfefferbaum | Partner

Daniel Pfefferbaum is a partner in the Firm's San Francisco office, where his practice focuses on complex securities litigation.  He has been a member of litigation teams that have recovered more than $750 million for investors, including: *In re Apple Inc. Sec. Litig.* ($490 million recovery); *City of Westland Police & Fire Ret. Sys. v. Metlife Inc.* ($84 million recovery); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.* ($65 million recovery); *In re Prudential Fin., Inc. Sec. Litig.* ($35 million recovery); *In re PMI Grp., Inc. Sec. Litig.* ($31.25 million recovery); *Hessefort v. Super Micro Computer, Inc.* ($18.25 million recovery); and *Xiang v. Inovalon Holdings, Inc.* ($17 million recovery).  Pfefferbaum was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump.  The settlement provides $25 million to approximately 7,000 consumers.  This result means individual class members are eligible for upwards of $35,000 in restitution.  He represented the class on a *pro bono* basis.

## Education
B.A., Pomona College, 2002; J.D., University of San Francisco School of Law, 2006; LL.M. in Taxation, New York University School of Law, 2007

## Honors / Awards
Future Star, *Benchmark Litigation*, 2018-2020, 2023-2025; 40 & Under Hot List, *Benchmark Litigation*, 2016-2020; Top 40 Under 40, *Daily Journal*, 2017; Rising Star, *Super Lawyers Magazine*, 2013-2017

# Theodore J. Pintar | Partner

Ted Pintar is a partner in the Firm's San Diego office. Pintar has over 20 years of experience prosecuting securities fraud actions and derivative actions and over 15 years of experience prosecuting insurance-related consumer class actions, with recoveries in excess of $1 billion. He was part of the litigation team in the AOL Time Warner state and federal court securities opt-out actions, which arose from the 2001 merger of America Online and Time Warner. These cases resulted in a global settlement of $618 million. Pintar was also on the trial team in *Knapp v. Gomez*, which resulted in a plaintiff's verdict. Pintar has successfully prosecuted several RICO cases involving the deceptive sale of deferred annuities, including cases against Allianz Life Insurance Company of North America ($250 million), American Equity Investment Life Insurance Company ($129 million), Midland National Life Insurance Company ($80 million), and Fidelity & Guarantee Life Insurance Company ($53 million). He has participated in the successful prosecution of numerous other insurance and consumer class actions, including: (i) actions against major life insurance companies such as Manufacturer's Life ($555 million initial estimated settlement value) and Principal Mutual Life Insurance Company ($380+ million), involving the deceptive sale of life insurance; (ii) actions against major homeowners insurance companies such as Allstate ($50 million) and Prudential Property and Casualty Co. ($7 million); (iii) actions against automobile insurance companies such as the Auto Club and GEICO; and (iv) actions against Columbia House ($55 million) and BMG Direct, direct marketers of CDs and cassettes. Pintar and co-counsel recently settled a securities class action for $32.8 million against Snap, Inc. in *Snap Inc. Securities Cases,* a case alleging violations of the Securities Act of 1933. Additionally, Pintar has served as a panelist for numerous Continuing Legal Education seminars on federal and state court practice and procedure.

## Education

B.A., University of California, Berkeley, 1984; J.D., University of Utah College of Law, 1987

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Super Lawyer, *Super Lawyers Magazine*, 2014-2017; CAOC Consumer Attorney of the Year Award Finalist, 2015; Note and Comment Editor, *Journal of Contemporary Law,* University of Utah College of Law; Note and Comment Editor, *Journal of Energy Law and Policy*, University of Utah College of Law

## Ashley M. Price | Partner

Ashley Price is a partner in the Firm's San Diego office. Her practice focuses on complex securities litigation. Price is currently serving as lead counsel in *Bucks Cnty. Emps. Ret. Sys. v. Norfolk Southern Corp.* (N.D. Ga.), a case brought on behalf of Norfolk Southern's investors following the catastrophic derailment of one of Norfolk Southern's freight trains outside of East Palestine, Ohio. Having prevailed against defendants' attempt to dismiss the case, the team is now pressing forward to obtain evidence for proving at a jury trial investors' claims that defendants fraudulently misrepresented the safety of their railroad operations.

Price also served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.* (S.D.N.Y.), a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history.

Price was likewise a key member of many other successful Robbins Geller litigation teams, including *Monroe Cnty. Emps.' Ret. Sys. v. Southern Co.* (N.D. Ga.) ($87.5 million recovery), *Strathclyde Pension Fund v. Bank OZK* (E.D. Ark.) ($45 million recovery), *Micholle v. Ophthotech Corp.* (S.D.N.Y.) ($29 million recovery), and *Mart v. Tactile Sys. Tech., Inc.* (D. Minn.) ($5 million recovery).

## Education
B.A., Duke University, 2006; J.D., Washington University in St. Louis, School of Law, 2011

## Honors / Awards
Best Lawyer in America: One to Watch, *Best Lawyers*®, 2023-2025; 500 X – The Next Generation, *Lawdragon*, 2023-2024; 40 & Under List, *Benchmark Litigation*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2024; 40 & Under Hot List, *Benchmark Litigation*, 2021; Rising Star, *Super Lawyers Magazine*, 2016-2021

# Willow E. Radcliffe | Partner

Willow Radcliffe is a partner in the Firm's San Francisco office, where she concentrates her practice in securities class action litigation in federal court. She has been significantly involved in the prosecution of numerous securities fraud claims, including actions filed against Pfizer, Inc. ($400 million recovery), CoreCivic (*Grae v. Corrections Corporation of America*) ($56 million recovery), Flowserve Corp. ($55 million recovery), Santander Consumer USA Holdings Inc. ($47 million), NorthWestern Corp. ($40 million recovery), Ashworth, Inc. ($15.25 million recovery), and Allscripts Healthcare Solutions, Inc. ($9.75 million recovery). Additionally, Radcliffe has represented plaintiffs in other complex actions, including a class action against a major bank regarding the adequacy of disclosures made to consumers in California related to access checks. Before joining the Firm, she clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California.

## Education

B.A., University of California, Los Angeles 1994; J.D., Seton Hall University School of Law, 1998

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers*®, 2021-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Best Lawyer in Northern California: One to Watch, *Best Lawyers*®, 2021; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020; J.D., *Cum Laude*, Seton Hall University School of Law, 1998; Most Outstanding Clinician Award; Constitutional Law Scholar Award

# Frank A. Richter | Partner

Frank Richter is a partner in the Firm's Chicago office, where he focuses on shareholder, antitrust, and class action litigation.

Richter was an integral member of the Robbins Geller team that secured a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* (D.N.J.), which is the ninth-largest securities class action settlement in history and the largest ever against a pharmaceutical manufacturer. More recently, Richter's representative matters include *Exelon* (N.D. Ill., $173 million settlement), which resolved securities claims stemming from the alleged concealment of an eight-year scheme to bribe a public official, as well as *Nutanix* (N.D. Cal., $71 million settlement), *Oak Street Health* (N.D. Ill., $60 million settlement), and *Grubhub* (N.D. Ill., $42 million settlement). In addition, Richter was a member of litigation teams that secured significant settlements in *HCA* (E.D. Tenn., $215 million), *Sprint* (D. Kan., $131 million), *Orbital ATK* (E.D. Va., $108 million), *Dana Corp.* (N.D. Ohio, $64 million), *Diplomat* (N.D. Ill., $15.5 million), *LJM Funds* (N.D. Ill., $12.85 million), and *Camping World* (N.D. Ill., $12.5 million).

Richter also works on antitrust matters, including serving on the Plaintiffs' Steering Committee in *In re Dealer Mgmt. Sys. Antitrust Litig.* (N.D. Ill.), and he represents plaintiffs as local counsel in class action and derivative shareholder litigation in Illinois state and federal courts.

## Education
B.A., Truman State University, 2007; M.M., DePaul University School of Music, 2009; J.D., DePaul University College of Law, 2012

## Honors / Awards
500 X – The Next Generation, *Lawdragon*, 2023-2024; 40 & Under List, *Benchmark Litigation*, 2023-2024; Rising Star, *Super Lawyers Magazine*, 2017-2022; 40 & Under Hot List, *Benchmark Litigation*, 2021; J.D., S*umma Cum Laude*, Order of the Coif, CALI Award for highest grade in seven courses, DePaul University College of Law, 2012

# Darren J. Robbins | Partner

Darren Robbins is a founding partner of Robbins Geller Rudman & Dowd LLP. Over the last two decades, Robbins has served as lead counsel in more than 100 securities class actions and has recovered billions of dollars for investors. Robbins served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a securities class action arising out of improper accounting practices, recovering more than $1 billion for class members. The *American Realty* settlement represents the largest recovery as a percentage of damages of any major class action brought pursuant to the Private Securities Litigation Reform Act of 1995 and resolved prior to trial. The $1+ billion settlement included the largest personal contributions ($237.5 million) ever made by individual defendants to a securities class action settlement.

Robbins also led Robbins Geller's prosecution of wrongdoing related to the sale of residential mortgage-backed securities (RMBS) prior to the global financial crisis, including an RMBS securities class action against Goldman Sachs that yielded a $272 million recovery for investors. Robbins served as co-lead counsel in connection with a $627 million recovery for investors in *In re Wachovia Preferred Securities & Bond/Notes Litig.*, one of the largest securities class action settlements ever involving claims brought solely under the Securities Act of 1933.

One of the hallmarks of Robbins' practice has been his focus on corporate governance reform.

In *UnitedHealth*, a securities fraud class action arising out of an options backdating scandal, Robbins represented lead plaintiff CalPERS and obtained the cancellation of more than 3.6 million stock options held by the company's former CEO and secured a record $925 million cash recovery for shareholders. He also negotiated sweeping corporate governance reforms, including the election of a shareholder-nominated director to the company's board of directors, a mandatory holding period for shares acquired via option exercise, and compensation reforms that tied executive pay to performance. Recently, Robbins led a shareholder derivative action brought by several pension funds on behalf of Community Health Systems, Inc. that yielded a $60 million payment to Community Health as well as corporate governance reforms that included two shareholder-nominated directors, the creation and appointment of a Healthcare Law Compliance Coordinator, the implementation of an executive compensation clawback in the event of a restatement, the establishment of an insider trading controls committee, and the adoption of a political expenditure disclosure policy.

## Education

B.S., University of Southern California, 1990; M.A., University of Southern California, 1990; J.D., Vanderbilt Law School, 1993

## Honors / Awards

Litigation Star, *Benchmark Litigation*, 2023-2025; California - Litigation Star, *Benchmark Litigation*, 2024-2025; Best Lawyer in America, *Best Lawyers®*, 2010-2025; Lawyer of the Year: Litigation – Securities, *Best Lawyers®*, 2023, 2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2022, 2024; Ranked by *Chambers USA*, 2014-2024; Hall of Fame, *The Legal 500*, 2023-2024; Top 10 Lawyers in San Diego, *Super Lawyers Magazine*, 2024; Leading Lawyer, *The Legal 500*, 2020-2022; Top 50 Lawyers in San Diego, *Super Lawyers Magazine*, 2015, 2021; Litigator of the Week, *The American Lawyer*, 2021; Southern California Best Lawyer, *Best Lawyers®*, 2012-2021; Local Litigation Star, *Benchmark Litigation*, 2013-2018, 2020; Recommended Lawyer, *The Legal 500*, 2011, 2017, 2019; Benchmark California Star, *Benchmark Litigation*, 2019; State Litigation Star, *Benchmark Litigation*, 2019; Lawyer of the Year, *Best Lawyers®*, 2017; Influential Business Leader, *San Diego Business Journal*, 2017; Litigator of the Year, *Our City San Diego*, 2017; One of the Top 100 Lawyers Shaping the Future, *Daily Journal*; One of the "Young Litigators 45 and Under," *The American Lawyer*; Attorney of the Year, *California Lawyer*; Managing Editor, *Vanderbilt Journal of Transnational Law*, Vanderbilt Law School

# Robert J. Robbins | Partner

Robert Robbins is a partner in the Firm's Boca Raton office.  He focuses his practice on investigating securities fraud, initiating securities class actions, and helping institutional and individual shareholders litigate their claims to recover investment losses caused by fraud.  Representing shareholders in all aspects of class actions brought pursuant to the federal securities laws, Robbins provides counsel in numerous securities fraud class actions across the country, helping secure significant recoveries for investors.

Recently, Robbins was a key member of the Robbins Geller litigation team that secured a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations."  This is the ninth largest securities class action settlement ever and the largest against a pharmaceutical manufacturer.  Robbins has also been a member of Robbins Geller litigation teams responsible for securing hundreds of millions of dollars in securities class action settlements, including: *Hospira* ($60 million recovery); *3D Systems* ($50 million); *CVS Caremark* ($48 million recovery); *Baxter International* ($42.5 million recovery); *Grubhub* ($42 million); *R.H. Donnelley* ($25 million recovery); *Spiegel* ($17.5 million recovery); *TECO Energy* ($17.35 million recovery); *AFC Enterprises* ($17.2 million recovery); *Accretive Health* ($14 million recovery); *Lender Processing Services* ($14 million recovery); *Lexmark Int'l* ($12 million); *Imperial Holdings* ($12 million recovery); *Mannatech* ($11.5 million recovery); *Newpark Resources* ($9.24 million recovery); *CURO Group* ($8.98 million); *Gilead Sciences* ($8.25 million recovery); *TCP International* ($7.175 million recovery); *Cryo Cell International* ($7 million recovery); *Gainsco* ($4 million recovery); and *Body Central* ($3.425 million recovery).

## Education
B.S., University of Florida, 1999; J.D., University of Florida College of Law, 2002

## Honors / Awards
Leading Litigator in America, *Lawdragon*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024; Rising Star, *Super Lawyers Magazine*, 2015-2017; J.D., High Honors, University of Florida College of Law, 2002; Member, *Journal of Law and Public Policy*, University of Florida College of Law; Member, *Phi Delta Phi*, University of Florida College of Law; *Pro bono* certificate, Circuit Court of the Eighth Judicial Circuit of Florida; Order of the Coif

# David A. Rosenfeld | Partner

David Rosenfeld, a partner in the Firm's Melville office, has focused his legal practice for more than 20 years in the area of securities litigation. He has argued in courts throughout the country, has been appointed lead counsel in dozens of securities fraud lawsuits, and has successfully recovered hundreds of millions of dollars for defrauded shareholders.

Rosenfeld works on all stages of litigation, including drafting pleadings, arguing motions, and negotiating settlements. Most recently, he led the teams of Robbins Geller attorneys in recovering $95 million for shareholders of Tableau Software, Inc., $90 million for shareholders of Altria Group, Inc., $40 million for shareholders of BRF S.A, $20 million for shareholders of Grana y Montero (where shareholders recovered more than 90% of their losses), and $34.5 million for shareholders of L-3 Communications Holdings, Inc.

Rosenfeld also led the Robbins Geller team in recovering in excess of $34 million for investors in Overseas Shipholding Group, which represented an outsized recovery of 93% of bond purchasers' damages and 28% of stock purchasers' damages. The creatively structured settlement included more than $15 million paid by a bankrupt entity. Rosenfeld also led the effort that resulted in the recovery of nearly 90% of losses for investors in Austin Capital, a sub-feeder fund of Bernard Madoff. In connection with this lawsuit, Rosenfeld met with and interviewed Madoff in federal prison in Butner, North Carolina.

Rosenfeld has also achieved remarkable recoveries against companies in the financial industry. In addition to being appointed lead counsel in the securities fraud lawsuit against First BanCorp ($74.25 million recovery), he recovered $70 million for investors in Credit Suisse Group and $14 million for Barclays investors.

## Education

B.S., Yeshiva University, 1996; J.D., Benjamin N. Cardozo School of Law, 1999

## Honors / Awards

Future Star, *Benchmark Litigation*, 2016-2020, 2023-2025; Super Lawyer, *Super Lawyers Magazine*, 2014-2024; Recommended Lawyer, *The Legal 500*, 2018; Rising Star, *Super Lawyers Magazine*, 2011-2013

# Robert M. Rothman | Partner

Robert Rothman is a partner in the Firm's Melville office and a member of the Firm's Management Committee.  He has recovered well in excess of $1 billion on behalf of victims of investment fraud, consumer fraud, and antitrust violations.

Recently, Rothman served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.* where he obtained a $1.025 billion cash recovery on behalf of investors.  Rothman and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers.  The recovery represents the highest percentage of damages ever obtained in a major PSLRA case before trial and includes the largest personal contributions by individual defendants in history.  Additionally, Rothman has recovered hundreds of millions of dollars for investors in cases against First Bancorp, Doral Financial, Popular, iStar, Autoliv, CVS Caremark, Fresh Pet, The Great Atlantic & Pacific Tea Company (A&P), NBTY, Spiegel, American Superconductor, Iconix Brand Group, Black Box, OSI Pharmaceuticals, Gravity, Caminus, Central European Distribution Corp., OneMain Holdings, The Children's Place, CNinsure, Covisint, FleetBoston Financial, Interstate Bakeries, Hibernia Foods, Jakks Pacific, Jarden, Portal Software, Ply Gem Holdings, Orion Energy, Tommy Hilfiger, TD Banknorth, Teletech, Unitek, Vicuron, Xerium, W Holding, and dozens of others.

Rothman also represents shareholders in connection with going-private transactions and tender offers. For example, in connection with a tender offer made by Citigroup, Rothman secured an increase of more than $38 million over what was originally offered to shareholders.  He also actively litigates consumer fraud cases, including a case alleging false advertising where the defendant agreed to a settlement valued in excess of $67 million.

## Education

B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

## Honors / Awards

Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Leading Lawyer in America, *Lawdragon*, 2025; Super Lawyer, *Super Lawyers Magazine*, 2011, 2013-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2022-2024; Northeast Trailblazer, *The American Lawyer*, 2022; New York Trailblazer, *New York Law Journal*, 2020; Dean's Academic Scholarship Award, Hofstra University School of Law; J.D., with Distinction, Hofstra University School of Law, 1993; Member, *Hofstra Law Review*, Hofstra University School of Law

# Samuel H. Rudman | Partner

Sam Rudman is a founding member of the Firm, a member of the Firm's Management Committee, and manages the Firm's New York offices. His 26-year securities practice focuses on recognizing and investigating securities fraud, and initiating securities and shareholder class actions to vindicate shareholder rights and recover shareholder losses. Rudman is also part of the Firm's SPAC Task Force, which is dedicated to rooting out and prosecuting fraud on behalf of injured investors in special purpose acquisition companies. A former attorney with the SEC, Rudman has recovered hundreds of millions of dollars for shareholders, including a $200 million recovery in *Motorola*, a $129 million recovery in *Doral Financial*, an $85 million recovery in *Blackstone*, a $74 million recovery in *First BanCorp*, a $65 million recovery in *Forest Labs*, a $62.5 million recovery in *SQM*, a $50 million recovery in *TD Banknorth*, a $48 million recovery in *CVS Caremark*, a $34.5 million recovery in *L-3 Communications Holdings*, a $32.8 million recovery in *Snap, Inc.*, and a $18.5 million recovery in *Deutsche Bank*.

