1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  AELISH M. BAIG (201279)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  aelishb@rgrdlaw.com
   Attorneys for Plaintiff
6

7

8

9                        UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
10

11 NATHAN COLOMBO, Individually        )   Case No. 3:22-cv-06987-JD
   and on Behalf of All Others Similarly )
   Situated,                            )   **DECLARATION OF CARLA A. PEAK IN**
12                                       )   **SUPPORT OF SETTLEMENT NOTICE**
                          Plaintiff,     )   **PLAN**
13                                       )
              vs.                        )
14                                       )
   YOUTUBE, LLC and GOOGLE LLC,          )
15 _____Defendants.  )

16

17

18

19

20

21

22

23

24

25

26

27

28

I, Carla A. Peak, declare as follows:

1.    I have personal knowledge of the matters set forth herein and if called as a witness I could and would testify competently to them.

2.    I am a nationally recognized expert in the field of legal notification, and I have served as an expert in countless federal and state cases involving class action notice plans.

3.    I am Vice President of Legal Notification Services for Verita Global, LLC ("Verita") f/k/a KCC Class Action Services, LLC or KCC, a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience, Verita has developed efficient, secure, and cost-effective methods to effectively manage the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest.

4.    The purpose of this declaration is to provide information related to Verita's qualifications and experience[1] and my qualifications and experience, as well as to detail the proposed notice plan (the "Notice Plan") designed to provide notice to class members about this settlement. Verita will work with the parties to implement the Notice Plan, as well as make any decisions about notice and administration.

5.    Unless otherwise noted, capitalized terms have the same meaning ascribed to them as in the Settlement Agreement.

## VERITA'S BACKGROUND AND EXPERIENCE

6.    As an industry leader, Verita has been retained to administer more than 10,000 class actions and distributed settlement payments totaling well over a trillion dollars in assets. Our

---

[1] KCC acquired Gilardi & Co. LLC in 2015. KCC and Gilardi & Co. LCC rebranded as Verita Global LLC in June 2024. This Declaration combines the class action notice and administration experience of both firms.

1    experience includes many of the largest and most complex administrations of both private

2    litigation and of actions brought by state and federal government regulators. As such, we are

3    familiar with, and guided by, Constitutional due process provisions, the Federal Rules of Civil

4    Procedure, and the relevant case law relating to legal notification.

5          7.    Verita has administered notice plans in a wide range of class actions in the Northern

6    District of California, for example: *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc*., No. 4:15-

7    cv-06314 11; *Aruliah v. Impax Laboratories, Inc*., No. 3:14-cv-03673; *Banks v. Nissan North

8    America, Inc.*, No. 4:11-cv-02022; *Barrett v. Apple Inc.*, No. 5:20-cv-04812; *Bonoan v. Adobe,

9    Inc.*, No. 3:19-cv-01068; *Camberis v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-02970; *Chen v.

10   Chase Bank USA, N.A.*, No. 3:19-cv-01082; *Chinitz v. Intero Real Estate Services*, No. 5:18-cv-

11   05623; *Cisneros v. American General Financial Services, Inc*., No. 3:11-cv-02869; *Diaz v. Google

12   LLC*, No. 5:21-cv-03080; *Drieu v. Zoom Video Communications, Inc*., No. 3:20-cv-02353;

13   *Edwards v. National Milk Producers Federation*, No. 4:11-cv-04766; *Ehret v. Uber Technologies,

14   Inc*., No. 3:14-cv-00113; *Heath v. Google LLC*, No. 5:15-cv-01824; *Hickcox-Huffman v. US

15   Airways, Inc*., No. 5:10-cv-05193; *Hendricks v. StarKist Co*., No. 4:13-cv-00729; *Holman v.

16   Experian Information Solutions, Inc.*, No. 4:11-cv-00180; *In re Anthem, Inc. Data Breach Litig*.,

17   No. 5:15-md-02617; *In re California Gasoline Spot Market Antitrust Litig.*, No. 3:20-cv-03131;

18   *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 3:12-md-02330; *In re Cathode Ray Tube

