1  Gary M. Klinger (*pro hac vice*)
2  **MILBERG COLEMAN BRYSON**
   **PHILLIPS GROSSMAN, PLLC**
3  227 W. Monroe Street, Suite 2100
   Chicago, Illinois 60606
4  T: 866.252.0878
   E: gklinger@milberg.com
5
6  **ROBBINS GELLER RUDMAN**
   **& DOWD LLP**
7  AELISH M. BAIG (201279)
   Post Montgomery Center
   One Montgomery Street, Suite 1800
8  San Francisco, CA  94104
   T:  415.288.4545
9  F:  415.288.4534
   E:   aelishb@rgrdlaw.com
10
11 [Additional counsel appear on signature page.]

12 *Class Counsel and Counsel for Plaintiff*

13          **UNITED STATES DISTRICT COURT**

14          **NORTHERN DISTRICT OF CALIFORNIA**

15 NATHAN COLOMBO, Individually and on        ) Case No. 3:22-cv-06987-JD
   Behalf of All Others Similarly Situated,       )
16                                               ) **NOTICE OF UNOPPOSED MOTION**
                               Plaintiff,        ) **AND MOTION FOR FINAL APPROVAL**
17                                               ) **OF CLASS ACTION SETTLEMENT**
          vs.                                    )
18                                               ) Judge: Hon. James Donato
   YOUTUBE, LLC and GOOGLE LLC,                  ) Ctrm: 11
19                                               ) Hearing Date: December 30, 2025
                               Defendants.       ) Time: 10:00 a.m.
20                                               )

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ISSUE TO BE DECIDED .................................................................................................... 2

I.    INTRODUCTION ....................................................................................................... 2

II.   PROCEDURAL AND FACTUAL BACKGROUND................................................... 4

  A.   Settlement Terms and Benefits ............................................................................. 5

  B.   The Settlement Class............................................................................................. 5

III.  NOTICE TO THE CLASS ......................................................................................... 6

IV.   FINAL APPROVAL IS APPROPRIATE ................................................................... 7

  A.   Legal Standards...................................................................................................... 7

  B.   The Settlement is Fair, Adequate and Reasonable............................................... 9

    1.    The Strength of Plaintiff's Case and the Risk, Expense,  Complexity, and Likely
Duration of Future Litigation,  Including the Risk of Decertification ........................... 9

    2.    The Amount Offered in Settlement.............................................................. 12

    3.    The Extent of Discovery Completed and the Stage of the Proceedings ...................... 13

    4.    The Experience and Views of Counsel........................................................ 14

    5.    The Requested Award of Attorneys' Fees and Expenses  Is  Reasonable................... 15

    6.    The Settlement Agreement was the Result of Arm's-Length  Negotiations ............... 16

    7.    The Settlement Class Is Overwhelmingly in Favor of Settlement  Approval.............. 16

V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE......................... 17

VI.   CONCLUSION ......................................................................................................... 18

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                            <u>Page(s)</u>

3

*Cervantez v. Celestica Corp.*,
   No. EDCV 07-729-VAP, 2010 WL 2712267 (C.D. Cal. July 6, 2010) ................................. 14

4

*Chambers v. Whirlpool Corp.*,
   214 F. Supp. 3d 877 (C.D. Cal. 2016) ................................................................................. 17

5

6

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................................... 2, 8

7

8

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................................... 8

9

*Cothron v. White Castle Sys., Inc.*,
   20 F.4th 1156 (7th Cir. 2021), <u>certified question answered,</u> 2023 IL 128004, 216 N.E.3d 918,
   <u>as modified on denial of reh'g</u> (July 18, 2023) ...................................................................... 11

10

11

*Custom LED, LLC v. eBay, Inc.*,
   No. 12-cv-00350-JRT, 2014 WL 2916871 (N.D. Cal. June 24, 2014).................................... 13

12

13

*G.T. v. Samsung Elecs. Am. Inc.*,
   No. 21 CV 4976, 2024 WL 3520026 (N.D. Ill. July 24, 2024) .............................................. 10

14

*Golan v. Free Eats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) ............................................................................................... 11

15

16

*Grant v. Capital Mgmt. Servs., L.P.*,
   No. 10-CV-2471-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014).............................. 9

17

18

*Hart v. Colvin*,
   No. 15-CV-00623-JST, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016)...................................... 8

19

20

*Hartman v. Meta Platforms, Inc.*,
   No. 3:23-CV-02995-NJR, 2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) ................................ 10

21

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)......................................................................................... 14

22

23

*In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*,
   No. SACV 05-8809 JVS (MLGx), 2008 WL 11504857 (C.D. Cal. Dec. 31, 2008)............... 13

24

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021) ................................................................................. 11

