1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  AELISH M. BAIG (201279)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   aelishb@rgrdlaw.com
5
   STUART A. DAVIDSON (*pro hac vice*)
6  ALEXANDER C. COHEN (*pro hac vice*)
   ROBBINS GELLER RUDMAN & DOWD LLP
7  225 NE Mizner Boulevard, Suite 720
   Boca Raton, FL  33432
8  Telephone:  561/750-3000
   sdavidson@rgrdlaw.com
9  acohen@rgrdlaw.com

10 Attorneys for Plaintiff and Class Counsel

11 [Additional counsel appear on signature page.]

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14 NATHAN COLOMBO, Individually and on          ) Case No. 3:22-cv-06987-JD
   Behalf of All Others Similarly Situated,     )
15                                              ) CLASS COUNSEL'S NOTICE OF MOTION
                              Plaintiff,        ) AND MOTION FOR AN AWARD OF
16                                              ) ATTORNEYS' FEES, EXPENSES, AND
            vs.                                 ) SERVICE AWARD, AND MEMORANDUM
17                                              ) OF POINTS AND AUTHORITIES IN
   YOUTUBE, LLC and GOOGLE LLC,                 ) SUPPORT THEREOF
18                                              )
                              Defendants.       ) Judge: Hon. James Donato
19 _____  ) Ctrm: 11
                                                  Hearing Date: December 30, 2025
20                                                Time: 10:00 a.m.

21

22

23

24

25

26

27

28

4914-2461-6823.v1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................2

I.      INTRODUCTION ........................................................................................................2

II.     PROCEDURAL AND FACTUAL BACKGROUND....................................................4

III.    THE REQUESTED FEE IS FAIR AND REASONABLE............................................4

    A.      A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases, Like This One .....................4

    B.      Factors Considered by Courts in the Ninth Circuit Support Approval of the Requested Fee in This Case .................................................................................5

        1.      Class Counsel Achieved a Great Result for the Settlement Class ..............6

        2.      The Litigation Was Uncertain and Highly Complex ..................................8

        3.      The Skill Required and Quality of Work ...................................................10

        4.      The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ............................................................................11

        5.      Awards Made in Similar Cases Support the Fee Request.........................12

        6.      A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable ...............................................................................................13

        7.      The Settlement Class's Reaction to Date Supports the Fee Request.........16

IV.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...............................................................................................................16

V.      THE COURT SHOULD GRANT PLAINTIFF A MODEST SERVICE AWARD.........17

VI.     CONCLUSION ...........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Acosta v. Frito-Lay, Inc.*,
    2018 WL 646691 (N.D. Cal. Jan. 31, 2018) ...........................................................17

*Andrews v. Plains All Am. Pipeline L.P.*,
    2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .....................................................6, 13

*Bailey v. Rite Aid Corp.*,
    No. 4:18-cv-06926 (N.D. Cal. Dec. 16, 2022)........................................................14

*Baird v. BlackRock Institutional Tr. Co.*,
    2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ............................................................5

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................15

*Bedford v. Lifespace Communities, Inc.*,
    No. 1:20-cv-04574 (N.D. Ill. May 12, 2021) ..........................................................13

*Betancourt v. Advantage Human Resourcing, Inc.*,
    2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ..............................................................7

*Blum v. Stenson*,
    465 U.S. 886 (1984) ...................................................................................................4

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...................................................................................................4

*Booth v. Strategic Realty Tr., Inc.*,
    2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) .........................................................15

*Burlinski v. Top Golf USA Inc.*,
    No. 1:19-cv-06700 (N.D. Ill. Oct. 13, 2021) ..........................................................12

*Cancilla v. Ecolab, Inc.*,
    2016 WL 54113 (N.D. Cal. Jan. 5, 2016) ................................................................18

*Comin v. Int'l Bus. Machs. Corp. (IBM)*,
    No. 3:19-cv-07261 (N.D. Cal. Oct. 20, 2023) .........................................................14

*Craft v. Cnty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .....................................................................6

*Crumpton v. Octapharma Plasma, Inc.*,
    513 F. Supp. 3d 1006 (N.D. Ill. 2021) .....................................................................13

*Davis v. Heartland Emp. Servs., LLC*,
    No. 1:19-cv-00680 (N.D. Ill. Oct. 25, 2021) ..........................................................12

*Farrell v. Bank of Am. Corp.*,
    827 F. App'x 628 (9th Cir. 2020) ............................................................................13

Page

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
  2024 WL 4578734 (N.D. Cal. Sept. 6, 2024) ....................................................................18

*Finjan, Inc. v. Sophos, Inc.*,
  244 F. Supp. 3d 1016 (N.D. Cal. 2017) ............................................................................9

*Fleming v. Impax Labs. Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) ..................................................................14

*Flores v. Alameda Cnty. Indus. Inc.*,
  2015 WL 7180607 (N.D. Cal. Nov. 16, 2015) ................................................................18

*G.T. v. Samsung Elecs. Am. Inc.*,
  2024 WL 3520026 (N.D. Ill. July 24, 2024) .....................................................................8

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009) ......................................................................................5

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...............................................................................................17

*Hartman v. Meta Platforms, Inc.*,
  2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) ...................................................................8

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ..........................6, 13, 17

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ...........................................................................................................6

*In re Advoc. Aurora Health Pixel Litig.*,
  740 F. Supp. 3d 736 (E.D. Wis. 2024) ............................................................................12

*In re Alphabet, Inc. Sec. Litig.*,
  No. 3:18-cv-06245 (N.D. Cal. Sept. 30, 2024) ...............................................................14

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...............................................................13

*In re Apple Inc. Device Performance Litig.*,
  2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ...................................................................6

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .........................................................................................4, 5

*In re Broiler Chicken Antitrust Litig.*,
  2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ......................................................................7

*In re Capacitors Antitrust Litig.*,
  2017 WL 9613950 (N.D. Cal. June 27, 2017) ...................................................................5

Page

*In re Capacitors Antitrust Litig.*,
  2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) ...................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ...................................................................6

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
  2025 WL 1371330 (N.D. Ill. May 12, 2025) .................................................................12

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................15

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021),
  *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ....................................................15, 18

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
  2023 WL 8445812 (N.D. Cal. Oct. 10, 2023),
  *aff'd sub nom. Akins v. Facebook, Inc.*, 2025 WL 484621 (9th Cir. Feb. 13, 2025) ...............12