## Education

B.A., Binghamton University, 1989; J.D., Brooklyn Law School, 1992

## Honors / Awards

Global Plaintiff Lawyer, *Lawdragon*, 2025; Leading Lawyer in America, *Lawdragon*, 2016-2022, 2025; Litigation Star, *Benchmark Litigation*, 2013, 2017-2019, 2023-2025; National Practice Area Star, *Benchmark Litigation*, 2019-2020, 2024-2025; Super Lawyer, *Super Lawyers Magazine*, 2007-2024; Ranked by *Chambers USA*, 2014-2024; Recommended Lawyer, *The Legal 500*, 2018-2019, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Top 10 Most Influential Securities Litigation Attorney in New York, *Business Today*, 2023; New York Trailblazer, *New York Law Journal*, 2020; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2020; Local Litigation Star, *Benchmark Litigation*, 2013-2020; Dean's Merit Scholar, Brooklyn Law School; Moot Court Honor Society, Brooklyn Law School; Member, *Brooklyn Journal of International Law*, Brooklyn Law School

# Joseph Russello | Partner

Joseph Russello is a partner in the Firm's Melville office.  He began his career as a defense lawyer and now represents investors in securities class actions at the trial and appellate levels.

Rusello spearheaded the team that recovered $85 million in litigation against The Blackstone Group, LLC, a case that yielded a landmark decision from the Second Circuit Court of Appeals on "materiality" in securities actions.  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706 (2d Cir. 2011).  He also led the team responsible for partially defeating dismissal and achieving a $50 million settlement in litigation against BHP Billiton, an Australia-based mining company accused of concealing safety issues at a Brazilian iron-ore dam. *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65 (S.D.N.Y. 2017).

Recently, Rusello was co-counsel in a lawsuit against Allied Nevada Gold Corporation, recovering $14.5 million for investors after the Ninth Circuit Court of Appeals reversed two dismissal decisions.  *In re Allied Nev. Gold Corp. Sec. Litig.*, 743 F. App'x 887 (9th Cir. 2018).  He was also instrumental in obtaining a settlement and favorable appellate decision in litigation against SAIC, Inc., a defense contractor embroiled in a decade-long overbilling fraud against the City of New York. *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016).  Other notable recent decisions include: *In re Qudian Sec. Litig.*,189 A.D. 3d 449 (N.Y. App. Div., 1st Dep't 2020); *Kazi v. XP Inc.*, 2020 WL 4581569 (N.Y. Sup. Ct. Aug. 5, 2020); *In re Dentsply Sirona, Inc. S'holders Litig.*, 2019 WL 3526142 (N.Y. Sup. Ct. Aug. 2, 2019); and *Matter of PPDAI Grp. Sec. Litig.*, 64 Misc. 3d 1208(A), 2019 WL 2751278 (N.Y. Sup. Ct. 2019).  Other notable settlements include: *NBTY, Inc.* ($16 million); *LaBranche & Co., Inc.* ($13 million); *The Children's Place Retail Stores, Inc.* ($12 million); and *Prestige Brands Holdings, Inc.* ($11 million).

## Education
B.A., Gettysburg College, 1998; J.D., Hofstra University School of Law, 2001

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2014-2020, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; *Law360* Securities Editorial Advisory Board, 2017-2022

# Scott H. Saham | Partner

Scott Saham is a partner in the Firm's San Diego office, where his practice focuses on complex securities litigation. He is licensed to practice law in both California and Michigan. Most recently, Saham was a member of the litigation team that obtained a $125 million settlement in *In re LendingClub Sec. Litig.*, a settlement that ranked among the top ten largest securities recoveries ever in the Northern District of California. He was also part of the litigation teams in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee, and *Luna v. Marvell Tech. Grp., Ltd.*, which resulted in a $72.5 million settlement that represents approximately 24% to 50% of the best estimate of classwide damages suffered by investors. He also served as lead counsel prosecuting the *Pharmacia* securities litigation in the District of New Jersey, which resulted in a $164 million recovery. Additionally, Saham was lead counsel in the *In re Coca-Cola Sec. Litig.* in the Northern District of Georgia, which resulted in a $137.5 million recovery after nearly eight years of litigation. He also obtained reversal from the California Court of Appeal of the trial court's initial dismissal of the landmark *Countrywide* mortgage-backed securities action. This decision is reported as *Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789 (2011), and following this ruling that revived the action the case settled for $500 million.

## Education

B.A., University of Michigan, 1992; J.D., University of Michigan Law School, 1995

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Distinguished Pro Bono Attorney of the Year, *Casa Cornelia Law Center*, 2022

ATTORNEY BIOGRAPHIES

# Juan Carlos Sanchez | Partner

Juan Carlos "J.C." Sanchez is a partner in the Firm's San Diego office.  He specializes in complex securities litigation and has extensive experience advising investors on their exposure to securities fraud and advising them on their litigation options for recovering losses.  He has advised institutional and retail investors in more than 70 securities class actions that yielded more than $1.5 billion in class-wide recoveries.

Sanchez was a key member of the litigation team that secured the largest shareholder derivative recovery ever in Tennessee and the Sixth Circuit and unprecedented corporate governance reforms in *In re Community Health Sys., Inc. S'holder Derivative Litig*.  More recently, Sanchez was a member of the Robbins Geller litigation team that ultimately obtained a $434 million settlement in *In re Under Armour Sec. Litig.*, a case that was previously dismissed with prejudice in 2019 but then resurrected through a highly unusual procedural maneuver – a successful motion asking the federal judge who had dismissed the case to issue an indicative opinion informing the Fourth Circuit that he would revive the original case if it were remanded to him.  The $434 million recovery is the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.  Beyond securities litigation, Sanchez's representation of California passengers in a landmark consumer and civil rights case against Greyhound Lines, Inc. led to a ruling recognizing that transit passengers do not check their rights and dignity at the bus door.  *Law360* honored Sanchez and the *Greyhound* litigation team as a Consumer Protection Group of the Year in 2019.

Before joining Robbins Geller, Sanchez served as a judicial law clerk to the Honorable Nelva Gonzales Ramos of the U.S. District Court for the Southern District of Texas.

## Education

B.S., University of California, Davis, 2005; J.D., University of California, Berkeley School of Law (Boalt Hall), 2014

## Honors / Awards

Leading Litigator in America, *Lawdragon*, 2024-2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2023-2024

# Vincent M. Serra | Partner

Vincent Serra is a partner in the Firm's Melville office. His practice focuses primarily on complex securities and consumer actions, but has also included antitrust, employment, insurance, and environmental litigation. His efforts have contributed to the recovery of billions of dollars on behalf of aggrieved plaintiffs and class members and significant injunctive relief for individuals and municipalities throughout the country. Notably, Serra has contributed to several noteworthy recoveries, including *Dahl v. Bain Cap. Partners, LLC* ($590.5 million recovery), an antitrust action against the world's largest private equity firms alleging collusive practices in multi-billion dollar leveraged buyouts, and *Samit v. CBS Corp.* ($14.75 million recovery), a securities action alleging that defendants made false and misleading statements about their knowledge of former CEO Leslie Moonves's exposure to the #MeToo movement.

Additionally, Serra was a member of the litigation team that obtained a $22.75 million settlement fund on behalf of route drivers in *Veliz v. Cintas Corp.*, an action asserting violations of federal and state overtime laws. He was also part of the successful trial team in *Lebrilla v. Farmers Grp., Inc.*, which involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles. Other notable cases include *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.* ($5.5 billion recovery), *In re DouYu Int'l Holdings Ltd. Sec. Litig.* ($15 million state court securities recovery) and *Kail v. Wolf Appliance, Inc.* (confidential settlement in breach of warranty actions involving faulty blue porcelain oven cavities).

Serra has litigated several actions against manufacturers and retailers alleging the improper marketing and sale of purportedly "flushable" wipes products, including consumer fraud, nuisance, and strict product liability claims. For example, in *Commissioners of Public Works of the City of Charleston (d.b.a. Charleston Water System) v. Costco Wholesale Corp.*, Serra led the prosecution of seven defendants resulting in industrywide settlements that secured commitments from the leading flushable wipes manufacturers and retailers to meet the national municipal wastewater standard for flushability and enhance "do not flush" labeling for non-flushable wipes, helping to meaningfully reduce wipes-related sewer impacts for municipalities and wastewater utilities nationwide. Serra also recently helped secure additional nationwide relief on behalf of the Charleston Water System in an analogous settlement with Dude Products Inc.

## Education
B.A., University of Delaware, 2001; J.D., California Western School of Law, 2005

## Honors / Awards
Best Lawyer in America: One to Watch, *Best Lawyers*®, 2024-2025; Wiley W. Manuel Award for Pro Bono Legal Services, State Bar of California

# Sam S. Sheldon | Partner

Sam Sheldon is a partner in the Firm's San Diego office, where he focuses on securities fraud and other complex civil litigation. Before joining the Firm in January 2024, Sheldon served more than five years as a United States Magistrate Judge in the Southern District of Texas, primarily in Houston. He wrote opinions in almost every area of the law, including securities fraud, intellectual property, class actions, labor and employment, False Claims Act, and criminal law.

Most recently, Sheldon was a part of a team of Robbins Geller attorneys that successfully obtained a $434 million settlement in *In re Under Armour Sec. Litig*. The case settled just weeks before a jury trial was set to begin in Baltimore, Maryland. The $434 million recovery is the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

Before taking the federal bench, Sheldon was a partner with Quinn Emanuel in the Washington, D.C. office and headed the firm's Health Care Practice Group. He represented plaintiffs in landmark cases brought under the federal False Claims Act.

Sheldon previously served as Chief of the Health Care Fraud Unit in the DOJ Criminal Division in Washington, D.C., where he oversaw the prosecution of federal health care fraud throughout the United States. He also was an Assistant United States Attorney in Texas. Earlier in his career, Sheldon was a partner with Cozen O'Connor in the San Diego office. Sheldon has tried 25 cases as a federal prosecutor and civil litigator. He received numerous awards for his successful federal prosecutions from the DOJ and other federal agencies including the Special Achievement Award presented by the United States Attorney General.

## Education

B.A., University of Southern California, 1992; M.A., University of Southern California, 1994; J.D., University of Houston Law Center, 1997

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; Prosecutor Leadership Award presented by the Inspector General for the United States Department of Health and Human Services, 2013; Special Award from the Director of the FBI for excellent work with the Medicare Fraud Taskforce, 2013; Exceptional Service Award presented by the United States Assistant Attorney General, 2011; Special Achievement Award presented by the United States Attorney General for Sustained Superior Performance of Duty, 2010; International Achievement Award from the Assistant Director of the Department of Homeland Security for prosecuting the first illegal exportation of goods case in the Southern District of Texas (under 18 U.S.C. §554), 2010; Special Award from the Director of the FBI for prosecuting the first agricultural fraud case in the United States (under 7 U.S.C. §7711), 2009

# Arthur L. Shingler III  |  Partner

Arthur Shingler is a partner in the Firm's San Diego office.  Shingler has successfully represented both public and private sector clients in hundreds of complex, multi-party actions with billions of dollars in dispute.  Throughout his career, he has obtained outstanding results for those he has represented in cases generally encompassing shareholder derivative and securities litigation, unfair business practices and antitrust litigation, publicity rights and advertising litigation, ERISA litigation, and other insurance, health care, employment, and commercial disputes.

Representative matters in which Shingler has served as a core member of the litigation team or settlement counsel include, among others: *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litig.*, No. 2:17-md-02785 (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen, which allowed the prices of the life-saving EpiPen to rise over 600% in 9 years); *In re Remicade Antitrust Litig.*, No. 2:17-cv-04326 (E.D. Pa.) ($25 million recovery for indirect purchasers in antitrust action); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687 (D.N.J.) (direct purchaser class settled in excess of $100 million); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (S.D.N.Y.) ($272 million recovery); *In re Royal Dutch/Shell ERISA Litig.*, No. 3:04-cv-00374 (D.N.J.) ($90 million settlement); *In re Priceline.com Sec. Litig.*, No. 3:00-cv-01884 (D. Conn.) ($80 million settlement); *In re General Motors ERISA Litig.*, No. 05-71085 (E.D. Mich.) ($37.5 million settlement, in addition to significant revision of retirement plan administration); *Wood v. Ionatron, Inc.*, No. 4:06-cv-00354 (D. Ariz.) ($6.5 million settlement); *In re Lattice Semiconductor Corp. Derivative Litig.*, No. C 043327CV (Or. Cir. Ct., Wash. Cnty.) (corporate governance settlement, including substantial revision of board policies and executive management); *In re 360networks Class Action Sec. Litig.*, No. 1:02-cv-04837 (S.D.N.Y.) ($7 million settlement); and *Rothschild v. Tyco Int'l (US), Inc.*, 83 Cal. App. 4th 488 (2000) (shaped scope of California's Unfair Practices Act as related to limits of State's False Claims Act).

In addition, Shingler is currently working on behalf of plaintiffs in several class actions, including, for example, *In re National Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio), and *In re American Airlines/JetBlue Antitrust Litig.*, No. 1:22-cv-07374 (E.D.N.Y.).

## Education
B.A., Point Loma Nazarene College, 1989; J.D., Boston University School of Law, 1995

## Honors / Awards
B.A., *Cum Laude*, Point Loma Nazarene College, 1989

# Jessica T. Shinnefield | Partner

Jessica Shinnefield is a partner in the Firm's San Diego office. Currently, her practice focuses on initiating, investigating, and prosecuting securities fraud class actions. Shinnefield served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history. Shinnefield also served as lead counsel in *Smilovits v. First Solar, Inc.*, and obtained a $350 million settlement on the eve of trial. The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

Shinnefield was also a member of the litigation team prosecuting actions against investment banks and leading national credit rating agencies for their roles in structuring and rating structured investment vehicles backed by toxic assets in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Incorporated* and *King County, Washington v. IKB Deutsche Industriebank AG*. These cases were among the first to successfully allege fraud against the rating agencies, whose ratings have traditionally been protected by the First Amendment. Shinnefield also litigated individual opt-out actions against AOL Time Warner – *Regents of the Univ. of Cal. v. Parsons* and *Ohio Pub. Emps. Ret. Sys. v. Parsons* (recovery more than $600 million). Additionally, she litigated an action against Omnicare, in which she helped obtain a favorable ruling for plaintiffs from the United States Supreme Court. Shinnefield has also successfully appealed lower court decisions in the Second, Seventh, and Ninth Circuit Courts of Appeals.

## Education

B.A., University of California at Santa Barbara, 2001; J.D., University of San Diego School of Law, 2004

## Honors / Awards

Future Star, *Benchmark Litigation*, 2023-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Top Woman Lawyer, *Daily Journal*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023; Plaintiffs' Lawyers Trailblazer, *The National Law Journal*, 2021; Litigator of the Week, *The American Lawyer*, 2020; Rising Star, *Super Lawyers Magazine*, 2015-2019; 40 & Under Hot List, *Benchmark Litigation*, 2018-2019; B.A., *Phi Beta Kappa*, University of California at Santa Barbara, 2001

## Elizabeth A. Shonson | Partner

Elizabeth Shonson is a partner in the Firm's Boca Raton office. She concentrates her practice on representing investors in class actions brought pursuant to the federal securities laws. Shonson has litigated numerous securities fraud class actions nationwide, helping achieve significant recoveries for aggrieved investors. She was a member of the litigation teams responsible for recouping millions of dollars for defrauded investors, including: *In re Massey Energy Co. Sec. Litig.* (S.D. W.Va.) ($265 million); *Nieman v. Duke Energy Corp.* (W.D.N.C.) ($146.25 million recovery); *In re ADT Inc. S'holder Litig.* (Fla. Cir. Ct., 15th Jud. Cir.) ($30 million settlement); *Eshe Fund v. Fifth Third Bancorp* (S.D. Ohio) ($16 million); *City of St. Clair Shores Gen. Emps. Ret. Sys. v. Lender Processing Servs., Inc.* (M.D. Fla.) ($14 million); and *In re Synovus Fin. Corp.* (N.D. Ga.) ($11.75 million).

## Education

B.A., Syracuse University, 2001; J.D., University of Florida Levin College of Law, 2005

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2016-2019; J.D., *Cum Laude*, University of Florida Levin College of Law, 2005; Editor-in-Chief, *Journal of Technology Law & Policy*; Phi Delta Phi; B.A., with Honors, *Summa Cum Laude*, Syracuse University, 2001; Phi Beta Kappa

## Trig Smith | Partner

Trig Smith is a partner in the Firm's San Diego office where he focuses his practice on complex securities litigation. He has been involved in the prosecution of numerous securities class actions that have resulted in over a billion dollars in recoveries for investors. His cases have included: *In re Cardinal Health, Inc. Sec. Litig.* ($600 million recovery); *Jones v. Pfizer Inc.* ($400 million recovery); *Silverman v. Motorola, Inc.* ($200 million recovery); and *City of Livonia Emps.' Ret. Sys. v. Wyeth* ($67.5 million). Most recently, he was a member of the Firm's trial team in *Hsu v. Puma Biotechnology, Inc.*, a securities fraud class action that resulted in a verdict in favor of investors after a two-week jury trial.

## Education

B.S., University of Colorado, Denver, 1995; M.S., University of Colorado, Denver, 1997; J.D., Brooklyn Law School, 2000

## Honors / Awards

Best Lawyer in America, *Best Lawyers®*, 2024-2025; Member, *Brooklyn Journal of International Law*, Brooklyn Law School; CALI Excellence Award in Legal Writing, Brooklyn Law School

## Mark Solomon | Partner

Mark Solomon is a founding and managing partner of the Firm and leads its international litigation practice. Over the last 31 years, he has regularly represented United States and United Kingdom-based pension funds and asset managers in class and non-class securities litigation in federal and state courts throughout the United States. He was first admitted to the Bar of England and Wales as a Barrister (he is non-active) and is an active member of the Bars of Ohio, California, and various United States federal district and appellate courts.