19   (CRT) Antitrust Litig*., No. 4:07-cv-05944; *In re Extreme Networks, Inc. Securities Litig*., No. 5:15-

20   cv-04883; *In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747; *In re HIV

21   Antitrust Litig*., No. 3:19-cv-02573; *In Re GEICO General Insurance Co*., No. 4:19-cv-03768; *In

22   re Lidoderm Antitrust Litig*., No. 3:14-md-02521; *In Re LinkedIn User Privacy Litig*., No. 5:12-

23   cv-03088; *In Re Lithium Ion Batteries Indirect Antitrust Litig*., No. 4:13-md-02420; *In Re: NCAA

24   Athletic Grant-In-Aid Antitrust Litig*., No. 4:14-md-02541; *In re Nexus 6P Products Liability

25   Litig.*, No. 5:17-cv-02185; *In re: Nvidia GTX 970 Graphics Chip Litig*., No. 4:15-cv-00760; *In Re

26   Optical Disk Drive Antitrust Litig*., No. 3:10-md-02143; *In re: Orrick, Herrington & Sutcliffe, LLP

27   Data Breach Litig.*, No. 3:23-cv-04089; *Johnson v. Triple Leaf Tea Inc*., No. 3:14-cv-01570;

28

DECLARATION OF CARLA A. PEAK IN SUPPORT OF SETTLEMENT NOTICE PLAN
CASE NO. 3:22-CV-06987-JD

*Knight v. Concentrix Corp.*, No. 4:18-cv-07101; *McArdle v AT&T Mobility LLC*, No. 4:09-cv-01117; *Mullins v. Premier Nutrition Corp.*, No. 3:13-cv-01271; *Nevarez v. Forty Niners Football Company, LLC*, No. 4:16-cv-07013; *Norris v. Mazzola*, No. 3:15-cv-04962; *Perks v. Activehours Inc.*, No. 5:19-cv-05543; *Perrine v. Sega of America, Inc.*, No. 3:13-cv-01962; *Schneider v. Chipotle Mexican Grill, Inc.*, No. 4:16-cv-02200; *Sheikh v. Tesla, Inc.*, No. 5:17-cv-02193; *Ragano v. Michaels Stores, Inc.*, No. 3:11-cv-03908; *Slovin v. Sunrun, Inc.*, No. 4:15-cv-05340; *Steinfeld v. Discover Financial Services*, No. 3:12-cv-01118; *In re Telescopes Antitrust Litig.*, No. 5:20-cv-03639; and *Weeks v. Google LLC*, No. 5:18-cv-00801.

8.    Verita has administered class action settlements for hundreds of consumer protection cases, including those related to the alleged unauthorized collection and storage of biometric data, for example *In re Facebook Biometric Information Privacy Litig.*, No. 3:15-cv-03747 (N.D. Cal.); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC*, No. 1:17-cv-05583 (N.D. Ill.); *Vo v. Luxottica of America Inc.*, No. 2019-CH-10946 (Cook County Cir. Ct.); *Aragon v. Weil Foot & Ankle Institute LLC*, No. 2021-CH-01437 (Cook County Cir. Ct.); *Zhirovetskiy v. Zayo Group LLC*, No. 17-CH-09323 (Cook County Cir. Ct.); *Lopez v. Multimedia Sales & Marketing, Inc.*, No. 2017-CH-15750 (Cook County Cir. Ct.); *Marshall v. Life Time Fitness*, No. 17-CH-14262 (Cook County Cir. Ct.); *McGee v. LSC Communications, Inc.*, 2017-CH-12818 (Cook County Cir. Ct.); *Prelipceanu v. Jumio Corp.*, No. 2018-CH-15883 (Cook County Cir. Ct.); *Glynn v. eDriving*, No. 19-CH-08517 (Cook County Cir. Ct.); *Burger v. Gold Standard Enterprises, Inc.*, No. 2018-CH-05904 (Cook County Cir. Ct.); *Roberts v. Superior Nut*, No. 2018-CH-05903 (Cook County Cir. Ct.); *Salkauskaite v. Sephora USA, Inc.*, No. 1:18-cv-08507 (N.D. Ill.); *Harrison v. Fingercheck, LLC*, No. 20-CH-000633 (Lake County Cir. Ct.); *Williams v. Swissport USA, Inc.*, No. 2019-CH-00973 (Cook County Cir. Ct.); *Kusinski, et al. v. ADP, LLC*, No. 2017-CH-12364 (Cook County Cir. Ct.); *Gonzalez v. Silva International, Inc.*, No. 2020-CH-03514 (Cook County Cir. Ct.); *Freeman-McKee v. Alliance Ground International, LLC*, No. 17-CH-13636 (Cook County Cir. Ct.); *Draland v. TimeClock Plus, LLC*, No. 19-CH-12769 (Cook County Cir. Ct.); *Rapai v. Hyatt Corporation d/b/a Hyatt Lodge*, No. 2017-CH-14483 (Cook County Cir. Ct.);