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
3:22-cv-06987-JD

*In re Hyundai & Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ................................................................ 8, 16

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................... 14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................... 14

*In re Netflix Privacy Litig.*,
    No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............... 10

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ........................................................................ 8

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016), aff'd sub nom. In re
    Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 895 F.3d 597 .......... 11

*Larsen v. Trader Joe's Co.*,
    No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................. 17

*Lloyd v. Navy Fed. Credit Union*,
    No. 17-CV-1280-BAS-RBB, 2019 WL 2269958 (S.D. Cal. May 28, 2019) .............. 17

*McCabe v. Six Continents Hotels, Inc.*,
    No. 12-cv-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) ..................... 13

*McLeod v. Bank of Am., N.A.*,
    No. 16-cv-03294 EMC, 2018 WL 5982863 (N.D. Cal. Nov. 14, 2018) ................. 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ........................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 9

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................... 8, 9

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) .................................................................. 10

*Riker v. Gibbons*,
    No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .................. 14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................ 12

*Shames v. Hertz Corp.*,
  No. 07-CV-2174-MMA WMC, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)........................ 16

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................ 8

*Stonehocker v. Kindred Healthcare Operating LLC*,
  No. 19-CV-2494-YGR, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ................................ 17

*Tabak v. Apple, Inc.*,
  No. 19-CV-02455-JST, 2024 WL 4642877 (N.D. Cal. Oct. 30, 2024)................................ 15

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................ 8

*Zellmer v. Meta Platforms, Inc.*,
  104 F.4th 1117 (9th Cir. 2024) .............................................................. 10

**Statutes**

740 Ill. Comp. Stat. Ann. 14/1 .............................................................. 2

740 Ill. Comp. Stat. Ann. 14/20 ............................................................ 13

740 Ill. Comp. Stat. Ann. 14/20(a)(1) ....................................................... 3

**Rules**

Fed. R. Civ. P. 23 .......................................................................... 1

Fed. R. Civ. P. 23(b)(3) .................................................................... 3

Fed. R. Civ. P. 23(c)(2) .................................................................. 6, 7

Fed. R. Civ. P. 23(e) ..................................................................... 2, 8

Fed. R. Civ. P. 23(e)(2) .................................................................. 3, 8

Fed. R. Civ. P. 23(e)(2)(C)(i) .............................................................. 9

Fed. R. Civ. P. 23(e)(3) .................................................................... 9

1

**<u>Other Authorities</u>**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)............ 15

**NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**PLEASE TAKE NOTICE** that on December 30, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable James Donato, in Courtroom 11 of the United States District Court for the Northern District of California (San Francisco Division), located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Nathan Colombo ("Plaintiff"), will, and hereby does, move the Court under Federal Rule of Civil Procedure 23 for an order: (a) finding that the proposed settlement ("Settlement") is fair, reasonable, and adequate, and granting final approval of the Settlement; (b) finding that the form and substance of the class notice, as well as the proposed methods of disseminating notice to the Settlement Class, constitutes reasonable and the best practicable notice; (c) certifying the Settlement Class for settlement purposes; and (d) directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation.

This Unopposed Motion is supported by the following Memorandum of Points and Authorities, the Joint Declaration of Class Counsel ("Joint Decl."); the Declaration of Lana Cooper re: Notice Procedures and Claims Status ("Verita Decl."); the [Proposed] Final Approval Order; the pleadings and records on file in this action; and such other matters and argument as the Court may consider at the hearing of this Motion.

1

**ISSUE TO BE DECIDED**

2

Whether the Court should grant final approval of the Settlement.

3

## I.    INTRODUCTION

4

After over three years of active litigation between the Parties—which included briefing and

5

arguing a complex motion to dismiss, exchanging voluminous discovery, months of arm's-length

6

negotiations, a full day mediation, and numerous post-mediation negotiations through the

7

mediator—the Parties seek final approval of the Settlement Agreement executed on May 21, 2025,

8

and preliminarily approved on July 25, 2024 (ECF 117).[1] The Settlement satisfies all applicable

9

Rule 23(e) factors, as well as the Ninth Circuit's *Churchill* factors, and final approval is warranted.

10

The $6,022,500 non-reversionary settlement of this matter is a very good result for the

11

approximately 20,000[2] Settlement Class members to resolve their claims under Illinois' Biometric

12

Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* As explained at preliminary approval,

13

the recovery here compares favorably to other BIPA settlements on a per class member basis.

14

While the number of submitted claims is currently higher than the estimated size of the Settlement

15

Class (Verita Decl., ¶14), the parties and the Settlement Administrator are actively working to vet

16

those submitted claims and to otherwise ensure a high number of valid, Settlement Class member

17

claims, including by adding an additional reminder email notice to known Settlement Class

18

members (*id.*). Class Counsel are confident that, once the Settlement Administrator completes its

19

vetting process of all submitted claims, the recovery here will be superb.