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  611 F. Supp. 3d 872 (N.D. Cal. 2020), *aff'd*, 21 F.4th 1102 (9th Cir. 2021) ...................13, 15

*In re Google Play Dev. Antitrust Litig.*,
  2024 WL 150585 (N.D. Cal. Jan. 11, 2024) ..................................................................18

*In re Korean Air Lines Co. Antitrust Litig.*,
  2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ..................................................................5

*In re Lidoderm Antitrust Litig.*,
  2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) .................................................................6

*In re LinkedIn User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ...............................................................................13

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
  768 F. App'x 651 (9th Cir. 2019) ................................................................................4

*In re Nat'l Hockey League Players' Concussion Inj. Litig.*,
  327 F.R.D. 245 (D. Minn. 2018)................................................................................11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................5, 6, 7

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) ...............11

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ......................................................................................8

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ..........................................................................12

Page

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ......................................... *passim*

*In re Wash. Mut., Inc. Sec. Litig*,
   2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ...............................................16

*Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................14

*Julian v. TTE Tech., Inc.*,
   No. 3:20-cv-02857 (N.D. Cal. Jan. 23, 2023) .................................................15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................7, 8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..........................................................................7

*Lopez v. Youngblood*,
   2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ..................................................5

*Lucero v. Solarcity Corp.*,
   2018 WL 573593 (N.D. Cal. Jan. 26, 2018) ......................................................6

*McDougal v. Black Panther Oil & Gas Co.*,
   277 F. 701 (8th Cir. 1921) ................................................................................7

*McPhail v. First Command Fin. Plan., Inc.*,
   2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................................................15

*Montgomery v. Peri Formwork Sys., Inc.*,
   No. 1:20-cv-07771 (N.D. Ill. Nov. 9, 2021) ...................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................16

*Nelkin v. Kroto Inc.*,
   2025 WL 973932 (C.D. Cal. Mar. 31, 2025) ..................................................14

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ....................................................................17

*Patel v. Facebook, Inc.*
   932 F.3d 1264 (9th Cir. 2019) ........................................................................10

*Pennington v. Tetra Tech EC, Inc.*,
   2022 WL 899843 (N.D. Cal. Mar. 28, 2022) .............................................15, 16

*Purple Mountain Tr. v. Wells Fargo & Co.*,
   2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ...........................................6, 14

Page

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) ................................................17

*Rosado v. Ebay Inc.*,
2016 WL 3401987 (N.D. Cal. June 21, 2016) ...............................................15

*Savani v. URS Pro. Sols. LLC*,
2014 WL 172503 (D.S.C. Jan. 15, 2014) .......................................................11

*Siddle v. Duracell Co.*,
2021 WL 6332775 (N.D. Cal. Apr. 19, 2021) ...............................................18

*Steiner v. Am. Broad. Co., Inc.*,
248 F. App'x 780 (9th Cir. 2007) ..................................................................15

*Stovall-Gusman v. W.W. Granger, Inc.*,
2015 WL 3776765 (N.D. Cal. June 17, 2015) .................................................7

*Sullivan v. Dolgen Cal., LLC*,
2017 WL 3232540 (N.D. Cal. July 31, 2017) ...............................................18

*Thompson v. Transamerica Life Ins. Co.*,
2020 WL 6145104 (C.D. Cal. Sept. 16, 2020) ................................................9

*Van Kraken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ..................................................................6

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...................................................5

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977) ...........................................................................4

*Vincent v. Reser*,
2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .................................................17

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .........................................................................5

*Wing v. Asarco Inc.*,
114 F.3d 986 (9th Cir. 1997) .........................................................................10

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ........................................................................8

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C.
§2520 ................................................................................................................7

Illinois' Biometric Information Privacy Act
740 ILCS 14/1, *et seq.*...................................................................................2
740 ILCS 14/20(a)(1) .......................................................................................2

**Page**

Federal Rules of Civil Procedure
    Rule 23(b)(3)................................................................................................................3

**SECONDARY AUTHORITIES**

*Finest Law Firm Writers Selected by The Burton Awards Program*, THE BURTON AWARDS,
    https://www.burtonawards.com/2025/03/finest-law-firm-writers-selected-by-the-burton-
    awards-program-2/ ....................................................................................................11

Lea Malani Bays & Stuart A. Davidson, *The Missing Links: Why Hyperlinks Must Be
    Treated As Attachments in Electronic Discovery*, 92 U. CIN. L. REV. 979 (2024) ..................11

PlumX Metrics, https://plu.mx/plum/a/?repo_url=https://scholarship.
    law.uc.edu/uclr/vol92/iss4/9&theme=plum-bigben-theme......................................11

**NOTICE OF MOTION AND MOTION**

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on December 30, 2025, at 10:00 a.m., before the Honorable James Donato, at the United States District Court, Northern District of California, Phillip Burton Federal Building, Courtroom 11, 450 Golden Gate Avenue, San Francisco, California 94102, Class Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") (collectively, "Class Counsel") will and hereby do respectfully move the Court for an order awarding attorneys' fees, providing for payment of litigation expenses, and awarding a service award to Nathan Colombo ("Mr. Colombo" or "Plaintiff").

This motion is based on the following Memorandum of Points and Authorities, as well as the contemporaneously filed and accompanying Notice of Unopposed Motion for Final Approval of Class Action Settlement (the "Final Approval Motion"), the Declaration of Stuart A. Davidson Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Declaration" or "Robbins Geller Decl."), attached hereto as Exhibit 1, the Declaration of Gary M. Klinger Filed on Behalf of Milberg Coleman Bryson Phillips Grossman ("Milberg Declaration" or "Milberg Decl."), attached hereto as Exhibit 2, the Declaration of Nathan Colombo in Support of Motion for Final Approval of Class Action Settlement, Award of Attorneys' Fees and Expenses, and Service Award ("Colombo Decl."), attached hereto as Exhibit 3, the Joint Declaration of Class Counsel in Support of Motion for Final Approval of Class Action Settlement ("Joint Decl."), the Declaration of Lana Cooper Re: Notice Procedures and Claims Status ("Verita Decl."), the Stipulation of Class Action Settlement, dated May 21, 2025 (ECF 113-1) ("Stipulation"), all prior pleadings and papers in this Action, the arguments of counsel, and such additional information or argument as may be required by the Court.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should approve as fair and reasonable Class Counsel's[1] application for an attorneys' Fee Award in the amount of 25% of the Settlement Fund.