Since 1993, Mark has spearheaded the prosecution of many significant securities fraud cases. He and his teams have won jury trials and have obtained multi-hundred million-dollar recoveries for plaintiffs in pre-trial settlements as well as significant corporate governance reforms designed to limit recidivism and promote appropriate standards.

Mark currently is counsel to a number of U.K. pension funds that are serving or have served as lead plaintiffs in cases throughout the United States in the last ten years. He represented Norfolk Pension Fund in the securities fraud class action against Apple Inc. and Apple executives in *In re Apple Inc. Sec. Litig.* in the federal district court for the Northern District of California, which resulted in a settlement shortly before trial of $490 million payable by the defendants to the investor class – the third-largest ever securities fraud recovery in the Northern District and the fifth-largest in the Ninth Circuit. He represented the British Coal Staff Superannuation Scheme and the Mineworkers' Pension Scheme in *Smilovits v. First Solar, Inc.* in the federal district court for the District of Arizona in which the class recovered $350 million on the eve of trial. That settlement resulted in the largest-ever securities fraud recovery in the District of Arizona and the seventh-largest in the Ninth Circuit. He represented the U.K.'s Norfolk Pension Fund in *Hsu v. Puma Biotechnology, Inc.* where, in the federal district court for the Central District of California, after three weeks of trial, the Fund obtained a jury verdict valued at over $54 million in favor of the class against the company and its CEO. He represented Strathclyde Pension Fund in *Strathclyde Pension Fund v. Bank OZK*, a class action against Bank OZK and its CEO, in the federal district court for the Eastern District of Arkansas in which the class recovered $45 million. Mark also represented Strathclyde Pension Fund in *In re Ply Gem Holdings, Inc. Sec. Litig.* where the class recovered $26 million.

In ongoing litigation, Mark represents Norfolk Pension Fund and the class in the securities fraud class action *In re Anadarko Petroleum Corp. Sec. Litig.* against Anadarko Petroleum Corporation and former Anadarko executives, pending in the federal district court for the Southern District of Texas. Mark represents North East Scotland Pension Fund in the securities fraud class action against Under Armour and Under Armour executives *In re Under Armour Sec. Litig.*, pending in the federal district court for the District of Maryland. The parties recently announced a settlement of $434 million payable by the defendants to the investor class as well as important governance reforms. The proposed settlement is in the court approval process. And, in addition to representing the foregoing U.K. lead plaintiffs, Mark is currently representing Los Angeles County Employees Retirement Association in a securities fraud class action pending against FirstEnergy Corp. and FirstEnergy executives in the federal district court for the Southern District of Ohio.

## Education

B.A., Trinity College, Cambridge University, England, 1985; L.L.M., Harvard Law School, 1986; Inns of Court School of Law, Degree of Utter Barrister, England, 1987

## Honors / Awards

Global Plaintiff Lawyer, *Lawdragon*, 2024-2025; Best Lawyer in America, *Best Lawyers®*, 2025; Litigator of the Week, *The AmLaw Litigation Daily*, 2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Super Lawyer, *Super Lawyers Magazine*, 2017-2018; Recommended Lawyer, *The Legal 500*, 2016-2017; Lizette Bentwich Law Prize, Trinity College, 1983 and 1984; Hollond Travelling Studentship, 1985; Harvard Law School Fellowship, 1985-1986; Member and Hardwicke Scholar of the Honourable Society of Lincoln's Inn

## Hillary B. Stakem | Partner

Hillary Stakem is a partner in the Firm's San Diego office, where her practice focuses on complex securities litigation. Stakem was a member of the litigation team in *Jaffe v. Household Int'l, Inc.*, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs. She was also a member of the litigation teams that secured a $388 million recovery for investors in J.P. Morgan residential mortgage-backed securities in *Fort Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, and that obtained a $350 million settlement on the eve of trial in *Smilovits v. First Solar, Inc.*, the fifth-largest PSLRA settlement ever recovered in the Ninth Circuit. Stakem also helped secure a $131 million recovery in favor of plaintiffs in *Bennett v. Sprint Nextel Corp*, a $100 million settlement for shareholders in *Karinski v. Stamps.com*, a $97.5 million recovery in *Marcus v. J.C. Penney Company, Inc.*, and an $87.5 million settlement in *Monroe County Employees' Retirement System v. The Southern Company*.

## Education

B.A., College of William and Mary, 2009; J.D., UCLA School of Law, 2012

## Honors / Awards

500 X – The Next Generation, *Lawdragon*, 2023-2024; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; 40 & Under List, *Benchmark Litigation*, 2023-2024; Rising Star, *Super Lawyers Magazine*, 2021-2022; 40 & Under Hot List, *Benchmark Litigation*, 2021; B.A., *Magna Cum Laude*, College of William and Mary, 2009

## Jeffrey J. Stein | Partner

Jeffrey Stein is a partner in the Firm's San Diego office, where he practices securities fraud litigation and other complex matters. He was a member of the litigation team that secured a historic recovery on behalf of Trump University students in two class actions against President Donald J. Trump. The settlement provides $25 million to approximately 7,000 consumers. This result means individual class members are eligible for upwards of $35,000 in restitution. Stein represented the class on a *pro bono* basis.

Before joining the Firm, Stein focused on civil rights litigation, with special emphasis on the First, Fourth, and Eighth Amendments. In this capacity, he helped his clients secure successful outcomes before the United States Supreme Court and the Ninth Circuit Court of Appeals.

## Education

B.S., University of Washington, 2005; J.D., University of San Diego School of Law, 2009

# Christopher D. Stewart | Partner

Christopher Stewart is a partner in the Firm's San Diego office. His practice focuses on complex securities and shareholder derivative litigation. Stewart served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, he and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history. Most recently, Stewart served as lead counsel in *Smilovits v. First Solar, Inc*., and obtained a $350 million settlement on the eve of trial. The settlement is fifth-largest PSLRA settlement ever recovered in the Ninth Circuit.

He was also part of the litigation team that obtained a $67 million settlement in *City of Westland Police & Fire Ret. Sys. v. Stumpf*, a shareholder derivative action alleging that Wells Fargo participated in the mass-processing of home foreclosure documents by engaging in widespread robo-signing. Stewart also served on the litigation team in *In re Deutsche Bank AG Sec. Litig.*, in which the Firm obtained a $18.5 million settlement in a case against Deutsche Bank and certain of its officers alleging violations of the Securities Act of 1933.

## Education

B.S., Santa Clara University, 2004; M.B.A., University of San Diego School of Business Administration, 2009; J.D., University of San Diego School of Law, 2009

## Honors / Awards

California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Rising Star, *Super Lawyers Magazine*, 2015-2020; J.D., *Magna Cum Laude*, Order of the Coif, University of San Diego School of Law, 2009; Member, *San Diego Law Review*

## Sabrina E. Tirabassi | Partner

Sabrina Tirabassi is a partner in the Firm's Boca Raton office, where her practice focuses on complex securities litigation, including the Firm's lead plaintiff motion practice. In this role, Tirabassi remains at the forefront of litigation trends and issues arising under the Private Securities Litigation Reform Act of 1995. Further, Tirabassi has been an integral member of the litigation teams responsible for securing significant monetary recoveries on behalf of shareholders, including: *Villella v. Chemical and Mining Company of Chile Inc.*, No. 1:15-cv-02106 (S.D.N.Y.); *In re ADT Inc. S'holder Litig.*, No. 502018CA003494XXXXMB-AG (Fla. Cir. Ct., 15th Jud. Cir.); *KBC Asset Mgmt. NV v. Aegerion Pharms., Inc.*, No. 1:14-cv-10105-MLW (D. Mass.); *Sohal v. Yan*, No. 1:15-cv-00393-DAP (N.D. Ohio); *McGee v. Constant Contac*t, *Inc.*, No. 1:15-cv-13114-MLW (D. Mass.); and *Schwartz v. Urban Outfitters, Inc.*, No. 2:13-cv-05978-MAK (E.D. Pa.).

## Education

B.A., University of Florida, 2000; J.D., Nova Southeastern University Shepard Broad College of Law, 2006, *Magna Cum Laude*

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025; Rising Star, *Super Lawyers Magazine*, 2010, 2015-2018; J.D., *Magna Cum Laude*, Nova Southeastern University Shepard Broad College of Law, 2006

## Douglas Wilens | Partner

Douglas Wilens is a partner in the Firm's Boca Raton office.  Wilens is a member of the Firm's Appellate Practice Group, participating in numerous appeals in federal and state courts across the country.  Most notably, Wilens handled successful and precedent-setting appeals in *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85 (2d Cir. 2016) (addressing duty to disclose under SEC Regulation Item 303 in §10(b) case), *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229 (1st Cir. 2013) (addressing pleading of loss causation in §10(b) case), and *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (addressing pleading of falsity, scienter, and loss causation in §10(b) case).

Before joining the Firm, Wilens was an associate at a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including the National Basketball Association, the National Hockey League, and Major League Soccer.  He has also served as an adjunct professor at Florida Atlantic University and Nova Southeastern University, where he taught undergraduate and graduate-level business law classes.

## Education

B.S., University of Florida, 1992; J.D., University of Florida College of Law, 1995

## Honors / Awards

Book Award for Legal Drafting, University of Florida College of Law; J.D., with Honors, University of Florida College of Law, 1995

# Shawn A. Williams | Partner

Shawn Williams, a founding partner of the Firm, is the managing partner of the Firm's San Francisco office and a member of the Firm's Management Committee. Williams specializes in complex commercial litigation focusing on securities litigation and has served as lead counsel in a range of precedent-setting actions that recovered billions of dollars for investors and consumers. Williams recently served as lead counsel in a globally watched securities class action case against Apple. He and the trial team secured a $490 million recovery for injured investors. Williams was among lead counsel in *In re Facebook Biometric Info. Privacy Litig.*, charging Facebook with violations of the Illinois Biometric Information Privacy Act, resulting in a $650 million recovery for injured Facebook users, which was then the largest ever biometric class action.

Williams also led the team of Robbins Geller attorneys in the investigation and drafting of comprehensive securities fraud claims in *Hefler v. Wells Fargo & Co.*, alleging widespread opening of unauthorized and undisclosed customer accounts. The *Hefler* action resulted in the recovery of $480 million for Wells Fargo investors. In *City of Westland Police & Fire Ret. Sys. v. Metlife, Inc.*, Williams led the Firm's team of lawyers alleging MetLife's failure to disclose and account for the scope of its use and non-use of the Social Security Administration Death Master File and its impact on MetLife's financial statements. The *Metlife* action resulted in a recovery of $84 million. Williams also served as lead counsel in the following actions resulting in significant recoveries: *Chicago Laborers Pension Fund v. Alibaba Grp. Holding Ltd.* ($75 million recovery); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.* ($75 million recovery); *In re Medtronic, Inc. Sec. Litig.* ($43 million recovery); *In re Cadence Design Sys., Inc. Sec. Litig.* ($38 million recovery); and *City of Sterling Heights Gen. Emps'. Ret. Sys. v. Prudential Fin., Inc.* ($33 million recovery).

Williams is also a member of the Firm's Shareholder Derivative Practice Group, which has secured tens of millions of dollars in cash recoveries and comprehensive corporate governance reforms in a number of high-profile cases including: *In re McAfee, Inc. Derivative Litig.*; *In re Marvell Tech. Grp. Ltd. Derivative Litig.*; *In re KLA-Tencor Corp. S'holder Derivative Litig.*; *The Home Depot, Inc. Derivative Litig.*; and *City of Westland Police & Fire Ret. Sys. v. Stumpf (Wells Fargo & Co.).*

Before joining the Firm in 2000, Williams served for 5 years as an Assistant District Attorney in the Manhattan District Attorney's Office, where he tried over 20 cases to New York City juries.

## Education

B.A., The State of University of New York at Albany, 1991; J.D., University of Illinois, 1995

## Honors / Awards

Leading Commercial Litigator, *Daily Journal*, 2025; Leading Lawyer in America, *Lawdragon*, 2018-2025; Litigation Star, *Benchmark Litigation*, 2025; Best Lawyer in America, *Best Lawyers*®, 2022-2025; Litigator of the Week, *The AmLaw Litigation Daily*, 2024; Super Lawyer, *Super Lawyers Magazine*, 2014-2017, 2020-2021, 2023-2024; Recommended Lawyer, *The Legal 500*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Top Plaintiff Lawyer, *Daily Journal*, 2022; Most Influential Black Lawyers, *Savoy*, 2022; Legend, *Lawdragon*, 2022; Top 100 Lawyer, *Daily Journal*, 2019, 2021; California Trailblazer, *The Recorder*, 2019; Titan of the Plaintiffs Bar, *Law360*, 2019; Plaintiffs' Lawyer Trailblazer, *The National Law Journal*, 2019; Board Member, California Bar Foundation, 2012-2014

# Christopher M. Wood | Partner

Christopher Wood is the partner in charge of Robbins Geller Rudman & Dowd LLP's Nashville office, where his practice focuses on complex securities litigation. He has been a member of litigation teams responsible for recoveries totaling hundreds of millions of dollars for investors, including some of the largest securities class action recoveries in Tennessee history. His cases include: *In re Massey Energy Co. Sec. Litig.* ($265 million recovery); *In re Envision Healthcare Co. Sec. Litig.* ($177.5 million recovery); *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery); *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.* ($65 million recovery); *Grae v. Corrections Corporation of America* ($56 million recovery); *In re Micron Tech., Inc. Sec. Litig.* ($42 million recovery); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn* ($36 million recovery); and *Winslow v. BancorpSouth, Inc.* ($29.5 million recovery).

Working together with the ACLU of Tennessee and Public Funds Public Schools (a national campaign founded by the Southern Poverty Law Center and Education Law Center), Wood is litigating an action challenging Tennessee's school voucher program, which diverts critically needed funds from public school students in Nashville and Memphis. Wood has also provided *pro bono* legal services through Tennessee Justice for Our Neighbors, Volunteer Lawyers & Professionals for the Arts, the Ninth Circuit's Pro Bono Program, and the San Francisco Bar Association's Volunteer Legal Services Program.

## Education

B.A., Vanderbilt University, 2003; J.D., University of San Francisco School of Law, 2006

## Honors / Awards

Future Star, *Benchmark Litigation*, 2023-2025; Best Lawyer in America, *Best Lawyers*®, 2025; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024; Best Lawyer in America: One to Watch, *Best Lawyers*®, 2023-2024; 40 & Under Hot List, *Benchmark Litigation*, 2021; Rising Star, *Super Lawyers Magazine*, 2011-2013, 2015-2020

# Debra J. Wyman | Partner

Debra Wyman is a partner in the Firm's San Diego office. She specializes in securities litigation and has litigated numerous cases against public companies in state and federal courts that have resulted in over $2 billion in securities fraud recoveries. Wyman served as lead counsel in *In re Am. Realty Cap. Props., Inc. Litig.*, a case arising out of ARCP's manipulative accounting practices, and obtained a $1.025 billion recovery. For five years, she and the litigation team prosecuted nine different claims for violations of the Securities Exchange Act of 1934 and the Securities Act of 1933, involving seven different stock or debt offerings and two mergers. The recovery represents the highest percentage of damages of any major PSLRA case prior to trial and includes the largest personal contributions by individual defendants in history. Most recently, Wyman was part of the litigation team in *Monroe County Employees' Retirement System v. The Southern Company* in which an $87.5 settlement was reached after three years of litigation. The settlement resolved claims for violations of the Securities Exchange Act of 1934 stemming from defendants' issuance of materially misleading statements and omissions regarding the status of construction of a first-of-its-kind "clean coal" power plant that was designed to transform coal into synthetic gas that could then be used to fuel the power plant.

Wyman was also a member of the trial team in *Schuh v. HCA Holdings, Inc.*, which resulted in a $215 million recovery for shareholders, the largest securities class action recovery ever in Tennessee. The recovery achieved represents more than 30% of the aggregate classwide damages, far exceeding the typical recovery in a securities class action. Wyman prosecuted the complex securities and accounting fraud case *In re HealthSouth Corp. Sec. Litig.*, one of the largest and longest-running corporate frauds in history, in which $671 million was recovered for defrauded HealthSouth investors. She was also part of the trial team that litigated *In re AT&T Corp. Sec. Litig.*, which was tried in the United States District Court, District of New Jersey, and settled after only two weeks of trial for $100 million. Wyman was also part of the litigation team that secured a $64 million recovery for Dana Corp. shareholders in *Plumbers & Pipefitters National Pension Fund v. Burns*, in which the Firm's Appellate Practice Group successfully appealed to the Sixth Circuit Court of Appeals twice, reversing the district court's dismissal of the action.

## Education

B.A., University of California Irvine, 1990; J.D., University of San Diego School of Law, 1997

## Honors / Awards

Leading Lawyer in America, *Lawdragon*, 2020-2025; Litigation Star, *Benchmark Litigation*, 2023-2025; National Practice Area Star, *Benchmark Litigation*, 2024-2025; California - Litigation Star, *Benchmark Litigation*, 2024-2025; California Lawyer Attorney of the Year (CLAY), *Daily Journal*, 2024; Top 250 Women in Litigation, *Benchmark Litigation*, 2021, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; San Diego Litigator of the Year, *Benchmark Litigation*, 2021; Plaintiff Litigator of the Year, *Benchmark Litigation*, 2021; Top Woman Lawyer, *Daily Journal*, 2017, 2020; MVP, *Law360*, 2020; Litigator of the Week, *The American Lawyer*, 2020; Litigator of the Year, *Our City San Diego*, 2017; Super Lawyer, *Super Lawyers Magazine*, 2016-2017

# Jonathan Zweig | Partner

Jonathan Zweig is a partner with the Firm and is based in the Manhattan office. Zweig's practice focuses primarily on complex securities litigation, corporate control cases, and breach of fiduciary duty actions on behalf of investors. He is also part of the Firm's Delaware Practice Group.

Before joining Robbins Geller, Zweig served for over six years as an Assistant Attorney General with the New York State Office of the Attorney General's Investor Protection Bureau, where he prosecuted civil securities fraud actions and tried two major cases on behalf of the State. On three occasions, Zweig was awarded the Louis J. Lefkowitz Award for Exceptional Service.