*Williams v. Inpax Shipping Solutions, Inc.*, No. 2018-CH-02307 (Cook County Cir. Ct.); *Brammer v. Cedarhurst of Edwardsville Operator, LLC*, No. 19L0932 (St. Clair County Cir. Ct.); *Swanson v. Hamra Chicago, LLC*, No. 2021-L-00176 (Kane County Cir. Ct.); *Aspel v Incode Technologies Inc.*, No. 23LA59 (Grundy County, Cir. Ct.); *Marti v. Peoria Hospital Medical Services*, No. 2023LA00058 (LaSalle County, Cir. Ct.); *Batey v Northland Restaurants*, No. 2023LA21 (Knox County Cir. Ct.); *Hughes-Richmond v. Waldom*, No. 2023-LA-0000370 (Winnebago County Cir. Ct.); *Galan v. Mullins Food Products, Inc.*, No. 2021-CH-00898 (Cook County Cir. Ct.); *NAS v. APTARGROUP, INC.*, No. 2023LA000172 (McHenry County Cir. Ct.); *Burchett v. Chateau Nursing & Rehabilitation Center, LLC*, No. 2024-LA-000900 (DuPage County Cir. Ct.); *Lee v. Niemann Foods Inc.*, No. 2019-L-000152 (Sangamon County Cir. Ct.); *Stecker v MAAC Machinery*, No. 2020-L-000321 (Cook County Cir. Ct.); *Smith v. Pineapple Hospitality Co.* No. 18-CH-06589 (Cook County Cir. Ct.); *Rafidia v. KeyMe, Inc.*, No. 18-CH-11240 (Cook County Cir. Ct.); *Gomez v. Rana Meal Solutions, LLC*, No. 2020 CH 03850 (Cook County Cir. Ct.); *Struck v. Woodman's Food Market*, No. 2021-CH-00000053 (Lake County Cir. Ct.); *Johnson v. Filtration Group, LLC*, No. 2020-CH-00138 (Cook County Cir. Ct.); *Borre v O'Hare Towing Services*, No. 2020-CH-02865 (Cook County Cir. Ct.); and *Hirmer v. ESO Solutions, Inc.*, No. 22-cv-01018 (N.D. Ill.).

9.      Over the last two years, Verita has served as the settlement administrator for Class Counsel Robbins Geller Rudman & Dowd LLP and Milberg Coleman Bryson Phillips Grossman, PLLC on a variety of cases. Specifically, Verita has served and is currently serving as the settlement administrator for Robbins Geller Rudman & Dowd LLP in the following securities matters: *Luo v. Spectrum Pharmaceuticals, Inc.*, No. 2:21-cv-01612 (D. Nev.); *Local 295 IBT Employer Group Wlefare Fund v. Compass Minerals International, Inc.*, No. 2:22-cv-02432 (D. Kan.); *In re Sea Limited Securities Litig.*, No. 151344/2022 (Supreme Ct. N.Y.); *In re Kensignton-Quantumscape De-Spac Litig.*, No. 2022-0721-JTL (Chancery Ct. Del.); *Drulias v. Apex Technology Sponsor, LLC*, No. 2024-0094-LWW (Chancery Ct. Del.); *In re Jernigan Capital, Inc. Securities Litig.*, No. 1:20-cv-09575 (S.D.N,Y.); *Strugo v. Mallinckrodt Public Limited Co.*, No.