20

Indeed, even assuming the Settlement Administrator approves the claims of each person to

21

whom direct notice was sent, and if Class Counsel's Fee Award and Mr. Colombo's service award

22

23

---

[1] Defendants do not oppose the relief sought by this Motion for Final Approval and agree that the

24

Court should grant final approval of the Settlement Agreement.

25

[2] A definitive number of class members is unknown to all parties. At the preliminary approval
stage, Google estimated that there are 16,500. In preparing the direct notice list produced by

26

Google to the Settlement Administrator after preliminary approval, Google identified roughly
20,000 email addresses to which notice could be sent. The parties believe that this is consistent

27

with their best estimates of class size.

28

are approved, a 100% claims rate will still provide Settlement Class members with a gross recovery of $301.13 per claim. This is approximately 30% of the statutory damages available for negligent violations of BIPA. *See* 740 ILCS 14/20(a)(1) (providing for $1,000 in statutory damages in cases for negligent violations of BIPA).

The recovery here is all the more impressive given the chance of recovering nothing for the Settlement Class if the case proceeded to class certification, trial, or appeal. Putting aside the challenge of litigating against one of the world's largest companies, represented by a highly regarded law firm, there were, without question, substantial litigation risks. Once Defendants produced documents in discovery, those risks were made more apparent. While Plaintiff remains confident that his BIPA claims regarding the YouTube "Face Blur" tool would be certified as a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and would succeed at trial, Defendants were equally confident that no class could be certified, and that Face Blur does not violate BIPA. The proverbial "battle of the experts" might have assisted in that dispute, but the outcome was far from certain. On top of that, Defendants' documents demonstrated that Plaintiff's BIPA claims regarding the YouTube "Thumbnailer" tool suffered meaningful infirmities, both for class certification and on the merits. In the end, the Settlement resolves and releases only the BIPA claims held by the approximated 20,000 people who used the Face Blur tool.

In view of the valuable benefits discussed herein and conveyed to members of the Settlement Class, and the significant risks faced through continued litigation, the Settlement Agreement is "fair, reasonable, and adequate," and merits final approval.  Fed. R. Civ. P. 23(e)(2).

After Preliminary Approval was granted, the Court-appointed Settlement Administrator successfully carried out a multi-faceted Notice Plan that was specifically designed to provide the best notice practicable, that would satisfy all due process considerations, and that would provide Class Members a user-friendly Claims process. This Court-approved Notice Plan provided for direct notice by email, one reminder email notice (which the Parties agreed to increase to two), creation of a Settlement Website, and a targeted internet ad campaign. Ultimately, the Settlement

Administrator notified 78.7% of Class Members to whom direct notice was sent and delivered almost two million impressions via the targeted internet ad campaign. *See* Verita Decl, ¶¶ 7, 11 annexed hereto as **Exhibit 1**.

Although the deadline for objections and opt-outs is not until December 9, 2025, to date, there are currently no requests for exclusion, and no objections. *Id.* ¶¶ 20, 21. The absence of any objections and opt-outs is evidence that Class Members view this Settlement positively and support final approval.

On July 25, 2025, this Court entered an Order conditionally certifying a Settlement Class, granting Preliminary Approval of the Class Action Settlement, appointing a Class Representative and Class Counsel, approving Class Notice, and scheduling a Final Approval Hearing for December 30, 2025. *See* ECF 117 ("Preliminary Approval Order"). Plaintiff now respectfully seeks final approval of the proposed Settlement.

## II.      PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff lays out the relevant history and facts of this case in his Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") (ECF 113), which Plaintiff incorporates by reference and does not repeat verbatim here.

On August 30, 2022, the original named plaintiff, Brad Marschke, filed the putative class action complaint in the United States District Court for the Southern District of Illinois. ECF 1. On October 20, 2022, the Parties jointly stipulated to transfer the case to the United States District Court for the Northern District of California. ECF 22. On January 31, 2023, Defendants filed a motion to dismiss the amended complaint. ECF 60. During the pendency of Defendants' motion to dismiss, the original named plaintiff determined that he no longer wished to pursue his claims against Defendants due to the time commitment necessary to participate in the discovery process and was substituted by Plaintiff Nathan Colombo in the Second Amended Complaint filed June 13, 2023. ECF 84. On June 28, 2023, the Court denied YouTube's motion to dismiss. ECF 85.

Subsequently, the Parties conducted significant fact discovery, including Defendants' production and Plaintiff's counsel's review and analysis of 35,000 pages of documents, videos, and source code change logs, as well as Plaintiff's own collection and productions of documents and videos. Joint Decl. ¶ 7. The Parties then agreed to participate in private mediation. *Id.* ¶ 8. In advance of mediation, Class Counsel retained a biometrics expert to assist with the review and interpretation of Defendants' technical documents. *Id.* ¶ 9.