2.     Whether the Court should approve Class Counsel's request for payment of $185,420.53 in litigation costs and expenses incurred by Class Counsel in this litigation from the Settlement Fund.

3.     Whether the Court should approve Plaintiff's request for payment of a $5,000 service award from the Settlement Fund.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

The $6 million non-reversionary settlement of this matter is a very good result for the approximately 21,000 Settlement Class members to resolve their claims under Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* As explained in Plaintiff's Final Approval Motion, while the number of submitted claims is currently higher than the size of the Settlement Class, the parties and the Settlement Administrator are actively working to address the issue and to increase the number of valid, Settlement Class member claims, including by adding an additional reminder email notice to known Settlement Class members. Class Counsel are confident that, once the Settlement Administrator completes its vetting process of all submitted claims, the recovery here will be superb.

Indeed, even assuming the Settlement Administrator approves the claims of the entire 21,000-person Settlement Class, and if Class Counsel's Fee Award and Mr. Colombo's service award are approved, a 100% claims rate will still provide Settlement Class members with a gross recovery of nearly $300 per claim. This is approximately 25% of the statutory damages available for negligent violations of BIPA. *See* 740 ILCS 14/20(a)(1) (providing for $1,000 in statutory damages in cases for negligent violations of BIPA). These figures, along with the other factors this

---

[1]     All capitalized terms not defined herein shall have the same meaning set forth in the Stipulation.

1    Court considers in determining an appropriate Fee Award, strongly support Class Counsel's

2    request for an award of attorneys' fees of 25% of the Settlement Fund, the Ninth Circuit

3    benchmark, expenses in the amount of $185,420.53, and a $5,000 service award to Mr. Colombo.

4    The recovery here is all the more impressive given the chance of recovering nothing for

5    the Settlement Class if the case proceeded to class certification, trial, or appeal. Putting aside the

6    challenge of litigating against one of the world's richest companies, represented by a highly

7    regarded law firm, there were, without question, substantial litigation risks. Once Defendants

8    produced documents in discovery, those risks were made more apparent. While Plaintiff remains

9    confident that his BIPA claims regarding YouTube, LLC's ("YouTube") "Face Blur" tool would

10   be certified as a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and would

11   succeed at trial, Defendants were adamant from day one that the tool does not violate BIPA. The

12   proverbial "battle of the experts" would likely answer the "who is right, who is wrong" question

13   classwide, but the outcome was far from certain. On top of that, Defendants' documents

14   demonstrated that Plaintiff's BIPA claims regarding the YouTube "Thumbnailer" tool suffered

15   from some infirmities, both for class certification and on the merits. In the end, the Settlement

16   resolves and, narrowly releases, only the BIPA claims on behalf of a 21,000-person Settlement

17   Class who used the Face Blur tool.

18   In sum, Class Counsel expended considerable resources—over 6,600 hours in professional

19   time and over $185,420.53 in expenses—all without any assurance of recovery. The efforts and

20   the risks Class Counsel and Mr. Colombo undertook to achieve the significant recovery they

21   achieved—one that that is higher than most BIPA settlements—were significant. It makes sense,

22   then, that the attorneys' Fee Award (which would result in a negative multiplier to Class Counsel's

23   lodestar) should at least be equal to the Ninth Circuit benchmark of 25%, and that Mr. Colombo

24   should be awarded $5,000 for his valuable service to the Settlement Class.[2]

25

26   _____

     [2]    To date, no Settlement Class member has objected to the requested attorneys' fees, expenses,
27   or service award, which were set forth in the Notice. The deadline for submitting objections is
     December 9, 2025. Verita Decl., ¶17. Should any objections be received, Class Counsel will
28   address them in their reply papers, due on December 23, 2025.

1    Class Counsel respectfully request that the Court grant the Fee Award and service award.

2    **II.    PROCEDURAL AND FACTUAL BACKGROUND**

3    Plaintiff lays out the relevant history and facts of this case in his Notice of Unopposed

4    Motion and Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval

5    Motion") (ECF 113) and Final Approval Motion, which Plaintiff incorporates by reference and

6    does not repeat here. *See* Procedural Guidance for Class Action Settlements, Final Approval, §2

7    ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and

8    background facts in both motions. The motion for attorneys' fees should refer to the history and

9    facts set out in the motion for final approval.").

10    **III.    THE REQUESTED FEE IS FAIR AND REASONABLE**

11        **A.    A Reasonable Percentage of the Fund Is the Appropriate Method for
12              Awarding Attorneys' Fees in Common Fund Cases, Like This One**

13    To be sure, "a litigant or a lawyer who recovers a common fund for the benefit of persons

14    other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."

15    *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S.

16    375, 392 (1970)).[3] This principle rests on a theory of "unjust[] enrichment," under which those

17    other persons should not receive valuable monetary benefits from someone else's efforts without

18    "contributing to its cost." *Id.* The Ninth Circuit unambiguously holds that "a private plaintiff, or

19    his attorney, whose efforts create, discover, increase or preserve a fund to which others also have

20    a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."

21    *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *accord In re Nat'l Collegiate*

22    *Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019).

23    In *Blum v. Stenson*, the Supreme Court recognized that under the common fund doctrine, a

24    reasonable fee may be based "on a percentage of the fund bestowed on the class." 465 U.S. 886,

25    900 n.16 (1984). Although courts have discretion to employ either the percentage of recovery or

26    lodestar method, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011),

27

28    ---
[3]    Unless otherwise noted, all emphasis is added and citations are omitted.

CLASS COUNSEL'S NOT. OF MOT. & MOT. FOR AN AWARD OF ATTYS' FEES, EXPENSES, &
SERVICE AWARDS, & MEMO OF P&A IN SUPPORT – No. 3:22-cv-06987-JD        - 4 -
4914-2461-6823.v1

1  "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice

2  in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that

3  a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re*

4  *Korean Air Lines Co. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also*

5  *In re Capacitors Antitrust Litig.*, 2017 WL 9613950, at *2 (N.D. Cal. June 27, 2017) ("The

6  percentage-of-the-fund method is preferred when counsel's efforts have created a common fund

7  for the benefit of the class.") (Donato, J.); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

8  1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to be

9  dominant"). Thus, the Ninth Circuit has expressly and consistently approved the use of the

10  percentage method in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

11  1047-48 (9th Cir. 2002).