Zweig was previously a litigator at Davis Polk & Wardwell LLP. Zweig also clerked for Judge Jacques L. Wiener, Jr. of the U.S. Court of Appeals for the Fifth Circuit, and Judge Sarah S. Vance of the U.S. District Court for the Eastern District of Louisiana.

## Education

B.A., Yale University, 2007; J.D., Harvard Law School, 2010

## Honors / Awards

500 X – The Next Generation, *Lawdragon*, 2023-2024; Louis J. Lefkowitz Award for Exceptional Service, New York State Office of the Attorney General, 2015, 2020, 2021; J.D., *Magna Cum Laude*, Harvard Law School, 2010; B.A., *Summa Cum Laude*, Yale University, 2007

# Susan K. Alexander | Of Counsel

Susan Alexander is Of Counsel to the Firm and is based in the San Francisco office. Alexander's practice specializes in federal appeals of securities fraud class actions on behalf of investors. With nearly 30 years of federal appellate experience, she has argued on behalf of defrauded investors in circuit courts throughout the United States. Among her most notable cases are *Mineworkers' Pension Scheme v. First Solar Inc.* ($350 million recovery), *In re VeriFone Holdings, Inc. Sec. Litig.* ($95 million recovery), and the successful appellate ruling in *Alaska Elec. Pension Fund v. Flowserve Corp.* ($55 million recovery). Other representative results include: *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018) (reversing dismissal of securities fraud action and holding that the Exchange Act applies to unsponsored American Depositary Shares); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384 (8th Cir. 2016) (reversing summary judgment of securities fraud action on statute of limitations grounds); *In re Ubiquiti Networks, Inc. Sec. Litig.*, 669 F. App'x 878 (9th Cir. 2016) (reversing dismissal of §11 claim); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) (reversing dismissal of securities fraud complaint, focused on loss causation); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114 (2d Cir. 2012) (reversing dismissal of §11 claim); *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011) (reversing dismissal of securities fraud complaint, focused on statute of limitations); *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (reversing dismissal of securities fraud complaint, focused on loss causation); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir.) (reversing dismissal of securities fraud complaint, focused on scienter), *reh'g denied and op. modified*, 409 F.3d 653 (5th Cir. 2005); and *Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) (reversing dismissal of securities fraud complaint, focused on scienter). Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death. At CAP, and subsequently in private practice, she litigated and consulted on death penalty direct and collateral appeals for ten years.

## Education

B.A., Stanford University, 1983; J.D., University of California, Los Angeles, 1986

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2015-2021; American Academy of Appellate Lawyers; California Academy of Appellate Lawyers; Ninth Circuit Advisory Rules Committee; Appellate Delegate, Ninth Circuit Judicial Conference; ABA Council of Appellate Lawyers

# Laura M. Andracchio | Of Counsel

Laura Andracchio is Of Counsel in the Firm's San Diego office. Having joined the Firm in 1997, she was a Robbins Geller partner before her role as Of Counsel. As a partner with the Firm, Andracchio led dozens of securities fraud cases against public companies throughout the country, recovering hundreds of millions of dollars for injured investors. Her current focus remains securities fraud litigation under the federal securities laws.

Most recently, Andracchio was a member of the litigation team that obtained a $350 million recovery for the class in 2024 in *In re Alphabet, Inc. Sec. Litig.* (N.D. Cal.). Andracchio was also part of the litigation teams in *In re American Realty Cap. Props., Inc. Litig.* (S.D.N.Y.), in which a $1.025 billion recovery was obtained; *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc.* (W.D. Ark.), recovering $160 million for Wal-Mart investors; and *In re Cardinal Health, Inc. Sec. Litig.* (S.D. Ohio) ($109 million).

Andracchio was also a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, recovering $100 million for the class after two weeks of trial in district court in New Jersey. Before trial, she managed and litigated the case for four years. She also led the trial team in *Brody v. Hellman*, a case against Qwest and former directors of U.S. West seeking an unpaid dividend, recovering $50 million for the class, which was largely comprised of U.S. West retirees. Some of Andracchio's other cases include *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.* (S.D.N.Y.) ($388 million on behalf of investors in residential mortgage-backed securities); *City of Hialeah Emps.' Ret. Sys. v. Toll Bros., Inc.*; *Ross v. Abercrombie & Fitch Co.*; *In re GMH Cmtys. Tr. Sec. Litig.*; *In re Vicuron Pharms., Inc. Sec. Litig.*; and *In re Navarre Corp. Sec. Litig.*

## Education
B.A., Bucknell University, 1986; J.D., Duquesne University School of Law, 1989

## Honors / Awards
Order of the Barristers, J.D., with honors, Duquesne University School of Law, 1989

# Jason M. Avellino | Of Counsel

Jason Avellino is Of Counsel in the Firm's Wilmington office. He focuses his practice on corporate governance, shareholder rights, and complex securities litigation.

Before joining Robbins Geller, Avellino practiced at a prominent Delaware law firm, where he was a significant part of litigation teams that achieved substantial recoveries and meaningful governance reforms for investors. He also spent more than a decade representing major product manufacturers, contractors, marine terminal operators, retail establishments, and sports venues (including several Fortune 500 companies) in the evaluation and defense of commercial matters and civil lawsuits. During that time, Avellino was a member of the International Association of Defense Counsel (IADC), a group of approximately 2,500 invitation-only, peer-reviewed members comprised of the world's leading corporate and insurance lawyers and insurance executives.

## Education
B.S., Bloomsburg University, 2007; J.D., Villanova University School of Law, 2010

## Honors / Awards
B.S., *Magna Cum Laude*, Bloomsburg University, 2007

# Matthew J. Balotta | Of Counsel

Matt Balotta is Of Counsel in the Firm's San Diego office, where his practice focuses on securities fraud litigation. Balotta earned his Bachelor of Arts degree in History, *summa cum laude*, from the University of Pittsburgh and his Juris Doctor degree from Harvard Law School. During law school, Balotta was a summer associate with the Firm and interned at the National Consumer Law Center. He also participated in the Employment Law and Delivery of Legal Services Clinics and served on the General Board of the Harvard Civil Rights-Civil Liberties Law Review.

## Education
B.A., University of Pittsburgh, 2005; J.D., Harvard Law School, 2015

## Honors / Awards
B.A., *Summa Cum Laude*, University of Pittsburgh, 2005

# Randi D. Bandman | Of Counsel

Randi Bandman is Of Counsel in the Firm's San Diego office. Throughout her career, she has represented and advised hundreds of clients, including pension funds, managers, banks, and hedge funds, such as the Directors Guild of America, Screen Actors Guild, Writers Guild of America, and Teamster funds. Bandman's cases have yielded billions of dollars of recoveries. Notable cases include the AOL Time Warner, Inc. merger ($629 million), *In re Enron Corp. Sec. Litig.* ($7.2 billion), Private Equity litigation (*Dahl v. Bain Cap. Partners, LLC*) ($590.5 million), *In re WorldCom Sec. Litig.* ($657 million), and *In re Facebook Biometric Info. Privacy Litig.* ($650 million).

Bandman is currently representing plaintiffs in the Foreign Exchange Litigation pending in the Southern District of New York which alleges collusive conduct by the world's largest banks to fix prices in the $5.3 trillion a day foreign exchange market and in which billions of dollars have been recovered to date for injured plaintiffs. Bandman is part of the Robbins Geller Co-Lead Counsel team representing the class in the "High Frequency Trading" case, which accuses stock exchanges of giving unfair advantages to high-speed traders versus all other investors, resulting in billions of dollars being diverted. Bandman was instrumental in the landmark state settlement with the tobacco companies for $12.5 billion. Bandman also led an investigation with congressional representatives on behalf of artists into allegations of "pay for play" tactics, represented Emmy winning writers with respect to their claims involving a long-running television series, represented a Hall of Fame sports figure, and negotiated agreements in connection with a major motion picture. Recently, Bandman was chosen to serve on the Law Firm Advisory Board of the Association of Media & Entertainment Counsel, an organization made up of thousands of attorneys from studios, networks, guilds, talent agencies, and top media companies, dealing with protecting content distributed through a variety of formats worldwide.

## Education
B.A., University of California, Los Angeles; J.D., University of Southern California

# Mary K. Blasy | Of Counsel

Mary Blasy is Of Counsel to the Firm and is based in the Firm's Melville and Washington, D.C. offices. Her practice focuses on the investigation, commencement, and prosecution of securities fraud class actions and shareholder derivative suits. Blasy has recovered hundreds of millions of dollars for investors in securities fraud class actions against Reliance Acceptance Corp. ($66 million); Sprint Corp. ($50 million); Titan Corporation ($15+ million); Martha Stewart Omni-Media, Inc. ($30 million); and Coca-Cola Co. ($137.5 million). Blasy has also been responsible for prosecuting numerous complex shareholder derivative actions against corporate malefactors to address violations of the nation's securities, environmental, and labor laws, obtaining corporate governance enhancements valued by the market in the billions of dollars.

In 2014, the Presiding Justice of the Appellate Division of the Second Department of the Supreme Court of the State of New York appointed Blasy to serve as a member of the Independent Judicial Election Qualification Commission, which until December 2018 reviewed the qualifications of candidates seeking public election to New York State Supreme Courts in the 10th Judicial District. She also served on the *Law360* Securities Editorial Advisory Board from 2015 to 2016.

## Education
B.A., California State University, Sacramento, 1996; J.D., UCLA School of Law, 2000

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2016-2020, 2023-2024; *Law360* Securities Editorial Advisory Board, 2015-2016; Member, Independent Judicial Election Qualification Commission, 2014-2018

# M. Lamontt Bowens | Of Counsel

Lamontt Bowens is Of Counsel to Robbins Geller in the Firm's Washington, D.C. office. He is a member of the Firm's client outreach team where his focus is working with the Firm's institutional investor clients.

Bowens began his career with Robbins Geller working in the mailroom while raising a family and attending college and law school at night. After his first year of law school, he worked as a summer associate with the Firm. Following his second year of law school, Bowens completed a summer internship in the office of the San Diego County Public Defender, where he worked at the direction of his supervising attorneys representing indigent clients. During law school, Bowens served as vice president of the Black Law Students Association. He also earned a CALI Award for excellence and taught law to students for a semester at Berkeley High School. In his last year of law school, Bowens returned to Robbins Geller as a law clerk before becoming an attorney. Bowens completed his law school course work for graduation a semester early.

Bowens is an active member of the National Association of Securities Professionals (NASP), the National Bar Association (NBA), and the Franklyn Bourne Bar Association.

## Education
B.S., University of Phoenix, 2004; J.D., Golden Gate University School of Law, 2010

# William K. Cavanagh, Jr. | Of Counsel

Bill Cavanagh is Of Counsel in the Firm's Washington, D.C. office. Cavanagh concentrates his practice in employee benefits law and works with the Firm's Institutional Outreach Team. Prior to joining Robbins Geller, Cavanagh was employed by Ullico for the past nine years, most recently as President of Ullico Casualty Group. The Ullico Casualty Group is the leading provider of fiduciary liability insurance for trustees in both the private as well as the public sector. Prior to that he was President of the Ullico Investment Company.

Preceding Cavanagh's time at Ullico, he was a partner at the labor and employee benefits firm Cavanagh and O'Hara in Springfield, Illinois for 28 years. In that capacity, Cavanagh represented public pension funds, jointly trusteed Taft-Hartley, health, welfare, pension, and joint apprenticeship funds advising on fiduciary and compliance issues both at the Board level as well as in administrative hearings, federal district courts, and the United States Courts of Appeals. During the course of his practice, Cavanagh had extensive trial experience in state and the relevant federal district courts. Additionally, Cavanagh served as co-counsel on a number of cases representing trustees seeking to recover plan assets lost as a result of fraud in the marketplace.

## Education

B.A., Georgetown University, 1974; J.D., John Marshall Law School, 1978

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell

# Christopher Collins | Of Counsel

Christopher Collins is Of Counsel in the Firm's San Diego office and his practice focuses on antitrust and consumer protection. Collins served as co-lead counsel in *Wholesale Elec. Antitrust Cases I & II*, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market wherein plaintiffs secured a global settlement for California consumers, businesses, and local governments valued at more than $1.1 billion. He was also involved in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Collins is currently counsel on the California Energy Manipulation antitrust litigation, the Memberworks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations. He formerly served as a Deputy District Attorney for Imperial County where he was in charge of the Domestic Violence Unit.

## Education

B.A., Sonoma State University, 1988; J.D., Thomas Jefferson School of Law, 1995

# Vicki Multer Diamond | Of Counsel

Vicki Multer Diamond is Of Counsel to the Firm and is based in the Firm's Melville office.  She has over 25 years of experience as an investigator and attorney.  Her practice at the Firm focuses on the initiation, investigation, and prosecution of securities fraud class actions.  Diamond played a significant role in the factual investigations and successful oppositions to the defendants' motions to dismiss in a number of cases, including *Tableau*, *One Main*, *Valeant*, and *Orbital ATK*.

Diamond has served as an investigative consultant to several prominent law firms, corporations, and investment firms.  Before joining the Firm, she was an Assistant District Attorney in Brooklyn, New York, where she served as a senior Trial Attorney in the Felony Trial Bureau, and was special counsel to the Special Commissioner of Investigations for the New York City schools, where she investigated and prosecuted crime and corruption within the New York City school system.

## Education
B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

## Honors / Awards
Member, *Hofstra Property Law Journal*, Hofstra University School of Law

# Michael J. Dowd | Of Counsel

Mike Dowd was a founding partner of the Firm.  He has practiced in the area of securities litigation for 20 years, prosecuting dozens of complex securities cases and obtaining significant recoveries for investors in cases such as *American Realty* ($1.025 billion), *UnitedHealth* ($925 million), *WorldCom* ($657 million), *AOL Time Warner* ($629 million), *Qwest* ($445 million), *Under Armour* ($434 million), and *Pfizer* ($400 million).

Dowd served as lead trial counsel in *Jaffe v. Household International* in the Northern District of Illinois, a securities class action that obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs.  Dowd also served as the lead trial lawyer in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after only two weeks of trial for $100 million.  Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991, and again from 1994-1998, where he handled dozens of jury trials and was awarded the Director's Award for Superior Performance.

## Education

B.A., Fordham University, 1981; J.D., University of Michigan Law School, 1984

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Director's Award for Superior Performance, United States Attorney's Office; Best Lawyer in America, *Best Lawyers®*, 2015-2025; Hon. David H. Bartick Award for Civility and Professionalism, U.S. District Court for the Southern District of California, 2024; Recommended Lawyer, *The Legal 500*, 2016-2019, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Southern California Best Lawyer, *Best Lawyers®*, 2015-2021; Super Lawyer, *Super Lawyers Magazine*, 2010-2020; Lawyer of the Year, *Best Lawyers®*, 2020; Hall of Fame, *Lawdragon*, 2018; Litigator of the Year, *Our City San Diego*, 2017; Leading Lawyer in America, *Lawdragon*, 2014-2016; Litigator of the Week, *The American* Lawyer, 2015; Litigation Star, *Benchmark Litigation* 2013; Directorship 100, NACD Directorship, 2012; Attorney of the Year, *California Lawyer*, 2010; Top 100 Lawyers, *Daily Journal*, 2009; B.A., *Magna Cum Laude*, Fordham University, 1981

## Travis E. Downs III | Of Counsel

Travis Downs is Of Counsel to the Firm in the Firm's San Diego office.  His areas of expertise include prosecution of shareholder and securities litigation, including complex shareholder derivative actions.  Downs is a member of the Firm's Delaware Practice Group.  Downs led a team of lawyers who successfully prosecuted over 65 stock option backdating derivative actions in federal and state courts across the country, resulting in hundreds of millions in financial givebacks for the plaintiffs and extensive corporate governance enhancements, including annual directors elections, majority voting for directors, and shareholder nomination of directors.  Notable cases include: *In re Community Health Sys., Inc. S'holder Derivative Litig.* ($60 million in financial relief and unprecedented corporate governance reforms); *In re Marvell Tech. Grp. Ltd. Derivative Litig.* ($54 million in financial relief and extensive corporate governance enhancements); *In re McAfee, Inc. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Affiliated Computer Servs. Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re KB Home S'holder Derivative Litig.* ($30 million in financial relief and extensive corporate governance enhancements); *In re Juniper Networks Derivative Litig.* ($22.7 million in financial relief and extensive corporate governance enhancements); *In re Nvidia Corp. Derivative Litig.* ($15 million in financial relief and extensive corporate governance enhancements); and *City of Pontiac Gen. Emps.' Ret. Sys. v. Langone* (achieving landmark corporate governance reforms for investors).

Downs was also part of the litigation team that obtained a $67 million settlement in *City of Westland Police & Fire Ret. Sys. v. Stumpf*, a shareholder derivative action alleging that Wells Fargo participated in the mass-processing of home foreclosure documents by engaging in widespread robo-signing, and a $250 million settlement in *In re Google, Inc. Derivative Litig.*, an action alleging that Google facilitated in the improper advertising of prescription drugs.  Downs is a frequent speaker at conferences and seminars and has lectured on a variety of topics related to shareholder derivative and class action litigation.

## Education
B.A., Whitworth University, 1985; J.D., University of Washington School of Law, 1990

## Honors / Awards
Rated AV Preeminent by Martindale-Hubbell; Best Lawyer in America, *Best Lawyers*®, 2018-2025; Recommended Lawyer, *The Legal 500*, 2023-2024; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2024; Top 100 Leaders in Law Honoree, *San Diego Business Journal*, 2022; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Southern California Best Lawyer, *Best Lawyers*®, 2018-2021; Super Lawyer, *Super Lawyers Magazine*, 2008; B.A., Honors, Whitworth University, 1985

## Christopher T. Gilroy | Of Counsel

Christopher Gilroy is Of Counsel in the Firm's Manhattan office. His practice focuses on complex securities litigation. Since joining the Firm, Gilroy has played a significant role in the following litigations: *Landmen Partners, Inc. v. The Blackstone Grp., L.P* ($85 million recovery on the eve of trial); *In re OSG Sec. Litig.* ($34 million recovery, representing 87% of the maximum Section 11 damages); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.* ($33 million recovery); *Citiline Holdings, Inc. v. iStar Fin. Inc.* ($29 million recovery); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.* ($19.5 million recovery); *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC* ($14 million recovery); *Beaver Cnty. Emps' Ret. Fund v. Tile Shop Holdings, Inc.* ($9.5 million recovery); *IBEW Local 90 Pension Fund v. Deutsche Bank AG* (confidential settlement); *In re Ply Gem Holdings, Inc., Sec. Litig.* ($25.9 million recovery); *In re BRF S.A. Sec. Litig.* ($40 million recovery pending final approval); and *In re SandRidge Energy, Inc. Sec. Litig.* (successfully obtaining class certification in an ongoing litigation). Gilroy also performed an exhaustive factual investigation in *In re Satcon Tech. Corp.*, on behalf of Satcon's Chapter 7 Bankruptcy Trustee, resulting in a seven-figure settlement in an action alleging breaches of fiduciary duties against former Satcon directors and officers.