3:20-cv-10100 (D. N.J.); *Dicker v. Tusimple Holdings, Inc*., No. 3:22-cv-01300 (S.D. Cal.); *Lamartina v. VMware, Inc*., No. 5:20-cv-02182 (N.D. Cal.); *Siseles v. Howard Lutnik*, No. 2023-1152-JTL (Chancery Ct. Del.); *In re Genedx De-Spac Litig*., No. 2023-0140-PAF (Chancery Ct. Del.); *In re Under Armour Securities Litig*., No. 1:17-cv-00388 (D. Md.); *Goldstein, M.D. v. Alexander J. Denner, et al*., No. 2020-1061-JTL (Chancery Ct. Del.); *In re HPE Enterprise Services–DXC Technology Co. Merger Litig.*, No. 19CV353132 (Cal. Super. Ct.); *Commissioners of Public Works of the City of Charleston v. Dude Products, Inc*., No. 2:24-cv-02935 (D. S.C.); *Shafer v. Lightning eMotors, Inc*., No. 1:21-cv-02774 (D. Colo.); *Yu v. RMG Sponsor, LLC*, No. 2021-0932-NAC (Chancery Ct. Del.); *Murray v. Earthlink Holdings Corp*., No. 4:18-cv-00202 (E.D. Ark.); *In re Pegasystems Inc. Securities Litig*., No. 1:22-cv-11220 (D. Mass.); *In re Oatly Group AB Securities Litig*., No. 1:21-cv-06360 (S.D.N.Y.); *Delaware County Employees Retirement System v. AdaptHealth Corp. f/k/a DFB Healthcare Acquisitions Corp*., No. 2:21-cv-03382 (E.D. Pa.); *In re Full Truck Alliance Co. Ltd. Securities Litig.*, Index No. 654232/2021 (N.Y. Sup. Ct.); *Kohli v. Full Truck Alliance Co. Ltd.*, No. 1:21-cv-03903 (E.D.N.Y.*); In re Prudential Financial, Inc. Securities Litig*., No. 2:19-cv-20839 (D. N.J.); and *In re Alphabet, Inc. Securities Lit*ig., No. 3:18-cv-06245 (N.D. Cal.).

10.    Verita has served and/or is currently serving as the settlement administrator for Milberg Coleman Bryson Phillips Grossman, PLLC in *In re: AME Church Employee Retirement Fund Litig*., No. 1:22-cv-01129 (W.D. Tenn.); Comin v. International Business Machines Corp. No. 19-cv-7261 (N.D. Cal.); *Spencer v. Knix Wear Inc*., No. 1:23-cv-07823 (S.D.N.Y.); *Khederlarian v. Utility Trailer Manufacturing Co*., No. 8:22-cv-00435 (C.D. Cal.); *Rupnow v. E\* Trade Securities, LLC*, No. 1:19-cv-10942 (S.D.N.Y.); *Borre v O'Hare Towing Services*, No. 2020-CH-02865 (Cir. Ct., Ill.); *Lamie v. LendingTree, LLC*, No. 3:22-cv-00307 (W.D. N.C.); *Aragon v. Weil Foot & Ankle Institute LLC*, No. 2021-CH-01437 (Cook County Cir. Ct.); *Viruet v. Community Surgical Supply, Inc*., No. OCN L-001215-23 (N.J. Sup. Ct.); *Boles v. Arcis Golf LLC*, No. 3:24-cv-01823 (N.D. Tex.).

11.    In the past two years, Milberg Coleman Bryson Phillips Grossman, PLLC has also

1  been listed as counsel on the following cases Verita has served and/or is currently serving as the

2  settlement administrator: *Oche v. National Math and Science Initiative*, No. 3:22-cv-00834 (N.D.

3  Tex.); *In re Philadelphia Inquirer Data Security Litig.*, No. 2:24-cv-02106 (E.D. Pa.); *J.W. a minor*

4  *v. LivaNova USA, Inc.*, No. 4:24-cv-02250 (S.D. Tex.); *Stewart v Greensboro College, Inc.*, No.