On December 10, 2024, the Parties participated in an all-day mediation with Shirish Gupta, a respected neutral of JAMS San Francisco. *Id.* ¶ 10. The mediation and numerous subsequent negotiations through Mr. Gupta resulted in a mediator's proposal setting forth the general contours of a proposed settlement, which the Parties accepted in principle. The Parties then negotiated the Settlement Agreement. Significant post-mediation efforts that included the extensive participation of Mr. Gupta were necessary to reach agreement on the specific terms of the Settlement. *Id*. On May 21, 2025, the Parties executed the Settlement now before the Court. *Id*. On that same day, Class Counsel filed Plaintiff's motion for preliminary approval. ECF 113. After a preliminary approval hearing on June 26, 2025, the Court granted preliminary approval on July 25, 2025. ECF 117.

## A. Settlement Terms and Benefits

The Settlement Agreement provides significant and valuable benefits to the Settlement Class. The Settlement calls for the creation of a $6,022,500 non-reversionary common fund. Each Settlement Class Member with an approved claim will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, after deducting any court-awarded attorneys' fees and expenses, service award to the Class Representative, the costs of notice and administration, and tax expenses). ECF 113-1, Exhibit 1 (the Settlement Agreement). ¶¶ 1.17, 4.2.

## B. The Settlement Class

The Court preliminarily certified a Settlement Class defined as "[a]ll residents of the State of Illinois who uploaded a video to YouTube, on which Face Blur was run at any time up to the

1    date of this Order." ECF 117, ¶ 1. The preliminary approval motion estimated that there were
2    approximately 16,500 Settlement Class Members and the Class List provided to the Settlement
3    Administrator included 21,494 total emails. Verita Decl. ¶ 5. After standard de-duplication and
4    data hygiene, that number dropped to 20,004 email addresses to which direct notice was sent. *Id.*

5    **III.    NOTICE TO THE CLASS**

6        The Notice Plan preliminarily approved by the Court was effective and constituted the best
7    notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2).

8        The Court-approved Notice Plan included direct notice by email, a reminder notice by
9    email, notice posted on the Settlement Website, and internet publication of the Summary Notice.
10   *See* Verita Decl. ¶¶ 6-12. On August 29, 2025, the Settlement Administrator received from
11   defendants a list of 21,494 records, including emails, identified as the Class List. *Id.* at ¶ 5. After
12   performing an email cleanse to confirm the validity of the addresses, Verita identified a total of
13   20,004 emails to be sent the initial email notice. *Id.* This process also identified a total of 1,490
14   email addresses that were no longer valid. *Id.*

15       On August 29, 2025, Verita sent direct notice to the 20,004 valid email addresses from the
16   Class List. Verita Decl. ¶ 6. Of these, 15,741 were successfully delivered and 4,263 were
17   undeliverable. *Id.* at ¶ 7. By agreement of the Parties, an earlier-than-planned reminder email
18   notice was sent on October 17, 2025, with 15,643 notices being successfully delivered, and 4,225
19   undeliverable. *Id.* at ¶¶ 8-9. Verita intends to issue a second reminder notice required by the
20   Preliminary Approval Order on or about November 16, 2025. *Id.* at ¶ 10.

21       In addition to the email notices, Verita carried out an internet ad campaign that publicized
22   the summary notice. Verita Decl. ¶ 11. That digital ad campaign delivered 1,965,868 impressions.
23   *Id.* All forms of the Notices were also posted on the Settlement Website that went live on August

28   NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
     3:22-cv-06987-JD

26, 2025. *Id.* at ¶ 12. As of the date of Verita's supporting declaration, the website has received 291,058 visits. *Id.*[3]

The Court-approved Notices were clear and straightforward and were otherwise consistent with the guidance for class notice set forth by the Federal Judicial Center. *See* Federal Judicial Center, Illustrative Forms of Class Action Notices: Overview, https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last visited Oct. 22, 2025). The Notices provided information in plain language about the nature of the Action and the Settlement Agreement, including the applicable deadlines to opt-out and object, instructions for submitting a Claim Form, and information about how to appear at the Fairness Hearing personally or through counsel. *See* Verita Decl. Exhibits C through F. The Settlement Administrator also created and maintained the Settlement Website, where Settlement Class Members could submit claims online and view important documents. *Id.* ¶ 12. Settlement Class Members were also afforded the opportunity to call a toll-free telephone hotline with a live operator option to answer questions concerning the Settlement Agreement. *Id.* ¶ 13.