12       The percentage-of-recovery method is particularly appropriate in common fund cases like

13  this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *see also*

14  *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection

15  based on use of percentage-of-the-fund approach); *Baird v. BlackRock Institutional Tr. Co.*, 2021

16  WL 5113030, at *6-*7 (N.D. Cal. Nov. 3, 2021) (applying percentage-of-the-fund method and

17  lodestar cross-check); *Vataj v. Johnson*, 2021 WL 5161927, at *8 (N.D. Cal. Nov. 5, 2021) (same).

18  Among other benefits, the percentage-of-recovery method decreases the burden imposed on courts

19  by eliminating a detailed and "more time-consuming" lodestar analysis. *Bluetooth*, 654 F.3d at

20  942; *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("in practice, the

21  lodestar method is difficult to apply [and] time consuming to administer") (quoting *Manual for*

22  *Complex Litigation (Fourth)* §14.121 (2004)).

23       **B.    Factors Considered by Courts in the Ninth Circuit Support Approval**
              **of the Requested Fee in This Case**
24

25       Courts in this Circuit consider 25% of the common fund the benchmark or "starting point"

26  for the award of fees in a common fund settlement, and consider several factors to determine

27  whether to adjust a fee award from the benchmark:

28       (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to
         the class beyond the immediate generation of a cash fund; (4) whether the

1    percentage rate is above or below the market rate; (5) the contingent nature of the
2    representation and the opportunity cost of bringing the suit; (6) reactions from the
     class; and (7) a lodestar cross-check.

3    *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834,

4    at *1 (N.D. Cal. Mar. 17, 2017) ("*Volkswagen* Fee Order") (citing *Vizcaino*, 290 F.3d at 1048-52).

5        Here, Class Counsel seek a fee of 25% of the Settlement Fund. Courts in this Circuit have

6    often awarded 25% or higher in other complex class actions, even with recoveries much larger

7    than here. *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *4 (N.D.

8    Cal. Sept. 26, 2023) (approving fee of 25%); *In re Capacitors Antitrust Litig.*, 2023 WL 2396782,

9    at *1-*2 (N.D. Cal. Mar. 6, 2023) (approving cumulative 31.01% award) (Donato, J.); *In re Apple

10   Inc. Device Performance Litig.*, 2023 WL 2090981, at *16 (N.D. Cal. Feb. 17, 2023) (26%);

11   *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022)

12   (32%); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *1-*3 (N.D. Cal. Sept. 20, 2018)

13   (33.3%); *Lucero v. Solarcity Corp.*, 2018 WL 573593, at *1 (N.D. Cal. Jan. 26, 2018) (30%); *In re

14   Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016)

15   (27.5%). In fact, "in most common fund cases, the award exceeds that benchmark." *Omnivision*,

16   559 F. Supp. 2d at 1047.

17       Even more to the point, the 25% benchmark fee request here is particularly reasonable

18   given that "[c]ases of under $10 Million will often result in fees above 25%." *Craft v. Cnty. of San

19   Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *see also Van Kraken v. Atl. Richfield

20   Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (noting awards of "30-50 percent of the fund" where

21   the funds were "less than $10 million").

22       As discussed below, application of the relevant *Vizcaino* factors here confirms that the

23   requested 25% fee is fair and reasonable.

24       **1.    Class Counsel Achieved a Great Result for the Settlement
25               Class**

26       Courts have consistently recognized that the result achieved is "the most critical factor" to

27   consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler v. Wells

28   Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*,

802 F. App'x 285 (9th Cir. 2020); *Omnivision*, 559 F. Supp. at 1046. In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great outcome than a lower fee for a poor outcome. *See In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar").[4]

Here, Class Counsel and Mr. Colombo obtained a significant recovery for the Settlement Class, both in terms of overall amount ($6,022,500) and as a percentage of the recoverable statutory damages. Although Ninth Circuit law holds that a settlement may be adequate even if it "amount[s] to a fraction of the potential recovery," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Betancourt v. Advantage Human Resourcing, Inc.*, 2016 WL 344532, at *5 (N.D. Cal. Jan. 28, 2016) (9.7% of the total potential recovery reasonable); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (10% of the total potential recovery reasonable),[5] the Settlement Fund here provides for a 28% gross recovery of statutory damages under BIPA ***if every Settlement Class member makes a claim***. The recovery achieved here is not just fair and reasonable, it's significant.

*Lane* is particularly analogous. There, the district court approved a $9.5 million settlement for a 3.6 million-person class bringing privacy and other claims, including under federal statutes providing for statutory damages. 696 F.3d at 820, 822, 824.[6] Objectors to the settlement argued on appeal, among other things, that the "the settlement amount was too low," *id.* at 816, because "of

---

[4]    *Accord McDougal v. Black Panther Oil & Gas Co.*, 277 F. 701, 707 (8th Cir. 1921) ("[T]he results accomplished by an attorney for his client constitute a material element in the value of the legal services.").

[5]    Even so, the Ninth Circuit has expressly "reject[ed] . . . the proposition that the district court [is] required to find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012).

[6]    One of those statutes, the Video Privacy Protection Act ("VPPA"), "provides for liquidated damages in the amount of $2,500 for violation of its provisions." *Id.* at 822 (citing 18 U.S.C. §§2710(b), 2710(c)(2)). The operative complaint in *Lane* also brought claims under the Electronic Communications Privacy Act, providing for statutory damages of the greater of $100 per day of violation or $10,000 total. *See* 18 U.S.C. §2520.

the possibility that the class's VPPA claims would yield a high recovery at trial," *id.* at 822. The Ninth Circuit affirmed the settlement. *Id.* at 826. And, regarding the size of the settlement, the Court held that it was "not an abuse of the district court's broad discretion" to conclude that "[a] $9.5 million class recovery would be substantial under most circumstances" and that there was "nothing about this particular settlement that undermines the district court's conclusion that it was substantial in this case." *Id.* at 824.

The outstanding result obtained for the Settlement Class here is multiples of the result approved and affirmed on appeal in *Lane*, and merits an appropriate fee that encourages counsel to seek excellent results.