## Education

B.A., City University of New York at Queens College, 2005; J.D., Brooklyn Law School, 2010

## Honors / Awards

Rising Star, *Super Lawyers Magazine*, 2019-2021; B.A., *Cum Laude*, City University of New York at Queens College, 2005

## Richard W. Gonnello | Of Counsel

Richard Gonnello is Of Counsel in the Firm's Manhattan office. He has two decades of experience litigating complex securities actions.

Gonnello has successfully represented institutional and individual investors. He has obtained substantial recoveries in numerous securities class actions, including *In re Royal Ahold Sec. Litig.* (D. Md.) ($1.1 billion) and *In re Tremont Sec. Law, State Law & Ins. Litig.* (S.D.N.Y.) ($100 million). Gonnello has also obtained favorable recoveries for institutional investors pursuing direct opt-out claims, including cases against Qwest Communications International, Inc. ($175 million) and Tyco International Ltd ($21 million).

Gonnello has co-authored the following articles appearing in the *New York Law Journal*: "*Staehr* Hikes Burden of Proof to Place Investor on Inquiry Notice" and "Potential Securities Fraud: 'Storm Warnings' Clarified."

## Education

B.A., Rutgers University, 1995; J.D., UCLA School of Law, 1998

## Honors / Awards

B.A., *Summa Cum Laude*, Rutgers University, 1995

# Mitchell D. Gravo | Of Counsel

Mitchell Gravo is Of Counsel to the Firm and is a member of the Firm's institutional investor client services group. With more than 30 years of experience as a practicing attorney, he serves as liaison to the Firm's institutional investor clients throughout the United States and Canada, advising them on securities litigation matters.

Gravo's clients include Anchorage Economic Development Corporation, Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association. Prior to joining the Firm, he served as an intern with the Municipality of Anchorage, and then served as a law clerk to Superior Court Judge J. Justin Ripley.

## Education

B.A., Ohio State University; J.D., University of San Diego School of Law

# Bailie L. Heikkinen | Of Counsel

Bailie Heikkinen is Of Counsel in the Firm's Boca Raton office. Her practice focuses on complex class actions, including securities, corporate governance, and consumer fraud litigation.

Heikkinen has been an integral member of the litigation teams responsible for securing monetary recoveries on behalf of shareholders that collectively exceed $100 million. Notable cases include: *Medoff v. CVS Caremark Corp.*, No. 1:09-cv-00554 (D.R.I.); *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, No. 1:10-cv-06016 (N.D. Ill.); *Wong v. Accretive Health, Inc.*, No. 1:12-cv-03102 (N.D. Ill.); and *Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Swanson*, No. 1:09-cv-00799 (D. Del.).

## Education

B.A., University of Florida, 2004; J.D., South Texas College of Law, 2007

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2023-2025; Rising Star, *Super Lawyers Magazine*, 2014, 2018

## Dennis J. Herman | Of Counsel

Dennis Herman is Of Counsel in the Firm's San Francisco office where he focuses his practice on securities class actions. He has led or been significantly involved in the prosecution of numerous securities fraud claims that have resulted in substantial recoveries for investors, including settled actions against Massey Energy ($265 million), Coca-Cola ($137 million), VeriSign ($78 million), Psychiatric Solutions, Inc. ($65 million), St. Jude Medical, Inc. ($50 million), NorthWestern ($40 million), BancorpSouth ($29.5 million), America Service Group ($15 million), Specialty Laboratories ($12 million), Stellent ($12 million), and Threshold Pharmaceuticals ($10 million).

### Education
B.S., Syracuse University, 1982; J.D., Stanford Law School, 1992

### Honors / Awards
Best Lawyer in America, *Best Lawyers®*, 2018-2025; Northern Califorina Best Lawyer, *Best Lawyers®*, 2018-2021; Super Lawyer, *Super Lawyers Magazine*, 2017-2018; Order of the Coif, Stanford Law School; Urban A. Sontheimer Award (graduating second in his class), Stanford Law School; Award-winning Investigative Newspaper Reporter and Editor in California and Connecticut

## Helen J. Hodges | Of Counsel

Helen Hodges is Of Counsel in the Firm's San Diego office. She specializes in securities fraud litigation. Hodges has been involved in numerous securities class actions, including: *Dynegy*, which was settled for $474 million; *Thurber v. Mattel*, which was settled for $122 million; *Nat'l Health Labs*, which was settled for $64 million; and *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action. Additionally, beginning in 2001, Hodges focused on the prosecution of *Enron*, where a record $7.2 billion recovery was obtained for investors.

### Education
B.S., Oklahoma State University, 1979; J.D., University of Oklahoma, 1983

### Honors / Awards
Rated AV by Martindale-Hubbell; Hall of Fame, Oklahoma State University, 2022; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; served on the Oklahoma State University Foundation Board of Trustees, 2013-2021; Philanthropist of the Year, Women for OSU at Oklahoma State University, 2020; Super Lawyer, *Super Lawyers Magazine*, 2007

# David J. Hoffa | Of Counsel

David Hoffa is Of Counsel in the Firm's Washington D.C. office.  He has served as a liaison to over 110 institutional investors in portfolio monitoring, securities litigation, and claims filing matters.  His practice focuses on providing a variety of legal and consulting services to U.S. state and municipal employee retirement systems and single and multi-employer U.S. Taft-Hartley benefit funds.  In addition to serving as a leader on the Firm's Israel Institutional Investor Outreach Team, Hoffa also serves as a member of the Firm's lead plaintiff advisory team, and advises public and multi-employer pension funds around the country on issues related to fiduciary responsibility, legislative and regulatory updates, and "best practices" in the corporate governance of publicly traded companies.

Early in his legal career, Hoffa worked for a law firm based in Birmingham, Michigan, where he appeared regularly in Michigan state court in litigation pertaining to business, construction, and employment related matters.  Hoffa has also appeared before the Michigan Court of Appeals on several occasions.

## Education
B.A., Michigan State University, 1993; J.D., Michigan State University College of Law, 2000

# Nancy M. Juda | Of Counsel

Nancy Juda is Of Counsel to the Firm and is based in the Firm's Washington, D.C. office.  Her practice focuses on advising Taft-Hartley pension and welfare funds on issues related to corporate fraud in the United States securities markets.  Juda's experience as an ERISA attorney provides her with unique insight into the challenges faced by pension fund trustees as they endeavor to protect and preserve their funds' assets.

Prior to joining Robbins Geller, Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law.  She was also associated with a union-side labor law firm in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary, and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing employee benefit funds, Juda advises trustees regarding their options for seeking redress for losses due to securities fraud.  She currently advises trustees of funds providing benefits for members of unions affiliated with North America's Building Trades of the AFL-CIO.  Juda also represents funds in ERISA class actions involving breach of fiduciary claims.

## Education
B.A., St. Lawrence University, 1988; J.D., American University, 1992

# Francis P. Karam | Of Counsel

Frank Karam is Of Counsel to the Firm and is based in the Firm's Melville office. Karam is a trial lawyer with 30 years of experience. His practice focuses on complex class action litigation involving shareholders' rights and securities fraud. He also represents a number of landowners and royalty owners in litigation against large energy companies. He has tried complex cases involving investment fraud and commercial fraud, both on the plaintiff and defense side, and has argued numerous appeals in state and federal courts. Throughout his career, Karam has tried more than 100 cases to verdict.

Karam has served as a partner at several prominent plaintiffs' securities firms. From 1984 to 1990, Karam was an Assistant District Attorney in the Bronx, New York, where he served as a senior Trial Attorney in the Homicide Bureau. He entered private practice in 1990, concentrating on trial and appellate work in state and federal courts.

## Education

A.B., College of the Holy Cross; J.D., Tulane University School of Law

## Honors / Awards

Super Lawyer, *Super Lawyers Magazine*, 2019-2024; "Who's Who" for Securities Lawyers, *Corporate Governance Magazine*, 2015

# Arthur C. Leahy | Of Counsel

Art Leahy is a founding partner in the Firm's San Diego office and a member of the Firm's Management Committee. He has over 20 years of experience successfully litigating securities actions and derivative cases. Leahy has recovered well over two billion dollars for the Firm's clients and has negotiated comprehensive pro-investor corporate governance reforms at several large public companies. Most recently, Leahy helped secure a $272 million recovery on behalf of mortgage-backed securities investors in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*. In the *Goldman Sachs* case, he helped achieve favorable decisions in the Second Circuit Court of Appeals on behalf of investors of Goldman Sachs mortgage-backed securities and again in the Supreme Court, which denied Goldman Sachs' petition for certiorari, or review, of the Second Circuit's reinstatement of the plaintiff's case. He was also part of the Firm's trial team in the AT&T securities litigation, which AT&T and its former officers paid $100 million to settle after two weeks of trial. Prior to joining the Firm, he served as a judicial extern for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, and served as a judicial law clerk for the Honorable Alan C. Kay of the United States District Court for the District of Hawaii.

## Education

B.A., Point Loma Nazarene University, 1987; J.D., University of San Diego School of Law, 1990

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Best Lawyer in America, *Best Lawyers*®, 2024-2025; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2021; Super Lawyer, *Super Lawyers Magazine,* 2016-2017; J.D., *Cum Laude*, University of San Diego School of Law, 1990; Managing Editor, *San Diego Law Review*, University of San Diego School of Law

# Avital O. Malina | Of Counsel

Avital Malina is Of Counsel in the Firm's Melville office, where her practice focuses on complex securities litigation.

Malina has been recognized as a Rising Star by *Super Lawyers Magazine* for the New York Metro area numerous times. Before joining the Firm, she was an associate in the New York office of a large international law firm, where her practice focused on complex commercial litigations.

## Education
B.A., Barnard College, 2005, J.D., Fordman University School of Law, 2009

## Honors / Awards
Rising Star, *Super Lawyers Magazine*, 2015-2021; B.A., *Magna Cum Laude*, Barnard College, 2005

# Jerry E. Martin | Of Counsel

Jerry Martin is Of Counsel in the Firm's Nashville office. He specializes in representing individuals who wish to blow the whistle to expose fraud and abuse committed by federal contractors, health care providers, tax cheats, or those who violate the securities laws. Martin was a member of the litigation team that obtained a $65 million recovery in *Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, the fourth-largest securities recovery ever in the Middle District of Tennessee and one of the largest in more than a decade.

Before joining the Firm, Martin served as the presidentially appointed United States Attorney for the Middle District of Tennessee from May 2010 to April 2013. As U.S. Attorney, he made prosecuting financial, tax, and health care fraud a top priority. During his tenure, Martin co-chaired the Attorney General's Advisory Committee's Health Care Fraud Working Group. Martin has been recognized as a national leader in combatting fraud and has addressed numerous groups and associations, such as Taxpayers Against Fraud and the National Association of Attorneys General, and was a keynote speaker at the American Bar Association's Annual Health Care Fraud Conference.

## Education
B.A., Dartmouth College, 1996; J.D., Stanford University, 1999

## Honors / Awards
Super Lawyer, *Super Lawyers Magazine*, 2016-2019

## Ruby Menon | Of Counsel

Ruby Menon is Of Counsel to the Firm and is a member of the Firm's legal, advisory, and business development group. She also serves as the liaison to the Firm's many institutional investor clients in the United States and abroad.

Menon began her legal career as an Assistant Prosecuting Attorney, gaining extensive training in trials and litigation. Later, for over 12 years, she served as the Chief Legal Counsel to two large multi-employer retirement plans, developing her expertise in many areas of employee benefits and pension administration, including legislative initiatives and regulatory affairs, investments, tax, fiduciary compliance, and plan administration. During her career as Chief Legal Counsel, Menon was a frequent instructor for several certificate and training programs and seminars for pension fund trustees, administrators, and other key decision makers of pension and employee benefits plans. She is a member of various legal and professional organizations in the United States and abroad.

Menon currently serves as a co-chair on the National Association of Public Pension Attorneys Membership Committee and as a board member on the Corporate Advisory Committee of the National Council on Teacher Retirement (NCTR). She has previously served as an advisory board member for the Sovereign Wealth Fund Institute and as a committee member on the International Pension Employee & Benefits Lawyers Association. Menon also organized and participated in the ACAP Shareholder sessions in Singapore and Hong Kong.

### Education

B.A., Indiana University, 1985; J.D., Indiana University School of Law, 1988

### Honors / Awards

Global Plaintiff Lawyer, *Lawdragon*, 2024-2025

## Sara B. Polychron | Of Counsel

Sara Polychron is Of Counsel in the Firm's San Diego office, where her practice focuses on complex securities litigation. She is part of the litigation team prosecuting actions against investment banks and the leading credit rating agencies for their role in the structuring and rating of residential mortgage-backed securities and their subsequent collapse.

Sara earned her Bachelor of Arts degree with honors from the University of Minnesota, where she studied Sociology with an emphasis in Criminology and Law. As an undergraduate she interned with the Hennepin County Attorney's Office, where she advocated for victims of domestic violence and assisted in sentencing negotiations in Juvenile Court. Sara received her Juris Doctor degree from the University of San Diego School of Law, where she was the recipient of two academic scholarships. While in law school, she interned with the Center for Public Interest Law and was a contributing author and assistant editor to the California Regulatory Law Reporter. She also worked as a legal research assistant at the law school and clerked for two San Diego law firms.

### Education

B.A., University of Minnesota, 1999; J.D., University of San Diego School of Law, 2005

# Svenna Prado | Of Counsel

Svenna Prado is Of Counsel in the Firm's San Diego office, where she focuses on various aspects of international securities and consumer litigation. She was part of the litigation teams that secured settlements against German defendant IKB, as well as Deutsche Bank and Deutsche Bank/West LB for their role in structuring residential mortgage-backed securities and their subsequent collapse. Before joining the Firm, Prado was Head of the Legal Department for a leading international staffing agency in Germany where she focused on all aspects of employment litigation and corporate governance. After she moved to the United States, Prado worked with an internationally oriented German law firm as Counsel to corporate clients establishing subsidiaries in the United States and Germany. As a law student, Prado worked directly for several years for one of the appointed Trustees winding up Eastern German operations under receivership in the aftermath of the German reunification. Utilizing her experience in this area of law, Prado later helped many clients secure successful outcomes in U.S. Bankruptcy Court.

## Education

J.D., University of Erlangen-Nuremberg, Germany, 1996; Qualification for Judicial Office, Upper Regional Court Nuremberg, Germany, 1998; New York University, "U.S. Law and Methodologies," 2001

# Harini P. Raghupathi | Of Counsel

Harini Raghupathi is Of Counsel in the Firm's San Diego office. She is a member of the Firm's Appellate Practice Group.

Before joining the Firm, Harini represented victims of serious injury in federal and state appellate courts. Her practice areas included mass torts, consumer protection, and civil rights. Additionally, for over a decade, Harini served as a federal public defender specializing in appeals. In that role, she obtained multiple published reversals on behalf of her clients.

In 2012, *The Recorder* named Harini an "Attorney of the Year" for her successful appeal in *United States v. Leal-Del Carmen*, 697 F.3d 964 (9th Cir. 2012). Harini serves as the Chair of the Ninth Circuit Advisory Committee on Rules of Practice. She is also a member of the San Diego Appellate Inn of Court and a volunteer-mentor with The Appellate Project.

## Education

B.S., Stanford University, 2004; J.D., University of California, Berkeley School of Law, 2007

## Honors / Awards

Attorney of the Year, *The Recorder*, 2012

## Andrew T. Rees | Of Counsel

Andrew Rees is Of Counsel in the Firm's Boca Raton office. His practice focuses on complex class actions, including securities, corporate governance and consumer fraud litigation. He was on the litigation team that successfully obtained a $146.25 million recovery in *Nieman v. Duke Energy Corp.*, which is the largest recovery in North Carolina for a case involving securities fraud and one of the five largest recoveries in the Fourth Circuit.

Before joining the Firm, Rees worked as an associate in the Washington, D.C. office of Hogan & Hartson LLP, where he practiced in the area of commercial transactions, including financings, stock purchases, asset acquisitions and mergers.

## Education

B.A., Pennsylvania State University, 1997; J.D., William and Mary School of Law, 2002

## Honors / Awards

Best Lawyer in America: One to Watch, *Best Lawyers®*, 2024-2025

## Jack Reise | Of Counsel

Jack Reise is Of Counsel in the Firm's Boca Raton office. Devoted to protecting the rights of those who have been harmed by corporate misconduct, his practice focuses on class action litigation (including securities fraud, shareholder derivative actions, consumer protection, antitrust, and unfair and deceptive insurance practices). Reise also dedicates a substantial portion of his practice to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide. Most recently, Reise and a team of Robbins Geller attorneys obtained a $1.21 billion settlement in *In re Valeant Pharms. Int'l, Inc. Sec. Litig.* (D.N.J.), a case that *Vanity Fair* reported as "the corporate scandal of its era" that had raised "fundamental questions about the functioning of our health-care system, the nature of modern markets, and the slippery slope of ethical rationalizations." This is the largest securities class action settlement against a pharmaceutical manufacturer and the ninth largest ever. As lead counsel, Reise has also represented investors in a series of cases involving mutual funds charged with improperly valuing their net assets, which settled for a total of more than $50 million. Other notable actions include: *In re NewPower Holdings, Inc. Sec. Litig.* (S.D.N.Y.) ($41 million settlement); *In re ADT Inc. S'holder Litig.* (Fla. Cir. Ct., 15th Jud. Cir.) ($30 million settlement); *In re Red Hat, Inc. Sec. Litig.* (E.D.N.C.) ($20 million settlement); and *In re AFC Enters., Inc. Sec. Litig.* (N.D. Ga.) ($17.2 million settlement).