5  2024 cvs4980-400 (Mecklenburg Cnty., N.C.); *Flores v. AON Corp.*, No. 2022-ch-06132 (Cir. Ct.,

6  Ill.); *Milliken Jr. v. Bayer Heritage Federal Credit Union*, No. 5:24-cv-00057 (N.D. W. Va.); and

7  *In re Retina Group of Washington Data Security Incident Litig.*, No. 8:24-cv-00004 (D. Md.).

8          12.    I have personally been involved in many large and significant cases, including *In*

9  *re College Athlete NIL Litig.*, No. 4:20-cv-03919 (N.D. Cal.), a $10 billion national antitrust class

10  action involving NCAA student athletes and the use of their name, image and likeness; *In re*

11  *Anthem, Inc. Data Breach Litigation*, No. 5:15-md-02617 (N.D. Cal.), a national data breach class

12  action involving over 79 million people whose personal information was taken from Anthem's

13  databases; *In re Experian Data Breach Litigation*, No. 8:15-cv-01592 (C.D. Cal.), a national data

14  breach class action involving over 15 million T-Mobile consumers whose information was stored

15  on an Experian server; *In re: The Home Depot, Inc., Customer Data Security Breach Litig.*, No.

16  1:14-md-02583 (N.D. Ga.), a national data breach class action involving over 40 million

17  consumers who made credit or debit card purchases in a Home Depot store; *In re: Skelaxin*

18  *(Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust

19  settlement involving both third party payors and consumers that purchased or paid for the brand

20  and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No.

21  8:11-cv-01733 (C.D. Cal.), a national product defect case involving class members who

22  experienced or may experience the overheating of an automatic dishwasher control board; *In re*

23  *Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary

24  class action notice campaign involving virtually every adult in the United States and informing

25  them about their rights in the $75 million data breach settlement; and *In re Residential Schools*

26  *Litigation*, No. 00-CV-192059 (Ont. S.C.J.), one of the largest and most complex class action in

27  Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal

28

6

persons qualified to receive benefits in the multi-billion dollar settlement.

13.    In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for more than 20 years. During that time, I have been involved in all aspects of the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

14.    The reach of the Notice Program is consistent with other effective court-approved notice programs. Additionally, the Notice Program is intended to comply with the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (the "FJC Checklist"), which considers 70-95% reach among class members to be reasonable.

## NOTICE PLAN

### *Proposed Class Definition*

15.    The Settlement Class is defined as all residents of the State of Illinois who uploaded a video to YouTube on which Face Blur was run. Defendants represent, based on their best estimates, that the Settlement Class contains approximately 16,500 individuals.

16.    Excluded from the Settlement Class are: (i) any Judge, Magistrate Judge, or mediator presiding over this Action and members of their families; (ii) YouTube, YouTube's subsidiaries, parent companies, successors, predecessors, and any entity in which YouTube or its parents have a controlling interest and its current or former employees, officers, and directors; (iii) persons who properly execute and file a timely request for exclusion from the Settlement Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and YouTube's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

### *Individual Notice*

17.    It is my understanding that Defendants represent, based on their best estimates, that the Settlement Class contains approximately 16,500 individuals and that Defendants believe that

1    they can provide Verita with a list of email addresses for YouTube users who, based on a

2    reasonable review of their records, are likely to be members of the Settlement Class (the "Direct

3    Notice List").

4        18.    Verita will send an email notice to all Settlement Class Members for which an email

5    address is available on the Direct Notice List. Email notice is likely to be effective as I understand

6    that YouTube users are required to use a valid email address to sign up for a YouTube account,

7    which is required to upload videos to YouTube.

8        19.    Prior to distributing the email notice, all email addresses will be subject to a

9    cleansing and validation process to, among other things, remove extra spaces and fix common

10   domain name errors, as well as compare addresses against known bad email addresses and verify

11   email existence with Internet Service Providers ("ISPs").