As a result, Settlement Class Members received the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2), because they received notice that was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

## IV.   FINAL APPROVAL IS APPROPRIATE

### A.  Legal Standards

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

---

[3] The "reach rate" of the direct Notice Plan was 78.7% (Verita Decl., ¶ 7), which exceeds the 70% threshold that federal courts generally employ when assessing whether notice satisfies due process. Fed. Jud. Ctr., Judges' Class Action Notice and Claims Process Checklist and Plan Language Guide at 3 (2010), http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf (indicating that notice reach should be between 70%-95% to satisfy due process) (page not available as of November 4, 2025 due to the government shutdown).

complex class action litigation is concerned." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits[.]"). "'The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.'" *Hart v. Colvin*, 2016 WL 6611002, at *4 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). In the context of a class settlement, the Court must determine whether the settlement is "fundamentally fair, adequate and reasonable" under Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted).

In evaluating whether to grant final approval of the Settlement, the Ninth Circuit has advised that the task before the Court is to consider: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). In December 2018, the Supreme Court approved amendments to Rule 23(e), which are substantially incorporated within the Ninth Circuit's factors set forth above.[4]

---

[4] Amended Rule 23(e)(2) provides that, in order for the Court to conclude that it will likely find that the settlement is fair, reasonable and adequate, it must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)    the cost, risks and delay of trial and appeal;

**B. The Settlement is Fair, Adequate and Reasonable**

In evaluating the Settlement Agreement, the Court must consider the Settlement Agreement as a whole for overall fairness and not in individual component parts. *Officers for Justice*, 688 F.2d at 625. Accordingly, the Fairness Hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the Settlement Agreement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.*

### 1. The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation, Including the Risk of Decertification[5]

Class Counsel weighed the risks of continued litigation of this Action against the immediacy and certainty of the significant recovery provided to Class Members in the Settlement Agreement. In recognition of this balance, the Court should approve the Settlement Agreement. *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) (discussing the advantage of taking "a bird in hand" as the court "compare[s] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Plaintiff is confident in the strength of his claims, that the Court would certify a Class, and that he would succeed at trial. Defendants, however, are also confident in their defenses and arguments opposing class certification and at trial. For instance, Defendants deny generating scans of facial geometry at all, and further deny that any alleged scans were connected to class member

---

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

[5] This factor overlaps with amended Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and appeal).

1  identities. In other words, according to Defendants, the Face Blur and Thumbnailer tools at issue

2  do not identify anyone, nor are they capable of doing so. Under the recently decided *Zellmer v.*

3  *Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024) (affirming this Court), if the generated scans

4  "cannot identify, they are not biometric identifiers or biometric information as defined by BIPA."

5  *Id.*, at 1126; *see also G.T. v. Samsung Elecs. Am. Inc.*, No. 21 CV 4976, 2024 WL 3520026, at *7

6  (N.D. Ill. July 24, 2024) ("BIPA only covers those 'retina or iris scan[s], fingerprint[s],

7  voiceprint[s], or scan[s] of hand or face geometry' that are capable of identifying an individual.

8  Therefore, the fact that the App performs face scans is not dispositive."); *Hartman v. Meta*

9  *Platforms, Inc.*, No. 3:23-CV-02995-NJR, 2024 WL 4213302, at *10 (S.D. Ill. Sept. 17, 2024)

10  ("Several courts, including this one, have adopted this construction of the term 'biometric

11  identifier' and found that it must be capable of identifying an individual.").

12      Defendants also steadfastly maintain that the extraterritoriality doctrine precludes

13  recovery. A jury could find that the relevant conduct—the alleged scanning of facial geometry—

14  occurred exclusively on servers located outside of Illinois and reject the Illinois connections to this

15  case, potentially rendering BIPA inapplicable. *See Patel v. Facebook*, Inc., 932 F.3d 1264, 1276

16  (9th Cir. 2019) ("If the violation of BIPA occurred when Facebook's servers created a face

17  template, the district court can determine whether Illinois extraterritoriality doctrine precludes the

18  application of BIPA"); *see also McLeod v. Bank of Am., N.A.*, No. 16-cv-03294 EMC, 2018 WL

19  5982863, at *5 (N.D. Cal. Nov. 14, 2018) (granting preliminary approval and recognizing the "risk

20  that a jury could agree with [d]efendants" version of the evidence and liability). At the same time,

21  this hypothetical fact-finding might not have precluded recovery altogether but could present

22  manageability problems requiring decertification at a later stage. *Patel*, 932 F.3d at 1276 ("[I]f

23  future decisions or circumstances lead to the conclusion that extraterritoriality must be evaluated

24  on an individual basis, the district court can decertify the class"); *see also In re Netflix Privacy*

25  *Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion

26  that a district court could decertify a class at any time is one that weighs in favor of settlement.").