### 2. The Litigation Was Uncertain and Highly Complex

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). To be sure, Class Counsel have litigated several BIPA cases in the past, including before this Court in *Facebook*. They have no doubt become highly knowledgeable of BIPA and the case law interpreting it. Nevertheless, BIPA remains a unique statute, and each case, unsurprisingly, depends on whether the underlying evidence supports a claim, including whether that evidence demonstrates that the defendant captured biometric identifiers in the form of a scan of face geometry or other geometric information that could be used to measure, for example, distances between points on the face. What's more, recent precedent, such as *Zellmer v. Meta Platforms, Inc.*, increased the burden on a BIPA plaintiff to demonstrate that the "face signatures" collected by the defendant can actually "identify" an individual. 104 F.4th 1117, 1126 (9th Cir. 2024). If not, "they are not biometric identifiers or biometric information as defined by BIPA." *Id.*[7]

---

[7]    *Accord G.T. v. Samsung Elecs. Am. Inc.*, 2024 WL 3520026, at *7 (N.D. Ill. July 24, 2024) ("BIPA only covers those 'retina or iris scan[s], fingerprint[s], voiceprint[s], or scan[s] of hand or face geometry' that are capable of identifying an individual. Therefore, the fact that the App performs face scans is not dispositive.") (alterations in original); *Hartman v. Meta Platforms, Inc.*, 2024 WL 4213302, at *10 (S.D. Ill. Sept. 17, 2024) ("Several courts, including this one, have adopted this construction of the term 'biometric identifier' and found that it must be ***capable*** of identifying an individual.") (emphasis in original).

Thus, despite Class Counsel's ultimate success in achieving a strong resolution, they assumed significant risk in pursuing this case. *See generally* Preliminary Approval Motion at 9-11. At every stage, Defendants contended that **neither** of the YouTube features Plaintiff challenged as violating BIPA was capable of violating the statute. *See, e.g.*, Defendants' Notice of Motion and Motion to Dismiss Amended Class Action Complaint (ECF 60), at 1 (arguing Plaintiff "does not plausibly allege that the data at issue in this case identified him or anyone else or was capable of doing so"); *id.* at 4 ("Face Blur does not identify anyone. Indeed, it is designed to **prevent** identification of the people whose faces appear in videos.") (original emphasis); *id.* at 7-8 (same argument regarding Thumbnailer). Similarly, Defendants repeatedly argued to Plaintiff that, even if one of the YouTube tools could identify an individual (which they never conceded), the underlying source code for each tool demonstrated that Defendants simply do not collect scans of face geometry.

It is no surprise, then, that a trial of this case would have turned largely on expert testimony concerning highly technical source code interpretation. Class Counsel, thus, "undertook the litigation despite the risk that resolution of the [source code] issue would no doubt devolve into a 'battle of the experts.'" *Thompson v. Transamerica Life Ins. Co.*, 2020 WL 6145104, at *3 (C.D. Cal. Sept. 16, 2020). And it would be an expensive one, at that, because "[d]iscovery of complex information, such as source code, is expensive and difficult and often requires substantial time and energy from all parties." *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1028 (N.D. Cal. 2017).

Even if Plaintiff overcame all of these risks, obtained class certification, survived summary judgment, and secured a favorable verdict at trial, the win would **still** have faced the risk of partial or complete reversal in post-trial or appellate proceedings, including on such existential issues such as whether the extraterritoriality doctrine precludes either class certification or recovery. As the Ninth Circuit explained in *Patel v. Facebook, Inc.*:

> If the violation of BIPA occurred when Facebook's servers created a face template, the district court can determine whether Illinois's extraterritoriality doctrine precludes the application of BIPA. In either case, predominance is not defeated. And of course, if future decisions or circumstances lead to the conclusion that extraterritoriality must be evaluated on an individual basis, the district court can decertify the class.

1   932 F.3d 1264, 1276 (9th Cir. 2019).

2       Simply put, there existed a significant risk of no recovery for the Settlement Class.

3   *Volkswagen* Fee Order, 2017 WL 1047834, at *2 ("Class Counsel 'recognize there are always

4   uncertainties in litigation[.]' It is possible that 'a litigation Class would receive less or nothing at

5   all, despite the compelling merit of its claims . . . .'") (alteration in original). Indeed, any recovery

6   absent the Settlement "'would come years in the future and at far greater expense to the . . . Class.'"

7   *Id.* The over $6 million recovery achieved here in the face of these significant risks, supports the

8   requested 25% Fee Award.

9           **3.**    **The Skill Required and Quality of Work**

10      The quality of Class Counsel's representation further supports the reasonableness of the

11  requested fee. Class Counsel successfully defeated Defendants' motion to dismiss, obtained

12  discovery that, in their view, supported the validly of Plaintiff's BIPA claim for the Face Blur tool,

13  hired consultants and testifying experts to review Defendants' document production and provide

14  preliminary opinions, and secured a significant recovery for the Settlement Class. This Court is

15  familiar with Robbins Geller's and Milberg's leadership in the class action and complex litigation

16  fields, and their firm résumés speak for themselves. *See* Robbins Geller Decl., Ex. F; Milberg

17  Decl., Ex. 1. Clients retain Class Counsel to benefit from their experience and resources in order

18  to obtain the largest possible recovery for the class in question. Here, Class Counsel's skill and

19  experience brought about a great result.

20      The Court may also consider the standing of opposing counsel in this regard, because such

21  standing reflects the challenge faced by Class Counsel. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d

22  986, 989 (9th Cir. 1997). Class Counsel's ability to obtain a favorable result for the Settlement

23  Class while litigating against a formidable defense firm[8] and its well-heeled client further

24  evidences the quality of Class Counsel's work and weighs in favor of awarding the requested fee.

25  

---

26  [8]   A perhaps insignificant example of the quality of the defense advocacy occurred during the protracted negotiations over a protocol for the collection and production of electronically stored

27  information ("ESI"). That process took several months and innumerable (and contentious) virtual meetings. The last sticking point was how Defendants would treat the collection and production

28  of hyperlinked documents (*e.g.*, a URL to a document stored in Google Drive embedded in an email), an issue that had been recently percolating in the federal courts. Robbins Geller fought for

### 4.    The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *Volkswagen* Fee Order, 2017 WL 1047834, at *3. This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014). There have been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and millions of dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, in *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Robbins Geller prosecuted, the court granted summary judgment to defendants after eight years of litigation, during which plaintiff's counsel incurred over $7 million in out-of-pocket expenses and worked over 100,000 hours, representing a lodestar of approximately $40 million (in 2010 dollars). Robbins Geller also served as co-lead counsel in a class action on behalf of retired National Hockey League players suing the league for injuries sustained due to repetitive head trauma and concussions. After four years of intense, round-the-clock litigation and millions of dollars in expert bills and attorney time, the district court denied class certification, *see In re Nat'l*