## Education

B.A., Binghamton University, 1992; J.D., University of Miami School of Law, 1995

## Honors / Awards

Leading Plaintiff Financial Lawyer, *Lawdragon*, 2019-2022; American Jurisprudence Book Award in Contracts; J.D., *Cum Laude*, University of Miami School of Law, 1995; *University of Miami Inter-American Law Review*, University of Miami School of Law

# Kevin S. Sciarani | Of Counsel

Kevin Sciarani is Of Counsel to the Firm and is based in the San Diego office, where his practice focuses on complex securities litigation. Sciarani earned Bachelor of Science and Bachelor of Arts degrees from the University of California, San Diego. He graduated *magna cum laude* from the University of California, Hastings College of the Law with a Juris Doctor degree, where he served as a Senior Articles Editor on the *Hastings Law Journal*.

During law school, Sciarani interned for the U.S. Securities and Exchange Commission and the Antitrust Section of the California Department of Justice. In his final semester, he served as an extern to the Honorable Susan Illston of the United States District Court for the Northern District of California. Sciarani also received recognition for his *pro bono* assistance to tenants living in foreclosed properties due to the subprime mortgage crisis.

## Education

B.S., B.A., University of California, San Diego, 2005; J.D., University of California, Hastings College of the Law, 2014

## Honors / Awards

J.D., *Magna Cum Laude*, Order of the Coif, University of California, Hastings College of the Law, 2014; CALI Excellence Award, Senior Articles Editor, Hastings Law Journal, University of California, Hastings College of the Law

# Leonard B. Simon | Of Counsel

Leonard Simon is Of Counsel in the Firm's San Diego office. His practice has been devoted to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields. Simon has also handled a substantial number of complex appellate matters, arguing cases in the United States Supreme Court, several federal Courts of Appeals, and several California appellate courts. He has also represented large, publicly traded corporations. Simon served as plaintiffs' co-lead counsel in *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than $1 billion). He was also in a leadership role in several of the state court antitrust cases against Microsoft, and the state court antitrust cases challenging electric prices in California. He was centrally involved in the prosecution of *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He has lectured extensively on securities, antitrust, and complex litigation in programs sponsored by the American Bar Association Section of Litigation, the Practicing Law Institute, and ALI-ABA, and at the UCLA Law School, the University of San Diego Law School, and the Stanford Business School. He is an Editor of *California Federal Court Practice* and has authored a law review article on the PSLRA.

## Education
B.A., Union College, 1970; J.D., Duke University School of Law, 1973

## Honors / Awards
Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2016-2022; Super Lawyer, *Super Lawyers Magazine*, 2008-2016; J.D., Order of the Coif and with Distinction, Duke University School of Law, 1973

# Megan M. Sonney | Of Counsel

Megan Sonney is Of Counsel to the Firm and is based in the San Diego office, where her practice focuses on securities fraud litigation.

Most recently, Sonney was a member of the litigation team that obtained a $434 million settlement in *In re Under Armour Sec. Litig*. The case settled just prior to the commencement of trial in Baltimore, Maryland, and represents the second largest securities fraud settlement ever in the Fourth Circuit and is among the top 50 largest such recoveries in U.S. history.

## Education
B.A., Point Loma Nazarene University, 2007; J.D., University of San Diego School of Law, 2011

## Honors / Awards
B.A., *cum laude*, Point Loma Nazarene University, 2007

# Laura S. Stein | Of Counsel

Laura Stein is Of Counsel in the Firm's Philadelphia office. Since 1995, she has practiced in the areas of securities class action litigation, complex litigation, and legislative law. Stein has served as one of the Firm's and the nation's top asset recovery experts with a focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty. She also seeks to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. Stein works with over 500 institutional investors across the nation and abroad, and her clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as: Alphabet, Apple, AOL Time Warner, TYCO, Cardinal Health, AT&T, Hanover Compressor, 1st Bancorp, Enron, Dynegy, Inc., Honeywell International, Bridgestone, LendingClub, Orbital ATK, Under Armour, and Walmart, to name a few. Many of the cases led by Stein's clients have accomplished groundbreaking corporate governance achievements, including obtaining shareholder-nominated directors. She is a frequent presenter and educator on securities fraud monitoring, litigation, and corporate governance.

## Education
B.A., University of Pennsylvania, 1992; J.D., University of Pennsylvania Law School, 1995

## Honors / Awards
Leading Plaintiff Financial Lawyer, *Lawdragon*, 2024

# John J. Stoia, Jr. | Of Counsel

John Stoia is Of Counsel to the Firm and is based in the Firm's San Diego office. He is one of the founding partners and former managing partner of the Firm. He focuses his practice on insurance fraud, consumer fraud, and securities fraud class actions. Stoia has been responsible for over $10 billion in recoveries on behalf of victims of insurance fraud due to deceptive sales practices such as "vanishing premiums" and "churning." He has worked on dozens of nationwide complex securities class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a member of the plaintiffs' trial team that obtained verdicts against Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

He also represented numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of major financial scandals, including AOL Time Warner and WorldCom. Currently, Stoia is lead counsel in numerous cases against online discount voucher companies for violations of both federal and state laws including violation of state gift card statutes.

## Education

B.S., University of Tulsa, 1983; J.D., University of Tulsa, 1986; LL.M., Georgetown University Law Center, 1987

## Honors / Awards

Rated AV Preeminent by Martindale-Hubbell; Top Lawyer in San Diego, *San Diego Magazine*, 2013-2022; Super Lawyer, *Super Lawyers Magazine*, 2007-2017; Litigator of the Month, *The National Law Journal*, July 2000; LL.M. Top of Class, Georgetown University Law Center

# Christopher J. Supple | Of Counsel

Chris Supple is Senior Counsel to Robbins Geller, having joined the Firm after spending the past decade (2011-2021) as Deputy Executive Director and General Counsel at MassPRIM (the Massachusetts Pension Reserves Investment Management Board). While at MassPRIM, Supple also served for the last half-decade as Chair and Co-Chair of the Securities Litigation Committee of NAPPA (the National Association of Public Pension Attorneys). Supple is very familiar with, and experienced in, the role that institutional investors play in private securities litigation, having successfully directed MassPRIM's securities litigation activity in dozens of actions that recovered more than a billion dollars for investors, including *Schering-Plough* ($473 million), *Massey Energy* ($265 million), and *Fannie Mae* ($170 million).

Supple's 30-plus years of experience in law and investments also includes over five years as a federal prosecutor, six years in senior leadership positions for two Massachusetts Governors, and over ten years in private law practice where his clients included MassPRIM and also its sibling Health Care Security/State Retiree Benefits Trust Fund. Supple began his career (after a federal court clerkship) as a litigating attorney assigned to securities cases at the Boston law firm of Hale and Dorr (now called WilmerHale). Supple has litigated in state and federal courts throughout the nation, and has successfully tried over 25 cases to jury verdict, tried dozens of cases to judges sitting without juries, argued hundreds of evidentiary and non-evidentiary motions, and settled dozens of cases by negotiated agreement. Supple holds the Investment Foundations™ Certificate awarded by the CFA (Chartered Financial Analyst) Institute, and for nearly a decade was an adjunct law professor teaching a course in Federal Criminal Prosecution.

## Education

B.A., The College of the Holy Cross, 1985; J.D., Duke University School of Law, 1988

## Honors / Awards

J.D., with Honors, Duke University School of Law, 1988

# Lindsey H. Taylor | Of Counsel

Lindsey H. Taylor is Of Counsel in the Firm's Boca Raton office, where his practice concentrates on consumer fraud and antitrust litigation.

At Robbins Geller, Taylor is part of the team representing plaintiffs in *In re American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 2:19-md-02904 (D.N.J.), *In re American Financial Resources, Inc. Data Breach Litig.*, No. 2:22-cv-01757 (D.N.J.), and *In re Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y.). Before joining Robbins Geller, Taylor briefed and argued on behalf of the plaintiff in *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015), which established in the Third Circuit the standards when a non-competitor, non-consumer plaintiff had antitrust standing and differing standards for single and serial petitioning under the *Noerr-Pennington* doctrine. He was also part of the team that obtained favorable settlements in *James v. Global Tel\*Link Corp.*, No. 2:13-04989 (D.N.J.), on behalf of the families of prisoners held on New Jersey prisons and jails for unconscionable pricing for prison telephone calls, and in *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687 (D.N.J.), on behalf of direct purchasers of liquid aluminum sulfate, which is used for water treatment.

Since 1998, Taylor has been the author of the chapter "Responding to the Complaint" in *New Jersey Federal Civil Procedure*, published annually by New Jersey Law Journal Books. He also served on the New Jersey District VC Ethics Committee from 2002 to 2006.

## Education

B.A., University of North Carolina at Chapel Hill, 1983; J.D., University of North Carolina at Chapel Hill School of Law, 1986

## Honors / Awards

Rated AV Preeminent Martindale Hubbell; Best Lawyer in America, *Best Lawyers*®, 2019-2025; New Jersey Super Lawyer, *Super Lawyers Magazine*, 2005, 2008-2011, 2014-2017, 2019-2022; B.A., with Honors, University of North Carolina at Chapel Hill, 1983

# Michael A. Troncoso | Of Counsel

Michael Troncoso is Of Counsel to the Firm.  His practice focuses on securities fraud class action litigation and other affirmative litigation.  Prior to joining the Firm, Troncoso served as a prosecutor, senior in-house counsel, and legal and policy advisor across numerous sectors.  He served as chief counsel and chief of public policy to then-California Attorney General Kamala D. Harris, overseeing the office's priority litigation, enforcement, and legislative matters. In this role, he served as lead counsel for the State of California in securing the National Mortgage Settlement, the largest consumer financial protection settlement in state history that brought $20 billion in loan relief and direct payments to California homeowners.  He led the state's Mortgage Fraud Task Force and its investigations of securities law violations arising from the issuance of residential mortgage-backed securities.  His team recovered nearly $1 billion in RMBS-related losses for California public pension funds.

Earlier in his career, Troncoso served for nearly six years as a trial attorney and assistant chief attorney for policy in the San Francisco District Attorney's office, where he tried multiple criminal cases to jury verdict and led the office's mortgage and investment fraud team, where he was responsible for investigating and prosecuting complex financial crimes from initial report through charging and trial.

Troncoso most recently served as Vice President at the Chan Zuckerberg Initiative, a philanthropic organization, where he led bipartisan policy and advocacy efforts nationwide.  He also served in the University of California's Office of General Counsel as managing counsel for health affairs and technology law and chief campus counsel, where he oversaw various litigation, regulatory, and data protection matters.

## Education

B.A., University of California at Berkeley, 1999; J.D., Georgetown University Law Center, 2002

## Honors / Awards

Top 20 Under 40, *Daily Journal*, 2012

# David C. Walton | Of Counsel

David Walton was a founding partner of the Firm. For over 25 years, he has prosecuted class actions and private actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of highly complex accounting scandals within some of America's largest corporations, including Enron ($7.2 billion), HealthSouth ($671 million), WorldCom ($657 million), AOL Time Warner ($629 million), Countrywide ($500 million), and Dynegy ($474 million), as well as numerous companies implicated in stock option backdating.

Walton is a member of the Bar of California, a Certified Public Accountant (California 1992), and is fluent in Spanish. In 2003-2004, he served as a member of the California Board of Accountancy, which is responsible for regulating the accounting profession in California.

## Education
B.A., University of Utah, 1988; J.D., University of Southern California Law Center, 1993

## Honors / Awards
Recommended Lawyer, *The Legal 500*, 2019; Super Lawyer, *Super Lawyers Magazine*, 2015-2016; California Board of Accountancy, Member, 2003-2004; *Southern California Law Review*, Member, University of Southern California Law Center; Hale Moot Court Honors Program, University of Southern California Law Center

# Jai Chandrasekhar | Counsel

Jai Chandrasekhar is Counsel in the Firm's Manhattan office. Chandrasekhar's background includes the rare combination of experience as a plaintiffs' lawyer and as a corporate lawyer. Chandrasekhar has been representing plaintiffs for 20 years in securities fraud cases that have recovered more than $1.8 billion for investors.

Chandrasekhar's cases in courts across the country have resulted in many outstanding securities litigation recoveries for shareholders, including the Refco securities litigation ($367.3 million recovered for shareholders), the MF Global Holdings securities litigation ($234.3 million recovered for shareholders), the Luckin Coffee securities litigation ($175 million recovered for shareholders), and the JPMorgan Chase ("London Whale") securities litigation ($150 million recovered for shareholders), among others.

Chandrasekhar also advises institutional and other investors about how best to enforce their rights as shareholders in the United States and abroad.

Earlier in his career, Chandrasekhar was an associate at Sullivan & Cromwell, where he represented securities issuers and underwriters in public and private offerings, Securities and Exchange Commission reporting and compliance, and corporate governance matters. He then served as a staff attorney in the Enforcement Division of the Securities and Exchange Commission's New York office.

## Education
B.A., Yale University, 1987; J.D., Yale Law School, 1997

# Bruce Gamble | Special Counsel

Bruce Gamble is Special Counsel to the Firm in the Firm's Washington D.C. office and is a member of the Firm's institutional investor client services group.  He serves as liaison with the Firm's institutional investor clients in the United States and abroad, advising them on securities litigation matters.  Gamble formerly served as Of Counsel to the Firm, providing a broad array of highly specialized legal and consulting services to public retirement plans.  Before working with Robbins Geller, Gamble was General Counsel and Chief Compliance Officer for the District of Columbia Retirement Board, where he served as chief legal advisor to the Board of Trustees and staff.  Gamble's experience also includes serving as Chief Executive Officer of two national trade associations and several senior level staff positions on Capitol Hill.

## Education

B.S., University of Louisville, 1979; J.D., Georgetown University Law Center, 1989

## Honors / Awards

Executive Board Member, National Association of Public Pension Attorneys, 2000-2006; American Banker selection as one of the most promising U.S. bank executives under 40 years of age, 1992

# R. Steven Aronica | Forensic Accountant

Steven Aronica is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors, and the Association of Certified Fraud Examiners.  Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies that include Lucent Technologies, Tyco, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Vivendi, AOL Time Warner, Ikon, Doral Financial, First BanCorp, Acclaim Entertainment, Pall Corporation, iStar Financial, Hibernia Foods, NBTY, Tommy Hilfiger, Lockheed Martin, the Blackstone Group, and Motorola.  In addition, he assisted in the prosecution of numerous civil claims against the major United States public accounting firms.

Aronica has been employed in the practice of financial accounting for more than 30 years, including public accounting, where he was responsible for providing clients with a wide range of accounting and auditing services; the investment bank Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities; and at the SEC, where he held various positions in the divisions of Corporation Finance and Enforcement and participated in the prosecution of both criminal and civil fraud claims.

## Education

B.B.A., University of Georgia, 1979

# Andrew J. Rudolph | Forensic Accountant

Andrew Rudolph is the Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies.  He has directed hundreds of financial statement fraud investigations, which were instrumental in recovering billions of dollars for defrauded investors.  Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix*, *Platinum Software*, *AOL Time Warner*, and *UnitedHealth*.

Rudolph is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California.  He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners.  His 20 years of public accounting, consulting, and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations, and taxation.

## Education
B.A., Central Connecticut State University, 1985

# Christopher Yurcek | Forensic Accountant

Christopher Yurcek is the Assistant Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation.  He has directed the Firm's forensic accounting efforts on numerous high-profile cases, including *In re Enron Corp. Sec. Litig.* and *Jaffe v. Household Int'l, Inc.*, which obtained a record-breaking $1.575 billion settlement after 14 years of litigation, including a six-week jury trial in 2009 that resulted in a verdict for plaintiffs.  Other prominent cases include *HealthSouth*, *UnitedHealth*, *Vesta*, *Informix*, *Mattel*, *Coca-Cola*, and *Media Vision*.

Yurcek has over 20 years of accounting, auditing, and consulting experience in areas including financial statement audit, forensic accounting and fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation.  He is a Certified Public Accountant licensed in California, holds a Certified in Financial Forensics (CFF) Credential from the American Institute of Certified Public Accountants, and is a member of the California Society of CPAs and the Association of Certified Fraud Examiners.

## Education
B.A., University of California, Santa Barbara, 1985

# EXHIBIT 3



# FIRM RESUME



Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> - THE NEW YORK TIMES

# PRACTICE AREAS

Milberg maintains a robust practice, representing plaintiffs across numerous areas of law. Milberg attorneys have amassed a wealth of experience in the areas of antitrust and competition law, securities litigation, defective consumer product and automobile litigation, consumer services litigation, dangerous drugs and devices litigation, data breach and biometric data litigation, environmental and toxic tort litigation, finance and insurance litigation, state and local government litigation, and whistleblower and qui tam lawsuits. Milberg attorneys focus their practice among these groups to provide their clients with the best representation possible. Over decades, Milberg attorneys have developed expertise in handling class action lawsuits, leading and overseeing multidistrict litigation, and representing municipalities and other public and governmental clients. Based on their reputation and experience, Milberg attorneys have been assigned to leadership roles in class actions, mass torts litigation, and multidistrict litigation nationwide, across all of these practice areas.

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

**EXEMPLAR CASES**

**In re: Nortel Networks Corp. Securities Litigation**

**U.S. District Court for the Southern District of New York**

Milberg attorneys served as Lead Counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund, in this federal securities class action. The court approved a settlement valued at more than $1.14 billion.

**In re: Initial Public Offering Securities Litigation**

**U.S. District Court for the Southern District of New York**

Milberg represented investors in 310 securities class actions alleging a market manipulation scheme involving hundreds of initial public offerings and approximately 55 defendant investment banks. Plaintiffs alleged this scheme significantly contributed to the high-tech "bubble" of the late 1990s and early 2000s. In approving a $586 million settlement, the court described the law firms on the Plaintiffs' Executive Committee as the "cream of the crop."

### In re: Zynga Inc. Sec. Litigation
**U.S. District Court for the Northern District of California**
A class action in which Zynga misled investors by portraying the online gaming company as financially strong and withholding non-public information, which in turn allowed a select few within the company to reap the benefits from the company's IPO, before the stock's value eventually collapsed.

### In re: Merck & Co., Inc. Sec. Litigation
**U.S. District Court for the District of New Jersey**
Milberg served as Co-Lead Counsel in this federal securities fraud class action, and after more than 12 years of hard-fought litigation, ultimately obtained a combined settlement totaling $1.062 billion, the largest securities class action settlement ever against a pharmaceutical company. The court described the settlement as "a settlement which is fair and just and which, in fact, is the best settlement which possibly could have been achieved in this case."