12       20.    The email notice will be formatted to avoid common "red flags" that could cause

13   the email to be blocked by spam filters. For example, the content of the notice will be placed in

14   the body of the email rather than as an attachment to avoid spam filters and improve deliverability.

15   The email notice will contain a link to the Settlement Website.

16       21.    The email delivery will be attempted three times. The email campaign will return

17   data regarding the number of emails successfully delivered and email bouncebacks. Typically,

18   initial bouncebacks are temporary in nature and consist primarily of those that are blocked by ISPs,

19   result from full inboxes on the Settlement Class Member's computers or result from some

20   temporary technical difficulties. These three categories of bouncebacks ("Non-Fatal

21   Bouncebacks") account for about 10-15% of all emails that are sent, and in other cases and tests

22   we have found that about 85% of these emails are deliverable if re-sent.

23                                *Media Campaign*

24       22.    In addition to the individual notice effort described above, Verita will implement a

25   media campaign consisting of online advertisements.

26

27

28

8

23.     Approximately 1,865,000 digital impressions will be purchased and distributed via the Meta Audience Network. The impressions will be targeted to Illinois adults who have demonstrated an online interest in YouTube or related content and audiences.

24.     The notices will appear on both desktop and mobile devices, including tablets and smartphones, in display and native ad formats. All digital media notices will include an embedded link to the settlement website.

25.     The digital media campaign will be monitored by Verita's digital specialists to analyze key campaign performance indicators and make real-time modifications, as needed.

### *Response Mechanisms*

26.     Verita will establish and maintain a case-specific website to allow Settlement Class Members to obtain additional information about the settlement as well as relevant court filings from the action. Settlement Class Members will be able to complete their claims forms online. Settlement Class Members will also be able to view, download, and/or print the long form notice, the Class Action Complaint, Defendant's Answer to the Class Action Complaint, the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval, the Court's Preliminary Approval Order, and other relevant documents and court filings. Settlement Class Members will also be able to review a list of frequently asked questions and answers, and important dates and deadlines.

27.     Verita will establish a case-specific toll-free number to allow Settlement Class Members to call to learn more about the Settlement in the form of frequently asked questions with the option to leave a message requesting a call back or to have additional information, in the form of the Long Notice and Claim Form, mailed to them.

28.     Verita will establish a case-specific email address to allow Settlement Class Members to correspond directly to Verita regarding the Settlement.

### CLAIMS PROCESS

29.     To obtain a settlement payment, Settlement Class Members must submit a claim form online or by mail. A Settlement Class Member contacted via the Direct Notice List will be assigned a unique identifier or "Claim ID" and "PIN" that will be included with their email notice.

1    This Claim ID and PIN may be used to expedite claims filing by "pre-populating" information

2    received from Defendant.

3        30.    The claim form will seek information necessary to validate and process Settlement

4    Class Members' claims, such as their full name, current U.S. mailing address, the email address

5    associated with their YouTube account, and if necessary, information about the time in which they

6    were located in Illinois as well as their YouTube use. The Claim Form will also require Settlement

7    Class Members to affirm that they are a member of the Settlement Class, as well as the truth of the

8    contents of the Claim Form. If a claim is denied due to lack of signature or other required

9    information or documentation, the Settlement Class Member will be notified and provided with an

10   opportunity to correct the claim.

11       31.    Verita will process all claim forms in accordance with the Settlement Agreement.

12   For purposes of this settlement and the costs of administration, Verita has estimated that 5-25% of

13   the Settlement Class will file a claim. However, the claims rate could be more or less than

14   estimated and will ultimately be determined at the conclusion of the administration.

15                   **PROCEDURES FOR SECURELY HANDLING DATA**

16       32.    Verita has executed a non-disclosure agreement with Defendants in connection

17   with its receipt of confidential information in connection with this case. That non-disclosure

18   agreement also contains provisions commanding Verita to maintain robust cybersecurity

19   protocols.

20       33.    Verita maintains a robust and comprehensive security program designed to ensure

21   the protection and secure handling of client and claimant data.