27

28  NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
    3:22-cv-06987-JD

Moreover, even if Plaintiff prevailed at trial on liability, monetary recovery is still uncertain. Recovery of damages is discretionary. *See Cothron v. White Castle Sys., Inc.*, 216 N.E.3d 918, 929, as modified on denial of reh'g (Ill. July 18, 2023). It is also possible that any statutory damages award would be found to be out of proportion with the alleged offense, in violation of due process, and subject to post-trial reduction. *See, e.g., In re Facebook Biometric Info. Priv. Litig.,* 522 F. Supp. 3d 617, 628 (N.D. Cal. 2021) (Donato, J.), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (noting the "potential for a due process problem when statutory damages are pursued by a large class"); *Golan v. Free Eats.com, Inc*., 930 F.3d 950, 962-63 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million).

Further, any recovery would likely be delayed by appeals, and the litigation could take years to resolve. Even if trial and the inevitable appeals were to be decided in favor of the Settlement Class, any financial award obtained by the Settlement Class would be significantly eroded by the additional costs and fees. And class action trials are inherently risky—seemingly meritorious consumer class actions have gone to trial in California, with judgments returned for defendants. *See, e.g.*, *Farar v. Bayer AG*, No. 14-cv-4601 (N.D. Cal.); *Allen v. Hyland's, Inc.*, No. 12-cv-1150 DMG (MANx) (C.D. Cal.); *c.f. Racies v. Quincy Bioscience, LLC*, No. 15-cv-292 (N.D. Cal.) (declaring mistrial and decertifying class).

Prosecuting this Action through a potential trial and appeal would be lengthy, complex, and impose significant costs on both Parties and the Court. Through continued litigation of this Action, Settlement Class Members face increased risk, expense, and delay, holding up any potential recovery for Settlement Class Members for several more years.

In contrast, the Settlement Agreement provides Settlement Class Members with tangible, substantial, bird in hand relief that fairly, reasonably, and adequately addresses the privacy harms caused, without the risk and delay inherent in litigating this Action through trial and appeal. Thus, this factor weighs in favor of final approval of the Settlement Agreement. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 6248426, at *11 (N.D.

Cal. Oct. 25, 2016) ("Settlement is favored in cases [such as this one] that are complex, expensive, and lengthy to try.") (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)); *Grant*, 2014 WL 888665, at *3.

## 2.    The Amount Offered in Settlement[6]

The Settlement Agreement establishes a $6,022,500.00 non-reversionary Settlement Fund that represents a fair, adequate, and reasonable result for Settlement Class Members. The Settlement compares favorably to many other BIPA class settlements on a gross per person basis.

| Case Name | Settlement Amount | Number of Class Members | Recovery Per Class Member (Gross) |
|---|---|---|---|
| *Colombo v. YouTube LLC* | $6,022,500 | Approx. 20,000 class members | $301.13 |
| *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal. Aug. 19, 2020) | $650,000,000 | Approx. 7 million class members | $92 |
| *Rivera v. Google*, No. 1:16-cv-02714 (N.D. Ill.) | $100,000,000 | 5.8 million class members | $17.24 |
| *Hirmer v. ESO Sol's, Inc.*, No. 1:22-CV-01018 (N.D. Ill. Aug. 2024) | $4,101,300 | 6,414 class members | $640 |
| *Williams v. Personalizationmall.com*, No. 1:20-cv-00025 (N.D. Ill. July 6, 2022) | $4,500,000 | 20,393 class members | $220.66 |
| *Devose v. Ron's Temporary Help Services*, 2019-L-1022 (Will Cnty. Jan. 9, 2023) | $5,375,000 | 17,469 class members | $307.69 |
| *Vaughan v. Biomet USA, Inc.* No. 1:20-cv-04241 (N.D. Ill. Feb. 9, 2023) | $16,750,000 | 66,822 class members | $250.66 |
| *Figueroa v. Kronos Inc.*, No. 1:19-cv-01306 (N.D. Ill. Feb. 10, 2022) | $15,276,227 | Approximately 171,643 class members | $89 |
| *Prelipceanu v. Jumio Corp.*, 2018 CH 15883 (Cir. Ct. Cook Cnty. July 21, 2020) | $7 million | Approximately 260,000 class members | $27 |

---

[6] This factor overlaps with amended Rule 23(e)(2)(C) (adequacy of relief provided to the class).

The relief provided by the Settlement here is significant. When assessing the adequacy of a proposed class settlement, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). BIPA allows recovery of statutory damages of $1,000 for negligent violations or $5,000 for reckless/willful violations. *See* 740 ILCS 14/20. Given an estimated 20,000 Settlement Class Members, the maximum potential recovery is $100,000,000 (assuming willful violations) and $20,000,000 (assuming merely negligent violations).