---

the automatic collection of hyperlinked documents, while Defendants' counsel would only agree to search for hyperlinked documents "when requested." The point came when Robbins Geller was ready to seek this Court's assistance to resolve the dispute and had drafted a letter to the Court. The parties reached a separate agreement on the hyperlink issue, only after Davidson and Bays developed a treatise-level expertise on this emerging issue in ESI discovery. *See* Lea Malani Bays & Stuart A. Davidson, *The Missing Links: Why Hyperlinks Must Be Treated As Attachments in Electronic Discovery*, 92 U. Cɪɴ. L. Rᴇᴠ. 979 (2024), which has been downloaded over 1,300 times, *see* PlumX Metrics, https://plu.mx/plum/a/?repo_url=https://scholarship.law.uc.edu/uclr/vol92/iss4/9&theme=plum-bigben-theme (last visited Oct. 27, 2025); *see also Finest Law Firm Writers Selected by The Burton Awards Program*, Tʜᴇ Bᴜʀᴛᴏɴ Aᴡᴀʀᴅs, https://www.burtonawards.com/2025/03/finest-law-firm-writers-selected-by-the-burton-awards-program-2/ (last visited Oct. 27, 2025).

1  *Hockey League Players' Concussion Inj. Litig.*, 327 F.R.D. 245, 267 (D. Minn. 2018), essentially

2  bringing an end to the case.

3          Here, Class Counsel have received no compensation throughout the course of this Action,

4  despite investing over 6,600 hours and incurring significant expenses in prosecuting this case.

5  Class Counsel have already undertaken additional (uncompensated) work in connection with the

6  Settlement and its administration and will continue to do so going forward, including preparing

7  filings required by this Court's Procedural Guidance. Any fee award has always been contingent

8  on the result achieved and on this Court's discretion. Indeed, the only certainty was that there

9  would be no fee without a successful result. Nevertheless, Class Counsel committed significant

10  resources of both time and money to vigorously prosecute this Action and successfully brought it

11  to a highly favorable conclusion for the Settlement Class's benefit. The contingent nature of

12  counsel's representation thus further supports approval of the requested fee.

13                    **5.      Awards Made in Similar Cases Support the Fee Request**

14          Class Counsel's fee request is also supported by awards made in similar cases. In privacy

15  cases generally and in BIPA cases specifically, 25% of the common fund (or higher) is not

16  uncommon. *See, e.g.*, *In re Clearview AI, Inc., Consumer Priv. Litig.*, 2025 WL 1371330, at *20

17  (N.D. Ill. May 12, 2025) (39.1% fee in case brought under BIPA and other laws); *In re Advoc.*

18  *Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 765 (E.D. Wis. 2024) (30% fee in pixel privacy

19  case); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2023 WL 8445812, at *1 (N.D.

20  Cal. Oct. 10, 2023) (25% fee awarded in privacy case), *aff'd sub nom. Akins v. Facebook, Inc.*,

21  2025 WL 484621 (9th Cir. Feb. 13, 2025); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp.

22  3d 904, 943 (N.D. Ill. 2022) (awarding 33.33% fee in privacy case); Order Granting Approval of

23  Attorneys' Fees, Costs, and Service Payment to the Class Representative, *Montgomery v. Peri*

24  *Formwork Sys., Inc.*, No. 1:20-cv-07771 (N.D. Ill. Nov. 9, 2021), ECF 34 (awarding 33.33% fee

25  in BIPA case); Final Approval Order, *Davis v. Heartland Emp. Servs., LLC*, No. 1:19-cv-00680

26  (N.D. Ill. Oct. 25, 2021), ECF 130 (awarding 32.8% fee in BIPA case); Final Approval Order,

27  *Burlinski v. Top Golf USA Inc.*, No. 1:19-cv-06700 (N.D. Ill. Oct. 13, 2021), ECF 103 (awarding

28  32.8% fee in BIPA case); Order Granting Approval of Attorneys' Fees, Costs, and Service

Payment to the Class Representative, *Bedford v. Lifespace Communities, Inc.*, No. 1:20-cv-04574 (N.D. Ill. May 12, 2021), ECF 32 (awarding 33.33% fee in BIPA case); *Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1014 (N.D. Ill. 2021) (awarding 33.33% fee in case brought under BIPA and other laws); *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 889 (N.D. Cal. 2020) (25% fee awarded in privacy case), *aff'd*, 21 F.4th 1102 (9th Cir. 2021); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (25% fee awarded in privacy case).

### 6.    A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable

Courts may (but are not required to) cross-check the proposed fee award against counsel's lodestar. *Farrell v. Bank of Am. Corp.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a cross[-]check requirement"); *Andrews*, 2022 WL 4453864, at *2 (finding cross-check unnecessary, given the circumstances); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen* Fee Order, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "trial courts need not, and indeed should not, become green-eyeshade accountants" in context of lodestar cross check and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

In conducting a lodestar cross-check, "courts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if

1    necessary, to account for the risks associated with the representation.'" *Jiangchen v. Rentech, Inc.*,

2    2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (alteration in original) (quoting *Paul, Johnson,*

3    *Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Here, the lodestar method

4    demonstrates the reasonableness of the requested fee. As detailed in the Robbins Geller and

5    Milberg Declarations, over 6,600 hours of attorney and para-professional time were expended

6    prosecuting this Action for the benefit of the Settlement Class. The hours spent to obtain the results

7    are more than reasonable, and there is no question that the hours expended were necessary. *See*

8    Joint Decl., ¶33.

9         Class Counsel's hourly rates, too, are reasonable. In fact, Class Counsel's rates have recent

10   judicial approval in this District and elsewhere in this Circuit. *See* Order Granting Motion for Final

11   Approval of Settlement; Granting Motion for Attorney Fees, Costs, Reallocation of Remainder

12   and de Minimus Donation, *In re Alphabet, Inc. Sec. Litig.*, No. 3:18-cv-06245 (N.D. Cal. Sept. 30,

13   2024), ECF 245 at 12 (Judge Thompson approving Robbins Geller's attorneys' fee, "find[ing] that

14   the hours claimed were reasonably incurred and that the rates charged are reasonable and

15   commensurate with those charged by attorneys with similar experience in the market," where

16   "Plaintiffs' attorneys worked 23,026.30 hours at rates ranging from $110 per hour to $1400 per

17   hour for a total of $14,514,240.00."); *Purple Mountain*, 2023 WL 11872699, at *5 (approving

18   attorneys' fee with Robbins Geller's prevailing hourly rates); *Fleming v. Impax Labs. Inc.*,

19   2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (Judge Gilliam approving hourly rates of $760

20   to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding

21   Robbins Geller's "billing rates in line with prevailing rates in this district for personnel of

22   comparable experience, skill, and reputation"); *Nelkin v. Kroto Inc.*, 2025 WL 973932 (C.D. Cal.