### In re: Deutsche Telekom AG Sec. Litigation
**U.S. District Court for the Southern District of New York**
Milberg attorneys served as Co-Lead Counsel in this class action on behalf of purchasers of American Depository Receipts. The plaintiffs alleged that Deutsche Telekom improperly failed to disclose plans to make a major corporate acquisition and overstated the value of real estate assets. Milberg attorneys played a pivotal role in achieving a $120 million settlement.

### In re: Tyco Int'l Ltd., Sec. Litigation
**U.S. District Court for the District of New Hampshire**
Milberg attorneys served as Co-Lead Counsel in this litigation, which involved federal securities claims against Tyco and its former CEO, CFO, general counsel, and certain former directors for insider trading and the overstatement of billions of dollars in income. Milberg attorneys played a crucial role in achieving a $3.2 billion settlement.

### In re: Vivendi Universal, S.A. Securities Litigation
**U.S. District Court for the Southern District of New York**
Milberg was one of two Lead Trial Counsel in this securities fraud case tried to a jury over four months. The jury found Vivendi liable for dozens of false or misleading statements and awarded damages valued at well over a billion dollars. Six months later, in an unrelated case, the Supreme Court ruled that purchasers on foreign securities exchanges could not recover under U.S. law. Milberg's case against Vivendi continued with post-verdict proceedings under the new standard, and damages have been distributed to U.S. class members totaling over $100 million.

### In re: Washington Public Power Supply System Securities Litigation
**U.S. District Court for the District of Arizona**
In this massive securities fraud litigation, Milberg served as Co-Lead Counsel for a class that obtained, after several months of trial, settlements totaling $775 million, the largest securities fraud settlement at that time.

### In re: Lucent Technologies, Inc. Securities Litigation
**U.S. District Court for the District of New Jersey**
Milberg served as Co-Lead Counsel in this securities action, which alleged that Lucent and its senior officers misrepresented the demand for Lucent products and improperly recognized hundreds of millions of dollars in revenues. The case settled for $600 million.

### In re: Biovail Corp. Securities Litigation

**U.S. District Court for the Southern District of New York**

Milberg, representing Local 282 Welfare Trust Fund and serving as Co-Lead Counsel, litigated this securities action alleging that defendants made misleading statements concerning Biovail's financial results and its drug, Cardizem LA. Following substantial discovery, including depositions across the U.S. and Canada, Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

### In re: CVS Corp. Securities Litigation

**U.S. District Court for the District of Massachusetts**

Milberg served as Co-Lead Counsel in this securities action on behalf of a class of purchasers of American Depository Receipts. The plaintiffs alleged that Deutsche Telekom improperly failed to disclose plans to make a major corporate acquisition and overstated the value of real estate assets. In 2005, following extensive discovery, including depositions in Germany, the court approved a $120 million cash settlement.

### In re: CVS Corp. Securities Litigation

**U.S. District Court for the District of Massachusetts**

Milberg served as Co-Lead Counsel in this securities class action alleging that defendants issued false and misleading statements, which artificially inflated the price of CVS stock.
The court approved a $110 million settlement.

### In re: American Express Financial Advisors Securities Litigation

**U.S. District Court for the Southern District of New York**

This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain non-proprietary mutual funds. The case settled for $100 million and required the company to adopt various remedial measures.

### Irvine v. ImClone Systems, Inc.

**U.S. District Court for the Southern District of New York**

Milberg served as Co-Lead Counsel in this case, in which the court approved a $75 million cash settlement. The plaintiffs alleged that ImClone misrepresented the likelihood that its drug, Erbitux, would be approved, thereby artificially inflating the price of ImClone stock.

## ANTITRUST

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

**EXEMPLAR CASES**

**In re: Dealer Management Systems Antitrust Litigation**
**U.S. District Court for the Northern District of Illinois**
Milberg is appointed Lead Counsel in this nationwide class action representing car dealerships. Plaintiffs allege that leading software providers entered into an unlawful agreement, monopolizing access to auto sales and service data in dealer management software used by dealers, thereby reducing competition and increasing prices. Milberg attorneys achieved a $29.5 million settlement against one defendant and the case is proceeding against the remaining defendant.

**In re: ACTOS Antitrust Litigation**
**U.S. District Court for the Southern District of New York**
Milberg attorneys played a significant role in this litigation, including appointment to the MDL Discovery Committee, which accused Takeda Pharmaceuticals of failing to warn patients of the risks of bladder cancer, heart failure and other side effects associated with the Type 2 diabetes drug. In 2015, roughly 9,000 claims were settled for $2.4 billion and significant injunctive relief.

**In re: Cathode Ray Tube (CRT) Antitrust Litigation**
**U.S. District Court for the Northern District of California**
Milberg represented indirect purchaser plaintiffs in this class action alleging an international conspiracy among defendants to keep prices for cathode ray tube (CRT) displays artificially high. Milberg had a significant discovery role in the prosecution of this class action with settlements exceeding $580 million.

**Blessing v. Sirius XM Radio Inc.**
**U.S. District Court for the Southern District of New York**
Milberg served as Co-Lead Counsel in this case alleging that the merger of two U.S. satellite radio providers led to the monopolization of the satellite radio market and the elimination of competition.

**In re: Disposable Contact Lens Antitrust Litigation**
**U.S. District Court for the Middle District of Florida**
Milberg represented indirect purchasers in a class action alleging that defendants conspired to maintain artificially high prices for disposable contact lenses through policies that prevented resale of the subject contact lenses below a minimum price. Settlements exceeded $118 million.

**In re: Liquid Aluminum Sulfate Antitrust Litigation**
**U.S. District Court for the District of New Jersey**
Milberg was appointed to the Plaintiffs Steering Committee in this class action alleging that manufacturers of a chemical essential to municipal water treatment engaged in price-fixing, bid-rigging and market allocation in violation of federal antitrust laws. Settlements were valued at $92.5 million.

### Sandhaus v. Bayer AG
**Kansas State Court**
Milberg served as Co-Lead Counsel in this case alleging that Bayer and several generic drug manufacturers entered into pay-for-delay agreements concerning an antibiotic marketed by Bayer, which caused the plaintiffs to continue paying supracompetitive prices for the drug throughout the class period. The case settled for $9 million.

### In re: Fresh Process Potatoes Antitrust Litigation
**United States District Court, District of Idaho**
Milberg served as Co-Lead Counsel for indirect purchaser plaintiffs in this class action alleging that potato growers, their cooperatives, processors, and packers violated federal antitrust laws by conspiring to manipulate the price and supply of potatoes. Milberg achieved a settlement for $5.5 million and meaningful injunctive relief.

### In re: Google Play Consumer Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg is appointed part of a three-member Steering Committee in this consolidated class action alleging Google engaged in anticompetitive behavior through the Google Play Store, seeking injunctive relief and monetary damages on behalf of consumers forced to pay inflated prices for Play Store purchases.

### Series 17-03-615, a series of MSP Recovery Claims, Series LLC. v. Express Scripts, Inc.
**U.S. District Court for the Northern District of Illinois**
Milberg represents third-party payers in this class action alleging that defendants participated in a vertical price-fixing scheme and their monopolistic, anticompetitive behavior caused plaintiffs and the class to pay inflated prices for the drug, H.P. Acthar Gel.

### In re: Hard Disk Drive Assemblies Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg represents a class of indirect purchaser end user plaintiffs in a class action alleging that the two largest manufacturers of hard disk drive (HDD) suspension assemblies illegally conspired to fix prices of these component parts, thereby raising prices of products purchased by plaintiffs and the class.

### In re: Deere & Co. Repair Services Antitrust Litigation
**U.S. District Court for the Northern District of Illinois**
Milberg is appointed to the Plaintiffs Steering Committee in this class action alleging that John Deere illegally monopolized the repair and diagnostic services market for Deere brand agricultural equipment with onboard central computers known as engine control units, thereby inflating the prices of these services.

### Harley-Davidson Aftermarket Parts Marketing, Sales Practices and Antitrust Litigation
**U.S. District Court for the Eastern District of Wisconsin**
Milberg represents a class of Harley-Davison motorcycle owners in a case alleging that Harley-Davidson uses its monopoly power to force motorcycle owners to use its compatible branded parts for repairs or risk losing warranty coverage.

In re: California Gasoline Spot Market Antitrust Litigation
U.S. District Court for the Northern District of California
Milberg represents California consumers who were forced to pay supracompetitive prices for gasoline due to the manipulation of the California gasoline spot market.

## FINANCIAL LITIGATION

For over five decades, Milberg has spearheaded litigation challenging unethical practices by some of the biggest financial and insurance institutions in the world and has been at the cutting edge of cases that directly impacted large banks, lenders, and insurers.

### EXEMPLAR CASES

In re: Prudential Insurance Co. Sales Practice Litigation
U.S. District Court for the Northern District of California
Milberg attorneys were appointed Lead Counsel and recovered more than $4 billion for certain policyholders in this landmark case challenging Prudential's insurance sales practices.

In re: Raytheon Co. Securities Litigation
U.S. District Court for the District of Massachusetts
Milberg served as Lead Counsel in this case, which alleged that a major defense contractor failed to properly write down assets on construction contracts. Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation
U.S. District for the Northern District of California
Milberg served on the Executive Committee representing the class in this action against JP Morgan Chase & Co. The complaint alleged that Chase improperly increased the minimum monthly payment by 150% required for customers who entered into balance transfer loans with "fixed" interest rates that were guaranteed to remain so for the "life of the loan." Milberg and its Co-Counsel achieved a $100 million settlement for the class.

In re: General Electric Co. ERISA Litigation
U.S. District Court for the Northern District of New York
Milberg, serving as Co-Lead Counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that G.E.'s 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

In re: Royal Dutch/Shell Transport ERISA Litigation
U.S. District Court for the District of New Jersey
Milberg attorneys led this ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. The $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

### Mason v. Medline

**U.S. District Court for the Northern District of Illinois**

Milberg successfully represented a healthcare worker in a False Claims Act case against his former employer, Medline Industries, Inc., one of the nation's largest suppliers of medical and surgical products, along with its charitable arm, The Medline Foundation. The suit alleged that Medline engaged in a widespread illegal kickback scheme targeting hospitals and other healthcare providers that purchase medical products paid for by federal healthcare programs. Milberg pursued the case on a non-intervened basis and recovered $85 million on behalf of the federal government — one of the largest settlements of a False Claims Act case in which the government declined to intervene.

### In re: Comverse Technology, Inc. Derivative Litigation

**U.S. Supreme Court for the State of New York, New York County**

As Co-Lead Counsel, Milberg negotiated a $62 settlement which was approved by the court. The settlement also resulted in significant corporate governance reforms, including the replacement of various directors and officers; the amendment of the company's bylaws to permit certain shareholders to propose in the company's proxy materials nominees for election as directors; and the requirement that all equity grants be approved by both the compensation committee and a majority of the non-employee directors.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

**EXEMPLAR CASES**

### Cleveland v. Whirlpool Corp.

**U.S. District Court for the District of Minnesota**

Milberg attorneys led this class action involving leaking and defective washing machines. Milberg attorneys were pivotal in achieving a settlement valued at approximately $21 million, which included meaningful service plan benefits and reimbursement for out-of-pocket repair expenses.

### Berman et al. v. General Motors LLC

**U.S. District Court for the Southern District of Florida**

Milberg attorneys held leadership roles in this class action involving excessive oil consumption in Chevrolet and GMC vehicles. Milberg attorneys played a pivotal role in achieving a nationwide settlement valued at over $40 million, securing vehicle repairs and reimbursement for out-of-pocket repair costs.

### Chess v. Volkswagen Group of America, Inc.

**U.S. District Court for the Central District of California**

Milberg attorneys were named Co-Lead Counsel in this class action involving Volkswagen vehicles with defective transmissions. Milberg attorneys secured a settlement that included up to full reimbursement for out-of-pocket repair expenses and significant injunctive relief.

### Hamm v. Sharp Electronics Corporation
**U.S. District Court for the Southern District of Florida**
Milberg attorneys served as Co-Class Counsel in this class action involving defectively designed microwave drawers. Milberg attorneys were instrumental in achieving a settlement valued at more than $100 million, which included meaningful extended service plan benefits and reimbursement for out-of-pocket repair expenses.

### In re: Allura Fiber Cement Siding Products Liability Litigation
**U.S. District Court for the District of South Carolina**
Milberg attorneys were appointed Co-Lead Counsel and Steering Committee members by the court in this class action alleging defective fiber cement board siding. Milberg attorneys helped to secure a nationwide settlement for repair and replacement of homeowners' siding.

### In re: MI Windows and Doors, Inc., Products Liability Litigation
**U.S. District Court for the District of South Carolina**
Milberg attorneys served as Co-Lead Counsel in this multidistrict class action litigation and helped to secure a nationwide class settlement for homeowners who purchased defectively designed windows.

### In re: Zurn Pex Plumbing Products Liability Litigation
**U.S. District Court for the District of Minnesota**
Milberg attorneys served on the Executive Committee in this multidistrict class action involving leaking and defective plumbing systems. Milberg attorneys secured monetary benefits valued at $100,000 per class settlement member, and plumbing repairs in value up to $7,000 per class settlement member.

### Hobbie, et al. v. RCR Holdings II, LLC, et al.
**U.S. District Court for the District of Louisiana**
Milberg attorneys served as Co-Lead Counsel in a multidistrict class action alleging improper usage of toxic and defective Chinese drywall. Milberg attorneys played an important role in securing a $30 million settlement for remediation of 364-unit residential high-rise buildings constructed with the toxic drywall.

### In re: Chinese Manufactured Drywall Products Liability Litigation
**U.S. District Court for the Eastern District of Louisiana**
Milberg attorneys served on the Executive Committee in a multidistrict class action involving defective and toxic drywall.

### In re: Synthetic Stucco Litigation
**U.S. District Court for the Eastern District of North Carolina**
Milberg attorneys were appointed to the Steering Committee and played a pivotal role in securing settlements with four exterior insulation finishing system manufacturers for homeowners valued at over $50 million.

### Bridget Smith v. Floor and Decor Outlets of America, Inc.
**U.S. District Court for the Northern District of Georgia**
Milberg attorneys were appointed Co-Lead Counsel in this class action alleging undisclosed formaldehyde exposure from wood and laminate flooring. Milberg attorneys achieved a national class action settlement for homeowners who purchased unsafe laminate wood flooring.

### In re: Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the Eastern District of Virginia**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging formaldehyde exposure and secured a $36 million national class action settlement for members who purchased a certain type of laminate flooring.

### In re: Windsor Wood Clad Window Products Liability Litigation

**U.S. District Court for the Eastern District of Wisconsin**

Milberg attorneys were appointed Lead Counsel in this class action alleging window defects. Milberg attorneys helped to secure a nationwide settlement for customers providing repairs, replacements, and compensation for out-of-pocket expenses.

### Norman et al. v. Nissan North America

**U.S. District Court for the Middle District of Tennessee**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging CVT transmission defects in Nissan vehicles. Milberg attorneys played a pivotal role in securing a nationwide settlement valued at approximately $17 million for repairs, replacements, extended warranty, and cash benefits.

### In re: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation

**U.S. District Court for the Southern District of Florida**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging falsely advertised brain health benefits. Milberg attorneys were essential in securing a settlement valued at $1.3 million for consumers.

### In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

**U.S. District Court for the Western District of Pennsylvania**

Milberg attorneys were appointed to leadership positions in this multidistrict class action involving All-Clad's false advertising that its stainless-steel cookware was dishwasher safe. Milberg attorneys secured a nationwide settlement valued at $4 million, including replacement products, monetary benefits, partial reimbursements for purchases of the defective products, and discounts on future product purchases.

### Julian, et al., v. TTE Technology, Inc.

**U.S. District Court for the Northern District of California**

Milberg attorneys were appointed Co-Lead Counsel in this litigation involving the false advertising of TCL televisions' refresh rates. Milberg attorneys played an important role in securing a class settlement valued at $2.5 million in cash benefits to class members.

### Roberts et al. v. Electrolux Home Products Inc.

**U.S. District Court for the Central District of California**

Milberg attorneys were named Co-Lead Counsel in this class action involving defective dryers manufactured by Electrolux. Milberg attorneys helped to obtain a settlement on behalf of more than one million class members, valued at over $35 million.

### Tabak v. Apple Inc.

**U.S. District Court for the Northern District of California**

Milberg attorneys brought this class action against Apple for a defect in the iPhone 7 and iPhone 7 Plus, which negatively impacted the audio quality of the phones. Milberg attorneys played a pivotal role in bringing the case, briefing, and discovery. The parties have agreed to a class settlement in principle, valued at $35 million.

### Koenig v. VIZIO, Inc.

**Superior Court of Los Angeles County, California**

Milberg attorneys litigated this class action involving the false advertising of Vizio televisions' refresh rates. Milberg attorneys played a pivotal role, including briefing, discovery, and handling all trial responsibilities. The parties have agreed to a class settlement in principle, valued at over $40 million.

### In re: Outer Banks Power Outage Litigation

**U.S. District Court for the Eastern District of North Carolina**

Milberg attorneys served as Co-Lead Counsel and secured a $10.35 million settlement in a class action in which residents, businesses, and vacationers on Hatteras and Ocracoke Islands in North Carolina were impacted by a 9-day power outage.

### Elliott et al v. KB Home North Carolina Inc.

**North Carolina Superior Court**

In this class action involving homeowners who purchased homes that were improperly built without weather-resistant barriers, Milberg attorneys played an essential role in securing a settlement valued at approximately $6,500 to $17,000 for each class member.

### In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

**U.S. District Court for the District of New Jersey**

Milberg attorneys were appointed to the Plaintiffs Steering Committee in this multidistrict class action against Allergan for breast implants that caused cancer. Milberg attorneys continue to play a pivotal role in this ongoing case.

### In re: Evenflo Co., Inc. Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the District of Massachusetts**

Milberg attorneys were appointed Co-Lead Counsel in this multidistrict litigation against Evenflo for deceptively marketing its child booster seats.

### Carder v. Graco Children's Safety products, Inc.

**U.S. District Court for the Northern District of Georgia**

Milberg attorneys were appointed to multiple leadership positions in this class action involving the deceptive marketing of child car seats.

### Coleman, et al, v. Britax Child Safety, Inc.

**U.S. District Court for the District of South Carolina**

Milberg attorneys were appointed Co-Lead Counsel in this class action involving the deceptive marketing of child car seats.