22       34.    Verita's information security framework is aligned to ISO 27001 and 27002 which

23   is reviewed on an annual basis and communicated to all employees through a comprehensive

24   training program.

25       35.    Verita designed its in-house processing platform to securely safeguard all

26   transmitted information, as well as mitigate potential fraud. Verita implements controls that

27   ensure: (1) data transmission between Verita and its authorized organizations are complete and

28

secure; (2) new claims (participant data and noticing materials) are established accurately and completely; (3) claims processing is performed completely and accurately; (4) disbursements are authorized and performed accurately and completely; (5) output is printed accurately (e.g. claim forms, deficiency letters, etc.); (6) processing is appropriately authorized and scheduled and that deviations from scheduled processing are identified and resolved; (7) physical access to the computing resources on which data is stored is restricted to properly authorized individuals; and (8) changes to the existing applications are authorized, tested, approved, and properly implemented.

36.    Verita acts as a data processor and will receive data transfers from Class Counsel and/or Defendant through secure File Transfer Protocol (herein after "FTP"). The FTP File Gateway will have a User Login and Password for access. Once Verita receives the files, the data will be reviewed for size and record count and removed from the FTP File Gateway.

37.    Due to the nature of the services Verita provides, data security is of the utmost importance. As such, Verita continually makes sizeable investments designed to protect information and IT assets. Verita has developed a comprehensive global information and cybersecurity framework aligned to National Institute of Standards and Technology (NIST) frameworks, ISO 27001 and ISO 27002. Among other things, this framework and its underlying controls are designed to ensure that Verita's information and systems are only available to authorized individuals with a justified business need, information is not disclosed or modified without authorization, applicable regulatory, legislative and client requirements are met, and suspected security weaknesses are reported, investigated, documented and resolved.

**INSURANCE**

38.    Verita's services agreement governs the terms and conditions of Verita's employment, including liability and acceptance of responsibility. Verita maintains insurance applicable to its services including professional indemnity insurance, general liability, property, comprehensive crime, electronic and computer crime, and cyber liability insurance.

**CAFA NOTIFICATION**

39.    Upon filing of the Settlement Agreement with the Court, Verita will work with Defense Counsel to fulfill the notice requirements of the Class Action Fairness Act ("CAFA"). Verita will include information detailing CAFA notice fulfillment in a separate report.

**NOTICE PLAN COSTS**

40.    Verita estimates the costs of notice and settlement administration at $71,237-$77,870 depending on the claims rate and primary method by which claims are filed. These costs are based upon the scope of work currently contemplated and include tasks such as data intake and processing, distributing the email notice, the media campaign, weekly case reporting, setting up and maintaining the settlement website, processing claims and exclusion requests, automated call support (including script drafting and management, monthly maintenance fees, updates, listening to, transcribing and responding to voicemails), responding to Settlement Class Member email inquiries, processing claims filed, curing deficient claims, claim calculations, disbursements and handling, and staff hours.

41.    The costs of settlement administration are reasonable given the value of this Settlement, are consistent with industry standards, as well as cases of comparable size and expected scope. These estimated costs are the product of extensive pre-administration consultation with Class Counsel on the expected scope of work. Notice and settlement administration costs as a general matter are a combination of media placements, unitized pricing, and hourly rates. It is my understanding that Verita will be paid from the Settlement Fund.

**CONCLUSION**

42.    The proposed Notice Plan is expected to reach a substantial portion of the Settlement Class by way of the individual direct notice alone which will be provided via email. Coverage and frequency of exposure will be further enhanced by the media campaign.

43.    In my opinion, the Notice Plan proposed is consistent with other effective settlement notice programs. It is the best notice practicable under the circumstances, provides individual notice to all members who can be identified through reasonable effort, and meets the "reasonably certain to

1    inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

2    U.S. 306, 315 (1950). The Notice Plan is designed and expected to meet or exceed the guidelines set

3    forth in Rule 23, the *Manual for Complex Litigation, Fourth*, and the FJC Checklist.

4

5         I declare under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct.

7         Executed this 20th day of May 2025, at Ocean City, New Jersey.

8

9

10

11

12    Carla A. Peak

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28