Plaintiff's efforts secured $6,022,500 in direct monetary benefits for the Settlement Class, and therefore represents between 5.6% and 28% of maximum trial damages, depending on whether Defendants willfully violated BIPA or were negligent. These ratios meet or exceed other approved settlements in the Ninth Circuit. *See, e.g.*, *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JRT, 2014 WL 2916871, at *4 (N.D. Cal. June 24, 2014) ("[C]ourts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable"); *In re Endosurgical Prod. Direct Purchaser Antitrust Litig.*, No. SACV 05-8809 JVS (MLGx), 2008 WL 11504857, at *6 (C.D. Cal. Dec. 31, 2008) (approving "settlement [] worth approximately 1.7% of relevant sales"); *McCabe v. Six Continents Hotels, Inc.,* No. 12-cv-04818 NC, 2015 WL 3990915, at *10 (N.D. Cal. June 30, 2015) (preliminarily approving settlement representing between 0.3% and 2% of potential recovery).

Given the significant litigation risks in a developing area of the law, and the general risk and expense associated with protracted litigation, the $6,022,500.00 Settlement Fund is well within the range of possible recoveries. By any metric, the Settlement is fair, reasonable, and adequate.

### 3.    The Extent of Discovery Completed and the Stage of the Proceedings[7]

This Action has been pending for over three years. During that time, the Parties engaged in significant and lengthy discussions surrounding the facts and legal issues in this case, including

---

[7] This factor overlaps with amended Rule 23(e)(2)(A) (whether "the class representatives and class counsel have adequately represented the class").

with a neutral mediator. The Parties conducted significant fact discovery, including Defendants' production and Plaintiff's counsel's review and analysis of over 35,000 pages of documents, videos, and source code change logs, as well as Plaintiff's own collection and productions of documents and videos.  Joint Decl. ¶ 7. Of note, in advance of mediation, Plaintiff retained Dr. S. Berlin Brahman, a biometrics expert and professor at Missouri State University, to assist with the review and interpretation of Defendants' technical documents. *Id.* ¶ 9. Dr. Brahman shared her opinions on the Face Blur and Thumbnail Generator tools with Plaintiff's counsel and informed Plaintiff's assessment of the claims and allegations. *Id.*

This work, combined with Class Counsel's pre-suit investigation, provided Class Counsel with knowledge sufficient to appreciate the strengths and weaknesses of Plaintiff's claims and to fully evaluate the risks and uncertainties of continued litigation. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 320 ("This exchange of information and progress in the litigation confirm that the parties have a good sense of the strength and weaknesses of their respective cases in order to 'make an informed decision about settlement.'") (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

The stage of the proceedings at which this case was mediated and ultimately settled was also appropriate. The agreement to mediate occurred after the resolution of Defendants' motion to dismiss in June 2023 (ECF 85), and after the formal discovery outlined above had been completed. Thus, this factor also weighs strongly in favor of approving the Settlement.  *See Cervantez*, 2010 WL 2712267, at *3.

### 4.    The Experience and Views of Counsel

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, 2010 WL 4366012, at *4-5 (D. Nev. Oct. 28, 2010) (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). "'The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation,

competence, experience in the particular type of litigation, and the amount of discovery completed.'" *Id.* at *4 (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)).

Here, Class Counsel, who are experienced in consumer class action litigation, including BIPA cases, believe the Settlement represents a very good recovery for the Settlement Class given the risks of continuing the litigation. Joint Decl. ¶ 31. Class Counsel have fully evaluated the available facts, applicable law, and comparable settlements, and have concluded that the Settlement Agreement is fair, reasonable, adequate, and provides substantial and meaningful benefits to Settlement Class Members. Class Counsel are also knowledgeable in the applicable statutes and causes of action at issue here, having successfully resolved many BIPA and data privacy class actions. *Id.* ¶ 30. "That counsel advocate in favor of this Settlement weighs in favor of its approval." *Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2024 WL 4642877, at *6 (N.D. Cal. Oct. 30, 2024).

## 5. The Requested Award of Attorneys' Fees and Expenses Is Reasonable[8]

Contemporaneously with the filing of this motion, Class Counsel moved for an award of $1,505,625.00 in attorneys' fees and $185,420.53 in expenses. As set forth in the fee motion, the requested award is supported by the meaningful results achieved, the risks inherent to this litigation, the quality of Plaintiff's representation in this Action, awards in comparable cases, the contingent nature of the representation, the overwhelmingly positive response to date of Settlement Class Members, and the significant amount of time spent by Class Counsel litigating this Action. The fees requested also pass muster under a lodestar crosscheck.

Plaintiff also moved for a service award in the amount of $5,000.00 to the Settlement Class Representative for his service on behalf of the Settlement Class. Mr. Colombo's active participation in this case directly led to the significant recovery for the Settlement Class. Joint

---

[8] This factor overlaps with Amended Rule 23(e)(2)(3) (proposed award of attorneys' fees).

Decl. ¶ 25; Declaration of Nathan Colombo ("Colombo Decl.") ¶ 6. Indeed, Mr. Colombo meaningfully participated in discovery by responding to interrogatories, collecting and producing documents at counsel's direction (including numerous native videos, emails, and messages), and assisting counsel with discovery meet-and-confers. Joint Decl. ¶ 25; Colombo Decl. ¶ 6. Although Mr. Colombo was not deposed, he was willing to sit for deposition. Joint Decl. ¶ 25; Colombo Decl. ¶ 6. And he willingly stepped into the lead plaintiff role after Brad Marschke, the original plaintiff, withdrew from the case. Joint Decl. ¶ 25.

As a result, this factor is satisfied, and does not pose any barrier to granting approval of the Settlement Agreement.

### 6.    The Settlement Agreement was the Result of Arm's-Length Negotiations

The Parties negotiated a Settlement Agreement worth more than $6 million dollars for Settlement Class Members. This result was achieved only as a result of long and hard-fought arm's-length negotiations assisted by a neutral mediator. Indeed, the Parties were only able to reach a Settlement Agreement after a full-day mediation session and following the mediator's proposal helping to facilitate a resolution. These facts evidence the Settlement Agreement's fairness as a product of arm's-length negotiations. *See, e.g.*, *Shames v. Hertz Corp.*, 2012 WL 5392159, at \*15 (S.D. Cal. Nov. 5, 2012) (granting final approval and finding lengthy settlement negotiations overseen by mediators was convincing evidence that settlement was not a result of collusion); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 570 (the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in analyzing whether to approve a class action settlement).

### 7.    The Settlement Class Is Overwhelmingly in Favor of Settlement Approval

The response of Settlement Class Members has been overwhelmingly positive. Verita received a substantial number of claims and is currently in the process of vetting claimants by requesting additional information to substantiate those claimants' membership in the Settlement

Class and eligibility to participate in the Settlement. *Id.* at ¶¶ 14-19. But even accounting for a high number of ultimately ineligible claims, the current response by the Settlement Class is extremely positive, and on a par with other finally approved BIPA settlements.

Moreover, even though the deadline for Settlement Class Members to object to any aspect of the Settlement is not until December 9, 2025, as of the date of Verita's supporting declaration, no Class Members have objected to the Settlement. Verita Decl. ¶ 21. Also, no Class Members have opted out of the Settlement. *Id.* ¶ 20. *See also Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members"); *Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *5 (N.D. Cal. Apr. 27, 2021) (finding "[t]he reaction of the class was overwhelmingly positive" where "the Court received only three opt-outs and no objections").

## V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Parties have agreed, for the purposes of the Settlement only, to the certification of the following Settlement Class (as modified by the Court):

> All residents of the State of Illinois who uploaded a video to YouTube on which Face Blur was run at any time up to the date of this Order.

In the Court's Preliminary Approval Order, the Court preliminarily certified the above Settlement Class. *See* ECF 117, ¶ 2. None of the facts, law, or circumstances underpinning the Court's decision have since changed. As a result, Plaintiff respectfully requests that the Court finally certify the Settlement Class for Settlement purposes only. *See, e.g., Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (finally certifying settlement class "[b]ecause the circumstances have not changed" since preliminary approval); *Lloyd v. Navy Fed. Credit Union*, 2019 WL 2269958, at *8 (S.D. Cal. May 28, 2019) ("The Court previously certified the Settlement Class under Rule 23(a) and 23(b)(3) in its order granting Plaintiffs' unopposed motion for preliminary approval" and "[t]he Settlement Class remains the same for the purposes of the present

motion for final approval. Accordingly, the Court affirms its prior determination that the Settlement Class satisfies Rule 23's class certification requirements.") (citations omitted).

## VI. CONCLUSION

Plaintiff respectfully requests that the Court grant this Motion for Final Approval and enter an order of judgment.

Dated: November 4, 2025                Respectfully submitted,

/s/ Gary M. Klinger
Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
E: gklinger@milberg.com

Alexander E. Wolf (SBN 299775)
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
T: 872.365.7060
E: awolf@milberg.com
E: jnelson@milberg.com

AELISH M. BAIG (201279)
**ROBBINS GELLER RUDMAN & DOWD LLP**
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
T: 415.288.4545
F: 415.288.4534
E: aelishb@rgrdlaw.com

STUART A. DAVIDSON (*pro hac vice*)
ALEXANDER C. COHEN (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
T: 561.750.3000
E: sdavidson@rgrdlaw.com
E: acohen@rgrdlaw.com

*Class Counsel and Counsel for Plaintiff*