23   Mar. 31, 2025) (approving Class Counsel's 2024 rates); Order: Granting Motion for Final

24   Approval of Class Acton Settlement; Motion for Attorneys' Fees, Costs, and Service Award and

25   Judgement, *Bailey v. Rite Aid Corp.*, No. 4:18-cv-06926 (N.D. Cal. Dec. 16, 2022), ECF 178 at 9

26   (approving requested fees and holding that Milberg's rates were "commensurate with their

27   experience and with the legal market"); Order re Final Approval of Class and PAGA Settlement

28   and Attorneys' Fees and Costs, *Comin v. Int'l Bus. Machs. Corp. (IBM)*, No. 3:19-cv-07261 (N.D.

1    Cal. Oct. 20, 2023), ECF 146 (approving fees based on Milberg's then-current rates); Final

2    Approval Order and Order of Dismissal, *Julian v. TTE Tech., Inc.*, No. 3:20-cv-02857 (N.D. Cal.

3    Jan. 23, 2023), ECF 152 (approving Milberg's rates in false advertising class action).

4           The last piece of the cross-check analysis is the risk multiplier. Here, Class Counsel's

5    lodestar, derived by multiplying the hours spent on this Action by each attorney and litigation

6    professional by their current hourly rates, is $3,413,679.80. Accordingly, the requested fee of 25%

7    represents a ***negative*** multiplier of .44 on Class Counsel's lodestar.[9]

8           While "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and

9    in some cases, even higher multipliers," *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467,

10   481 (S.D.N.Y. 2013) (citing *Vizcaino*, 290 F.3d at 1052-54); *see also, e.g.*, *In re Facebook*

11   *Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (4.71 multiplier), *aff'd*,

12   2022 WL 822923 (9th Cir. Mar. 17, 2022), and even a multiplier of 6.85 is "well within the range

13   of multipliers that courts have allowed," *Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x 780, 783

14   (9th Cir. 2007), and is therefore presumptively reasonable, *In re Extreme Networks, Inc. Sec. Litig.*,

15   2019 WL 3290770, at *11 (N.D. Cal. July 22, 2019) ("[A] multiplier below 1.0 is below the range

16   typically awarded by courts and is presumptively reasonable."); *Booth v. Strategic Realty Tr., Inc.*,

17   2015 WL 6002919, at *7-*8 (N.D. Cal. Oct. 15, 2015) (finding a 25% award that resulted in a

18   lodestar multiplier of 0.87 confirmed the fee award was "'presumptively reasonable'"), where a

19   "proposed attorneys' fee award is less than Class Counsel's lodestar calculation," it "buttress[es]

20   the Court's finding of reasonableness." *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL

21   839841, at *8 (S.D. Cal. Mar. 30, 2009); *see also Pennington v. Tetra Tech EC, Inc.*, 2022 WL

22   899843, at *6 (N.D. Cal. Mar. 28, 2022) (Donato, J.) (awarding 23.7% fee amounting to a

23   multiplier of negative 0.346); *Google*, 611 F. Supp. 3d at 888 ("A negative lodestar multiplier

24   'strongly suggests the reasonableness' of the requested fee" of 25%); *Rosado v. Ebay Inc.*, 2016

25

26   _____

     [9]    The actual realized multiplier has already declined and will continue to decline over time as
27   Class Counsel devote additional attorney time to this Settlement, to oversee processing of claims
     by the Settlement Administrator and the distribution of the Settlement funds to Settlement Class
28   members with valid claims. No additional counsel fees will be sought for such work.

WL 3401987, at *8 (N.D. Cal. June 21, 2016) ("numbers imply a negative multiplier of .54, which strongly suggests the reasonableness of the negotiated [25%] fee").

### 7. The Settlement Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See, e.g.*, *Volkswagen* Fee Order, 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig*, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses requested were filed"). While a certain number of objections are to be expected, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Pennington*, 2022 WL 899843, at *5 (noting lack of objections favored final approval).

Settlement Class members were informed in the Notice that Class Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and for payment of litigation expenses. Settlement Class members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court no later than December 9, 2025. While this deadline has not yet passed, to date, not a ***single*** objection has been received. *See* Verita Decl., ¶17.

In sum, each of the relevant factors supports the award of attorneys' fees of 25% of the Settlement Fund. Accordingly, this fee request is reasonable and should be approved.

## IV. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel further request an award of its litigation expenses in the amount of $185,420.53. These expenses were incurred in prosecuting and resolving this Action on behalf of the Settlement Class. Robbins Geller Decl., ¶6; Milberg Decl., ¶30.

1    "There is no doubt that an attorney who has created a common fund for the benefit of the

2    class is entitled to reimbursement of reasonable litigation expenses from that fund." *Acosta v.*

3    *Frito-Lay, Inc.*, 2018 WL 646691, at *11 (N.D. Cal. Jan. 31, 2018); *see also Vincent v. Reser*, 2013

4    WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (same). In assessing whether counsel's expenses are

5    compensable in a common fund case, courts look to whether the particular costs are the type of

6    "out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v.*

7    *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Hefler*, 2018 WL 6619983, at *44.

8    The largest components of Class Counsel's expenses here were the cost of consultants,

9    experts, and mediation fees. *See* Robbins Geller Decl., ¶7; Milberg Decl., ¶30. As discussed in the

10   Robbins Geller and Milberg Declarations, these consultants and experts expended significant time

11   on pre-filing factual investigation for Class Counsel and on reviewing Defendants' document

12   productions to understand how the Face Blur and Thumbnailer tools worked. *Id.* Aside from these

13   expenses, Class Counsel incurred charges for, among other things, document management, travel,

14   mediation, service of process, and online legal research—each of the type that are routinely

15   charged to hourly paying clients and, therefore, should be awarded out of the common fund. *See,*

16   *e.g.*, *Vincent*, 2013 WL 621865, at *5 (granting award of costs and expenses for "three experts and

17   the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation

18   related expenses"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense

19   award to class counsel and noting "itemized costs relating to . . . expert fees" were "reasonable

20   litigation expenses"); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *9 (C.D. Cal.

21   July 9, 2013) (awarding "expenses for mediation fees, copying, telephone calls, expert expenses,

22   research costs, travel, postage, messengers, and filing fees").

23   **V.    THE COURT SHOULD GRANT PLAINTIFF A MODEST SERVICE**
24   **AWARD**

25   The Settlement before the Court for final approval would not have been possible but for

26   the participation and assistance of Mr. Colombo. Mr. Colombo stepped forward to serve as the

27   plaintiff in this case after the original plaintiff, Brad Marschke, asked to withdraw. Once

28   Mr. Colombo became a plaintiff, he understood and took seriously his fiduciary role as Class

1   Representative and immediately began working with Class Counsel to collect documents and ESI

2   to produce to Defendants in discovery, including 114 native videos (66 gigabytes), emails, and

3   messages from his podcast. *See* Colombo Decl., ¶6. Mr. Colombo worked with Class Counsel to

4   respond to numerous interrogatories, assisted in meet-and-confer discussions concerning

5   discovery, and stayed abreast of all significant events in the case, including settlement

6   negotiations. *Id.* In all, Mr. Colombo estimates that he spent approximately 50 hours serving in his

7   role as the named plaintiff in this Action. *Id.* Simply put, but for Mr. Colombo's participation, it

8   is possible the Settlement Class would receive nothing.

9        Class Counsel are aware that, on some occasions, this Court has granted service awards of

10  less than $5,000. *See, e.g.*, *Siddle v. Duracell Co.*, 2021 WL 6332775, at *4 (N.D. Cal. Apr. 19,

11  2021) ($2,200); *Cancilla v. Ecolab, Inc.*, 2016 WL 54113, at *4 (N.D. Cal. Jan. 5, 2016) ($500 in

12  wage-and-hour case); *Flores v. Alameda Cnty. Indus. Inc*., 2015 WL 7180607, at *5 (N.D. Cal.

13  Nov. 16, 2015) (same). On other occasions, it has awarded $5,000. *See, e.g.*, *Ferraro Fam. Found.,*

14  *Inc. v. Corcept Therapeutics Inc.*, 2024 WL 4578734, at *2 (N.D. Cal. Sept. 6, 2024); *In re Google*

15  *Play Dev. Antitrust Litig.*, 2024 WL 150585, at *4 (N.D. Cal. Jan. 11, 2024) (reducing service

16  award from requested $10,000 to $5,000); *Facebook*, 522 F. Supp. 3d at 634 (reducing service

17  award from requested $7,500 to $5,000).

18        Class Counsel are also mindful that the Court "has consistently expressed skepticism about

19  settlements in which named plaintiffs do appreciably better than rank-and-file class members,"

20  nothing that "these settlements pose a risk of collusion and conflict within the plaintiffs' side of

21  the case." *Sullivan v. Dolgen Cal., LLC*, 2017 WL 3232540, at *2 (N.D. Cal. July 31, 2017)

22  (denying service award where the named plaintiff "independently negotiated [an] 'Individual

23  Settlement Agreement'"). This is not such a case. Mr. Colombo approved the financial terms of

24  the Settlement of this Action without any promise of a service award. Colombo Decl., ¶¶3, 6. Nor

25  was a single word discussed with Defendants' counsel or the mediator about a service award for

26  Mr. Colombo (or attorneys' fees for Class Counsel). Indeed, the amount of the Settlement Fund in

27  relation to the size of the Settlement Class belies any notion that either Mr. Colombo or Class

28  Counsel colluded with Defendants to reach a settlement in exchange for a service award.

1    Accordingly, Class Counsel respectfully request that Mr. Colombo be awarded $5,000 for

2  his service to the Settlement Class.

3  **VI.      CONCLUSION**

4    Class Counsel's efforts on behalf of the Settlement Class resulted in an outstanding result

5  under any measure. Based on the foregoing and upon the entire record herein, Class Counsel and

6  Mr. Colombo respectfully request that the Court: (a) award Class Counsel attorneys' fees of 25%

7  of the Settlement Fund; (b) award $185,420.53 in litigation expenses; and (c) award Mr. Colombo

8  $5,000 as a service award.

9  DATED: November 4, 2025                Respectfully submitted,

10                                        ROBBINS GELLER RUDMAN
                                             & DOWD LLP
11                                        STUART A. DAVIDSON (*pro hac vice*)
                                          ALEXANDER C. COHEN (*pro hac vice*)

12

13                                        _____
                                                  */s/ Stuart A. Davidson*
14                                              Stuart A. Davidson

15                                        225 NE Mizner Boulevard, Suite 720
                                          Boca Raton, FL  33432
16                                        Telephone:  561/750-3000
                                          sdavidson@rgrdlaw.com
17                                        acohen@rgrdlaw.com

18                                        ROBBINS GELLER RUDMAN
                                             & DOWD LLP
19                                        AELISH M. BAIG
                                          Post Montgomery Center
20                                        One Montgomery Street, Suite 1800
                                          San Francisco, CA  94104
21                                        Telephone:  415/288-4545
                                          aelishb@rgrdlaw.com
22

23                                        MILBERG COLEMAN BRYSON
                                             PHILLIPS GROSSMAN, PLLC
24                                        GARY KLINGER (*pro hac vice*)
                                          221 West Monroe Street, Suite 2100
25                                        Chicago, IL  60606
                                          Telephone:  866/252-0878
26                                        gklinger@milberg.com

27

28

CLASS COUNSEL'S NOT. OF MOT. & MOT. FOR AN AWARD OF ATTYS' FEES, EXPENSES, &
SERVICE AWARDS, & MEMO OF P&A IN SUPPORT – No. 3:22-cv-06987-JD        - 19 -
4914-2461-6823.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN, PLLC
ALEXANDER E. WOLF (SBN 299775)
JOHN J. NELSON (SBN 317598)
402 W. Broadway, Suite 1760
San Diego, CA  92101
Telephone:  872/365-7060
awolf@milberg.com
inelson@milberg.com

Attorneys for Plaintiff and Class Counsel