### In re: Seresto Flea and Tick Collar Marketing, Sales Practices And Products Liability Litigation
**U.S. District Court for the Northern District of Illinois**
Milberg attorneys were appointed Co-Lead Counsel in this multidistrict class action against the manufacturers of Seresto flea and tick collars, which were linked to numerous pet deaths. The litigation is ongoing.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

**EXEMPLAR CASES**

### In re: Avandia Marketing, Sales Practices, and Products Liability Litigation
**U.S. District Court for the Eastern District of Pennsylvania**
Milberg attorneys were appointed to the Plaintiffs Steering Committee and served on the Discovery and Media Sub-Committees on behalf of thousands of patients who took the Type 2 diabetes drug Avandia, alleging the manufacturer failed to disclose the known and increased risk of heart attack and cardiac death. GlaxoSmithKline set aside $3.4 billion in 2011 to settle lawsuits.

### In re: Benicar (Olmesartan) Products Liability Litigation
**U.S. District Court for the District of New Jersey**
Milberg attorneys were appointed to the Plaintiffs Steering Committee and Common Benefit Fee Committee in this multidistrict litigation which alleged that Benicar manufacturer Daiichi Sankyo and co-promoter Forest Laboratories were responsible for serious gastrointestinal injuries. In 2017, the defendants agreed to a $300 million settlement.

### In re: Chantix (Varenicline) Products Liability Litigation
**U.S. District Court for the Northern District of Alabama, Southern Division**
Milberg attorneys served as Co-Lead Counsel in the Chantix Coordination in New York State Court and court-appointed member of the Plaintiffs Steering Committee in the MDL in Alabama.

### In re: Fluoroquinolone Products Liability Litigation
**U.S. District Court for the District of Minnesota**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the MDL in Minnesota litigating the broad-spectrum antibiotic that resulted in severe tendon damage, particularly debilitating Achilles tendon ruptures.

### Fosamax Litigation (I & II)
**U.S. District Court for the District of New Jersey**
Fosamax I: Milberg was appointed Lead Counsel in this New York MDL for ONJ cases and served on the Discovery Team in the Superior Court of New Jersey. Fosamax II: Milberg was appointed to Fosamax Femur MDL Plaintiffs Steering Committee for MDL in the District of New Jersey.

### In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation
**U.S. District Court for the District of Massachusetts**
Milberg attorneys served on the Plaintiffs Steering Committee in the MDL. Granuflo and NaturaLyte were manufactured and marketed by Fresenius Medical for use in dialysis treatment to address kidney failure both chronic and acute, but also caused increased heart complications.

### In re: Incretin Mimetics Products Liability Litigation
**U.S. District Court for the Southern District of California (San Diego)**
Milberg attorneys were appointed to the MDL Plaintiffs Steering Committee in California. Incretins are a class of Type 2 Diabetes drugs which result in a significant increase in gastric side effects.

### In re: Infusion Pump Cases (JCCP 4615)
**U.S. Nineth Circuit Court, Eastern District of California**
Milberg attorneys were appointed Plaintiffs Liaison Counsel. Studies showed that pain pumps were associated with high failure rates when used appropriately and often mis-used leading to increased failure rates and resultant complications.

### Risperdal and Invega Product Liability Litigation (JCCP 4775)
**California Second District Court of Appeal, Division Three**
Milberg attorneys were appointed Co-Lead Counsel in Risperdal/Invega Product Liability Litigation against Johnson & Johnson/Janssen regarding these anti-psychotic dopamine receptor blockers that cause hormonal changes in male users that can result in breast tissue growth.

### In re: Mirena IUD Levonorgestrel-Related Products Liability Litigation
**U.S. District Court for the Southern District of New York**
Milberg attorneys were appointed to the Plaintiffs Steering Committee. Mirena, a hormone releasing IUD for contraception was intended for longer term placement, are prone to failure and breakage and resultant injuries.

### Propecia Finasteride Product Liability Litigation
**U.S. District Court for the Eastern District of New York**
Milberg attorneys were appointed to the Plaintiffs Steering Committee. Another Milberg attorney was appointed Lead Counsel in the New Jersey Multi County Litigation in Middlesex County, New Jersey. These litigations centered on sexual dysfunction resulting from use of Merck's male pattern hair loss product, Propecia.

### In re: Reglan Litigation
**U.S. Superior Court of New Jersey, Law Division Atlantic County**
Milberg attorneys were appointed Co-Lead Counsel in the Multi County Litigation in New Jersey State Court, Atlantic County. Reglan is often used for longer terms to address symptoms of GERD resulting in neurological injuries including Tardive Dyskinesia.

### Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation (MDL 2738)
**U.S. District Court for the District of New Jersey**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the Johnson & Johnson Talcum Powder Litigation and served on the Science Committee and Bellwether Committee in the MDL in District Court New Jersey, as well as on the Science and Experts Committee of the PSC.

## In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation

**U.S. District Court for the Southern District of West Virginia**

Milberg attorneys were appointed to the Plaintiffs Steering Committee in the AMS, Bard, Boston Scientific and Ethicon MDLs.

## In re: Vioxx Products Liability Litigation

**U.S. District Court for the Eastern District of Louisiana**

Milberg attorneys served as Liaison to the media for Vioxx Plaintiffs Steering Committee and Public Relations Committee in Louisiana and on the New Jersey Multi County Litigation Vioxx discovery team.

## In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the District of Arizona**

Milberg attorneys were appointed to the MDL Plaintiffs Steering Committee in Arizona in this case involving a homeopathic, over the counter common cold and allergy symptom product that left many with impaired ability to smell.

## In re: Zimmer Nexgen Knee, Implant Products Liability Litigation

**U.S. District Court for the Northern District of Illinois, Eastern Division**

Milberg attorneys were appointed to the MDL Plaintiff's Steering Committee in Illinois as well as the Electronic Storage Information Committee. Zimmer manufactures multiple devices including knee devices which resulted in premature failure necessitating additional, painful, and costly surgeries.

## In re: Crestor Products Liability Cases (JCCP 4713)

**California Superior Court**

Milberg attorneys served as Co-Lead Counsel in the JCCP in State Court California on this highly potent AstraZeneca "me too" cholesterol managing statin litigation where serious side effects included newly onset diabetes and liver damage as well as reactions with Coumadin.

# EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

**EXEMPLAR CASES**

**In re: Black Farmers Discrimination Litigation**
U.S. District Court for the District of Columbia
Milberg attorneys were appointed Lead Counsel and secured a $1.25 billion settlement fund for black farmers who alleged the U.S. Department of Agriculture discriminated against them by denying farm loans.

**Kingston v. IBM**
U.S. District Court for the Western District of Washington
Milberg attorneys spearheaded a series of landmark cases against IBM alleging wrongful termination of software sales managers through a pattern of fraudulent conduct.

**Parry et al. v. Farmers Insurance Exchange, et al.**
Superior Court of Los Angeles County, California
Milberg attorneys were named Class Counsel and secured a $75 million class-action settlement with Farmers Insurance on behalf of its agents alleging that Farmers Insurance misclassified its agents as independent contractors.

**Meek v. SkyWest, Inc.**
U.S. District Court for the Northern District of California
Milberg attorneys were Lead Counsel and secured a $4.2 million class action settlement against SkyWest Airlines for allegedly failing to provide proper rest and meal breaks to its employees.

**Craig v. Rite Aid Corporation**
U.S. District Court for the Middle District of Pennsylvania
This FLSA collective action and class action settled for $20.9 million.

**Stillman v. Staples, Inc.**
U.S. District Court for the District of New Jersey
This FLSA collective action had a Plaintiffs' trial verdict for $2.5 million and a national settlement approved for $42 million.

**Lew v. Pizza Hut of Maryland, Inc.**
U.S. District Court for the District of New Jersey
This FLSA collective action had a statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages.

# ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## EXEMPLAR CASES

### Nnadili, et al. v. Chevron U.S.A., Inc,
**U.S. District Court for the District of Columbia**
Milberg attorneys were Lead Counsel in a $6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station.

### In re: Swanson Creek Oil Spill Litigation
**U.S. District Court for the District of Maryland**
Milberg attorneys served as Lead Counsel and achieved a $2.25 million settlement arising from the largest oil spill in history of State of Maryland.

### In re: Exxon Valdez
**U.S. District Court for the District of Alaska**
Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska. The plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. The United States Court of Appeals for the Ninth Circuit has since held that plaintiffs are entitled to post-judgment interest on the award in the amount of approximately $470 million.

### Municipality of Bayamon, et al., v. Exxon Mobil Corp., et al.
**United States District Court for the District of Puerto Rico**
More than a dozen municipalities of Puerto Rico have filed a class action lawsuit against fossil fuel companies for their alleged role in the deadly 2017 hurricane season that devastated the Commonwealth, causing billions in damages and leaving thousands of people dead. The first-of-its-kind lawsuit seeks financial compensation from oil and coal companies for marketing and selling carbon-based products that they intentionally misrepresented to the public and worked together to publicly conceal the climate risk changes of their products while internally acting on climate science to safeguard their own assets.

### Sharon Weatherly v. Eastman Chemical Co.
**Circuit Court of Sullivan County, Tennessee Second Judicial District**
Milberg attorneys led the effort to bring justice for hundreds of injured workers and their families resulting from a steam explosion at the Eastman Chemical Company which released asbestos and other toxic materials. Milberg filed a class-action lawsuit, pursuing claims for public and private nuisance, trespass, negligence, and strict liability for ultra-hazardous activity.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

### EXEMPLAR CASES

**Daedalus, LLC, et al. v. City of Charlotte**
North Carolina Superior Court, Mecklenburg County
Milberg attorneys recovered a $106 million class action settlement for property owners for unlawful water and sewer capacity fees and system development fees charged by the City of Charlotte, North Carolina as a condition of providing water and sewer service to property owners.

**Upright Builders, Inc., et al. v. Town of Apex**
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $15.3 million class action settlement for property owners for unlawful water and sewer capacity replacement fees and transportation impact fees charged by the Town of Apex, North Carolina as a condition of providing water and sewer service to property owners.

**Plantation Builders of Wilmington, Inc., et al. v. County of Brunswick**
North Carolina Superior Court, Brunswick County
Milberg attorneys recovered a $15.25 million class action settlement for property owners for unlawful water and sewer capacity fees charged by Brunswick County, North Carolina as a condition of providing water and sewer service to property owners.

**Gerald Currin Builders, Inc. v. Town of Holly Springs**
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $7.9 million class action settlement for property owners for unlawful water and sewer capacity replacement fees charged by the Town of Holly Springs, North Carolina as a condition of providing water and sewer service to property owners.

**Meritage Homes of the Carolinas, Inc. v. Town of Holly Springs**
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $7.5 million class action settlement for property owners for unlawful parks and recreation fees in-lieu of land dedication charged by the Town of Holly Springs, North Carolina as a condition of granting development approval to residential subdivision developers.

**Plantation Building of Wilmington, Inc. v. Town of Leland**
North Carolina Superior Court, Brunswick County
Milberg attorneys recovered a $6.2 million class action settlement for property owners for unlawful water and sewer impact fees charged by the Town of Leland, North Carolina as a condition of providing water and sewer service to property owners.

### Shenandoah Homes, LLC v. Town of Clayton
**North Carolina Superior Court, Johnston County**
Milberg attorneys recovered a $2.7 million class action settlement for property owners for unlawful water and sewer impact fees charged by the Town of Clayton, North Carolina as a condition of providing water and sewer service to property owners.

### Granite Land and Timber, LLC v. Town of Clayton
**North Carolina Superior Court, Johnston County**
Milberg attorneys recovered a $2.45 million class action settlement for property owners for unlawful parks and recreation fees in-lieu of land dedication charged by the Town of Clayton, North Carolina as a condition of granting development approval to residential subdivision developers.

### Mayfair Partners, LLC et al. v. City of Asheville
**North Carolina Superior Court, Buncombe County**
Milberg attorneys recovered a $1.85 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Asheville, North Carolina as a condition of providing water and sewer service to property owners.

### Eastwood Construction, LLC, et. al v. City of Monroe
**North Carolina Superior Court, Union County**
Milberg attorneys recovered a $1.75 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Monroe, North Carolina as a condition of providing water and sewer service to property owners.

### Larry Shaheen v. City of Belmont
**North Carolina Superior Court, Gaston County**
Milberg attorneys recovered a $1.65 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Belmont, North Carolina as a condition of providing water and sewer service to property owners.

### Brookline Homes, LLC v. City of Mount Holly
**North Carolina Superior Court, Gaston County**
Milberg attorneys recovered a $483,468 class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Mount Holly, North Carolina as a condition of providing water and sewer service to property owners.

## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients – both large and small – to change data security practices so that large corporations respect and safeguard consumers' personal data.

**EXEMPLAR CASES**

In re: Google Buzz Privacy Litigation
U.S. District Court for the Northern District of California
Milberg attorneys were appointed Lead Class Counsel and secured a $8.5 million cy pres settlement.

In re: Dept. of Veterans Affairs (VA) Data Theft Litigation
U.S. District Court for the District of Columbia
Milberg attorneys were appointed Co-Lead Counsel representing veterans whose privacy rights were compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations.

In re: Target Corporation Customer Data Security Breach Litigation
U.S. District Court for the District of Minnesota
Milberg represented as many as 110 million Target customers whose personal information was compromised in this landmark data breach case. Milberg, together with Co-Counsel, achieved compensation of $10 million, entitling individual consumers to recover losses of up to $10,000. An appeal of the settlement has been remanded to the District Court of Minnesota and remains pending.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

### EXEMPLAR CASES

#### Home Depot, U.S.A., Inc. v. Jackson
United States Supreme Court
Milberg attorneys represented a consumer who was originally sued in a state court debt collection action. In response, Milberg attorneys filed third-party class action claims against Home Depot for deceptive trade practices regarding its store credit cards marketed to customers. Home Depot sought to remove the class action counterclaims, which were filed in the existing state court action, to federal court. Lengthy appeals followed, in which Milberg attorneys worked cooperatively with attorneys at Public Justice to represent the original consumer and class of consumers. Ultimately, the Supreme Court agreed with the consumers' position and held that a third-party counterclaim defendant may not remove state court claims either under the removal statute or under the Class Action Fairness Act. This decision represents a significant victory for consumer plaintiffs.

#### Webb v. Injured Workers Pharmacy, LLC
First Circuit Court of Appeals
Milberg attorneys scored a significant victory for plaintiffs in data breach and other federal tort cases. The decision animated the Supreme Court's decision in TransUnion v. Ramirez, by applying its standing analysis in a common sense and logically consistent manner to the real-world fact patterns posed by data breach cases. The decision demonstrates that federal court is still a viable forum for data breach cases based upon the material risk of future misuse, as well as actual misuse of data.

#### Kingston v. Int'l Bus. Machines Corp.
Ninth Circuit Court of Appeals
Milberg attorneys represented an IBM software sales manager who was fired for reporting racial discrimination and the unlawful capping of sales commissions. A jury awarded the plaintiff almost $15 million. The Ninth Circuit affirmed the jury's finding of liability and most of the damages award, over a dissent.

#### Fessler v. Int'l Bus. Machines Corp.
Fourth Circuit Court of Appeals
Milberg attorneys represented an IBM software salesman whose sales commissions IBM had wrongly capped. The district court dismissed the salesman's claims. The Fourth Circuit reversed the dismissal, distinguishing a long line of older cases in which IBM had prevailed on the grounds that the new case was factually distinct and presented novel legal theories. The case was later resolved.

### Lytle v. Nutramax Labs., Inc.
**Ninth Circuit Court of Appeals**
Milberg attorneys represented a class of consumers who purchased pet joint health supplements, which they claimed were deceptively marketed and labeled. The trial court granted class certification, and the defendant sought to appeal to the Ninth Circuit, which agreed to hear the appeal. Milberg attorneys argued that class certification was proper, and that the plaintiffs' proposed damages model—a conjoint analysis that surveyed consumers to determine the value of the product's deceptive statements—was valid for calculating classwide damages. The Ninth Circuit heard the parties' arguments in 2023, but has not yet ruled.

### Adkisson v. Jacobs Engineering Grp., Inc.
**Sixth Circuit Court of Appeals**
Milberg attorneys represented a group of hundreds of workers and their families who were injured when cleaning up a large coal ash spill in Kingston, Tennessee. The workers alleged, among other things, that the defendant had denied them essential personal protection equipment. Following years of litigation and a trial on certain issues, the defendant raised a new defense based on a recent Supreme Court case, Thacker v. Tennessee Valley Authority. The defendant argued that it should be immune because it was acting as an agent of the federal government. The Sixth Circuit rejected this defense, finding that based upon the facts, the Tennessee Valley Authority—and, by extension, the defendant—were not immune, paving the way for future litigants to bring claims against the TVA and its agents. Following this ruling, the parties reached a settlement.

### Chisum v. Campagna
**North Carolina Supreme Court**
Milberg attorneys represented a contractor who was wrongfully kicked out of several valuable real estate companies by his partners. The jury awarded the plaintiff millions of dollars, but the trial court granted judgment to the defendants on some of the claims. The North Carolina Supreme Court affirmed the jury's verdict while reversing the trial court's grant of judgment to the defendants. Following the reversal, the parties reached settlement, which was more lucrative for plaintiff than the original jury verdict.

### Plantation Bldg. of Wilmington, Inc. v. Town of Leland
**North Carolina Supreme Court**
Milberg attorneys represented a class of contractors who sued a local government for charging illegal fees. The trial court certified the class, but the government appealed, raising a dangerous new legal theory that would have prevented class certification. The North Carolina Supreme Court rejected that new theory, after which the case settled for even more than the class had demanded before the appeal.

### Adkisson v. Jacobs Engineering Grp., Inc.
**Tennessee Supreme Court**
Milberg attorneys represented a group of hundreds of workers and their families who were injured when cleaning up a large coal ash spill in Kingston, Tennessee. The workers alleged, among other things, that the defendant had denied them essential personal protection equipment. Following years of litigation and a trial on certain issues, the defendant argued that the plaintiffs' claims must be dismissed under the Tennessee Silica Claims Protection Act, and the trial court certified the question to the Tennessee Supreme Court. Milberg attorneys briefed the issues and argued on the workers' behalf that the TSCPA did not cover or require dismissal of their claims. Before the Tennessee Supreme Court could rule, the parties settled their claims.

# LOCATIONS

### PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

### FLORIDA
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

### MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

### NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

### SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM

